**FILED**

**MAY - 1 2008**

Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL F. HO, | ) |
| | ) |
| ROY HO, | ) |
| | ) |
| UNIVERSITY OF NORTHERN VIRGINIA, INC., | ) |
| | ` |
| and | |
| | |
| EDUCATION DYNAMICS, INC. | |
| | |
| Plaintiffs, | |
| | ) |
| v. | ) |
| | ) |
| | ) |
| STUDENT AND EXCHANGE VISITOR PROGRAM, | ) |
| | ) |
| IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) |
| | ) |
| and | ) |
| | ) |
| DEPARTMENT OF HOMELAND SECURITY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Case: 1:08-cv-00757
Assigned To : Bates, John D.
Assign. Date : 5/1/2008
Description: TRO/PI

---

## PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR A PRELIMINARY INJUNCTION

Plaintiffs Daniel R. Ho, Roy Ho, Education Dynamics, Inc., and the University of Northern Virginia, Inc. ("UNVA") hereby move, pursuant to Federal Rule of Civil Procedure 65, for a Temporary Restraining Order enjoining the decision by the Student Exchange Visitor Program ("SEVP") to remove Roy Ho as the Principal Designated School Official ("PDSO") and replace him with Fay R. Avery, upon Mr. Avery's *ex parte* request, which violated SEVP's regulations providing that only the current PDSO may change the PDSO. Moreover, because Dr. Ho is the owner of UNVA, the change in PDSO without any notice or opportunity to be heard violated his

3

right to the Due Process of Law under the Fifth Amendment to the United States Constitution. Although Plaintiffs sought to have SEVP remedy its errors, SEVP has refused to make an immediate correction of its errors, which has resulted in ongoing and irreparable harm to UNVA. This refusal to act violates Plaintiffs' rights under the Administrative Procedure Act for timely resolution of requests for agency action.

Plaintiffs request an expedited hearing on this motion.

*Rule 65.1 Certification:* Pursuant to Local Rule 65.1, this Motion was filed at approximately 10:30 am on May 1, 2008. At 5:00 pm on April 30, 2008, counsel sent draft copies of the Complaint, Motion, and Memorandum of Points and Authorities in Support of this Motion electronically to:

(1) Michael H. Neifach, the Principal Legal advisor to Immigration and Customs Enforcement responsible for SEVP;

(2) Nadar Baroukh, Associate General Counsel for Immigration at the Department of Homeland Security;

(3) Dianne Curry, Acting Director of School Certification at SEVP;

(4) Louis Farrell, Director of SEVP; and

(5) the general email box for the United States Attorney for the District of Columbia at 4:30 pm on April 30, 2008.[1]

In the email transmission, counsel requested that the parties provided with the materials alert counsel to others that should be provided with the materials.

Counsel then sent the same individuals copies of the final documents at 10:00 am on May 1, 2008. In addition to the copies of the complaint sent by certified mail according to Fed. R. Civ.

---

[1] The electronic mailbox for the United States Attorney rejected the email because of the size of the attachments. Counsel re-sent the documents, without the 12 exhibits shortly thereafter.

Pro. 4(i)(2) and 4(i)(1)(B) to the defendant agencies, and the United States Attorney General,

Counsel had copies of the complaint and motion papers hand delivered to Mr. Neifach, Mr.

Farrell, and Mr. Baroukh. In addition, counsel attempted to contact Mr. Baroukh by telephone on

the morning of May 1, 2008 and learned that he was out of the office. Counsel contacted

Nicholas Perry at DHS, who asked that the materials be sent by email and certified mail, but not

hand delivery. In addition, counsel served the complaint by hand delivery on the United States

Attorney's Office pursuant to Fed. R. Civ. Pro. 4(i)(1)(A)(i), and included in that delivery the

motion papers.

The attached Memorandum of Points and Authorities is submitted in support of this Motion.

Respectfully submitted,

Ronald M. Jacobs
(D.C. Bar No. 479842)
(202) 344-8215
rmjacobs@venable.com
D. Edward Wilson, Jr.
(D.C. Bar No. 932178)
(202) 344-4819
dewilsonjr@venable.com
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004-1601

May 1, 2008                                    *Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL F. HO, | ) |
| | ) |
| ROY HO, | ) |
| | ) |
| UNIVERSITY OF NORTHERN VIRGINIA, INC., | ) |
| | ) |
| and | ) |
| | ) |
| EDUCATION DYNAMICS, INC. | )    Civil Action No. _____ |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| STUDENT AND EXCHANGE VISITOR PROGRAM, | ) |
| | ) |
| IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) |
| | ) |
| and | ) |
| | ) |
| DEPARTMENT OF HOMELAND SECURITY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR A PRELIMINARY INJUNCTION

Ronald M. Jacobs
   (D.C. Bar No. 479842)
   (202) 344-8215
   rmjacobs@venable.com
D. Edward Wilson, Jr.
   (D.C. Bar No. 932178)
   (202) 344-4819
   dewilsonjr@venable.com
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004-1601
*Counsel for Plaintiffs*

May 1, 2008

# TABLE OF CONTENTS

Table of Contents ................................................................................................................ i

Table of Authorities ............................................................................................................ ii

Introduction ........................................................................................................................ 1

Legal & Factual Background .............................................................................................. 4

   I.   Legal Framework of the Student and Exchange Visitor Program ........................... 4

   II.  Proceedings Before SEVP ..................................................................................... 6

      A.  Avery's initial efforts to replace Roy Ho as PDSO. ...................................... 6

      B.  Dr. Ho and UNVA's attempts to have SEVP remedy its errors and
          restore the status quo ................................................................................... 7

Argument ........................................................................................................................... 9

   I.   UNVA Has a Strong Probability of Success on the Merits of its Claims
      that SEVP's Decisions Violated SEVP Regulations in Contravention of
      the APA. ............................................................................................................. 11

      A.  SEVP violated its own regulations in making the initial change and
          continues to violated them by refusing to Name Dr. Ho as PDSO. ........... 12

          1.  SEVP failed to follow its own regulations when it removed Roy
              Ho as PDSO and allowed Mr. Avery to self-appoint to that posi-
              tion. ...................................................................................................... 12

          2.  SEVP violates its own procedures every single day that it allows
              a non-employee to remain as PDSO of UNVA. .................................... 13

      B.  SEVP violated Dr. Ho's right to due process when it removed the
          PDSO without giving the owner of the school any notice or any op-
          portunity to be heard. ................................................................................ 13

      C.  SEVP violated UNVA's right to timely relief under the APA when it
          refused to act on an interim basis in light of overwhelming evidence
          that Mr. Avery was no longer employed by UNVA. ................................... 14

   II.  UNVA and Dr. Ho Will Suffer Irreparable Injury if Preliminary Relief is
      Denied Be-cause the Illegal Change in PDSO Is Undermining the
      School's Very Existence. ................................................................................... 16

III. There is No Irreparable Harm to SEVP if an Injunction is Granted Because SEVP Can Always Change the PDSO Pursuant to Lawful Processes if Later Facts Warrant a Change. ...........................................................19

IV. The Public Interest Strongly Favors Granting Preliminary Relief Because of the Ongoing Harm to Students and the Nation's Immigration System........................20

V. SEVP's Errors are Properly Before this Court. ...............................................20

Conclusion ...........................................................................................................................21

Certificate of Service .........................................................................................................22

# TABLE OF AUTHORITIES

## Statutes

5 U.S.C. § 555 .......................................................................................................11, 14

5 U.S.C. § 706 .......................................................................................................11, 14

8 U.S.C. § 1101(a)(15) ..................................................................................................5

8 U.S.C. § 1372(d)(2) ...................................................................................................5

## Regulations

*8 C.F.R. § 214.3 .......................................................................................4, 5, 10, 12, 13

8 C.F.R. § 214.4 .....................................................................................................6, 15

## Cases

*Blackwell College of Business v. Attorney General*, 454 F.2d 928 (D.C. Cir. 1972) ....................13

*Brendsel v. OFHEO*, 339 F. Supp. 2d 52 (D.D.C. 2004) .........................................................20

*CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738 (D.C. Cir. 1995) ....................9-10

*City of Moundridge v. Exxon Mobil Corp.*, 429 F. Supp. 2d 117 (D.D.C. 2006) ..........................10

*Darden v. Peters*, 488 F.3d 277 (4th Cir. 2007) ...............................................................12

*Duchek v. NTSB*, 364 F.3d 311 (D.C. Cir. 2004) ................................................................12

*Express One Int'l, Inc. v. United States Postal Service*, 814 F. Supp. 87 (D.D.C. 1992) .............16

*Garvey v. NTSB*, 190 F.3d 571 (D.C. Cir. 1999). ..............................................................11

*Goldberg v. Kelly*, 397 U.S. 254 (1970) .......................................................................13

*IMS, P.C. v. Alvarez*, 129 F.3d 618 (D.C. Cir. 1997) ......................................................12-13

*Mathews v. Eldridge*, 424 U.S. 319 (1976).....................................................................13

*Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060 (D.C. Cir. 1998) ..................................20

*Mine Reclamation Corp. v. Fed. Energy Reg. Comm'n*, 30 F. 3d 1519 (D.C. Cir. 1994 .................23

*Nat'l Propane Gas Ass'n v. DHS*, 534 F. Supp. 2d 16 (D.D.C. 2008) ......................................16

*Patriot, Inc. v. HUD*, 963 F. Supp. 1 (D.D.C. 1997) ..........................................................16

*Role Models America, Inc. v. White*, 317 F.3d 327 (D.C. Cir. 2003) ......................................20

*The Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094 (D.C. Cir. 2003) . 14-15

*Western Energy Co. v. United States Dep't of Interior*, 932 F.2d 807 (9th Cir. 1991) ..................12

*Wisconsin Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985)...................................................16

*Indicates principal authority on which Plaintiffs rely.

## INTRODUCTION

For the past ten years, Daniel F. Ho has owned and operated the University of Northern Virginia, Inc. ("UNVA" or "the University"), a proprietary school that teaches primarily English as a Second language to foreign students. Dr. Ho served as the Principal Designated School Official ("PDSO") from UNVA's initial approval by the Student and Exchange Visitor Program ("SEVP") until he appointed Roy Ho to serve in that position. Roy Ho named Dr. Ho to be a Designated School Official ("DSO") at that time.

The PDSO is the primary point of contact for SEVP with a school and is responsible for approving student visa applications and entering information into the computerized Student Exchange Visitor Information System ("SEVIS"). Only the PDSO, and his subordinate DSO(s) are permitted to login to SEVIS and make changes to student status.

Roy Ho served as PDSO and Dr. Ho as a DSO until December 2007. In December 2007, Roy Ho was, unbeknownst to him, stripped of his authority as PDSO by SEVP. In addition, SEVP removed Dr. Ho as a DSO. SEVP made these changes at the request of one of the University's now-former executives, Fay Avery. Mr. Avery was not following instructions from Dr. Ho when he made the change; rather, he was leading a cabal of approximately six disgruntled employees in an effort to unseat Dr. Ho from his positions of authority at UNVA. Mr. Avery convinced SEVP not only to remove Roy Ho as PDSO but also to make Mr. Avery himself the PDSO. SEVP made these changes even though the regulations governing the PDSO allow only the existing PDSO to change the PDSO.

Moreover, SEVP never provided Dr. Ho or Roy Ho with any notice or opportunity to respond to the change; indeed, he learned of it only when he was unable to log into the system. After UNVA learned of Mr. Avery's efforts, the UNVA board of directors fired him. Nonetheless,

Mr. Avery and the others in his rogue faction have continued to occupy one of the University's campuses and have attempted to run the school using Mr. Avery's status as PDSO.

Mr. Avery and his minions have not been faithful stewards of UNVA and its students. They have improperly terminated the immigration status of a number of students and have refused to transfer students to other schools when they have lawfully requested to do so. Mr. Avery's actions have resulted in a dramatic drop in the number of students who attend the University and have tarnished the reputation of UNVA, and its owner, Dr Ho.

Dr. Ho and Roy Ho have attempted to reclaim Roy Ho's rightful position as PDSO by contacting SEVP and providing it with documentation showing that Mr. Avery is no longer employed at UNVA, and that Dr. Ho is the lawful owner of UNVA. SEVP has responded through a cumbersome "Notice of Intent to Withdraw" procedure that gave Mr. Avery and Dr. Ho 33 days to provide support for their claims and provides no end-date for a decision. In response to this procedure, Dr. Ho supplied all of the information requested of him within days and also requested SEVP restore the status quo during the pendency of its procedure in order to minimize the harm to UNVA, its students, and to the school's owner.

The clear violations of its regulations and the harm to the school and its owner notwithstanding, SEVP has rejected Dr. Ho's repeated requests and allowed Mr. Avery to remain PDSO. Simply put, SEVP refuses—despite the full administrative record before it—to rectify the situation until some unspecified time in the future.

In an apparent effort to support its position, SEVP has latched on to a lawsuit Mr. Avery has filed against Dr. Ho in Fairfax County court, in which he claims he is a part owner of the school. UNVA has submitted sworn testimony to SEVP of Mr. Avery from that case where he admits he has no ownership in UNVA or its parent company, Education Dynamics, Inc. ("EDI") (of which

Dr. Ho is the sole owner). SEVP nonetheless remains focused on the status of Mr. Avery's litigation, suggesting in its last communication to UNVA that UNVA should provide updates to SEVP if the state-court litigation is resolved.

By refusing to change the PDSO and waiting on the outcome of Mr. Avery's lawsuit in Virginia state court, SEVP has turned normal principals of administrative law on their head, denying Plaintiffs their right to due process and fair administrative procedure while UNVA and Dr.Ho suffer at the hand of a former employee.

SEVP's initial change in the PDSO was arbitrary and capricious under the Administrative Procedure Act because the decision violated SEVP's own regulations. Moreover, that initial change deprived Dr. Ho of a valuable property right in his University without any notice or opportunity to be heard in violation of the due process clause. SEVP's refusal to provide interim relief to restore the status quo during its investigation has been an arbitrary and capricious denial of Dr. Ho's right to timely relief required by the Administrative Procedure Act. Indeed, every day that SEVP refuses to remove Mr. Avery as PDSO, it commits an ongoing violation of its regulations by allowing a non-employee to serve as PDSO.

Accordingly, UNVA, EDI, and Dr. Ho request that this Court issue a Temporary Restraining Order and/or a Preliminary Injunction ordering SEVP to restore Ro Ho as the PDSO for UNVA pending SEVP's resolution of its Notice of Intent to Withdraw proceeding. Dr. Ho, Roy Ho, UNVA, and EDI can demonstrate:

- A substantial likelihood of success on the merits of their APA and due process claims;

- That they have suffered and will continue to suffer irreparable injury without immediate relief;

- That the injunction will not harm SEVP's ongoing process; and

- That the public interest will be served by restoring Dr. Ho to his rightful position as PDSO because he can stop the damage to the immigration system and harm to students who have had their immigration status improperly terminated.

Moreover, it is clear that Plaintiffs have exhausted their administrative remedies, that both SEVP's initial change in PDSO and its refusal to grant interim relief are both final agency actions, and that the administrative record provides all of the facts needed for this Court to proceed.

## LEGAL & FACTUAL BACKGROUND

### I.    Legal Framework of the Student and Exchange Visitor Program

SEVP is housed in Immigration and Customs Enforcement ("ICE") which is a component of the Department of Homeland Security ("DHS"). There are two sections of the SEVP regulations at issue in this case. The first is the section governing the designation and change of a PDSO. Because SEVP has decided to proceed by issuing a Notice of Intent to Withdraw UNVA's approved status, the second section of the regulations, governing the withdrawal procedures, will be important.

*Principal Designated School Official Regulations:* Pursuant to section 214.3 of DHS's regulations, schools that wish to serve nonimmigrant students must file a petition with SEVP. If a school is approved by SEVP, the institution must have a PDSO. The regulations define the PDSO as:

> [A] *regularly employed member of the school administration* whose office is located at the school and whose compensation does not come from commissions for recruitment of foreign students. An individual whose principal obligation to the school is to recruit foreign students for compensation does not qualify as a designated official.

8 C.F.R. § 214.3(l)(1) (emphasis added).

- 4 -

SEVP has two regulations that govern the procedures for appointing the PDSO. First, "[t]he PDSO and any other DSO must be named by the president, owner, or head of a school or school system. The PDSO and DSO may not delegate this designation to any other person." *Id.* In addition, the regulations specify that "[a]ny changes to the PDSO or DSO *must be made by the PDSO*." *Id.* § 214.3(l)(2) (emphasis added). SEVP has reserved for itself the ability to control a school's choice of a PDSO: "[i]n its discretion, the Service may reject the submission of any individual as a DSO or withdraw a previous submission by a school of an individual," *id.*, although that discretion is obviously constrained by the other regulations.

Once a PDSO has been appointed, the school must submit:

> [A] statement by each designated official certifying that the official is familiar with the Service regulations relating to the requirements for admission and maintenance of status of nonimmigrant students, change of nonimmigrant status under part 248 of this chapter, and school approval under Sec. Sec. 214.3 and 214.4, and affirming the official's intent to comply with these regulations.

*Id.* § 214.3(l)(3). Whenever a school makes changes to the PDSO or DSO, "the designated official must make the same certification." *Id.*

***Withdrawal Regulations:*** SEVP requires schools to submit and keep up to date a great deal of information about themselves and the students they enroll. The PDSO, with the assistance of his DSOs, is responsible for submitting information electronically to SEVIS. The Immigration and Nationality Act provides that:

> If an approved institution of higher education, other approved educational institution, or a designated exchange visitor program fails to provide the specified information, such approvals and such issuance of visas shall be revoked or denied.

8 U.S.C. § 1372(d)(2). In addition, the statute provides that, "if any such institution of learning or place of study fails to make reports promptly the approval shall be withdrawn..." *Id.* § 1101(a)(15).

- 5 -

Under this authority, SEVP has created regulations that provide procedures to withdraw a school's approval. Section 214.4 includes a number of reasons why SEVP may withdraw a school's approval and the procedures by which it must act. One of the specific reasons for withdrawal includes the "designation as a designated official of an individual who does not meet the requirements of Sec. 214.3(l)(1)." 8 C.F.R. § 214.4(a)(1)(vi).

The regulations governing procedures for withdrawal provide that:

> Whenever a district director has reason to believe that an approved school or school system in his/her district is no longer entitled to approval, a proceeding shall be commenced by service upon its designated official a notice of intention to withdraw the approval. The notice shall inform the designated official of the school or school system of the grounds upon which it is intended to withdraw its approval. The notice shall also inform the school or school system that it may, within 30 days of the date of service of the notice, submit written representations under oath supported by documentary evidence setting forth reasons why the approval should not be withdrawn and that the school or school system may, at the time of filing the answer, request in writing an interview before the district director in support of the written answer.

8 C.F.R. § 214.4(b).

The regulations specify that after the school files a response, "[t]he decision of the district director shall be in writing and shall include a discussion of the evidence and findings as to withdrawal." *Id.* § 214.4(g). The regulations provide that the "decision shall contain an order either withdrawing approval or granting continued approval." *Id.*

## II. Proceedings Before SEVP

### A. Avery's initial efforts to replace Roy Ho as PDSO.

Sometime in the last half of 2007, Mr. Avery and several other high-ranking officials decided to initiate an effort to remove Dr. Ho from his positions of authority with UNVA, despite the fact that Dr. Ho owns UNVA and its parent corporation, EDI.[1] Moreover, pursuant to Vir-

---

[1] Letter to Dianne Currie (March 27, 2008) at 2-3 and Ex. A-D ("March 27 Ltr.") (Attached hereto as Exhibit B).

ginia law and the bylaws of the corporations, Dr Ho has ultimate and complete control over UNVA.[2]

To advance his struggle for power, Mr. Avery contacted SEVIS on November 16, 2007, and sought to have Roy Ho removed as PDSO for UNVA.[3] On December 6, 2007, Mr. Avery and the general counsel of UNVA met with SEVP and requested again that Roy Ho be removed as PDSO and that Mr. Avery be named PDSO.[4] They apparently also requested the Dr. Ho be removed as a DSO.

At that time, Mr. Avery served as Chancellor of UNVA, and suggested to SEVP that he was the "head of the school" and entitled to name the PDSO.[5] SEVP apparently granted Mr. Avery's request, because he was made PDSO, and at some point in time, Dr. Ho's access to the system was revoked.[6] It is not clear exactly when this change occurred, because SEVP did not provide any notice to Dr. Ho, even though he was—and is—listed as the owner of UNVA on the I-17, which is the official document detailing to operations of the school.

### B.    Dr. Ho and UNVA's attempts to have SEVP remedy its errors and restore the status quo.

Once it became apparent to Dr. Ho that Roy Ho was no longer the PDSO, that Dr. Ho was not longer a DSO, and that Mr. Avery had usurped his authority, Dr. Ho undertook a series of steps to try to reclaim his authority at the school. As the sole shareholder of EDI, he made changes to the EDI board of directors, pursuant to Virginia corporate law.[7] The EDI board, as the

---

[2] Letter to Dianne Currie (April 1, 2008) at 2-3 and Ex. 2-5 ("April 1 Ltr.") (Attached hereto as Exhibit E).
[3] Notice of Intent to Withdraw (March 28, 2008) at 1 ("Notice") (Attached hereto as Exhibit D).
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] Ex. E, April 1 Ltr. at 2-3.

majority shareholder of UNVA, then made changes to the UNVA board. That reconstituted board voted to remove a number of officials at UNVA, include Mr. Avery.[8]

Dr. Ho then contacted SEVP to have himself named as the PDSO.[9] Two weeks later, UNVA provided documentation to SEVP outlining the reasons why Dr. Ho was the proper PDSO.[10] UNVA followed this submission with another letter requesting immediate action by SEVP.[11] SEVP responded with a Notice of Intent to Withdraw UNVA's authority to accept nonimmigrant students on March 28, 2008.[12] This letter was the first confirmation from SEVP of the fact that Mr. Avery had contacted SEVP and of the allegations he had made to SEVP concerning UNVA. It requested both sides to provide additional information to SEVP about each one's authority to appoint the PDSO within 33 days from the date of the letter.[13] UNVA responded on April 1, 2008, providing complete responses to SEVP's questions.[14]

On April 8, 2008, counsel for UNVA met with Dianne Currie, the Acting Chief of the School Certification Branch of SEVP to discuss the matter.[15] UNVA submitted a letter that same day providing specific evidence of the harm to students that Mr. Avery was causing using his PDSO status.[16] That letter, with complete backup documentation, demonstrated three examples of students who had their immigrant status terminated by Mr. Avery in contravention of SEVP standards.[17] Several of the students had requested to transfer from UNVA to other institutions— given the instability at the school—only to have Mr. Avery terminate their enrollment status be-

---

[8] *Id.*
[9] Letter to Dianne Currie (March 14, 2008) (Attached hereto as Exhibit A).
[10] Ex. B, March 27 Ltr.
[11] Second Letter to Dianne Currie (March 27, 2008) (Attached hereto as Exhibit C).
[12] Ex. D, Notice.
[13] *Id.* at 2.
[14] Ex. E, April 1 Ltr.
[15] Letter to Dianne Currie (April 10, 2008) ("April 10 Ltr.") (Attached hereto as Exhibit G).
[16] Letter to Dianne Currie (April 8, 2008) ("April 8 Ltr.") (Attached hereto as Exhibit F).
[17] *Id.* at 2.

fore they were transferred.[18] As such, they lost their immigrant status. One student's spouse then lost her immigrant status because her husband was no longer lawfully admitted to the United States.[19]

At the April 8 meeting, and in the letter, UNVA requested specific interim relief naming Dr. Ho as the PDSO during the pendency of the withdrawal proceeding.[20] Two days latter, UNVA again wrote to SEVP requesting immediate relief[21] and providing a memorandum detailing the legal authority for an immediate change in PDSO status by SEVP.[22]

UNVA did not receive a response. It wrote to SEVP again, but received no response.[23] Finally, in a telephone call, SEVP indicated that it would not grant UNVA's request for interim relief and would instead wait until both sides had responded to the Notice. UNVA subsequently requested reconsideration of SEVP's *sub silentio* decision denying its request for interim relief.[24]

SEVP responded, indicating that SEVP has "not made a decision in this matter."[25] SEVP stated that it was going to review information submitted in response to the Notice.[26] In addition, the letter stated that "I understand the issue of school ownership is currently in litigation. Please inform me immediately if the parties resolve this issue or if the court issues a decision."[27]

## ARGUMENT

In order to obtain preliminary relief, the moving party must demonstrate: (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is

---

[18] *Id.*
[19] *Id.*
[20] *Id.* at 4.
[21] Ex. G, April 10 Ltr. at 2.
[22] Memorandum regarding Authority of SEVP to Grant Interim Relief (April 10, 2008) (Attached hereto as Exhibit H).
[23] Letter to Dianne Currie (April 16, 2008) (Attached hereto as Exhibit I).
[24] Letter to Louis Farrell (April 25, 2008) (Attached hereto as Exhibit J).
[25] Letter from Louis Farrell (April 29, 2008) ("Denial Ltr.") (Attached hereto as Exhibit K).
[26] *Id.*
[27] *Id.*

not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995). The factors should be viewed "as a continuum, with more of one factor compensating for less of another . . . Thus, if the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *City of Moundridge v. Exxon Mobil Corp.*, 429 F. Supp. 2d 117, 127 (D.D.C. 2006) (citations omitted). However, "[s]ome showing of irreparable harm . . . is a threshold requirement for a preliminary injunction" in every case. *Id.*

UNVA satisfies all four of these prongs. First, SEVP has violated its own regulations and the APA in four different ways:

- The initial change in PDSO at Mr. Aveyr's request did not follow the requirement in 8 C.F.R. § 214.3(l)(2) that only the PDSO can change the PDSO;

- The initial change violated Dr. Ho's right to notice and an opportunity to be heard;

- SEVP's refusal to grant an interim change to the PDSO in order to preserve the status quo denied UNVA of the right to timely administrative action under the APA; and

- SEVP violates its own regulations every day that it allows a non-employee to serve as the PDSO in violations of 8 C.F.R. § 214.3(l)(1).

Second, Mr. Avery is destroying UNVA every single day that he remains the PDSO. He is driving so many students away that the school is likely to fail if he remains at the helm much longer. In addition, by allowing Mr. Avery to act in an arbitrary manor, SEVP has allowed Mr. Avery to destroy the school's reputation—and that of its owner—with potential students, who are afraid that they will be summarily terminated from UNVA, and with SEVP, the agency re-

sponsible for administering the student visa laws. Only a prompt restoration of Dr. Ho as PDSO will remedy this problem.

Third, SEVP will suffer no harm if it is ordered to restore Dr. Ho as the PDSO while it concludes its Notice of Intent to Withdraw proceedings. It appears that SEVP plans to wait for the outcome of the litigation in Virginia to sort out Mr. Avery's status. While Plaintiffs submit this is not necessary in view of Mr. Avery's sworn admission that he has no ownership interest in UNVA, SEVP can do so, so long as Dr. Ho is restored to the status quo and allowed to operate his school.

Fourth, the public interest will be greatly served by immediate injunctive relief. In addition to the often-recognized benefit of having a government agency faithfully administer the nation's laws, an injunction will protect immigrant students who face deportation because of Mr. Avery's cavalier changes to their immigration status. In addition, an immediate change will help to restore confidence that SEVP properly administers the immigration laws through its approved schools.

## I.   UNVA Has a Strong Probability of Success on the Merits of its Claims that SEVP's Decisions Violated SEVP Regulations in Contravention of the APA.

Under the APA, the Court will "set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agencies must act "within a reasonable time" under 5 U.S.C. § 555(b), and the Court may "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). Although the Court must give deference to an agency's interpretation of its regulations, "[d]eference, of course, does not mean blind obedience." *Garvey v. NTSB*, 190 F.3d 571, 580 (D.C. Cir. 1999).

Moreover, the Court must set aside agency action that is "contrary to a constitutional right, power, privilege, or immunity." *Id.* § 706(2)(B). "[J]udicial review of a claim that the agency's actions violated a claimant's constitutional rights is conducted *de novo*," rather than under the more deferential standard for other agency action. *Darden v. Peters*, 488 F.3d 277, 284 (4th Cir. 2007) (citing *Western Energy Co. v. United States Dep't of Interior*, 932 F.2d 807, 809 (9th Cir. 1991).

### A. SEVP violated its own regulations in making the initial change and continues to violated them by refusing to Name Dr. Ho as PDSO.

"[I]t is a 'well-settled rule that an agency's failure to follow its own regulations is fatal to the deviant action.'" *IMS, P.C. v. Alvarez*, 129 F.3d 618, 621 (D.C. Cir. 1997) (quoting *Mine Reclamation Corp. v. Federal Energy Regulatory Comm'n*, 30 F. 3d 1519, 1524 (D.C. Cir. 1994); *see also Duchek v. NTSB*, 364 F.3d 311 (D.C. Cir. 2004) (holding that agency's interpretation of its regulations was arbitrary and capricious under the APA because it's interpretation was inconsistent with the regulation).

#### 1. SEVP failed to follow its own regulations when it removed Roy Ho as PDSO and allowed Mr. Avery to self-appoint to that position.

SEVP violated its regulation providing "[a]ny changes to the PDSO or DSO must be made by the PDSO," 8 C.F.R. § 214.3(l)(2), when it changed the PDSO at the request of Mr. Avery. Simply put, Roy Ho, and not Mr. Avery, was the PDSO at the time Mr. Avery made the request. Accordingly, SEVP failed to follow its stated procedures and its action is arbitrary and capricious and contrary to law.

In the Notice, SEVP indicated that because Mr. Avery held him self out as the "Chancellor" of UNVA, SEVP determined that he was the "head of the school."[28] The regulations do allow the "head of the school" to name the PDSO. However, they also clearly specify that "[a]ny changes

---

[28] Ex. D, Notice at 1.

to the PDSO or DSO *must* be made by the PDSO." SEVP has advanced no suggestion that it, in any way, attempted to comply with the portion of the regulations requiring the PDSO to initiate the change when it made the change to the PDSO at Mr. Avery's behest.

> **2. SEVP violates its own procedures every single day that it allows a non-employee to remain as PDSO of UNVA.**

SEVP's regulations provide that the PDSO must be "a regularly employed member of the school administration whose office is located at the school." 8 C.F.R. § 214.3(l)(1). UNVA has provided to SEVP a copy of a board of directors' resolution terminating Mr. Avery's employment with UNVA.[29] Thus, SEVP's refusal to remove Mr. Avery as the PDSO violates its regulation requiring the PDSO to be an employee of the school and is thus "fatal to the deviant action." *IMS, P.C. v. Alvarez*, 129 F.3d 618, 621 (D.C. Cir. 1997). Accordingly, SEVP's continuing retention of Mr. Avery is arbitrary, capricious, and an abuse of discretion under the APA.

> **B. SEVP violated Dr. Ho's right to due process when it removed the PDSO without giving the owner of the school any notice or any opportunity to be heard.**

Not only did SEVP fail to follow its own regulations, but it also failed to provide the owner of UNVA—and the existing PDSO—with any notice of its change or any opportunity to object to the change. This lack of notice and any opportunity to challenge Mr. Avery's allegations deprived Dr. Ho of a right to property in violation of the Fifth Amendment to the Constitution. *Goldberg v. Kelly*, 397 U.S. 254 (1970); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"); *Cf. Blackwell College of Business v. Attorney General*, 454 F.2d 928 (D.C. Cir. 1972) (holding that the school was entitled to notice and an opportunity to correct before revocation proceedings were begun pursuant to the Administrative Procedure Act).

---

[29] Ex. B, March 27 Ltr. at 3 (and Ex. E-F thereto); Ex E, April 1 Ltr. at 3 (and Ex. 8 thereto).

The regulations do provide that any one of three people may determine who will be the PDSO, and Mr. Avery was, at the time of the change, one of those individuals. However, Mr. Avery was shortly thereafter terminated by UNVA. This sequence of events demonstrates the folly of SEVP's failure to provide Dr. Ho with notice of the change: had SEVP provided the appropriate notice, Dr. Ho could have terminated Mr. Avery from his position prior to SEVP's unauthorized action.

It is important to note that the contrary argument does not apply. That is, although SEVP has tied itself in knots in order to protect Mr. Avery's procedural rights, there is no reason for SEVP to do so. Mr. Avery is not the owner of UNVA. Accordingly, he does not possess any property interest in the PDSO position. Moreover, UNVA terminated Mr. Avery from his employment. As such he has no right, whatsoever, to remain as PDSO. Accordingly, SEVP's efforts to protect Mr. Avery are not required and simply undermine Dr. Ho's right to name the PDSO.

## C. SEVP violated UNVA's right to timely relief under the APA when it refused to act on an interim basis in light of overwhelming evidence that Mr. Avery was no longer employed by UNVA.

The APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed,' *id.* § 706(1)." *The Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003). Claims of unreasonable delay focus on three factors:

- "[A]ny statutory timetable or other indication of the speed with which [the Congress] expects the agency to proceed";

- "[T]he nature and extent of the interests prejudiced by delay, with particular concern for matters of human health and welfare"; and

- "[T]he effect of expediting delayed action on agency activities of a competing or higher priority."

*Id.* at 1100 (internal quotations omitted). There is not statutory timetable present here and there is no suggestion that SEVP does not have the resources to deal with this issue or that "a judicial order putting [the petitioner] ahead of the queue [would] simply move[] all other back one space." *Id.*

Rather, as presented to the agency, and as discussed below, SEVP's refusal to grant immediate interim relief causes UNVA and Dr. Ho extreme prejudice and allows Mr. Avery to harm students by arbitrarily terminating their immigration status.[30] SEVP's choice of using a Notice of Intent to Withdraw gave Mr. Avery at least an extra month to operate as the PDSO—even though he was no longer employed by UNVA—while SEVP waited for *him* to respond to the Notice. There is no deadline for SEVP to act on the Notice and SEVP's last communication suggested that it would wait for the Virginia courts to handle Mr. Avery's allegations that he has some, as yet unspecified, ownership interest in UNVA.[31] As set forth below, he has used every single day of his unlawful tenure as PDSO to harm UNVA and its students.

In addition, the withdrawal regulations are not designed to remedy this situation, because the result of that process is a "decision [that] shall contain an order either withdrawing approval or granting continued approval." The procedures do not provide that the agency's final decision may include a change in PDSO. Although SEVP may issue a notice of intent to withdraw if a school has designated an improper person as PDSO, in this case the school has taken every effort to prevent a person not qualified to be PDSO from remaining as the PDSO, but it is SEVP that has refused to remedy the situation.

---

[30] Ex. F, April 8 Ltr. at 2 (and Ex. 1 thereto).
[31] Ex. K, Denial Ltr. at 1.

- 15 -

In short, nothing in the "withdrawal" regulations suggests that they are an all-purpose system designed to remedy every issue that comes up with the SEVIS system. Thus, SEVP has chosen a method of resolving this matter that bears no resemblance to the reality at the school or to the harm that is being worked every single day. Regardless of the ultimate outcome of SEVP's notice proceeding, it has refused to provide the immediate relief—by remedying its clear errors of law—to which UNVA is entitled.

## II.    UNVA and Dr. Ho Will Suffer Irreparable Injury if Preliminary Relief is Denied Because the Illegal Change in PDSO Is Undermining the School's Very Existence.

In order to prevail on a motion for preliminary relief, a party must demonstrate that it will suffer some irreparable injury. The D.C. Circuit and other Courts in this District have recognized similar harms to those suffered by Plaintiffs as grounds for granting emergency relief. For example, harm to business reputation or goodwill can constitute irreparable injury. *Patriot, Inc. v. HUD*, 963 F. Supp. 1, 5 (D.D.C. 1997). Similarly, harm to an entity's relationship with those it does business can result in irreparable injury. *Express One Int'l, Inc. v. United States Postal Service*, 814 F. Supp. 87, 91 (D.D.C. 1992) (harm to plaintiff's relationship with its primary subcontractor would not be susceptible to recovery). Moreover, "[r]ecoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985); *see also Nat'l Propane Gas Ass'n v. DHS*, 534 F. Supp. 2d 16, 19 n.4 (D.D.C. 2008).[32]

UNVA has provided ample evidence to SEVP that the longer SEVP delays in remedying its errors, the more harm will befall UNVA. At this point in time, enrollment in the English as a

---

[32] Of course, it is not clear that any monetary harm caused by SEVP would ever be recoverable because the United States enjoys sovereign immunity for most of its administrative actions. Regardless, as shown below, total ruin is a distinct possibility for UNVA.

Second Language ("ESL") program at UNVA has fallen.[33] As explained below, students are having their immigration status terminated in an arbitrary fashion.[34] The Korean press has already reported on the problems at UNVA that have been the result of SEVP's actions.[35]

This reputational harm has lead to additional students seeking to leave the school and fewer students being willing to enter. Prior to the turmoil caused by SEVP's change in PDSO, there were approximately 600 students in the ESL program at UNVA.[36] Because Dr. Ho no longer has access to SEVIS, it is difficult to provide exact numbers, but it appears that approximately 200 students have transferred out of the ESL program.[37] It appears that approximately 60 to 80 additional students are waiting to transfer to other institutions.[38] Moreover, the impact of the reputational harm has impacted recruiting of new students. In the past, UNVA's ESL program had approximately 100 new students enroll every quarter.[39] Since the PDSO change, there have been virtually no new students enrolling in UNVA's ESL program.[40]

As UNVA's enrollment falls, the ability to maintain the institution declines. In the past, there were approximately 30 ESL instructors at UNVA.[41] With the declining enrollment, that number is down to approximately 10.[42] Because of the reputational harm, it will be difficult to recruit new instructors once the situation is resolved, and even harder to recruit enough if the situation is allowed to continue. Given the declining enrollment, the loss of faculty, and potential

---

[33] Ex. B, March 27 Ltr. at 4; Ex. E, Aril 1 Ltr. at 5.

[34] Ex. F, April 8 Ltr. at 2.

[35] Decl. of Daniel F. Ho ¶ 8 (April 30, 2008) ("Ho Decl.") (Attached hereto as Exhibit L). Although this case involves review of SEVP's administrative actions, and therefore should occur solely on the administrative record before the agency, Dr. Ho's Declaration demonstrates evidence of the harm to UNVA for the purposes of obtaining preliminary relief. Plaintiffs submit, however, that the Court has ample evidence of the harm to UNVA in the administrative record before it, and need not rely on Exhibit L.

[36] Ho Decl. ¶ 10.

[37] Ho Decl. ¶ 10

[38] Id.

[39] Id. ¶ 11.

[40] Id.

[41] Id. ¶ 12.

[42] Id.

- 17 -

for even more reputational harm, Dr. Ho believes that it may be impossible to continue to operate UNVA.[43]

In addition to UNVA, Dr. Ho has plans to open additional schools.[44] However, Dr. Ho has perceived that the reputational damage that Mr. Avery has brought on UNVA as a result of SEVP's decisions to allow Mr. Avery to serve as PDSO has tainted Dr. Ho's reputation in the education community and that it will be more difficult for him to open and operate other schools.[45]

The proper functioning of the immigration system that allows foreign students to learn in the Untied States requires institutions that are willing to serve them. In addition, it requires the students to trust that the United States has a functioning system to admit them to the country for the duration of their education. More importantly, it requires those students to trust that the institutions they are attending will be able to provide their education and properly administer their immigration status. UNVA's reputation to provide those services is being destroyed every single day that Mr. Avery is allowed to remain as PDSO.[46] Foreign students who seek to come to the United States will associate UNVA with arbitrarily terminating student status and with imposing improper conditions on their stay. As such, they will chose other institutions. This is not mere economic loss, but loss of business reputation that is essential for UNVA to remain in business.

In sum, there is concrete harm to UNVA's reputation and ability to remain in business without immediate injunctive relief.

---

[43] *Id.* ¶ 15.
[44] *Id.* ¶ 16.
[45] *Id.*
[46] Decl. of Daniel F. Ho ¶ 7.

- 18 -

### III. There is No Irreparable Harm to SEVP if an Injunction is Granted Because SEVP Can Always Change the PDSO Pursuant to Lawful Processes if Later Facts Warrant a Change.

SEVP has clearly violated its own regulations and denied Roy Ho and Dr. Ho due process. It has little or no interest in having its illegal action remain in place pending the outcome of its withdraw proceeding.

An order from the Court directing that Roy Ho be reinstated as the PDSO and Dr. Ho as DSO will do nothing to interfere with SEVP's ongoing process. Plaintiffs have submitted overwhelming evidence to SEVP that Dr. Ho is the rightful owner of UNVA and that Mr. Avery's employment was terminated. It is true that there is litigation in Virginia over Mr. Avery's claims of ownership and his unlawful occupation of UNVA's facilities. However, that litigation is ongoing. Should the court there reach a decision contrary to Dr. Ho, then SEVP will have a court order determining ownership. More likely, however, Dr. Ho and UNVA will prevail—in time— over Mr. Avery. Waiting for that decision allows Mr. Avery additional time to ruin UNVA using his government-sanctioned status. It also turns the administrative process upside down by allowing Mr. Avery's allegations to govern SEVP's decisions, while denying Dr. Ho access to SEVIS to run the school.

Moreover, Dr. Ho has a long track record of running UNVA successfully and without any indication from SEVP of problems. Mr. Avery's reign has been characterized by procedural errors that have harmed the students. Accordingly, not only is there no harm to SEVP if it is required to reinstate Roy Ho and Dr. Ho immediately, but in fact the integrity of the student immigration system would be enhanced by reinstatement.

## IV.  The Public Interest Strongly Favors Granting Preliminary Relief Because of the Ongoing Harm to Students and the Nation's Immigration System.

"[T]he public has a profound interest in assuring that [the agency] acts within the limits on its authority established by Congress." *Brendsel v. OFHEO*, 339 F. Supp. 2d 52, 67 (D.D.C. 2004); *see also Patriot, Inc.*, 963 F. Supp. at 6 ("the public interest is best served by having federal agencies comply with the requirements of federal law, particularly the notice and comment requirements of the APA, and the agency's own stated polices"); *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (affirming district court's decision to grant preliminary injunction, where district court decided this factor based on "the public's interest in the faithful application of the laws").

## V.  SEVP's Errors are Properly Before this Court.

Finally, it is clear that SEVP's violations of the APA are properly before the Court. Plaintiffs first challenge SEVP's initial change of the PDSO. An agency's action is final when "the agency has imposed an obligation, denied a right, or fixed some legal relationship." *Role Models America, Inc. v. White*, 317 F.3d 327, 331-32 (D.C. Cir. 2003) (internal alterations and quotations omitted). Clearly, changing the PDSO from Roy Ho to Mr. Avery fixed a legal relationship. SEVP's refusal to restore Roy Ho's status is a denial of a right that is ongoing.

Even though SEVP has launched a process to sort through Mr. Avery's apparent allegations about ownership and control of UNVA, it has done nothing to remedy its clear violations of its own regulations. SEVP may ultimately make a decision based on the outcome of the state court litigation, but that does nothing to remedy the procedural defects now before this Court.

## **CONCLUSION**

For the forgoing reasons, this Court should issues a temporary restraining order and/or pre-liminary injunction.

Respectfully submitted,

Ronald M. Jacobs
    (D.C. Bar No. 479842)
    (202) 344-8215
    rmjacobs@venable.com
D. Edward Wilson, Jr.
    (D.C. Bar No. 932178)
    (202) 344-4819
    dewilsonjr@venable.com
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004-1601

May 1, 2008                                    *Counsel for Plaintiffs*



| | 575 7th Street, NW<br>Washington, DC 20004-1601 | Telephone 202-344-4000<br>Facsimile 202-344-8300 | www.venable.com |

| Ronald M. Jacobs | (202) 344-8215 | rmjacobs@venable.com |
| *Associate* | | |

March 14, 2008

**Via Facsimile (202) 353-3723**

Ms. Dianne Currie
Acting School Certification Branch Chief
Student & Exchange Visitor Program
U.S. Immigration & Customs Enforcement
U.S. Department of Homeland Security
425 I Street NW
Washington, DC 20536

      Re:  University of Northern Virginia PDSO

Dear Ms. Currie:

The Board of Directors of the University of Northern Virginia ("UNVA"), has retained me to represent UNVA with respect to a recent change in UNVA's Principal Designated School Official ("PDSO") in the Student Exchange Visitor Information System ("SEVIS"). A signed Form G-28, Notice of Entry of Appearance is attached to this letter.

In short, the PDSO used to be the Chief Executive Officer ("CEO") and owner of UNVA, Dr. Daniel F. Ho. Recently, however, the PDSO was changed to be a man by the name of Faye Avery. It is not clear to me exactly how—or by whom—this change was effectuated. Indeed, the Board of Directors of UNVA had terminated Mr. Avery prior to the time this change was made. In addition, Dr. Ho was given no notice of this change; he learned of it only after he was unable to log into the SEVIS system.

Since the time of the change, the new PDSO has removed at least one of the DSOs from the system. The new PDSO has also terminated a number of students who were lawfully attending UNVA without any basis for this termination and without any advance warning, thus jeopardizing their status in the United States. There is ongoing litigation in the Virginia state court system involving Mr. Avery, UNVA, and Dr. Ho, but this litigation has not changed the facts that (1) Mr. Avery has been terminated by the Board of Directors from his position at UNVA and (2) Dr. Ho remains the CEO and owner (through a holding company) of UNVA.

Accordingly, Dr. Ho is the owner and CEO of UNVA. Pursuant to 8 C.F.R. § 214.3(l)(1), he is the individual entitled to name the PDSO for UNVA. I will call you later today to discuss how UNVA should proceed in this matter to change the PDSO back to Dr. Ho. (if there is someone

# VENABLE LLP

---

March 14, 2008
Page 2

else in your office whom you believe is the appropriate person to handle this matter, please let me know and I will work with that individual).

Thank you very much for your time and attention to this matter.

Sincerely,

Ronald M. Jacobs
Counsel for UNVA

cc:   Dr. Daniel F. Ho
      E. Paul Choe

U.S. Department of Justice
Immigration and Naturalization Service

# Notice of Entry of Appearance
## as Attorney or Representative

**Appearances** - An appearance shall be filed on this form by the attorney or representative appearing in each case. Thereafter, substitution may be permitted upon the written withdrawal of the attorney or representative of record or upon notification of the new attorney or representative. When an appearance is made by a person acting in a representative capacity, his personal appearance or signature shall constitute a representation that under the provisions of this chapter he is authorized and qualified to represent. Further proof of authority to act in a representative capacity may be required. **Availability of Records** - During the time a case is pending, and except as otherwise provided in 8 CFR 103.2(b), a party to a proceeding or his attorney or representative shall be permitted to examine the record of proceeding in a Service office. He may, in conformity with 8 CFR 103.10, obtain copies of Service records or information therefrom and copies of documents or transcripts of evidence furnished by him. Upon request, he/she may, in addition, be loaned a copy of the testimony and exhibits contained in the record of proceeding upon giving his/her receipt for such copies and pledging that it will be surrendered upon final disposition of the case or upon demand. If extra copies of exhibits do not exist, they shall not be furnished free on loan; however, they shall be made available for copying or purchase of copies as provided in 8 CFR 103.10.

| In re: University of Northern Virginia | Date: March 14, 2008 |
|---|---|
| | File No. WAS214F01186000 |

I hereby enter my appearance as attorney for (or representative of), and at the request of the following named person(s):

Name:
University of Northern Virginia
☐ Petitioner ☐ Applicant
☐ Beneficiary

| Address: (Apt. No.) (Number & Street) | (City) | (State) | (Zip Code) |
|---|---|---|---|
| 10021      Balls Ford Road | Manassas | VA | 20109 |

Name:
Dr. Daniel F. Ho, CEO
☐ Petitioner ☐ Applicant
☐ Beneficiary

| Address: (Apt. No.) (Number & Street) | (City) | (State) | (Zip Code) |
|---|---|---|---|
| Same as above | | | |

*Check Applicable Item(s) below:*

☑ 1. I am an attorney and a member in good standing of the bar of the Supreme Court of the United States or of the highest court of the following State, territory, insular possession, or District of Columbia
District of Columbia ____ Court of Appeals ____ and am not under a court or administrative agency
Name of Court
order suspending, enjoining, restraining, disbarring, or otherwise restricting me in practicing law.

☐ 2. I am an accredited representative of the following named religious, charitable, social service, or similar organization established in the United States and which is so recognized by the Board:

☐ 3. I am associated with ____
the attorney of record previously filed a notice of appearance in this case and my appearance is at his request. (*If you check this item, also check item 1 or 2 whichever is appropriate.*)

☐ 4. Others (Explain Fully.)

| SIGNATURE | COMPLETE ADDRESS |
|---|---|
| *[signature]* | Venable LLP |
| | 575 7th Street, NW, Washington, DC 20004 |
| NAME (Type or Print) | TELEPHONE NUMBER |
| Ronald M. Jacobs | (202) 344-8215 |

*PURSUANT TO THE PRIVACY ACT OF 1974, I HEREBY CONSENT TO THE DISCLOSURE TO THE FOLLOWING NAMED ATTORNEY OR REPRESENTATIVE OF ANY RECORD PERTAINING TO ME WHICH APPEARS IN ANY IMMIGRATION AND NATURALIZATION SERVICE SYSTEM OF RECORDS:*

____
(Name of Attorney or Representative)

*THE ABOVE CONSENT TO DISCLOSURE IS IN CONNECTION WITH THE FOLLOWING MATTER:*

| Name of Person Consenting | Signature of Person Consenting | Date |
|---|---|---|
| | | |

(NOTE: Execution of this box is required under the Privacy Act of 1974 where the person being represented is a citizen of the United States or an alien lawfully admitted for permanent residence.)

This form may not be used to request records under the Freedom of Information Act or the Privacy Act. The manner of requesting such records is contained in 8CFR 103.10 and 103.20 Et.SEQ.

Form G-28 (09/26/00)Y



575 7th Street, NW                Telephone 202-344-4000        www.venable.com
Washington, DC 20004          Facsimile 202-344-8300

**Ronald M. Jacobs**                    (202) 344-8215                rmjacobs@venable.com
*Associate*

March 27, 2008

**Via Facsimile (202) 353-3723 & Hand Delivery**

Ms. Dianne Currie
Acting School Certification Branch Chief
Student & Exchange Visitor Program
U.S. Immigration & Customs Enforcement
U.S. Department of Homeland Security
425 I Street NW
Washington, DC 20536

          Re:   University of Northern Virginia PDSO

Dear Ms. Currie:

This letter follows my letter of March 14, 2008 regarding the status of the Principal Designated Officer ("PDSO") for the University of Northern Virginia ("UNVA" or "the University"), and our telephone conversation on the same topic on March 19, 2008.[1] As I indicated in my March 14 letter, Daniel F. Ho is the owner and President of the University. Moreover, Fay R. Avery, the individual who has apparently named himself the PDSO, was terminated by the board of directors of the University. This letter, and the attachments to it, provide factual proof the Dr. Ho is the owner and individual who is permitted to designate the PDSO. Moreover, as explained below, unless the PDSO is changed immediately, UNVA will not be able to properly register all of its students for the next quarter, which starts on April 1, 2008; this will result in financial ruin for the University and irreparable harm to the students who will loose their immigration status.

Accordingly, I request that you remove Mr. Avery as the PDSO, remove any other individuals who have been named DSOs since the time Mr. Avery was designated as the PDSO, and make Dr. Ho the PDSO. Given the overwhelming evidence and the risk of ongoing harm, I submit that these actions should be taken immediately. In addition, I ask that you provide whatever documentation Mr. Avery submitted to you to make the PDSO change.

During our call, you indicated that you would send a formal request seeking additional information from both Mr. Avery and Dr. Ho so that you could resolve the matter. At this

---

[1] During our call, you indicated that because of the ongoing harm to students who were being improperly terminated by Mr. Avery, you would seek to have the University's Student Exchange Visitor Information System ("SEVIS") account frozen. I would appreciate it if you could confirm that the freeze is in place.

# VENABLE®LLP

---

Ms. Dianne Currie
March 27, 2008
Page 2


point in time, neither I, nor Dr. Ho, have received the request for information. The information in this letter should be sufficient for you to make the changes requested. At the very least, the information should provide you with information that is sufficient for you to make the change back to the status quo while you make a final determination.


## DISCUSSION

We begin with a presentation of the facts, along with documentary evidence, showing that Dr. Ho is the owner and President of the University. We then discuss the urgency of the matter because the next quarter begins on April 1. If the Student Exchange Visitor program ("SEVP") does not restore Dr. Ho to his rightful position as PDSO, UNVA will not be able to register students and issue I-20 forms. Without that ability, there will be no students, and therefore the University will, in all likelihood, cease to exist. In addition, the students who were lawfully in the United States under the presumption that they would be eligible for ongoing enrollment at the University will loose their immigration status.

## I. Ownership & Management

### A. Dr. Ho Owns at Least 94% of UNVA

In March 1998, Dr. Ho formed Education Dynamics, Inc. ("EDI") and The University of Northern Virginia, Inc. Exhibit A to this letter is a copy of the articles of incorporation for EDI and Exhibit B is a copy of the articles of incorporation for UNVA. Each clearly shows that Dr. Ho is the sole incorporator.

Attached as Exhibit C are minutes from a meeting of the EDI board in 1999 demonstrating that EDI owned all of the shares of UNVA. Attached as Exhibit D is a letter dated August 15, 2007 from UNVA's outside counsel to its General Counsel explaining that at that time, EDI owned 89.09% of the UNVA stock. The ownership of EDI and UNVA has remained the same since that time.

Dr. Ho is the sole shareholder of EDI's stock. To the extent that Mr. Avery has alleged that he owns part or all of EDI, I have attached, as Exhibit E, a transcript from a hearing in the Circuit Court of Fairfax County in which Mr. Avery admits, under oath, that he does not own any of the stock in EDI.

# VENABLE®LLP

Ms. Dianne Currie
March 27, 2008
Page 3

In addition, Dr. Ho also owns 5% of the UNVA stock directly. Accordingly, Dr. Ho owns 94% of UNVA's stock, either directly or indirectly through EDI. As such, he is clearly the owner of UNVA.

## B.    The Board of Directors Controls UNVA

Like other corporations, UNVA operates through a Board of Directors. In addition, for a time, UNVA had Board of Trustees, which oversaw the academic aspects of the school, while the Board of Directors oversaw the business aspects of the school. Sometime in 2007, these two groups began to disagree with one another. At the end of 2007, the Board of Trustees voted to remove Dr. Ho from his position as Vice Chancellor of UNVA. Sometime after this removal, it appears that Mr. Avery submitted something to SEVP to have Dr. Ho removed as PDSO. We do not know what he submitted as Dr. Ho has never received a copy of it and SEVP never sent Dr. Ho any notice that he was being removed as PDSO.

On January 5, 2008, the majority stockholder of UNVA, EDI, removed all Members of the Board of Directors and appointed a new board. The next day, the Board of Directors dissolved the Board of Trustees and terminated several employees, including Mr. Avery. (A copy of this action is attached as Exhibit F).

At no point in time has Dr. Ho—by virtue of his ownership of EDI—ceased to be the majority owner of UNVA. Indeed, to Dr. Ho's knowledge, he has always been listed as the owner on UNVA's I-17. Accordingly, he has always been the person who can lawfully designate the PDSO.

## C.    Dr. Ho is the Owner & President of UNVA

The evidence presented above demonstrates that Dr. Ho is the lawful owner of EDI, which, in turn, owns the University. Moreover, as shown on page 2 of Exhibit F, the Board of Directors has named Dr. Ho as the President of the University. Accordingly, pursuant to 8 C.F.R. § 214.3(l)(1), Dr. Ho is the only individual authorized to name the PDSO for the school. He therefore requests that he be restored to his lawful position as PDSO, and that Mr. Avery, and all of those whom he has appointed as DSOs, be removed from the SEVIS system.

## II.    <u>There Will Be Immediate Harm if the PDSO is Not Changed Immediately</u>

As we discussed during our telephone call on March 19, 2008, Mr. Avery has terminated a number of students from UNVA since he unlawfully convinced SEVP to make himself the

# VENABLE<sub>LLP</sub>

_____

Ms. Dianne Currie
March 27, 2008
Page 4


PDSO. These students had their immigration status changed with little or no notice for absolutely no reason. It is anticipated that he will continue to turn students away using his status as PDSO.

Moreover, unless this issue is resolved immediately, UNVA will not be able to properly enroll students for the upcoming quarter, which starts on April 1, 2008. Unless students can be enrolled, the University will fail. Thus, there is an immediate need to make this correction in order to preserve the University. Failure to do so will result in irreparable harm to the University.

More importantly, there are many students who will loose their lawful immigration status if they cannot register for the next quarter of instruction. Thus, failure to act to restore Dr. Ho as the PDSO will severely impact many individuals who are lawfully within the United States—and who had intended to lawfully remain here. These students may have leases they would have to break, do not have plane tickets, and will not have completed their educational objectives. Thus, there would be immediate and irreparable harm to many students.

## III. <u>Request for Relief</u>

Dr. Ho has demonstrated that he is the lawful owner and President of UNVA and therefore the individual allowed to appoint the PDSO pursuant to 8 C.F.R. § 214.3(l)(1). Thus, he requests that Mr. Avery be removed as PDSO and that Dr. Ho be restored as the PDSO, and that SEVP take this action immediately.

Even if SEVP needs additional time to make this determination, based on the evidence provided and the demonstrable harm to the University and students that will result if the change is not made, UNVA requests that the status quo be restored by reinstating Dr. Ho as the PDSO.

Finally, UNVA is concerned that Mr. Avery was able to effectuate this change without any notice to Dr. Ho, with no notice from SEVP to Dr. Ho, and with no opportunity for Dr. Ho to verify that this change should be made. In other words, SEVP made this change, even though Dr. Ho remained listed as the owner of UNVA on the I-17, without any notice or opportunity to be heard. Accordingly, I request that SEVP provide me with the materials that Mr. Avery provided for SEVP to make this change.

# VENABLE® LLP

---

Ms. Dianne Currie
March 27, 2008
Page 5

Thank you very much for your time and attention to this matter. I ask that you contact me immediately so that we can effectuate the restoration of Dr. Ho as PDSO.

Sincerely,

Ronald M. Jacobs
Counsel for UNVA

Enclosures (5)

cc:   Dr. Daniel F. Ho
      E. Paul Choe

SCC619
(04/97)

## GUIDE FOR ARTICLES OF INCORPORATION
## VIRGINIA STOCK CORPORATION

The undersigned, pursuant to Chapter 9 of Title 13.1 of the Code of Virginia, state(s) as follows:

1. The name of the corporation is:

   Education Dynamics, Inc.

2. The number (and classes, if any) of shares the corporation is authorized to issue is (are):

   Number of shares authorized          Class(es)

   1000                                  Common

3. A. The name of the corporation's initial registered agent is

   Daniel F. Ho

   B. The initial registered agent is (mark appropriate box):
      (1)   An individual who is a resident of Virginia and
            [X]   an initial director of the corporation
            [ ]   a member of the Virginia State Bar
                  **OR**
      (2)   [ ]   a professional corporation or professional limited liability company of attorneys
                  registered under Section 54.1-3902, Code of Virginia

4. A. The corporation's initial registered office address which is the business address of the initial
      registered agent is:

   9732 Leesburg Pike          Great Falls          VA   22066
   (number/street)            (city or town)             (ZIP code)

   B. The registered office is physically located in the [ ] City or [X] County of
      Fairfax

5. The initial directors are:

   NAME(S)                          ADDRESS(ES)

   Daniel F. Ho                     9732 Leesburg Pike
                                    Great Falls, VA 22066

6. INCORPORATOR(S):

   Daniel Ho                        Daniel F. Ho

   SIGNATURE(S)                     PRINTED NAME(S)

**See instructions on the reverse.**

COMMONWEALTH OF VIRGINIA
STATE CORPORATION COMMISSION

March 31, 1998

The State Corporation Commission has found the accompanying
articles submitted on behalf of

EDUCATION DYNAMICS, INC.

to comply with the requirements of law, and confirms payment of
all related fees.

Therefore, it is ORDERED that this

CERTIFICATE OF INCORPORATION

be issued and admitted to record with the articles of
incorporation in the Office of the Clerk of the Commission,
effective March 31, 1998.

The corporation is granted the authority conferred on it by law in
accordance with the articles, subject to the conditions and
restrictions imposed by law.

STATE CORPORATION COMMISSION

By _T. V. Morrison_

Commissioner

CORPACPT
CIS20423
98-03-30-0071

# Commonwealth of Virginia



## State Corporation Commission

*I Certify the Following from the Records of the Commission:*

The foregoing is a true copy of all documents constituting the charter of EDUCATION DYNAMICS, INC. on file in the Clerk's Office of the Commission.

Nothing more is hereby certified.



*Signed and Sealed at Richmond on this Date:*
*January 2, 2008*

*Joel H. Peck, Clerk of the Commission*

CIS0505

ALL-STATE®LEGAL  RNA332-0810   EZ011   RECYCLED



THEODORE V. MORRISON, JR.
CHAIRMAN

MARK C. CHRISTIE
COMMISSIONER

JUDITH WILLIAMS JAGDMANN
COMMISSIONER

JOEL H. PECK
CLERK OF THE COMMISSION
P.O. BOX 1197
RICHMOND, VIRGINIA 23218-1197

**STATE CORPORATION COMMISSION**
Office of the Clerk

## The attached documents are "the best available" from microfilm. The original documents submitted for filing were not suitable for microfilming.

Tyler Building, 1300 East Main Street, Richmond, VA 23219-3630
Clerk's Office (804) 371-9733 or (866) 722-2551 (toll-free in Virginia) www.scc.virginia.gov/division/clk
Telecommunications Device for the Deaf-TDD/Voice: (804) 371-9206

SCC619
(09/96)

# GUIDE FOR ARTICLES OF INCORPORATION
## OF

_University of Northern Virginia, Inc._

The undersigned, pursuant to Chapter 9 of Title 13.1 of the Code of Virginia, state(s) as follows:

1. The name of the corporation is:

   _University of Northern Virginia, Inc._

2. The number (and classes, if any) of shares the corporation is authorized to issue is (are):

   Number of shares authorized                    Class(es)

   _1,000_                                         _Common_

3. A. The corporation's initial registered office address which is the business address of the initial registered agent is:

   _973 Leesburg Pike_          _Great Falls_      VA    _22066_
   (number/street)              (city or town)                (ZIP code)

   B. The registered office is physically located in the [ ] City or [✓] County of
   _Fairfax_

4. A. The name of the corporation's initial registered agent is
   _Daniel Ho_

   B. The initial registered agent is (mark appropriate box):
   (1)     An individual who is a resident of Virginia and
       [✓] an initial director of the corporation
       [ ] a member of the Virginia State Bar
           **OR**
   (2) [ ] a professional corporation or professional limited liability company of attorneys registered under Section 54.1-3902, Code of Virginia

5. The NAMES and ADDRESSES of the initial directors are:

   _Daniel Ho      9730 Leesburg Pike, Great Falls, VA 22066_

   _Sying Lui      9730 Leesburg Pike, Great Falls VA 22066_

   _Krystn Li      905 Martin's Ct, Bucke, VA_

6. INCORPORATOR(S):

   _Daniel Ho_                  _Daniel Ho_

   _____        _____

   Signature(s)                 Printed name(s)

COMMONWEALTH OF VIRGINIA
STATE CORPORATION COMMISSION

March 20, 1998

The State Corporation Commission has found the accompanying articles submitted on behalf of

## UNIVERSITY OF NORTHERN VIRGINIA, INC.

to comply with the requirements of law, and confirms payment of all related fees.

Therefore, it is ORDERED that this

## CERTIFICATE OF INCORPORATION

be issued and admitted to record with the articles of incorporation in the Office of the Clerk of the Commission, effective March 20, 1998.

The corporation is granted the authority conferred on it by law in accordance with the articles, subject to the conditions and restrictions imposed by law.

STATE CORPORATION COMMISSION

By *T.V. Morrison*

Commissioner

CORPACPT
21S26436
98-03-19-0008

FIRST ARTICLES OF RESTATEMENT
OF THE
ARTICLES OF INCORPORATION
OF
UNIVERSITY OF NORTHERN VIRGINIA, INC.

Pursuant to *Va. Code* § 13.1-711, University of Northern Virginia, Inc., files these Articles of Restatement, stating as follows:

1.      The name of the corporation is: University of Northern Virginia, Inc.

2.      The text of the restated articles of incorporation of the corporation is as follows:

FIRST AMENDED AND RESTATED
ARTICLES OF INCORPORATION
OF
UNIVERSITY OF NORTHERN VIRGINIA, INC.

ARTICLE I. NAME

The name of the corporation is: University of Northern Virginia, Inc.

ARTICLE II. PURPOSE

The purpose for which the Corporation is formed is to transact any or all lawful business, not required to be specifically stated in these Articles, for which corporations may be incorporated under the Virginia Stock Corporation Act as amended from time to time.

ARTICLE III. AUTHORIZED SHARES; PREEMPTIVE RIGHTS;
SHAREHOLDER ACTION WITHOUT MEETING

Section 1      Authorized Shares. The number of shares which the Corporation shall have authority to issue shall be Ten Million (10,000,000) shares of common stock with the par value of $0.01 each.

Section 2.      No Preemptive Rights. No holder of shares of any class or series of the Corporation shall have any preemptive or preferential right to purchase or subscribe to (i) any shares of any class or series of the Corporation, whether now or hereafter authorized; (ii) any warrants, rights, or options to purchase any such shares; or (iii) any securities or obligations convertible into any such shares or into warrants, rights, or options to purchase any such shares.

Section 3.      Shareholder Action Without Meeting. So long as the corporation is not a "public corporation" as defined in Va. Code § 13.1-657.E., as amended from time to time, at the time such action is taken, action required or permitted by the Virginia Stock Corporation Act to be taken at a shareholders meeting may be taken without a meeting and without prior notice, if the action is taken by shareholders who would be entitled to vote at a meeting of holders of outstanding shares having voting power to cast not less than the minimum number (or numbers,

in the case of voting by groups) of votes that would be necessary to authorize or take the action at a meeting at which all shareholders entitled to vote thereon were present and voted.

## ARTICLE IV.  REGISTERED OFFICE AND AGENT

The registered office shall be located at c/o Cohen, Gettings & Dunham, P.C., 2200 Wilson Boulevard, Suite 800, Arlington, Virginia 22201 in Arlington County, Virginia and the name of the registered agent shall be Joel L. Dahnke, who is a resident of Virginia and a member of the Virginia State Bar, and whose address is the same as the address of the initial registered office.

## ARTICLE V.  DIRECTORS

The number of directors and terms for which each director shall serve shall be as described in the By Laws of the Corporation, or any superseding written agreement of the shareholders that conforms with the Virginia Stock Corporation Act.

## ARTICLE VI.  INDEMNIFICATION OF DIRECTORS AND OFFICERS

Definitions.  In this Article:

"applicant" means the person seeking indemnification pursuant to this Article.

"expenses" includes counsel fees.

"liability" means the obligation to pay a judgment, settlement, penalty, fine, including any excise tax assessed with respect to an employee benefit plan, or reasonable expenses incurred with respect to a proceeding.

"party" includes an individual who was, is, or is threatened to be made a named defendant or respondent in a proceeding.

"proceeding" means any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative or investigative and whether formal or informal.

Section 1.    Limitation on Liability to Corporation.  In any proceeding brought by or in the right of the Corporation or brought by or on behalf of shareholders of the Corporation, no director or officer of the Corporation shall be liable to the Corporation or its shareholders for monetary damages with respect to any transaction, occurrence or course of conduct, whether prior or subsequent to the effective date of this Article, except for liability resulting from such person having engaged in willful misconduct or a knowing violation of the criminal law or any federal or state securities law.

Section 2.    Indemnification of Directors and Officers.  The Corporation shall indemnify (a) any person who was or is a party to any proceeding, including a proceeding brought by a shareholder in the right of the Corporation or brought by or on behalf of shareholders of the Corporation, by reason of the fact that he is or was a director or officer of the Corporation, or (b) any director or officer who is or was serving at the request of the Corporation as a director, trustee, partner or officer of another corporation, partnership, joint venture, trust, employee benefit plan or other enterprise, against any liability incurred by him in connection with such proceeding unless he engaged in willful misconduct or a knowing violation of the criminal law. A person is considered to be serving an employee benefit plan at the Corporation's request if his duties to the Corporation also impose duties on, or otherwise involve services by, him to the plan or to participants in or beneficiaries of the plan.  The Board of Directors is hereby empowered, by a majority vote of a quorum of disinterested Directors, to enter into a contract to indemnify any Director or officer in respect of any proceedings arising from any act or omission, whether occurring before or after the execution of such contract.

Section 3.    Applicability.  The provisions of this Article shall be applicable to all proceedings commenced after the adoption hereof by the shareholders of the Corporation, arising from any act or omission, whether occurring before or after such adoption.  No amendment or repeal of this Article shall have any effect on the rights provided under this Article with respect to any act or omission occurring prior to such amendment or repeal.  The Corporation shall promptly take all such actions, and make all such determinations, as shall be necessary or appropriate to comply with its obligation to make any indemnity under this Article and shall promptly pay or reimburse all reasonable expenses, including attorneys' fees, incurred by any such director or officer in connection with such actions and determinations or proceedings of any kind arising therefrom.

Section 4.    No Presumptions.  The termination of any proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not of itself create a presumption that the applicant did not meet the standard of conduct described in Section 2 or 3 of this Article.

Section 5.    Procedures for Determining Right to Indemnification.  Any indemnification under Section 3 of this Article (unless ordered by a court) shall be made by the Corporation only as authorized in the specific case upon a determination that indemnification of the applicant is proper in the circumstances because he has met the applicable standard of conduct set forth in Section 3.  The determination shall be made:

5.1 By the Board of Directors by a majority vote of a quorum consisting of Directors not at the time parties to the proceeding;

5.2 If a quorum cannot be obtained under subsection (a) of this Section, by majority vote of a committee duly designated by the Board of Directors (in which designation

- 3 -

Directors who are parties may participate), consisting solely of two or more Directors not at the time parties to the proceeding:

(a) By special legal counsel;

(b) Selected by the Board of Directors or its committee in the manner prescribed in subsection 6.1 or 6.2 of this Section; or

(c) If a quorum of the Board of Directors cannot be obtained under subsection 6.1 of this Section and a committee cannot be designated under subsection 6.2 of this Section, selected by majority vote of the full Board of Directors, in which selection Directors who are parties may participate; or

(d) By the shareholders, but shares owned by or voted under the control of Directors who are at the time parties to the proceeding may not be voted on the determination.

Any evaluation as to reasonableness of expenses shall be made in the same manner as the determination that indemnification is appropriate, except that if the determination is made by special legal counsel, such evaluation as to reasonableness of expenses shall be made by those entitled under subsection 6.3 of this Section 6 to select counsel.

Notwithstanding the foregoing, in the event there has been a change in the composition of a majority of the Board of Directors after the date of the alleged act or omission with respect to which indemnification is claimed, any determination as to indemnification and advancement of expenses with respect to any claim for indemnification made pursuant to this Article shall be made by special legal counsel agreed upon by the Board of Directors and the applicant. If the Board of Directors and the applicant are unable to agree upon such special legal counsel the Board of Directors and the applicant each shall select a nominee, and the nominees shall select such special legal counsel.

Section 6.    Reimbursement of Legal Expenses.

6.1 The Corporation may pay for or reimburse the reasonable expenses incurred by any applicant who is a party to a proceeding in advance of final disposition of the proceeding or the making of any determination under Section 3 of this Article if the applicant furnishes the Corporation:

(a) a written statement of his good faith belief that he has met the standard of conduct described in Section 3 of this Article; and

(b) a written undertaking, executed personally or on his behalf, to repay the advance if it is ultimately determined that he did not meet such standard of conduct.

- 4 -

6.2 The undertaking required by paragraph (ii) of subsection 7.1 of this Section shall be an unlimited general obligation of the applicant but need not be secured and may be accepted without reference to financial ability to make repayment.

6.3 Authorizations of payments under this Section shall be made by the persons specified in Section 6 of this Article.

Section 7.     Indemnification of Non-Directors or Officers.  The Board of Directors is hereby empowered, by majority vote of a quorum consisting of disinterested Directors, to cause the Corporation to indemnify or contract to indemnify any person not specified in Section 2 or 3 of this Article who was, is or may become a party to any proceeding, by reason of the fact that he is or was an employee or agent of the Corporation, or is or was serving at the request of the Corporation as director, officer, employee or agent of another corporation, partnership, joint venture, trust, employee benefit plan or other enterprise, to the same extent as if such person were specified as one to whom indemnification is granted in Section 3.  The provisions of Sections 4 through 7 of this Article shall be applicable to any indemnification provided hereafter pursuant to this Section 8.

Section 8.     Insurance.  The Corporation may purchase and maintain insurance to indemnify it against the whole or any portion of the liability assumed by it in accordance with this Article and may also procure insurance, in such amounts as the Board of Directors may determine, on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust, employee benefit plan or other enterprise, against any liability asserted against or incurred by him in any such capacity or arising from his status as such, whether or not the Corporation would have power to indemnify him against such liability under the provisions of this Article.

Section 9.     Indemnification Provisions Not Exclusive.  Every reference herein to directors, officers, employees or agents shall include former directors, officers, employees and agents and their respective heirs, executors and administrators.  The indemnification hereby provided and provided hereafter pursuant to the power hereby conferred by this Article on the Board of Directors shall not be exclusive of any other rights, to which any person may be entitled, including any right under policies of insurance that may be purchased and maintained by the Corporation or others, with respect to claims, issues or matters in relation to which the Corporation would not have the power to indemnify such person under the provisions of this Article.  Such rights shall not prevent or restrict the power of the Corporation to make or provide for any further indemnity, or provisions for determining entitlement to indemnity, pursuant to one or more indemnification agreements, bylaws, or other arrangements (including, without limitation, creation of trust funds or security interests funded by letters of credit or other means) approved by the Board of Directors (whether or not any of the directors of the Corporation shall be a party to or beneficiary of any such agreements, bylaws or arrangements); provided, however, that any provision of such agreements, bylaws or other arrangements shall not be

- 5 -

effective if and to the extent that it is determined to be contrary to this Article or applicable laws of the commonwealth of Virginia.

Section 10.    Severability.  Each provision of this Article shall be severable, and an adverse determination as to any such provision shall in no way affect the validity of any other provision.

DATED THIS 18th DAY OF FEBRUARY, 2001.


Daniel F. Ho
Provost

C:\WPDOCS\CORP\University of So Va\Corporate Documents\Articles of Incorporation September 2000 Amended and Restated v1.doc

- 6 -

# CERTIFICATE REGARDING

## FIRST ARTICLES OF RESTATEMENT

### OF

### UNIVERSITY OF NORTHERN VIRGINIA, INC.

University of Northern Virginia, Inc., files this certificate pursuant to Va. Code § 13.1-711.D., together with its First Articles of Restatement of the Articles of Incorporation of the corporation, stating as follows:

1.     The name of the corporation is: University of Northern Virginia, Inc.

2.     The corporation has amended and restated its articles of incorporation.

3.     The amended and restated articles of incorporation include amendments to the corporation's articles of incorporation that require shareholder approval.

4.     The text of the amended and restated articles of incorporation is set forth in the First Articles of Restatement, a copy of which is attached hereto and the original of which is filed herewith.

5.     The amended and restated articles of incorporation as set forth in the First Articles of Restatement was adopted and approved on February 18, 2001, by unanimous written consent of the shareholders of the corporation.

DATED THIS 18th DAY OF FEBRUARY, 2001.

_____[SEAL]
Daniel F. Ho
Provost

# COMMONWEALTH OF VIRGINIA
## STATE CORPORATION COMMISSION

April 17, 2001

The State Corporation Commission has found the accompanying articles submitted on behalf of

UNIVERSITY OF NORTHERN VIRGINIA, INC.

to comply with the requirements of law, and confirms payment of all related fees.

Therefore, it is ORDERED that this

## CERTIFICATE OF AMENDMENT AND RESTATEMENT

be issued and admitted to record with the articles of amendment in the Office of the Clerk of the Commission, effective April 17, 2001, at 11:21 AM.

The corporation is granted the authority conferred on it by law in accordance with the articles, subject to the conditions and restrictions imposed by law.

STATE CORPORATION COMMISSION

By *T. V. Morrison*

Commissioner

01-04-16-0110
AMENACPT
CIS0436

# Commonwealth of Virginia



## State Corporation Commission

*I Certify the Following from the Records of the Commission:*

The foregoing is a true copy of all documents filed in this office pertaining to the charter of
UNIVERSITY OF NORTHERN VIRGINIA, INC.

Nothing more is hereby certified.



*Signed and Sealed at Richmond on this Date:*
*January 2, 2008*

*Joel H. Peck*
_____
*Joel H. Peck, Clerk of the Commission*

CIS0505

## Minutes – Education Dynamics, Inc. Annual Board Meeting

### Date:  December 6, 1999
### Time: 12:00 PM
### Place: 9730 Leesburg Pike, Great Falls, VA 22066
### Presents: Daniel Ho, Tsz-Wing Lui and Johnny Ho (through telephone)

The Chairman of the Board of Directors, Daniel Ho, called the meeting to order at 12:05.

### Report from the Chairman – Daniel Ho

The major investment of the company was the establishment of the University of Northern Virginia in 1998.  The University started enrolling students in November 1998. In just one year, the total enrolled students jumped from 18 to more than 350 in November 1999.  The number was raised steadily and the financial situation was very promising.  The University's revenue was totally based on fees and tuition from students and it was very close to a break-even point at the end of the fourth quarter.  On the top of it, the University received permission from the State of Virginia to confer degrees.  Its first graduation commencement was in October and four students received their Master's degree.

### Report from the Treasurer – Tsz-Wing Lui

The only asset the company owned was 100% or 1000 shares of the University of Northern Virginia, Inc. (UNVA, Inc.) stocks.  The acquiring of the stocks was based on the fact that EDI was the sole investor in the company.  EDI currently had no cash on hand nor any other kind of liquid assets.

### New Business

1.  Spilt the UNVA, Inc. stocks for 1 share into 10,000 shares

   Discussion:

   DH: The total number of shares is very small and makes it difficult to do any kind of transaction. Also, according to the projection, the University will grow so rapidly and up to the point, the face value of each share would be unrealistically high.  It might hurt the chance of the company to attract investors.

   JH: So, what is the cost?

   DH: We will have to pay some kind of fees to the VA state tax department.  I do not know how much; may be couple thousand dollars, but I believe it is affordable and worth it.

   JH: Do you have any idea about the procedure?

DH: Either myself of Tsz-Wing will call the State Government and find out. Also, the par value of each share should be determined during the split.

TL: I recommend a $1 par value per share.

JH: I move that the shares of UNVA, Inc. split from one to ten thousand and make the total amount of shares to ten million. The par value is $1 per share.

TL: Second.

Vote: Yes – 3, No – 0.

2. Sell back 11% or 1,100,000 (after split) shares of UNVA, Inc. stocks to UNVA, Inc. for a price of $0.50 per share.

DH: The UNVA, Inc. makes a request of purchasing back 1,100,000 shares of its stocks to give away as Christmas bonus to employees. The price they are going to pay is $0.50 per share. Since the par value of the stock is $1 and it means a 50% discount.

JH: Does UNVA have the money to pay for these stocks?

TL: No, I don't believe so.

DH: We have to give UNVA credit on this purchase. We could get the money back as soon as UNVA sees a surplus.

JH: Do we charge them interest?

DH: No, I don't think so.

JH: I move to sell back 1,100,000 shares of UNVA, Inc. stocks back to UNVA, Inc. for the price of $0.50 per share.

DH: Second.

Vote: Yes – 3. No – 0.

3. Add new members to the Board of Directors.

DH: I believe expansion of the Board of EDI is quite necessary. It is very clear that a Board of three is not enough for EDI, which owns the majority interest of a University. I would like to recommend two people to join us on the Board and they are the Chair of the University, Dr. Julie H. Rao and the University President, Dr. Fay R. Avery. These two people contributed a lot into the University's success.

TL: Without Drs. Rao and Avery, the University could never reach to the current stage. I believe their experience, expertise and dedication to the University would guarantee the future success of EDI.

JH: Are they going to own any shares of EDI?

DH: We will discuss about the rearrangement of shares in our next Board meeting.

TL: I move to accept Dr. Julie H. Rao as a new Director of the Board.

DH: Second.

Vote: Yes – 3. No – 0.

TL: I move to accept Dr. Fay R. Avery as a new Director of the Board.

DH: Second.

Vote: Yes – 3. No – 0.

DH: Before closing, I would like to suggest from now on the annual Board meeting should be scheduled at the first week of December and no later than mid-December of every year. If necessary, we could call on special meetings.

JH: Agree.

TL: Agree.

JH: I move to adjourn.

DH: Second.

Motion carried.

VANDERPOOL, FROSTICK & NISHANIAN, P.C.

ATTORNEYS AT LAW
SUITE 400
9200 CHURCH STREET
MANASSAS, VIRGINIA 20110
———
703-369-4738
FAX 703-369-3653
E-MAIL INFO@VFNLAW.COM

**PRIVILEGED AND CONFIDENTIAL**
**ATTORNEY-CLIENT PRIVILEGED**

August 15, 2007

Bernard J.E. van Gils, Esquire
Vice President of Administration
General Counsel
University of Northern Virginia, Inc.
10021 Balls Ford Road
Manassas, Virginia  20109

    Re:    Review and Assessment of the Current Status of the Ownership of the Stock of
            University of Northern Virginia, Inc.; Advice to Board of Directors

Dear Bert:

       You have asked us to examine certain records of UNVA in an effort to determine the major categories of shareholders. In that regard, we have reviewed certain minutes, stock certificates, tax returns and correspondence.

       Based upon that review, we believe that UNVA was originally authorized to issue 1,000 shares of stock. The original sole shareholder of the company was Education Dynamics, Inc. ("EDI"), who owned the entire 1,000 shares. At this point, an attempt was made to issue several shares to other parties. This issuance was invalid due to the fact that there were no authorized shares left to effectuate such issuance. Subsequently, the company engaged in a stock split and in order to consummate the stock split, the number of authorized shares was increased from 1,000 shares to 10,000,000 shares. As a result of the split, EDI became the owner of all of those shares. Subsequently, UNVA purchased 1,400,000 shares back from EDI. A portion of the repurchased shares (1,052,800) was then used by the Board to properly issue the stock that had been inappropriately issued to individual shareholders. The balance of the stock is apparently being held as Treasury stock.

In chart form, the stock ownership is as follows:

| | TOTAL AUTHORIZED | ISSUED & OUTSTANDING | OWNERSHIP PERCENTAGE |
|---|---|---|---|
| EDI | 8,600,000 | 8,600,000 | 89.09% |
| "Bonus" Stock Issued to Individuals | 1,052,800 | 1,052,800 | 10.91% |
| Treasury Stock | 347,200 | -0- | 0% |
| Totaling | 10,000,000 | 9,652,800 | 100% |

Please do not hesitate to contact me if you have any questions.

Very truly yours,

Michael R. Vanderpool

MRV/bgs

V:\Company\University of Northern Virginia\Stock Ownership\Van Gilst-chart.doc

Page 1

**V I R G I N I A**
        IN THE CIRCUIT COURT OF FAIRFAX COUNTY

- - - - - - - - - - - - x
                                    :
FAY R. AVERY,                       :
                                    :
            Plaintiff,              :
                                    :
        -vs-                        :        CL 2008-167
                                    :
DANIEL HO, et al.,                  :
                                    :
            Defendant.              :
                                    :
- - - - - - - - - - - - x

                        Circuit Courtroom 4H
                        Fairfax County Courthouse
                        Fairfax, Virginia

                        Tuesday, January 22, 2008

        The above-entitled matter came on to be heard
before the HONORABLE BRUCE D. WHITE, Judge, in and for the
Circuit Court of Fairfax County, in the Courthouse,

Fairfax, Virginia, beginning at 11:06 o'clock a.m.

        APPEARANCES:

                On Behalf of the Plaintiff:

                    JOHN P. CONNOLLY, ESQUIRE

                    ERNEST FRANCIS, ESQUIRE


                On Behalf of the Defendant:


                    ALEXIA BOURGERIE, ESQUIRE

                    IVONNE LINDLEY, ESQUIRE

Page 57

Q    The University of Northern Virginia, Incorporated -- your stock ownership in the University of Northern Virginia, Inc., is five percent?

A    That's correct.

Q    And your complaint filed in this case, Paragraph number one, starts out reading, "Plaintiff is a major share holder in the University of Northern Virginia, Inc."

A    Correct.

Q    You claim in this case an ownership interest in EDI?

A    Correct.

Q    And the exact amount that you claim you own is what?

A    To give you a straight answer, fifty percent, and that was based upon a conversation between Mr. Ho and myself.

Q    Is it your testimony that there was some point in time when there was discussion with Mr. Ho about a possibility or promise to issue stock to you at some point in EDI?

A    There was no conversation about issuing of stock. There was a conversation about being equal, as

Page 58

partners.

Q     When did this alleged conversation about being quote "equal as partners" occur?

A     Back in '98 when the two of us used EDI as a vehicle in which I was the president because I had the academic credentials to go out and speak to Shenandoah University, Strayer University which we were going to set up an improvement program, recruit students from China, that was Daniel Ho's expertise and to come over here and work for MBA programs like with Shenandoah University and Strayer. It was just the two of us.

Q     Is there any sheet of paper or email or any sort of documentation in hard copy or electronic form that you rely on relating to your claim of having some sort of equal partnership, as you refer to it, with Mr. Ho?

A     No.

Q     Has there ever been such a document in hard copy, in electronic form, formal or informal, that's ever existed that supports that sort of assertion?

A     No.

Q     The University of Northern Virginia, Inc., was incorporated by Daniel Ho?

A     Correct.

Q     And you had no -- you were not a co-incorporator of that entity; is that right?

A     Correct.

Q     And EDI was incorporated by Daniel Ho?

A     Initially, yes.

Q     And you, when EDI was created, had nothing to do with incorporating EDI.

A     That is correct.

Q     What is the University of North America?

A     It was a company that was formed -- well, initially, it was actually called National Capital University and was put together in an attempt to an MDO and this was to be done in conversation with Daniel Ho who had given us -- and now I see he intended to sell and we were trying to avoid having issues of accreditation and as a result of that, we formed this company and we were rejected with our offer.

Q     The University of Northern Virginia is something that you created in November of 2007?

A     There was a name change from the National Capital UNVA.

Q     And that occurred in November of 2007?

A     I'm not sure of the date.

03/24/2008  16:00    0000000000                                          PAGE  02

# INFORMAL WRITTEN ACTION IN LIEU OF A SPECIAL MEETING
## OF THE BOARD OF DIRECTORS OF
### UNIVERSITY OF NORTHERN VIRGINIA, INC.

The undersigned, being all of the members of the Board of Directors of University of Northern Virginia, Inc. (the "Corporation"), in accordance with Sections 13.1-685 of the Corporations Title of the Code of Virginia, do hereby take the actions set forth below in lieu of holding a special meeting of Board of Directors, and to evidence their waiver of any right to dissent from such actions, do hereby consent, effective as of January 6, 2008, as follows:

WHEREAS, the Corporation registers thousands of students each year in the United States and overseas; and

WHEREAS, the main purpose of the Corporation is to foster academic growth and social integrity amongst its students; and

WHEREAS, as previously discussed during a meeting of the Board of Directors on December 27, 2007, it has come to the attention of the Board of Directors that certain individuals, specifically former members of the Board of Trustees and/or executives of the Corporation, appear to have breached their fiduciary and other duties and responsibilities to the Corporation by: (1) organizing the University of North America, LLC in order to unfairly compete with the Corporation; (2) attempting to take control of the Corporation's bank accounts, to remove Dr. Ho, as a signatory on the accounts, and to purportedly replace Dr. Ho with Claude Marty Martin, Joseph Drew, and Jacob deBruin; (3) writing unauthorized checks on the Corporation's bank accounts, including one for $95,742.51 to Mr. Martin's company and (4) causing the Board of Trustees to convene a special meeting in an attempt to suspend Dr. Ho from his position as Vice Chancellor and as an employee of the Corporation and to prevent Dr. Ho from access to the Corporation's premises and from preparing for the Winter Quadmester; and

WHEREAS, effective as of January 5, 2008, the majority Stockholder executed an Informal Written Action in Lieu of a Special Meeting of the Stockholders which removed all of the current members of the Board of Directors and duly elected new members to the Board of Directors and approved the Amended and Restated Bylaws; and

WHEREAS, the Board of Directors believes that it is in the best interests of the Corporation to abolish the Board of Trustees and relinquish any and all rights or authority previously granted to the Board of Trustees in order to resolve any disputes which have arisen amongst the Board of Directors and the Board of Trustees in an orderly and fair fashion so as to allow continuity of education for its students, effective as of the date set forth above; and

WHEREAS, for the same reasons, the Board of Directors believes that it is in the best interests of the Corporation to remove all of the current officers and executives

of the Corporation that may have had some involvement in the actions noted above, effective as of the date set forth above; and

**WHEREAS,** due to the Board of Directors recent engagement of the law firm of Wiley Rein and Attison L. Barnes, III, the Board of Directors has determined that the engagement of other law firms by either Bernard J.E. van Gils, Esquire and/or the Board of Trustees is duplicative of the matters being handled by Mr. Barnes and the law firm of Wiley Rein; and

**NOW THEREFORE BE IT HEREBY;**

**RESOLVED,** that the Amended and Restated By Laws attached hereto and incorporated by reference herein are hereby adopted, ratified and approved.

**RESOLVED,** that the following persons are hereby removed from any and all offices, affiliations and/or positions held, contractual or otherwise, on behalf of the Corporation effective immediately on this January 6, 2008:

> Fay R. Avery
> Bernard J.E. van Gils, Esquire
> Jacob deBruin
> Claude Marty Martin
> Joseph Drew

**RESOLVED,** that the following persons shall be nominated, qualified and duly elected to act as the Officers for the Corporation until the next annual meeting of the Board of Directors or until their respective successors are duly elected and qualified:

> Daniel Ho      President/Treasurer
> Roy C. Ho      Secretary

**RESOLVED,** that Daniel Ho shall serve as the Acting Chancellor until such time as the Board of Directors has the opportunity to recruit, interview and appoint such possible candidates for the position, be and the same is hereby ratified and approved.

**RESOLVED,** that the abolishment of the Board of Trustees and the removal of each member of the Board of Trustees from such position with any and all rights and authority previously granted to them being extinguished, be and the same is hereby ratified and approved.

**RESOLVED,** that the former Board of Trustees resolution suspending Daniel Ho and removing him from the Corporation's business premises is hereby declared improper, void and is further rescinded in its entirety, nunc pro tunc, and Dr. Ho shall be permitted to return to his office and resume providing services to the

Corporation in his capacity as President, be and the same is hereby ratified and approved.

**RESOLVED**, that with the exception of the services provided by Scott Caulkins, Esquire and Lee Goodman, Esquire with respect to the ACICS litigation and matters relating thereto, the services of any and all other law firms and attorneys that were engaged by Bernard J.E. van Gils, Esquire and/or the Board of Trustees shall be hereby terminated until such time as the Board of Directors has a chance to review the work performed by such other law firms and/or attorneys to determine whether such services performed will be duplicative of the services being requested of Wiley Rein and Mr. Barnes, be and the same is hereby ratified and approved.

**RESOLVED**, that Fay R. Avery, Jacob deBruin, Joseph Drew and Claude Marty Martin shall hereby be removed as signatories on the Corporation's bank accounts at BB&T and the United Central Bank of Texas, and Roy C. Ho shall be added as a signatory on such corporate bank accounts, be and the same is hereby ratified and approved.

**RESOLVED**, that the Board of Directors hereby authorizes and empowers the following persons to conduct an investigation into the apparent breach of fiduciary duties by those certain individuals who were members of the Board of Trustees and/or executives of the Corporation relating to the organization of a competing entity called "University of North America, LLC;" and further authorizes such individuals to hire an independent investigator in order to assist them in such investigation, and further invites Fay R. Avery and Daniel Ho to participate should they desire to be a part of such investigation, be and the same is hereby ratified and approved:

> Ashok Rattehalli
> Chiliang Chen
> Paul Eunho Choe

**RESOLVED**, that the Board of Directors hereby authorizes and empowers the same individuals identified in the prior paragraph to conduct a full and appropriate accounting relating to the operations of all domestic and international activities of the Corporation, and further authorizes such individuals to hire an independent accounting firm in order to assist them in such accounting, and hereby directs Daniel Ho to participate and cooperate as necessary with regard to such accounting and further invites Fay R. Avery and Daniel Ho to participate should they desire to be a part of such accounting, be and the same is hereby ratified and approved.

**RESOLVED**, that the Board of Directors, as a result of Ms. Joy Cheng expressing a desire not to sit on the Board of Directors at this time due to personal reasons, does not wish to fill the vacancy created by Ms. Cheng's resignation, be and the same is hereby ratified and approved.

03/24/2008  16:00    0000000000                                           PAGE  05

**RESOLVED**, that Excaliber Security Services, a security firm with whom the Corporation currently contracts with to provide certain security services on the Manassas campus shall be notified that the Board of Directors has hereby appointed Daniel Ho to serve as President and Acting Chancellor of the Corporation and he is fully empowered to act on behalf of the Corporation with regard to all matters relating to Excaliber Security Services, including but not limited to suspension or termination of its services and replacement thereof with others; and that the Board of Trustees and/or the Chancellor with whom Excaliber Security Services previously may have communicated are no longer authorized to act in any capacity on behalf of the Corporation effective January 6, 2008, be and same is hereby ratified and approved.

**RESOLVED**, that any and all prior acts taken by the Board of Directors on November 17, 2007 are hereby declared valid and are hereby ratified and approved.

**WITNESS** our hands and seals effective as provided herein.

Daniel Ho, Director

Ashok Rattehalli, Director

Roy C. Ho, Director

Chiliang Chen, Director

L:\CLIENTS\H\Ho.Daniel\UNVA.001\621 UNVA Special Minutes BOD.2.doc



VENABLE® LLP

575 7th Street, NW
Washington, DC 20004

Telephone 202-344-4000
Facsimile 202-344-8300

www.venable.com

Ronald M. Jacobs
*Associate*

(202) 344-8215

rmjacobs@venable.com

March 27, 2008

**Via Email & Overnight Delivery**
Ms. Dianne Currie
Acting School Certification Branch Chief
Student & Exchange Visitor Program
U.S. Immigration & Customs Enforcement
U.S. Department of Homeland Security
425 I Street NW
Washington, DC 20536

Re:   <u>University of Northern Virginia PDSO</u>

Dear Ms. Currie:

Thank you for your email response to my letter earlier today. Please understand that if this matter is not resolved by noon on Monday, March 31, 2008, the University of Northern Virginia ("UNVA"); Dr. Daniel Ho, the owner and president; and the students of UNVA, will suffer irreparable injury. In order to be able to seek appropriate judicial relief from the Student Exchange Visitor Program's ("SEVP") failure to reverse its erroneous change in the Principal Designated School Official ("PDSO"), UNVA needs to know by Friday, March 28, 2008, at noon whether SEVP will act on UNVA's request for a change in PDSO.

As I indicated in my letter, UNVA is simply requesting a return to the status quo ante prior to the time when SEVP arbitrarily and capriciously changed the PDSO without any notice or opportunity to be heard by Dr. Ho.

I would appreciate it if you could let me know whether there will be a timely resolution of this matter by noon Friday; if I do not hear from you by then, I will assume that legal action will be necessary.

Thank you for your time and assistance with this matter. I look forward to working with you to reach a reasonable resolution—short of litigation—if possible.

Sincerely,

Ronald M. Jacobs
Counsel for UNVA

cc:   Dr. Daniel F. Ho
      E. Paul Choe

*Office of Investigations*

**U.S. Department of Homeland Security**
425 I Street, NW
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

School Code: WAS214F01186

Daniel F. Ho
c/o Ronald M. Jacobs
Venable LLP
575 7th Street, NW
Washington, DC 20004

MAR 28 2008

## Student and Exchange Visitor Program
## Notice of Intent to Withdraw

**Notice**
This notice concerns the approval of your school for attendance by non-immigrant students. Title 8 Code of Federal Regulations (8 CFR) section 214.4(a)(1) states:

> *Withdrawal on Notice*: The approval by the Service.... of a petition by a school or school system for the attendance of nonimmigrant students will be withdrawn on notice if the school or school system is no longer entitled to the approval for any valid and substantive reason including, but not limited to the following:
>> (vi) The designation as a designated official of an individual who does not meet the requirements of §214.3(l)(1).

**Discussion**
On November 16, 2007 a letter issued by Fay Avery representing himself as Chancellor of the University of Northern Virginia (UNVA) was delivered to the telephonic technical support office for the Student and Exchange Visitor Information System (SEVIS). The letter requested the Student and Exchange Visitor Program (SEVP) withdraw Daniel Ho as Designated School Official (DSO) for the school and remove his access to SEVIS.

On December 6, 2007, Fay Avery as Chancellor of UNVA along with Bert vanGils as General Counsel for UNVA met with representatives of SEVP and further requested the removal of Daniel Ho. SEVP made the determination that Fay Avery as Chancellor of UNVA constituted the head of the school and per 8 CFR §214.3(l)(1) removed Daniel Ho as DSO and made Fay Avery the Principal Designated Official (PDSO) on the school's Form I-17 Petition for Approval of School for Attendance by Nonimmigrant Students.

**Issues**
**Designation of a designated school official who does not meet the requirements of §214.3(l)(1):** 8 CFR §214.3(l)(1) states, "The PDSO and any other DSO must be named by the president, owner, or head of a school or school system." Per correspondence with Daniel Ho and Fay Avery, SEVP has learned that the ownership of UNVA is in dispute before the Commonwealth of Virginia. SEVP has

Page 2 of 2
RE: WAS214F01186

received conflicting reports from Misters Ho and Avery as to the composition and ruling of the Board of Directors, school and corporate by-laws of UNVA providing for the ownership and decision-making authority of officers. Without proper documentation provided for proof of ownership, SEVP cannot at this point make a determination as to the legitimacy of Mr. Ho's claim of ownership and his dispute of Mr. Avery's claim of authority as head of the school. Further, without such documentation, SEVP cannot make a determination as to the proper designation of Designated School Officials per Federal regulations. Therefore it is imperative that Mr. Ho provide SEVP with documentary evidence including the following:

1. Legal proof of ownership of the holding company, Educational Dynamics, Inc. (EDI);
2. Legal proof of EDI's ownership of UNVA,
3. Corporate by-laws of EDI and UNVA;
4. Current list of directors and officers including all voting members; and
5. Meeting minutes of the Board of Directors of UNVA form June, 2007 to the present.

**Action to be Taken**
You have 33 calendar days, from service of this letter, to submit written representations under oath supported by documentary evidence setting forth reasons why SEVP should not withdraw your school's approval. Further, by 33 days from service of this letter you must provide the documentation listed in this letter and any other evidence supporting your claims of ownership and designation authority.

If you wish, at the time of filing the answer, you may request, in writing, an interview with SEVP. You also may be assisted by legal counsel of its choice, at no expense to the Government. **If you fail to answer this Notice of Intent to Withdraw within the time allotted, we may proceed with a Withdrawal on Notice and the school will not be eligible to file a Form I-17 petition for one year and will waive its right to file an appeal.**

If further information or discussion on this issue is needed, please do not hesitate to contact the School Certification Branch at (202) 305-2346, prompt 1 or inquire by email at schoolcert.sevis@dhs.gov.

Sincerely,

for Dianne Currie
Acting Chief School Certification Branch
Student & Exchange Visitor Program

clm

cc:    Daniel Ho
       9730 Leesburg Pike
       Great Falls, VA 22066



575 7th Street, NW
Washington, DC 20004

Telephone 202-344-4000
Facsimile 202-344-8300

www.venable.com

Ronald M. Jacobs
*Associate*

(202) 344-8215

rmjacobs@venable.com

April 1, 2008

**<u>Via Email & Overnight Delivery</u>**
Ms. Dianne C. Currie
Acting School Certification Branch Chief
Student & Exchange Visitor Program
U.S. Immigration & Customs Enforcement
U.S. Department of Homeland Security
425 I Street NW
Washington, DC 20536

>    *Re:  Notice of Intent to Withdraw*
>         *WAS214F01186*

Dear Ms. Currie:

This letter responds to the Notice of Intent to Withdraw ("Notice") dated March 28, 2008, that the Student Exchange Visitor Program ("SEVP") sent to Daniel Ho. We request that our letter of March 27, 2008, and all attachments accompanying that letter be made part of our response to the Notice. Through this response, we provide all of the documentation requested in the Notice. With this documentation, we demonstrate that even if Fay Avery had the apparent authority to change the Principal Designated School Official ("PDSO") to himself on December 6, 2007, he has been terminated by the University and is no longer a lawful PDSO. Accordingly, based on the change in facts since December 6, 2007, we request that SEVP remove Mr. Avery and add Dr. Ho as the PDSO.

In addition, with this response we further explain our position that Dr. Ho was improperly removed from his position as the Principal Designated School Official ("PDSO") of the University of Northern Virginia ("UNVA" or "the University") because, as the owner of the University, he was not afforded the basic rights of notice and an opportunity to be heard under the Fifth Amendment and the Administrative Procedure Act ("APA"). Given the procedural irregularities in the PDSO change in the first instance, we request that SEVP make restore Dr. Ho as the PDSO immediately.

Finally, we request that we receive copies of all documents that Fay Avery has provided to SEVP as a basic right of procedural fairness.

# VENABLE®LLP

Ms. Dianne C. Currie
April 1, 2008
Page 2

## Discussion

I.    **Regardless of Avery's Status in December 2007, the Board of Directors Has Terminated Him and He is Therefore No Longer the Head of the School.**

We do not know what evidence Mr. Avery submitted to SEVP on December 6, 2007 to show that he had the authority to change the PDSO. We acknowledge that on that day he was the Chancellor of UNVA and therefore fit within the scope of the regulations. As set forth below, we believe that allowing him to make this change violated Dr. Ho's right as the owner of the University. Even if SEVP determines that it made a lawful decision on December 6, however, Mr. Avery no longer is the head of the school and therefore, Dr. Ho requests that Mr. Avery be removed as PDSO and that SEVP make Dr. Ho the PDSO.

As set forth in our earlier submissions, Education Dynamics, Inc. ("EDI"), as the majority shareholder of UNVA, replaced the board of directors and eliminated the board of trustees. The new board of directors then terminated Mr. Avery. Accordingly, Mr. Avery is no longer the Chancellor, is no longer the head of school pursuant to 8 C.F.R. § 214.3(l)(1), and, therefore, no longer has the authority to name the PDSO. We now provide a more detailed timeline of these events, and, in the process, provide copies of all of the minutes of the meeting of the board of directors from June 2007 to the present in response to Question 5 in the Notice and also copies of the bylaws of EDI and UNVA, in response to Question 3.

Between June and November 2007, there were no board meetings for UNVA. On November 17, 2007, the board met. The minutes from that meeting are attached as Exhibit 1. At that meeting, Dr. Ho, as the majority shareholder, voted to eliminate the Board of Trustees.

Then, on December 21, 2007, the sole shareholder of EDI, Dr. Ho, terminated all members of the board of directors of EDI and named himself as the sole member of the board. Exhibit 2 is a copy of that action. That same day, as the sole member of the board, he terminated all of the officers of the corporation and named himself President and Treasurer and named Roy C. Ho the Secretary. Exhibit 3 is a copy of that action. Exhibit 4 is a copy of the bylaws of EDI.

# VENABLE®LLP

Ms. Dianne C. Currie
April 1, 2008
Page 3

Pursuant to Virginia Code 13.1-657(B)[1] and Article III, section 3 of the articles of incorporation (attached hereto as Exhibit 5)—which together allow the majority shareholder to take action without a board meeting—on December 21, 2007, the majority stockholder of UNVA, EDI, terminated the University's board of directors and appointed Daniel Ho, Chili-ang Chen, Joy Cheng, Roy C. Ho, and Ashok Rattehalli to the board. Those new board members were to become effective on January 5, 2008. As the majority shareholder, Dr. Ho also adopted new bylaws. By email, Joy Cheng declined to accept her appointment, leaving four board members. Exhibit 6 is a copy of this action, along with Ms. Cheng's email. Exhibit 7 is a copy of the bylaws of UNVA, as adopted by Dr. Ho and, as set forth below, ratified by the board of directors.

Then, on January 6, 2008, when the new board was in place, it voted to terminate the Board of Trustees, approve the bylaws that the shareholder adopted on December 21, appoint Daniel Ho as the President and Treasurer and Roy C. Ho as the Secretary, and to terminate, *inter alia*, Mr. Avery. Exhibit 8 is a copy of this action (which was previously submitted). Thus, on January 6, 2008, Mr. Avery no longer held a position with the University and was no longer eligible to be, or to name, the PDSO. Accordingly, we request that he be removed as the PDSO.

After January 6, 2008, the board of directors met on a number of occasions in order to deal with the ramifications of Mr. Avery's illegal efforts to occupy the University:

- Exhibit 9: Minutes from February 2, 2008 Meeting of the Board
- Exhibit 10: Minutes from February 22, 2008 Meeting of the Board
- Exhibit 11: Meeting from February 23, 2007 Meeting of the Board
- Exhibit 12: Minutes and Resolutions from February 23 Meeting of the Board
- Exhibit 13: Resolution from March 6, 2008 retaining Venable for SEVP matters
- Exhibit 14: Resolution from March 7, 2008 Meeting of the Board
- Exhibit 15: Resolution from March 24, 2008 Meeting of the Board

---

[1] Section 13.1-657(B) provides:

The articles of incorporation may provide that any action required or permitted by this chapter to be taken at a shareholders' meeting may be taken without a meeting, and without prior notice, if consents in writing setting forth the action so taken are signed by the holders of outstanding shares having not less than the minimum number of votes that would be required to authorize or take the action at a meeting at which all shares entitled to vote on the action were present and voted. The written consent shall bear the date on which each shareholder signed the consent and be delivered to the corporation for inclusion in the minutes or filing with the corporate records.

# VENABLE®LLP

Ms. Dianne C. Currie
April 1, 2008
Page 4

Thus, in response to Question 4, the current directors of UNVA, as shown through the various board actions, are:

- Daniel Ho;
- Roy C. Ho;
- Paul Choe; and
- David Lee

The officers are as follows:

- Dr. Ho serves as President and Treasurer;
- Roy Ho serves as Secretary.

Thus, we have provided documents responding to Questions 3, 4, and 5 in the Notice. We now turn to the question of ownership.

## II.    EDI Owns 89% of the University and Dr. Ho Owns EDI.

As set forth in our prior correspondence, EDI owns 89% of UNVA and Dr. Ho owns all of EDI. Our prior correspondence included articles of incorporation for the two entities, a letter from UNVA's outside counsel pertaining to the stock ownership of UNVA, and extracts from Mr. Avery's sworn testimony indicating that he does not own any shares of EDI. We are at a loss as to what other forms of proof of ownership SEVP would like. Accordingly, we submit that our letter of March 27, 2008, and the exhibits accompanying that letter, together with the Exhibits to this letter provide conclusive proof as to the ownership of EDI and UNVA. If there are specific documents that you wish to see, please let us know and we will work to provide them to you.

We do not know exactly what Mr. Avery alleged with respect to his ownership, because the Notice is vague and we have not been provided with any of the documentation he submitted to SEVP. However, there is nothing that he could have lawfully alleged about the ownership that would, in any way, suggest that Dr. Ho is not the owner of the EDI, and therefore, the University.

At this point in time, Mr. Avery has filed a suit in the Circuit Court of Fairfax County alleging that he owns part of UNVA. However, that suit has not been decided, Mr. Avery has admitted under oath that he does not own any shares in EDI, and he is currently preparing to file an amended complaint to state a new theory of the case. Absent a judicial de-

# VENABLE®LLP

Ms. Dianne C. Currie
April 1, 2008
Page 5

cision in support off Mr. Avery's claims, it would be improper for SEVP to make a determination of ownership based on Mr. Avery's mere allegations.

In addition, the board of trustees had filed a lawsuit against Dr. Ho, alleging that the trustees had the authority to control certain decisions about UNVA. As shown in Exhibit 16, the judge dismissed that action on the basis that the trustees lacked any standing whatsoever to bring a suit.

Accordingly, although Mr. Avery still has a claim pending regarding ownership of the University, he does not own UNVA. Regardless of the outcome of that case, and we are confident that Dr. Ho will prevail, at this time EDI owns UNVA and Dr. Ho owns EDI. Accordingly, SEVP should act based on the proven facts; should the court decide ownership lies elsewhere, the PDSO can be changed at that point in time.

## III.   Failure to Reinstate Dr. Ho Creates Irreparable Injury.

As shown above, Dr. Ho is the owner of EDI, which, in turn, owns at least 89 percent of UNVA. Also, as shown above, Mr. Avery has been terminated from the University. Accordingly, Dr. Ho is the lawful PDSO. However, as we have previously discussed, Mr. Avery continues to use his powers as PDSO to terminate students who should not be terminated and to refuse to register or reregister students. He has, in effect, set up his own school, outside of UNVA, using UNVA resources and its SEVIS account. Thus, Mr. Avery's continued status as PDSO creates irreparable harm to the University in four ways:

1.) It deprives the school of income from those students;
2.) It destroys the University's reputation and ability to recruit new students;
3.) It prevents students from attending classes at UNVA that Dr. Ho wishes to have UNVA teach; and
4.) It presents serious and immediate harm to those students have their I-20 status terminated without notice.

Therefore, we request that to prevent this ongoing harm to Dr. Ho, UNVA, and its students, SEVP act to remedy this situation immediately.

## IV.   Dr. Ho's Removal Violated Fundamental Notions of Due Process and Administrative Procedure.

As explained above, and in previous submissions, EDI owns at least 89 percent of all of the stock of UNVA. Moreover, as we have previously explained, Dr. Ho owns all of EDI.

# VENABLE®LLP

---

Ms. Dianne C. Currie
April 1, 2008
Page 6

There are no other shareholders. Dr. Ho's ownership was reflected on UNVA's I-17 form. Accordingly, even if Mr. Avery presented SEVP with evidence of his authority to change the PDSO, we remain concerned that the owner of the institution was removed from the PDSO position without any notice or an opportunity to be heard.

We appreciate that the regulations allow the "president, owner, or head of a school or school system" to name the PDSO and that Mr. Avery presented evidence to SEVP on December 6, 2007 that he was the "head of the school." However, we have serious concerns that this change was made without notice or an opportunity for Dr. Ho to provide a response. As the owner of the University, Dr. Ho is the only individual with a property right in the institution. This is not a case where the owner changed the PDSO or where the head of the school changed the PDSO from one designee to another. It is a case of an individual seeking to have the owner of the school himself removed from the PDSO position and changed to the person seeking to effectuate the change.

It is axiomatic that the shareholders (i.e., the owners) of a corporation elect the board of directors and the board of directors appoint the officers. Thus, although SEVP's regulations allow the owner, president, or head of school to appoint the PDSO, SEVP must recognize that in the event of a conflict between these three individuals, the owner will always prevail for the simple reason that he or she can terminate the others if they deviate from the wishes of the owner. There may be situations where ownership is sufficiently diffuse that action becomes difficult, but here, ownership is centralized in one individual: Dr. Ho.

As such, the change in PDSO by an individual other than the owner, without providing the owner with the opportunity to be heard, violates basic principles of due process and administrative law. *Goldberg v. Kelly*, 397 U.S. 254 (1970); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"); *Cf. Blackwell College of Business v. Attorney General*, 454 F.2d 928 (D.C. Cir. 1972) (holding that the school was entitled to notice and an opportunity to correct before revocation proceedings were begun pursuant to the Administrative Procedure Act).

Thus, Dr. Ho submits that regardless of whether Mr. Avery presented evidence that he was the head of the school, Dr. Ho was, and remains, the owner of the University. As such, he should have received notice and an opportunity to be heard before the change was made. Given this serious irregularity, he requests that you reverse your earlier determination and restore him to his rightful position as PDSO.

# VENABLE®LLP

Ms. Dianne C. Currie
April 1, 2008
Page 7

### **Conclusion**

We believe that with this submission we have responded conclusively to all of the questions in the Notice. As we have explained, we believe that SEVP's actions in December 2007 were violative of Dr. Ho's right to notice and an opportunity to be heard under the Due Process Clause and the APA, and that SEVP's action was therefore arbitrary, capricious, and an abuse of discretion. Regardless of SEVP's conclusions about that action, it is clear that Mr. Avery no longer has any position with the University. As such, this response is also a simple request for SEVP to modify the PDSO at the request of the owner and president. As set forth above, there is real and ongoing harm to the University and Dr. Ho and we therefore ask that this matter be resolved on an expedited basis.

Thank you for your time and assistance with this matter. I look forward to working with you to reach a reasonable resolution as quickly as possible.

Respectfully submitted,

Ronald M. Jacobs
Counsel for UNVA

cc:   Dr. Daniel F. Ho
      E. Paul Choe

**University of Northern Virginia**

**Board of Directors Meeting**

**November 17, 2007**

**12:00 PM, Palace Restaurant**
**Annandale, Virginia**

In attendance:

- Daniel Ho
- David Lee
- Paul Choe
- Ashock Rattehalli
- Young Kyung Lee
- Ellick Chen

| | |
|---|---|
| **Call to Order** | Daniel Ho, Chair |
| Approval of Minutes | Ellick Chen |

The minutes were approved as presented and without amendments.

### *New Business*

| | |
|---|---|
| **Revision of Bylaws** | Daniel Ho |

The current bylaws of the University of Northern Virginia allows the majority shareholder, one with 75% or more, has authority to change or modify the bylaws. Daniel Ho with 94.1% shares decided to remove Article #7 (Board of Trustees) and added two (2) new committees:  Executive Committee and Academic Quality Committee.

| | |
|---|---|
| **New Faculty/Employees Handbook** | Daniel Ho |

Motion was made by Daniel Ho to combine Faculty and Employee Handbooks.  Draft of Faculty and Staff Handbook (Nov. 15, 2007) was distributed to the board members.  All

of the board members decided to review and make a final decision during the next board meeting.

### New Organization Chart                    Daniel Ho

A new organization chart was presented by Daniel Ho and reviewed by the board members.  The motion was made and was approved.  The board of trustees was dissolved effective immediately.

### New Board Members                    Daniel Ho

Daniel Ho proposed to add 3 new board members: Dr. Liu Jin Nan, Prof. Ellick Chen, Mrs. Young Kyung Lee.   The motion was made and approved.

A motion was made to remove Gary Rushin from the board immediately and was approved by the boards.


### *Others*


### Third Party Contracts                    Daniel Ho

A motion to temporarily hold all third party contracts until those are fully reviewed by the new owner was approved.

### Position Description                    Daniel Ho

Revised Position Descriptions for Chancellor and Vice Chancellor were presented by Daniel Ho.  The motion was made and approved with a minor changes.

### New Chair and Secretary                    Daniel Ho

Daniel Ho proposed to elect Mrs. Young Kyung Lee as a new chairperson of the boards. Prof. Ellick Chen was recommended as a new secretary.  Both were approved.


*Next Board Meeting* will be held on Saturday, January 19, 2008 @ 10:00 a.m. at UNVA.


Adjournment



### INFORMAL WRITTEN ACTION IN LIEU OF SPECIAL MEETING
### OF THE STOCKHOLDERS OF
### EDUCATION DYNAMICS, INC.

The undersigned, being the sole Stockholder of Education Dynamics, Inc. (the "Corporation"), in accordance with Sections 13.1-657 of the Corporations Title of the Code of Virginia, does hereby take the actions set forth below in lieu of holding a special meeting of Stockholders, and to evidence his waiver of any right to dissent from such actions, does hereby consent, effective as of December 21, 2007, as follows:

**WHEREAS,** Daniel Ho is the sole stockholder of the Corporation as all of the authorized shares of stock of the Corporation were issued to him by the initial director of the Corporation, Daniel Ho, as provided in the Articles of Incorporation; and

**WHEREAS,** the Corporation's charter was terminated on August 2, 2004 and subsequently revived as of December 3, 2007.

**NOW THEREFORE BE IT HEREBY,**

**RESOLVED,** that all of the current members of the Board of Directors shall be removed from their position as a member of the Board of Directors effective as of the date set forth above, be and the same is hereby ratified and approved.

**RESOLVED,** that there shall be one (1) person who shall act as the Board of Directors, be and the same is hereby ratified and approved.

**RESOLVED,** that the following person be nominated, qualified and duly elected to act as the Board of Directors for the Corporation until the next annual meeting of the stockholder or until his respective successors are duly elected and qualified:

Daniel Ho

**RESOLVED,** that the sole stockholder does hereby ratify and affirm the reinstatement of the Corporation by Daniel Ho effective as of December 3, 2007.

**WITNESS** my hand and seal effective as provided herein.

Date Signed: 12-21-07

_____
Daniel Ho, Stockholder

L:\CLIENTS\H\Ho.Daniel\UNVA.001\621 EDI Special Minutes.doc

3

INFORMAL WRITTEN ACTION IN LIEU OF SPECIAL MEETING
OF THE BOARD OF DIRECTORS OF
EDUCATION DYNAMICS, INC.

The undersigned, being all of the members of the Board of Directors of Education Dynamics, Inc. (the "Corporation"), in accordance with Sections 13.1-685 of the Corporations Title of the Code of Virginia, does hereby take the actions set forth below in lieu of holding a special meeting of Board of Directors, and to evidence their waiver of any right to dissent from such actions, does hereby consent, effective as of December 21, 2007, as follows:

**WHEREAS,** the sole Director of the Corporation desires to remove the current officers of the Corporation from their respective positions effective as of the date set forth above, and

**WHEREAS,** the Corporation's charter was terminated on August 2, 2004 and subsequently revived as of December 3, 2007.

**NOW THEREFORE BE IT HEREBY;**

**RESOLVED,** that the current officers of the Corporation shall hereby be removed from their respective positions, be and the same is hereby ratified and approved.

**RESOLVED,** that the following persons be nominated, qualified and duly elected to act as the Officers for the Corporation until the next annual meeting of the Board of Directors or until their respective successors are duly elected and qualified:

| | |
|---|---|
| Daniel Ho | President/Treasurer |
| Roy C. Ho | Secretary |

**RESOLVED,** that the By Laws attached hereto and incorporated by reference herein are hereby ratified and approved and be and the same are hereby declared to be the By Laws of the Corporation.

**RESOLVED,** that the Board of Directors does hereby ratify and affirm the reinstatement of the Corporation by Daniel Ho effective as of December 3, 2007.

**WITNESS** my hand and seal effective as provided herein.

Date Signed: 12-21-07

_____
Daniel Ho, Director

L:\CLIENTS\H\Ho.Daniel\UNVA.001\621 EDI Special Minutes.BOD.doc

4

# BYLAWS

## OF

## EDUCATION DYNAMICS, INC.

### ARTICLE I - PRINCIPAL OFFICE

The principal office of the Corporation shall be located in the City of Great Falls.

The Corporation may also maintain offices at such other places as the Board of Directors may from time to time determine or as the business of the Corporation may require.

### ARTICLE II - MEETINGS OF STOCKHOLDERS

#### Section 1. - Annual Meetings

The annual meeting of the stockholders of the Corporation shall be held on a day duly designated by the Board of Directors in the last month of the fiscal year of the Corporation, for the purpose of electing directors and transacting such other business as may properly come before the meeting.

#### Section 2. - Special Meetings

Special meetings of the stockholders may be called at any time for any purpose or purposes by the Chairman of the Board, the President or Vice-President and shall be called by the Secretary at the written request of a majority of the Board of Directors or upon the request of stockholders entitled to cast at least twenty percent (20%) of the vote entitled to be cast at such meeting. Such request shall state the purpose or purposes of the meeting and the matters proposed to be acted on at it. Business transacted at all special meetings of stockholders shall be confined to the purpose or purposes stated in the notice of the meeting.

#### Section 3. - Place of Meetings

All meetings of stockholders shall be held at the principal office of the Corporation, or at such other places as the Board of Directors may select, or as shall be designated in the respective notices or waivers of notice of such meetings, in or outside of the Commonwealth.

## Section 4. - Notice of Meetings

(a)     Except as otherwise provided by statute, written notice of each meeting of stockholders, whether annual or special, (and in case of a special meeting, or if required by law, also stating the purposes for which the meeting is called, stating the time when and place where it is to be held), shall be served either personally or by mail, not less than ten (10) nor more than sixty (60) days before the meeting, upon each stockholder of record entitled to vote at such meeting. If mailed, such notice shall be directed to each such stockholder at his address as it appears on the stock books of the Corporation, unless he shall have previously filed with the Secretary of the Corporation written request that notices intended for him be mailed to some other address, in which case it shall be mailed to the address designated in such request. Such notice shall be considered given to a stockholder if personally delivered to him, left at his residence or usual place of abode, or mailed to him at his address as it appears on the records of the Corporation. Notice of a meeting to act on an amendment of the Articles of Incorporation, plan of merger or share exchange, sale of assets or dissolution shall be given not less than twenty-five (25) nor more than sixty (60) days before the meeting date.

(b)     Notice of any meeting need not be given to any person who may become a stockholder of record after the mailing of such notice and prior to the meeting, or to any stockholder who attends such meeting in person or by proxy, or to any stockholder who, in person or by attorney thereunto authorized, waives notice of any meeting in writing either before or after such meeting. Notice of any adjourned meeting of stockholders need not be given, unless otherwise required by statute.

## Section 5. - Quorum

(a)     Except as otherwise provided herein, or by statute, or in the Articles of Incorporation (such Articles and any amendments thereof being hereinafter collectively referred to as the "Articles of Incorporation"), at all meetings of stockholders of the Corporation, the presence in person or by proxy of stockholders holding of record a majority of the total number of votes entitled to be cast at the meeting shall be necessary and sufficient to constitute a quorum for the transaction of any business. The stockholders present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough stockholders to leave less than a quorum.

(b)     In the absence of a quorum at any annual or special meeting of stockholders, the stockholders present in person or by proxy and entitled to vote thereat by majority vote, may adjourn the meeting from time to time for a period not exceeding one hundred and twenty (120) days until a quorum shall be present. At any such adjourned meeting at which a quorum is present, any business may be transacted which might have been transacted at the meeting as originally called if a quorum had been present.

<u>Section 6. - Voting</u>

(a)    Except as otherwise provided herein, or by statute, or by the Articles of Incorporation, the affirmative vote of stockholders representing a majority of all votes entitled to be cast at a meeting of stockholders at which a quorum shall be present with respect to a question or matter brought before such meeting shall be necessary and sufficient to decide such question or matter.

(b)    Except as otherwise provided by statute, or by the Articles of Incorporation, at each meeting of stockholders, each holder of record of stock of the Corporation entitled to vote thereat shall be entitled to one (1) vote for each share of stock held by him and registered in his name on the books of the Corporation.

(c)    Each stockholder entitled to vote may vote by proxy, provided, however, that the instrument authorizing such proxy to act shall have been executed in writing by the stockholder himself, or by his attorney-in- fact thereunto duly authorized in writing.  No proxy shall be valid after the expiration of eleven (11) months from the date of its execution, unless the person executing it shall have specified therein the length of time it is to continue in force.  Such instrument shall be exhibited to the Secretary at the meeting and shall be filed with the records of the Corporation.

(d)    Any share of stock, title to which is owned by a corporation or partnership, may be voted or other action taken with respect to such shares by the president or any vice-president of a corporation owning such stock, or by the managing partner of any partnership owning such stock, or by means of a proxy as provided for in subsection (c).  Prior to any meeting, whether annual or special, the proper representative of such entity owning shares of this Corporation as the case may be shall certify to the Secretary of the meeting that he is an officer or managing partner of such entity as the case may be and such appointment is in full force and effect.  This provision may be satisfied by a written certification which shall be issued by the corporate shareholder or partnership to the Secretary of this Corporation attesting to its current officers or managing partner and the status of their appointment.  Such certification shall be continuing in nature until the Secretary of this Corporation is otherwise notified to the contrary by a new certification, in writing.

3

## ARTICLE III - BOARD OF DIRECTORS

### Section 1. - Number, Election and Term of Office

(a)      The number of the directors of the Corporation shall be at least one (1) but no more than five (5) at all times.  By vote of a majority of the entire Board of Directors, and a majority vote of the stockholders, the number of directors may be increased or decreased within this range.  The minimum and maximum number of directors may be changed only by the stockholders.  If any increase shall be deemed to create any vacancies in the Board, they shall be filled in the manner prescribed in Section 8 of this Article III.  The tenure of office of a director shall not be affected by any decrease in the number of directors so made by the Board.

(b)      Until the first annual meeting of stockholders or until successors are duly elected and qualify, the Board of Directors shall consist of the persons named as such in the Articles of Incorporation.  At the first annual meeting of stockholders and at each annual meeting thereafter, the stockholders shall elect directors to hold office until the next annual meeting or until their successors are elected and qualify.

### Section 2. - Duties, Powers and Committees

(a)      The Board of Directors shall be responsible for the control and management of the affairs, property and interests of the Corporation, and may exercise all powers of the Corporation except as expressly conferred upon or reserved to the stockholders by the Articles of Incorporation, by statute or these By-Laws.

(b)      The Board of Directors may create and appoint committees to assist the directors in the conduct of the Corporation's affairs.

### Section 3. - Annual and Regular Meetings - Notice

(a)      After each meeting of stockholders at which a Board of Directors shall have been elected, the Board of Directors so elected shall meet as soon as practicable for the purpose of organization and of other business; and in the event that no other time is designated by the stockholders, the Board of Directors shall meet one hour after the time for such stockholders' meeting or immediately following the close of such meeting, whichever is later, on the day of such meeting.  Such first regular meeting shall be held at any place in or out of the Commonwealth of Virginia as may be designated by the stockholders, or in default of such designation at the place designated by the Board of Directors for such first regular meeting, or in default of such designation at the place of the holding of the immediately preceding meeting of stockholders.

(b)      The Board of Directors from time to time may provide by resolution for the holding of other regular  meetings of the Board of Directors, and may fix the time and place thereof.

4

(c)    Notice of any regular meeting of the Board of Directors shall not be required to be given; provided, however, that in case the Board of Directors shall fix or change the time or place of any regular meeting, notice of such action shall be mailed promptly to each director who shall not have been present at the meeting at which such action was taken, addressed to him at his residence or usual place of business, unless such notice shall be waived in the manner set forth in paragraph (c) of Section 4 of this Article III.

Section 4. - Special Meetings - Notice

(a)    Special meetings of the Board of Directors shall be held whenever called by the President, or by one of the directors, at such time and place as may be specified in the respective notices or waivers of notice thereof.

(b)    Except as otherwise required by statute, notice of such special meetings shall be furnished by the Secretary to each director and shall be presumed delivered if mailed directly to each director, addressed to him at his residence or usual place of business, at least forty eight (48) hours before the time on which the meeting is to be held, or shall be sent to him at such place by telegram, radio or cable, or shall be delivered to him personally not later than the twenty four (24) hours before the time at which the meeting is to be held.

(c)    Notice of any special meeting shall not be required to be given to any director who shall attend such meeting in person or to any director who shall waive notice of such meeting in writing or by telegram, radio or cable, whether before or after the time of such meetings; and any such meeting shall be a legal meeting without any notice thereof having been given, if all the directors shall be present thereat.  Notice of any adjourned meeting shall not be required to be given.  Unless otherwise required by these By-Laws or by law, the notice of a special meeting need not state the purposes thereof.

Section 5. - Chairman

At all meetings of the Board of Directors, the Chairman of the Board shall preside or in the event no Chairman has previously been selected, then the President of the Corporation shall preside, or in his absence, a Chairman chosen by the directors for such meeting shall preside.

Section 6. - Quorum

(a)    At all meetings of the Board of Directors, the presence of a majority of the members of the Board shall be necessary and sufficient to constitute a quorum for the transaction of business, except as otherwise provided by law, by the Articles of Incorporation, or by these By-Laws.

5

(b)    A majority of the directors present at the time and place of any regular or special meeting, although less than a quorum, may adjourn the same by majority vote from time to time without further notice, until a quorum shall be present. At any such adjourned meeting at which a quorum shall be present, any business may be transacted which might have been transacted at the meeting as originally scheduled.

(c)    The recommendation or approval by the Board of Directors of any proposed corporate act shall not be required if the proposed corporate act is adopted by the unanimous consent of shareholders.

## Section 7. - Manner of Acting

(a)    At all meetings of the Board of Directors, each director present shall have one (1) vote, irrespective of the number of shares of stock, if any, which he may hold.

(b)    Except as otherwise provided by statute, by the Articles of Incorporation, or by these By-Laws, the action of a majority of the directors present at any meeting at which a quorum is present shall be the act of the Board of Directors.

(c)    Any action required or permitted to be taken at a meeting of the Board of Directors or of a committee of the Board may be taken without a meeting, if an unanimous written consent which sets forth the action is signed by each member of the Board or committee and filed with the minutes of the proceedings of the Board or committee.

(d)    Members of the Board of Directors may participate in a meeting by means of a conference telephone or similar communications equipment if all persons participating in the meeting can hear each other at the same time. Participation in a meeting by these means constitutes presence in person at a meeting.

## Section 8. - Vacancies

Any vacancy in the Board of Directors occurring by reason of the death, resignation, disqualification, removal or inability to act of any director, or otherwise excepting by reason of an increase in the number of directors, shall be filled for the unexpired portion of the term by a majority vote of the remaining directors, though less than a quorum, at any regular meeting or special meeting of the Board of Directors called for that purpose.

Similarly, and in the event that number of directors is increased pursuant to these By-laws, the additional directors so provided shall be elected by a majority of the entire Board of Directors already in office, and shall hold office until the next annual meeting of the stockholders and thereafter until his or their successors are duly elected and qualified.

Section 9. - Resignation

Any director may resign at any time by giving written notice to the Board of Directors, its Chairman, the President or the Secretary of the Corporation. Unless otherwise specified in such written notice, such resignation shall take effect upon receipt thereof by the Board of Directors or such officer, unless the notice specifies a later effective date, and the acceptance of such resignation shall not be necessary to make it effective.

Section 10. - Removal

Any director may be removed with or without cause at any time by the affirmative vote of a majority of the votes of stockholders entitled to be cast on the matter given at a special meeting of the stockholders called for the purpose, at which a quorum shall be present.

Section 11. - Compensation

By resolution of the Board of Directors a fixed sum and expenses, if any, for attendance at each regular or special meeting of the Board of Directors or of committees thereof, and other compensation for their services as such or on committees of the Board of Directors, may be paid to directors. A director who serves the Corporation in any other capacity also may receive compensation for such other services, pursuant to a resolution of the Directors.

Section 12. - Contracts

(a)    No contract or other transaction between this Corporation and any other corporation shall be impaired, affected or invalidated, nor shall any director be liable in any way by reason of the fact that any one or more of the directors of this Corporation is or are interested in, or is a director or officer, or are directors or officers of such other corporation, provided that such facts are disclosed or made known to the Board of Directors and approved in the manner set forth in Subsection (b) below.

(b)    Any director, personally and individually, may be a party to or may be interested in any contract or transaction of this Corporation, and no director shall be liable in any way by reason of such interest, provided that the fact of such interest be disclosed or made known to the Board of Directors, and provided that the Board of Directors shall authorize, approve or ratify such contract or transaction by the vote (not counting the vote of any such director) of a majority of uninterested directors, notwithstanding the presence of any such director at the meeting at which such action is taken. Such director or directors may be counted in determining the presence of a quorum at such meeting. This Section shall not be construed to impair or invalidate or in any way affect any contract or other transaction which would otherwise be valid under the law (common, statutory or otherwise applicable thereto.

## Section 13. - Executive Committee

The Board of Directors may appoint from among its members an Executive Committee and other committees composed of two or more directors and delegate to these committees in the intervals between meetings of the Board of Directors any of the powers of the Board of Directors, except the power to declare dividends or distributions on stock, approve any merger or share exchange which does not require stockholder approval, amend the By-Laws, issue stock or recommend to the stockholders any action which requires stockholder approval. Each committee may fix rules of procedure for its business. A majority of the members of a committee shall constitute a quorum for the transaction of business and the act of a majority of those present at a meeting at which a quorum is present shall be the act of the committee. The members of a committee present at any meeting, whether or not they constitute a quorum, may appoint a director to act in place of an absent member. The members of a committee may conduct any meeting thereof by conference telephone in accordance with the provisions of Section 7(d) above.

## ARTICLE IV - OFFICERS

## Section 1. - Number, Qualifications, Election and Term of Officers

(a)    The officers of the Corporation shall consist of a President, a Secretary, a Treasurer, and such number of Vice- Presidents, Assistant Secretaries and Assistant Treasurers as the Board of Directors may from time to time deem advisable. Any officer may, but is not required to, be a director of the Corporation. Any two or more offices, except the offices of President and Vice-President, may be held by the same person unless otherwise permitted by statute.

(b)    The officers of the Corporation shall be elected by the Board of Directors at the regular annual meeting of the Board following the annual meeting of stockholders.

(c)    Each officer shall hold office until the annual meeting of the Board of Directors next succeeding his election and until his successor shall have been elected and qualified, or until his death, resignation or removal.

## Section 2. - Resignation

Any officer may resign at any time by giving written notice of such resignation to the Board of Directors. Unless otherwise specified in such written notice, such resignation shall take effect upon receipt thereof by the Board of Directors or by such officer, and the acceptance of such resignation shall not be necessary to make it effective.

## Section 3. - Removal

(a)    Any officer specifically designated in Section 1 of this Article IV may be removed, if the Board of Directors in its judgment finds that the best interests of the Corporation will be served, and a successor elected, by a majority vote of the Board of Directors, at a regular or special meeting.

(b)    The officers and agents appointed in accordance with the provisions of Section 11 of this Article IV may be removed, if the Board of Directors in its judgment finds that the best interests of the Corporation will be served by a majority vote of the Board of Directors, at a regular or special meeting, or by any superior officer or agent upon whom such power of removal shall have been conferred by the Board of Directors.

(c)    The removal of an officer or agent does not prejudice any of his contract rights.

## Section 4. - Vacancies

(a)    A vacancy in any office specifically designated in Section 1 of this Article IV, by reason of death, resignation, inability to act, disqualification, removal, or any other cause, shall be filled for the unexpired portion of the term by a majority vote of the Board of Directors at any regular or special meeting.

(b)    In the case of a vacancy occurring in the office of an officer or agent appointed in accordance with the provisions of Section 11 of this Article IV, such vacancy may be filled by vote of the Board of Directors or by any officer or agent upon whom such power shall have been conferred by the Board of Directors.

## Section 5. - President

The President shall be the chief executive officer of the Corporation and, subject to the direction of the Board of Directors, shall have general charge of the business affairs and property of the Corporation and general supervision over its officers and agents. He shall, if present, preside at all meetings of the Board of Directors and at all meetings of stockholders. In general, he shall perform all duties incident to the office of President, and shall see that all orders and resolutions of the Board of Directors are carried into effect.

## Section 6. - Vice-President

During the absence or disability of the President, the Vice-President or, if there be more than one, the Vice-President designated by the Board of Directors as Executive Vice-President shall exercise all the functions of the President, and when so acting, shall have all the powers of and be subject to all the restrictions upon the President. Each Vice-President shall have such powers and discharge such duties as may be assigned to him from time to time by the Board of Directors.

9

Section 7. - Secretary

The Secretary shall:

(a)    Record all of the proceedings of the meetings of the stockholders and Board of Directors in a book to be kept for that purpose;

(b)    Cause all notices to be duly given in accordance with the provisions of these By-Laws and as required by statute;

(c)    Be custodian of the records and of the seal of the Corporation, and cause such seal to be affixed to all certificates representing stock of the Corporation prior to their issuance, and to all instruments, the execution of which on behalf of the Corporation under its seal shall have been duly authorized in accordance with these By-Laws;

(d)    If called upon to do so, prepare or cause to be prepared, and submit at each meeting of the stockholders, a certified list in alphabetical order of the names of the stockholders entitled to vote at such meeting, together with the number of shares of the respective class of stock held by each;

(e)    See that the books, reports, statements, certificates and all other documents and records of the Corporation required by statute are properly kept and filed; and

(f)    In general, perform all duties incident to the office of Secretary and such other duties as are given to him by these By-Laws, or as from time to time may be assigned to him by the Board of Directors or the President.

Section 8. - Assistant Secretaries

Whenever requested by or in the absence or disability of the Secretary, the Assistant Secretary designated by the Secretary (or in the absence of such designation, the Assistant Secretary designated by the Board of Directors) shall perform all the duties of the Secretary, and when so acting shall have all the powers of, and be subject to all the restrictions upon, the Secretary.

Section 9. - Treasurer

The Treasurer shall:

(a)    Have charge of and supervision over and be responsible for the funds, securities, receipts and disbursements of the Corporation;

(b)     Cause the monies and other valuable effects of the Corporation to be deposited in the name and to the credit of the Corporation in such banks or trust companies as the Board of Directors may select; or as may be selected by any officer or officers or agent or agents authorized so to do by the Board of Directors;

(c)     Cause the funds of the Corporation to be disbursed by checks or drafts, with such signatures as may be authorized by the Board of Directors, upon the authorized depositories of the Corporation, and cause to be taken and preserved proper vouchers for all monies disbursed;

(d)     Render to the President or the Board of Directors, whenever requested, a statement of the financial condition of the Corporation and all of his transactions as Treasurer; and render a full financial report at the annual meeting of the stockholders if called upon to do so;

(e)     Keep the books of account of all the business and transactions of the Corporation;

(f)     Be empowered to require from all officers or agents of the Corporation reports or statements giving such information as he may desire with respect to any and all financial transactions of the Corporation; and

(g)     In general, perform all duties incident to the office of Treasurer and such other duties as are given to him by these By-Laws or as from time to time may be assigned to him by the Board of Directors or the President.

## Section 10. - Assistant Treasurers

Whenever requested by or in the absence or disability of the Treasurer, the Assistant Treasurer designated by the Treasurer (or in the absence of such designation, the Assistant Treasurer designated by the Board of Directors) shall perform all the duties of the Treasurer, and when so acting, shall have all the powers of, and be subject to all the restrictions upon, the Treasurer.

## Section 11. - Subordinate Officers and Agents

The Board of Directors may from time to time appoint other officers and agents as it may deem necessary or advisable to hold office for such period, have such authority and perform such duties as the Board of Directors may from time to time determine.  The Board of Directors may delegate to any officer or agent the power to appoint any such subordinate officers or agents, and to prescribe their respective terms of office, authorizations and duties.

## Section 12. - Salaries

The salaries or other compensation of the officers shall be fixed from time to time by the Board of Directors, and no officer shall be prevented from receiving such salary or any

11

compensation by reason of the fact that he is also a director of the Corporation. The Board of Directors may delegate to any officer or agent the power to fix from time to time the salaries or other compensation of officers or agents appointed in accordance with the provisions of Section 11 of this Article IV.

## Section 13. - Reimbursements

Any payments made to an officer or other employee of the Corporation, such as salary, commission, interest or rent, or entertainment expense incurred by him, which shall be disallowed in whole or in part as a deductible expense by the Internal Revenue Service, shall be reimbursed by such officer or other employee of the Corporation to the full extent of such disallowance. It shall be the duty of the stockholders to enforce payment of each such amount disallowed. In lieu of payment by the officer or other employee, subject to the determination of the stockholders, proportionate amounts may be withheld from his future compensation payments until the amount owed to the Corporation has been recovered.

## Section 14. - Sureties and Bonds

In case the Board of Directors shall so require, any officer or agent of the Corporation shall execute to the Corporation a bond in such sum and with such surety or sureties as the Board of Directors may direct, conditioned upon the faithful performance of his duties to the Corporation, including responsibility for negligence and for the accounting for all property, funds or securities of the Corporation which may come into his hands.

## ARTICLE V - SHARES OF STOCK

## Section 1. - Certificates of Stock

(a)     Each stockholder is entitled to certificates which represent and certify the shares of stock he holds in the Corporation. Each stock certificate shall include on its face the name of the Corporation and that it is organized under the laws of the Commonwealth of Virginia, the name of the stockholder and the class of stock and number of shares and the designation of the series, if any, represented by the certificate and be in such form, not inconsistent with law or the Certificate of Incorporation, as shall be approved by the Board of Directors or any officer or officers designated for such purpose by resolution of the Board of Directors. Each certificate of stock of the Corporation shall be numbered and shall be entered in the books of the Corporation as they are issued. They shall exhibit the holder's name and the number of shares, and shall be signed by (i) the President or a Vice-President, and (ii) the Secretary or Treasurer, or any Assistant Secretary or Assistant Treasurer, and bear the corporate seal. The signatures may be either manual or facsimile signatures and the seal may be either facsimile or any other form of seal. A certificate is valid and may be issued whether or not an officer who signed it is still an officer when it is issued.

12

(b)      There shall be maintained a stock ledger of the Corporation, on which shall be entered, at the time of the issuance of each share, the number of the certificate issued, the kind of certificate issued, the name of the person owning the shares represented thereby, the number of such shares, and the date of issuance thereof.  Every certificate exchanged or returned to the Corporation shall be marked "cancelled" with the date of cancellation.

(c)      The Board of Directors shall have power and authority to make such rules and regulations as it may deem expedient concerning the issue, transfer and registration of certificates of stock; and may appoint transfer agents and registrars thereof.  The duties of transfer agent and registrar may be combined.

## Section 2. - Lost or Destroyed Certificates

The holder of any shares of stock of the Corporation shall immediately notify the Corporation of any loss or destruction of the certificate representing the same.  The Corporation may issue a new certificate in the place of any certificate theretofore issued by it alleged to have been lost or destroyed, and the Board of Directors may require the owner of the lost or destroyed certificate, or his legal representatives, to give the Corporation a bond in such sum as the Board may direct, and with such surety or sureties as may be satisfactory to the Board, to indemnify the Corporation against any claim that may be made against it on account of the alleged loss or destruction of any such certificate.  A new certificate may be issued without requiring any bond when, in the judgment of the Board of Directors, it is proper so to do.

## Section 3. - Transfers of Shares

(a)      Transfers of shares of the capital stock of the Corporation shall be made on the transfer books of the Corporation by the holder of record thereof, in person or by his duly authorized attorney, upon surrender and cancellation of the certificate or certificates representing such shares.

(b)      The Corporation shall be entitled to treat the holder of record of any share or shares of stock as the absolute owner thereof for all purposes and, accordingly, shall not be bound to recognize any legal, equitable or other claim to, or interest in such share or shares on the part of any other person, whether or not they shall have express or other notice thereof, except as otherwise expressly provided by law.

## Section 4. - Closing of Transfer Books

The Board of Directors may set a record date or direct that the stock transfer books be closed for a stated period for the purpose of making any proper determination with respect to stockholders, including which stockholders are entitled to notice of a meeting, vote at a meeting, receive a dividend, or be allotted other rights.  The record date may not be more than seventy (70) days before the date on which the action requiring the determination will be taken; the transfer

books may not be closed for a period longer than twenty (20) days; and, in the case of a meeting of stockholders, the record date of the closing of the transfer books shall be at least ten (10) days before the date of the meeting.

Section 5. - Agreements

Whenever two or more stockholders shall enter into a written agreement respecting their shares of stock in the Corporation, and shall deposit such agreement with the Corporation, the Board of Directors shall have the power to provide by resolution that the shares of capital stock owned by the signatory stockholders shall be transferable only in accordance with the provisions of such agreement, and may direct that a reference to such agreement be endorsed upon every certificate of stock affected thereby.

## ARTICLE VI - DIVIDENDS

Subject to applicable law, dividends may be declared and paid out of any funds available therefor, as often, in such amounts, and at such time or times as the Board of Directors may determine.

## ARTICLE VII - EXECUTION OF INSTRUMENTS

All checks, drafts, bills of exchange, acceptances, bonds, endorsements, notes or other obligations, or evidences of indebtedness of the Corporation, and all deeds, mortgages, indentures, bills of sale, conveyances, endorsements, assignments, transfers, stock powers or other instruments of transfer, contracts, agreements, dividend or other orders, powers of attorney, proxies, waivers, consents, returns, reports, certificates, demands, notices or documents, and other instruments or rights of any nature, may be signed, executed, verified, acknowledged and delivered by such officers (whether or not officers, agents or employees of the Corporation) and in such manner as from time to time may be determined by the Board of Directors.

## ARTICLE VIII - FISCAL YEAR

The fiscal year of the Corporation shall be fixed by the Board of Directors from time to time as the needs of the corporate business require.

## ARTICLE IX - CORPORATE SEAL

The corporate seal shall be circular in form, and shall bear the name of the Corporation, the words "Corporate Seal", and words and figures denoting its organization under the laws of this State, and the year thereof, and otherwise shall be in such form as shall be approved from time to time by the Board of Directors.

## ARTICLE X - AMENDMENTS

All By-Laws of the Corporation shall be subject to alteration or repeal, and new By-Laws may be made, by the affirmative vote of stockholders holding in person or by proxy a majority of all votes entitled to be cast at the meeting at which a quorum shall be present, given at any annual or special meeting, the notice or waiver of notice of which shall have summarized or set forth in full the proposed amendment, unless a higher percentage of votes shall be required by the Articles of Incorporation.

## ARTICLE XI - INDEMNITY

Any person or his personal or other legal representative who is made a party to any action, suit or proceeding, by reason of the fact that he is or was a director, officer, partner, employee, agent, or trustee of the Corporation, or of any corporation, joint venture partnership or employee benefit plan in which he served as such at the request of the Corporation, shall be indemnified by the Corporation against the reasonable expenses, including attorneys' fees, actually and necessarily incurred by him in connection with the defense and/or settlement of such action, suit or proceeding, whether civil, criminal, administrative or investigative, or in connection with any appeal therein, except in relation to matters as to which it shall be adjudged in such action, suit or proceeding, or in connection with any appeal therein that such person did not act in good faith and did not reasonably believe in the case of conduct in a director's official capacity with the Corporation, that such conduct was in the best interests of the Corporation and in all other cases that the conduct was at least not opposed to the best interests of the Corporation and in the case of criminal proceedings, had no reasonable cause to believe that such conduct was unlawful. No indemnification shall be permitted where a person is charged with improperly benefiting himself at the expense of the Corporation and in which he adjudged so liable. Such indemnity shall also include judgments, penalties, fines, and settlements incurred by such a person in such proceeding, unless in the nature of a proceeding by or in the right of the Corporation. The foregoing right of indemnification shall not be deemed exclusive of any other rights to which an officer or director or employee may be entitled by law apart from the provisions of this Section.

Indemnification shall be mandatory with respect to a person who has been successful on the merits or otherwise in the defense of such a proceeding or if a court so determines. In all other cases, the entitlement to and amount of indemnity to which any officer or any director may be entitled shall be determined by a majority of the uninterested Board of Directors, except that in any case where there is no disinterested majority of the Board available, the amount shall be fixed by special legal counsel appointed for such purpose or, the stockholders. Any such indemnity shall be reported to the stockholders with the notice of the next meeting thereof. No indemnification shall be permitted in respect to any proceeding charging improper personal benefit to such director, officer or employee and who was adjudged liable on the basis that personal benefit was improperly received.

15

## ARTICLE XII - VOTING UPON SHARES IN OTHER CORPORATIONS

Stock of other corporations or associations, registered in the name of the Corporation, may be voted by the President, a Vice-President, or a proxy appointed by either of them.  The Board of Directors, however, may by resolution appoint another person to vote such shares, in which case such person shall be entitled to vote such shares upon the production of a certified copy of such resolution.

L:\CLIENTS\H\Ho.Daniel\UNVA.001\621 EDI By Laws.doc



THEODORE V. MORRISON, JR.
CHAIRMAN

MARK C. CHRISTIE
COMMISSIONER

JUDITH WILLIAMS JAGDMANN
COMMISSIONER

JOEL H. PECK
CLERK OF THE COMMISSION
P.O. BOX 1197
RICHMOND, VIRGINIA 23218-1197

**COMMONWEALTH OF VIRGINIA**

STATE CORPORATION COMMISSION
Office of the Clerk

The attached documents are "the best available" from microfilm. The original documents submitted for filing were not suitable for microfilming.

Tyler Building, 1300 East Main Street, Richmond, VA 23219-3630
Clerk's Office (804) 371-9733 or (866) 722-2551 (toll-free in Virginia) www.scc.virginia.gov/division/clk
Telecommunications Device for the Deaf-TDD/Voice: (804) 371-9206

SCC619
(09/96)

# GUIDE FOR ARTICLES OF INCORPORATION
## OF

_University of Northern Virginia Inc._

The undersigned, pursuant to Chapter 9 of Title 13.1 of the Code of Virginia, state(s) as follows:

1. The name of the corporation is:

   _University of Northern Virginia, Inc._

2. The number (and classes, if any) of shares the corporation is authorized to issue is (are):

   **Number of shares authorized**          **Class(es)**

   _1,000_                                   _Common_

3. A. The corporation's initial registered office address, which is the business address of the initial registered agent is:

   _973 Leesburg Pike_        _Vienna     Park_     VA   _22066_
   (number/street)                 (city or town)              (ZIP code)

   B. The registered office is physically located in the [ ] City or [ ] County of
   _Fairfax_

4. A. The name of the corporation's initial registered agent is:
   _Daniel Ho_

   B. The initial registered agent is (mark appropriate box):
   (1)     An individual who is a resident of Virginia and
   [ ✓ ] an initial director of the corporation
   [ ] a member of the Virginia State Bar
   **OR**
   (2) [ ] a professional corporation or professional limited liability company of attorneys registered under Section 54.1-3902, Code of Virginia

5. The NAMES and ADDRESSES of the initial directors are:

   _Daniel Ho       973 Leesburg Pike                   VA 22066_

   _Tzyying Liu     973 Leesburg Pike         Falls VA 22066_

   _Stephen Hsing   ___ Machin_____

6. INCORPORATOR(S):

   _Daniel Ho_

   _____          _____
   Signature(s)                        Printed name(s)

COMMONWEALTH OF VIRGINIA
STATE CORPORATION COMMISSION

March 20, 1998

The State Corporation Commission has found the accompanying articles submitted on behalf of

UNIVERSITY OF NORTHERN VIRGINIA, INC.

to comply with the requirements of law, and confirms payment of all related fees.

Therefore, it is ORDERED that this

CERTIFICATE OF INCORPORATION

be issued and admitted to record with the articles of incorporation in the Office of the Clerk of the Commission, effective March 20, 1998.

The corporation is granted the authority conferred on it by law in accordance with the articles, subject to the conditions and restrictions imposed by law.

STATE CORPORATION COMMISSION

By _____

Commissioner

CORPACPT
CIS20436
98-03-19-0008

FIRST ARTICLES OF RESTATEMENT
OF THE
ARTICLES OF INCORPORATION
OF
UNIVERSITY OF NORTHERN VIRGINIA, INC.

Pursuant to *Va. Code* § 13.1-711, University of Northern Virginia, Inc., files these Articles of Restatement, stating as follows:

1.    The name of the corporation is: University of Northern Virginia, Inc.

2.    The text of the *restated articles of incorporation* of the corporation is as follows:

FIRST AMENDED AND RESTATED
ARTICLES OF INCORPORATION
OF
UNIVERSITY OF NORTHERN VIRGINIA, INC.

### ARTICLE I. NAME

The name of the corporation is: University of Northern Virginia, Inc.

### ARTICLE II. PURPOSE

The purpose for which the Corporation is formed is to transact any or all lawful business, not required to be specifically stated in these Articles, for which corporations may be incorporated under the Virginia Stock Corporation Act as amended from time to time.

### ARTICLE III. AUTHORIZED SHARES; PREEMPTIVE RIGHTS; SHAREHOLDER ACTION WITHOUT MEETING

**Section 1      Authorized Shares**. The number of shares which the Corporation shall have authority to issue shall be Ten Million (10,000,000) shares of common stock with the par value of $0.01 each.

**Section 2.      No Preemptive Rights**. No holder of shares of any class or series of the Corporation shall have any preemptive or preferential right to purchase or subscribe to (i) any shares of any class or series of the Corporation, whether now or hereafter authorized; (ii) any warrants, rights, or options to purchase any such shares; or (iii) any securities or obligations convertible into any such shares or into warrants, rights, or options to purchase any such shares.

**Section 3.      Shareholder Action Without Meeting**. So long as the corporation is not a "public corporation" as defined in Va. Code § 13.1-657.E., as amended from time to time, at the time such action is taken, action required or permitted by the Virginia Stock Corporation Act to be taken at a shareholders meeting may be taken without a meeting and without prior notice, if the action is taken by shareholders who would be entitled to vote at a meeting of holders of outstanding shares having voting power to cast not less than the minimum number (or numbers,

in the case of voting by groups) of votes that would be necessary to authorize or take the action at a meeting at which all shareholders entitled to vote thereon were present and voted.

## ARTICLE IV. <u>REGISTERED OFFICE AND AGENT</u>

The registered office shall be located at c/o Cohen, Gettings & Dunham, P.C., 2200 Wilson Boulevard, Suite 800, Arlington, Virginia 22201 in Arlington County, Virginia and the name of the registered agent shall be Joel L. Dahnke, who is a resident of Virginia and a member of the Virginia State Bar, and whose address is the same as the address of the initial registered office.

## ARTICLE V. <u>DIRECTORS</u>

The number of directors and terms for which each director shall serve shall be as described in the By Laws of the Corporation, or any superseding written agreement of the shareholders that conforms with the Virginia Stock Corporation Act.

## ARTICLE VI. <u>INDEMNIFICATION OF DIRECTORS AND OFFICERS</u>

<u>Definitions</u>. In this Article:

"applicant" means the person seeking indemnification pursuant to this Article.

"expenses" includes counsel fees.

"liability" means the obligation to pay a judgment, settlement, penalty, fine, including any excise tax assessed with respect to an employee benefit plan, or reasonable expenses incurred with respect to a proceeding.

"party" includes an individual who was, is, or is threatened to be made a named defendant or respondent in a proceeding.

"proceeding" means any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative or investigative and whether formal or informal.

Section 1. <u>Limitation on Liability to Corporation</u>. In any proceeding brought by or in the right of the Corporation or brought by or on behalf of shareholders of the Corporation, no director or officer of the Corporation shall be liable to the Corporation or its shareholders for monetary damages with respect to any transaction, occurrence or course of conduct, whether prior or subsequent to the effective date of this Article, except for liability resulting from such person having engaged in willful misconduct or a knowing violation of the criminal law or any federal or state securities law.

- 2 -

Section 2.     <u>Indemnification of Directors and Officers</u>.  The Corporation shall indemnify (a) any person who was or is a party to any proceeding, including a proceeding brought by a shareholder in the right of the Corporation or brought by or on behalf of shareholders of the Corporation, by reason of the fact that he is or was a director or officer of the Corporation, or (b) any director or officer who is or was serving at the request of the Corporation as a director, trustee, partner or officer of another corporation, partnership, joint venture, trust, employee benefit plan or other enterprise, against any liability incurred by him in connection with such proceeding unless he engaged in willful misconduct or a knowing violation of the criminal law. A person is considered to be serving an employee benefit plan at the Corporation's request if his duties to the Corporation also impose duties on, or otherwise involve services by, him to the plan or to participants in or beneficiaries of the plan.  The Board of Directors is hereby empowered, by a majority vote of a quorum of disinterested Directors, to enter into a contract to indemnify any Director or officer in respect of any proceedings arising from any act or omission, whether occurring before or after the execution of such contract.

Section 3.     <u>Applicability</u>.  The provisions of this Article shall be applicable to all proceedings commenced after the adoption hereof by the shareholders of the Corporation, arising from any act or omission, whether occurring before or after such adoption.  No amendment or repeal of this Article shall have any effect on the rights provided under this Article with respect to any act or omission occurring prior to such amendment or repeal.  The Corporation shall promptly take all such actions, and make all such determinations, as shall be necessary or appropriate to comply with its obligation to make any indemnity under this Article and shall promptly pay or reimburse all reasonable expenses, including attorneys' fees, incurred by any such director or officer in connection with such actions and determinations or proceedings of any kind arising therefrom.

Section 4.     <u>No Presumptions</u>.  The termination of any proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not of itself create a presumption that the applicant did not meet the standard of conduct described in <u>Section 2 or 3</u> of this Article.

Section 5.     <u>Procedures for Determining Right to Indemnification</u>.  Any indemnification under <u>Section 3</u> of this Article (unless ordered by a court) shall be made by the Corporation only as authorized in the specific case upon a determination that indemnification of the applicant is proper in the circumstances because he has met the applicable standard of conduct set forth in <u>Section 3</u>.  The determination shall be made:

5.1 By the Board of Directors by a majority vote of a quorum consisting of Directors not at the time parties to the proceeding;

5.2 If a quorum cannot be obtained under subsection (a) of this Section, by majority vote of a committee duly designated by the Board of Directors (in which designation

- 3 -

Directors who are parties may participate), consisting solely of two or more Directors not at the time parties to the proceeding:

(a) By special legal counsel;

(b) Selected by the Board of Directors or its committee in the manner prescribed in subsection 6.1 or 6.2 of this Section; or

(c) If a quorum of the Board of Directors cannot be obtained under subsection 6.1 of this Section and a committee cannot be designated under subsection 6.2 of this Section, selected by majority vote of the full Board of Directors, in which selection Directors who are parties may participate; or

(d) By the shareholders, but shares owned by or voted under the control of Directors who are at the time parties to the proceeding may not be voted on the determination.

Any evaluation as to reasonableness of expenses shall be made in the same manner as the determination that indemnification is appropriate, except that if the determination is made by special legal counsel, such evaluation as to reasonableness of expenses shall be made by those entitled under subsection 6.3 of this Section 6 to select counsel.

Notwithstanding the foregoing, in the event there has been a change in the composition of a majority of the Board of Directors after the date of the alleged act or omission with respect to which indemnification is claimed, any determination as to indemnification and advancement of expenses with respect to any claim for indemnification made pursuant to this Article shall be made by special legal counsel agreed upon by the Board of Directors and the applicant. If the Board of Directors and the applicant are unable to agree upon such special legal counsel the Board of Directors and the applicant each shall select a nominee, and the nominees shall select such special legal counsel.

Section 6.    Reimbursement of Legal Expenses.

6.1 The Corporation may pay for or reimburse the reasonable expenses incurred by any applicant who is a party to a proceeding in advance of final disposition of the proceeding or the making of any determination under Section 3 of this Article if the applicant furnishes the Corporation:

(a) a written statement of his good faith belief that he has met the standard of conduct described in Section 3 of this Article; and

(b) a written undertaking, executed personally or on his behalf, to repay the advance if it is ultimately determined that he did not meet such standard of conduct.

- 4 -

6.2 The undertaking required by paragraph (ii) of subsection 7.1 of this Section shall be an unlimited general obligation of the applicant but need not be secured and may be accepted without reference to financial ability to make repayment.

6.3 Authorizations of payments under this Section shall be made by the persons specified in Section 6 of this Article.

Section 7.    Indemnification of Non-Directors or Officers.  The Board of Directors is hereby empowered, by majority vote of a quorum consisting of disinterested Directors, to cause the Corporation to indemnify or contract to indemnify any person not specified in Section 2 or 3 of this Article who was, is or may become a party to any proceeding, by reason of the fact that he is or was an employee or agent of the Corporation, or is or was serving at the request of the Corporation as director, officer, employee or agent of another corporation, partnership, joint venture, trust, employee benefit plan or other enterprise, to the same extent as if such person were specified as one to whom indemnification is granted in Section 3.  The provisions of Sections 4 through 7 of this Article shall be applicable to any indemnification provided hereafter pursuant to this Section 8.

Section 8.    Insurance.  The Corporation may purchase and maintain insurance to indemnify it against the whole or any portion of the liability assumed by it in accordance with this Article and may also procure insurance, in such amounts as the Board of Directors may determine, on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust, employee benefit plan or other enterprise, against any liability asserted against or incurred by him in any such capacity or arising from his status as such, whether or not the Corporation would have power to indemnify him against such liability under the provisions of this Article.

Section 9.    Indemnification Provisions Not Exclusive.  Every reference herein to directors, officers, employees or agents shall include former directors, officers, employees and agents and their respective heirs, executors and administrators.  The indemnification hereby provided and provided hereafter pursuant to the power hereby conferred by this Article on the Board of Directors shall not be exclusive of any other rights, to which any person may be entitled, including any right under policies of insurance that may be purchased and maintained by the Corporation or others, with respect to claims, issues or matters in relation to which the Corporation would not have the power to indemnify such person under the provisions of this Article.  Such rights shall not prevent or restrict the power of the Corporation to make or provide for any further indemnity, or provisions for determining entitlement to indemnity, pursuant to one or more indemnification agreements, bylaws, or other arrangements (including, without limitation, creation of trust funds or security interests funded by letters of credit or other means) approved by the Board of Directors (whether or not any of the directors of the Corporation shall be a party to or beneficiary of any such agreements, bylaws or arrangements); *provided, however,* that any provision of such agreements, bylaws or other arrangements shall not be

- 5 -

effective if and to the extent that it is determined to be contrary to this Article or applicable laws of the commonwealth of Virginia.

      Section 10.    Severability. Each provision of this Article shall be severable, and an adverse determination as to any such provision shall in no way affect the validity of any other provision.

DATED THIS 18th DAY OF FEBRUARY, 2001.

                                            Daniel F. Ho
                                            Provost

G:\WPDOCS\CORP\University of NoVa\Corporate Documents\Articles of Incorporation\September 2000 Amended and Restated v1.doc

- 6 -

CERTIFICATE REGARDING

FIRST ARTICLES OF RESTATEMENT

OF

UNIVERSITY OF NORTHERN VIRGINIA, INC.

University of Northern Virginia, Inc., files this certificate pursuant to Va. Code § 13.1-711.D., together with its First Articles of Restatement of the Articles of Incorporation of the corporation, stating as follows:

1.      The name of the corporation is: University of Northern Virginia, Inc.

2.      The corporation has amended and restated its articles of incorporation.

3.      The amended and restated articles of incorporation include amendments to the corporation's articles of incorporation that require shareholder approval.

4.      The text of the amended and restated articles of incorporation is set forth in the First Articles of Restatement, a copy of which is attached hereto and the original of which is filed herewith.

5.      The amended and restated articles of incorporation as set forth in the First Articles of Restatement was adopted and approved on February 18, 2001, by unanimous written consent of the shareholders of the corporation.

DATED THIS 18th DAY OF FEBRUARY, 2001.


_____[SEAL]
Daniel F. Ho
Provost

# COMMONWEALTH OF VIRGINIA
# STATE CORPORATION COMMISSION

April 17, 2001

The State Corporation Commission has found the accompanying articles submitted on behalf of

UNIVERSITY OF NORTHERN VIRGINIA, INC.

to comply with the requirements of law, and confirms payment of all related fees.

Therefore, it is ORDERED that this

## CERTIFICATE OF AMENDMENT AND RESTATEMENT

be issued and admitted to record with the articles of amendment in the Office of the Clerk of the Commission, effective April 17, 2001, at 11:21 AM.

The corporation is granted the authority conferred on it by law in accordance with the articles, subject to the conditions and restrictions imposed by law.

STATE CORPORATION COMMISSION

By _T.V. Morrison_

Commissioner

01-04-16-0110
AMENACPT
CIS0436

# Commonwealth of Virginia



## State Corporation Commission

*I Certify the Following from the Records of the Commission:*

The foregoing is a true copy of all documents filed in this office pertaining to the charter of
UNIVERSITY OF NORTHERN VIRGINIA, INC.

Nothing more is hereby certified.



*Signed and Sealed at Richmond on this Date:*
*January 2, 2008*

———————————————————————
Joel H. Peck, Clerk of the Commission

CIS0505

5

INFORMAL WRITTEN ACTION IN LIEU OF SPECIAL MEETING
OF THE MAJORITY STOCKHOLDERS OF
UNIVERSITY OF NORTHERN VIRGINIA, INC.

The undersigned, being the majority of the Stockholders of University of Northern Virginia, Inc. (the "Corporation"), in accordance with Sections 13.1-657 of the Corporations Title of the Code of Virginia and the Articles of Incorporation, does hereby take the actions set forth below in lieu of holding a special meeting of Stockholders, and to evidence its waiver of any right to dissent from such actions, does hereby consent, effective as of January 5, 2008, as follows:

WHEREAS, Education Dynamics, Inc. is the owner of 89.09% of the Corporation's outstanding shares of stock; and

WHEREAS, Education Dynamics, as the majority stockholder of the Corporation desires to remove all of the current members of the Board of Directors of the Corporation; and

WHEREAS, Education Dynamics, Inc., as the majority stockholder of the Corporation, has determined it to be in the best interests of the Corporation to repeal and amend the Corporation's current Bylaws.

**NOW THEREFORE BE IT HEREBY;**

RESOLVED, that all of the current members of the Board of Directors shall be removed from their position as a member of the Board of Directors effective as of the date set forth above, be and the same is hereby ratified and approved.

RESOLVED, that the following persons be nominated, qualified and duly elected to act as the Board of Directors for the Corporation until the next annual meeting of the stockholders or until their respective successors are duly elected and qualified:

> Daniel Ho
> Chiliang Chen
> Joy Cheng
> Roy C. Ho
> Ashok Rattehalli

RESOLVED, that the majority Stockholder has duly approved the Amended and Restated ByLaws attached hereto and incorporated by reference herein, be and the same are hereby declared to be the By Laws of the Corporation.

WITNESS its hand and seal effective as provided herein.

Education Dynamics, Inc.

Date signed: 12-21-07          By: _Daniel Ho_

Daniel Ho, President

L:\CLIENTS\H\Ho.Daniel\UNVA.001\581IWA.UNVA.Stockholders.doc

## Jacobs, Ronald M.

**From:** Joy Cheng [jcheng@businessobjects.com]

**Sent:** Wednesday, January 02, 2008 3:52 PM

**To:** Daniel Ho; Ashok Rattehalli; Ellick Chen; eiwong@milton.edu.hk; Paul Choe; Ron French; Serhat Akpinar; jack; liu_jnan@yahoo.com.cn; usa_gfi@yahoo.com

**Subject:** RE: Notice of Special Meeting

Please be advised that I don't wish to serve on this board.

*Regards,*
*Joy*

---

**From:** Daniel Ho [mailto:danholui@yahoo.com]
**Sent:** Wednesday, December 26, 2007 12:46 PM
**To:** Ashok Rattehalli; Ellick Chen; eiwong@milton.edu.hk; Joy Cheng; Paul Choe; Ron French; Serhat Akpinar; jack
**Subject:** Fw: Notice of Special Meeting


----- Forwarded Message ----
From: Millard S. Bennett <MBennett@steinsperling.com>
To: Daniel Ho <danholui@yahoo.com>
Cc: "Barnes III, Attison" <abarnes@wileyrein.com>; Darla J. McClure <DMcClure@SteinSperling.com>
Sent: Tuesday, December 25, 2007 10:10:45 PM
Subject: RE: Notice of Special Meeting

Daniel: I sent you the pdf and some suggested language on Monday. I am attaching it again for you to this e mail together with the suggested language. You were going to send this to each of them at the email addresses you provided. Please send this if you have not yet done so. The PDF is attached, that language I suggested was:

Please find attached an Amended Notice Amended Notice Of Special Meeting of The Board of Directors of the University Of Northern Virginia , Inc. Please review the attached Notice carefully. I wish to confirm that this meeting will be held at the law offices of Stein, Sperling, Bennett, De Jong, Driscoll & Greenfeig, P.A. at 25 West Middle Lane , Rockville , Maryland 20850 on ***December 27, 2007 beginning at 3:00 pm EST***. If you receive from me another notice by mail referring to a meeting originally scheduled for December 26th, please disregard that notice in favor of the attached Notice.


Millard S. Bennett, Esquire
Stein, Sperling, Bennett, et al.
25 West Middle Lane
Rockville , MD 20850
(301) 838-3203
mbennett@steinsperling.com
**************
This message contains information from the law firm of Stein, Sperling, et al. that may be privileged, confidential or otherwise protected from disclosure. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete the message. Thank you very much.
**************

---

**From:** Daniel Ho [mailto:danholui@yahoo.com]
**Sent:** Tuesday, December 25, 2007 5:15 PM
**To:** Millard S. Bennett
**Subject:** Re: Notice of Special Meeting

3/31/2008

The announcement e-mail, if you do not send it out yet.

Sent from my iPhone

On Dec 25, 2007, at 5:10 PM, "Millard S. Bennett" <MBennett@steinsperling.com> wrote:

Great!!!  Which E mail are they waiting for?

Millard S. Bennett, Esquire
Stein, Sperling, Bennett, et al.
25 West Middle Lane
Rockville , MD 20850
(301) 838-3203
mbennett@steinsperling.com
**************
This message contains information from the law firm of Stein, Sperling, et al. that may be privileged, confidential or otherwise protected from disclosure. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail, and delete the message. Thank you very much.
**************

**From:** Daniel Ho [mailto:danholui@yahoo.com]
**Sent:** Tuesday, December 25, 2007 9:29 AM
**To:** Millard S. Bennett
**Cc:** Barnes III, Attison; Darla J. McClure
**Subject:** Re: Notice of Special Meeting

Dear All:

I have called all directors and informed them about the meeting. They are now waiting for the e-mail.

Have a merry Christmas!

Daniel

Sent from my iPhone

On Dec 24, 2007, at 2:01 PM, "Millard S. Bennett" <MBennett@steinsperling.com> wrote:

Daniel:  Per our discussion, please send the attached PDF to each board member.  I would also suggest that you send them the text I have written below to go with your e mail.  Also, I wish you to confirm that you are going to call everyone TODAY...  Please keep accurate notes on who you speak to, and if you had to leave a message, note that as well.

Please find attached an Amended Notice Amended Notice Of Special Meeting of The Board of Directors of
the University Of Northern Virginia , Inc.   Please review the attached Notice carefully.  I wish to confirm that this meeting will be held at the law offices of Stein, Sperling, Bennett, De Jong, Driscoll & Greenfeig, P.A. at 25 West Middle Lane , Rockville , Maryland 20850 on **December 27, 2007 beginning at 3:00 pm EST**. If you receive from me another notice by mail referring to a meeting originally scheduled for December 26th, please disregard that notice in favor of the attached Notice.

3/31/2008

 Right-click here to download pictures. To help protect your privacy, Outlook
prevented automatic download of this picture from the Internet.
Millard S. Bennett, Attorney At Law
Stein, Sperling, Bennett, De Jong,
Driscoll & Greenfeig, P.C.
25 W. Middle lane,
Rockville, MD 20850


(301) 838-3203  direct telephone
(301) 354-8103  direct facsimile

mbennett@steinsperling.com

To ensure compliance with requirements imposed by the IRS, we inform you that, unless specifically
indicated otherwise, any tax advice contained in this communication (including any attachments) is
not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related
penalties under the Internal Revenue Code, or (ii) promoting, marketing, or recommending to another
party any tax-related matter addressed herein. In order for you to rely on written advice from Stein,
Sperling, Bennett, De Jong, Driscoll & Greenfeig, P.C. as protection from tax-related penalties,
please contact us to discuss whether we can provide you with a formal written opinion.

This message contains information from the law firm of Stein, Sperling, et al. that may be privileged,
confidential or otherwise protected from disclosure. Unless you are the addressee (or authorized to
receive for the addressee), you may not use, copy or disclose to anyone the message or any
information contained in the message. If you have received the message in error, please advise the
sender by reply e-mail, and delete the message. Thank you very much.

&lt;Dir Meeting Notice UNV.pdf&gt;

Looking for last minute shopping deals? Find them fast with Yahoo! Search.

Never miss a thing. Make Yahoo your homepage.

Never miss a thing. Make Yahoo your homepage.



# AMENDED AND RESTATED BYLAWS

## OF

## UNIVERSITY OF NORTHERN VIRGINIA, INC.

### ARTICLE I - PRINCIPAL OFFICE

The principal office of the Corporation shall be located in Arlington.

The Corporation may also maintain offices at such other places as the Board of Directors may from time to time determine or as the business of the Corporation may require.

### ARTICLE II - MEETINGS OF STOCKHOLDERS

#### Section 1. - Annual Meetings

The annual meeting of the stockholders of the Corporation shall be held on a day duly designated by the Board of Directors in the last month of the fiscal year of the Corporation, for the purpose of electing directors and transacting such other business as may properly come before the meeting.

#### Section 2. - Special Meetings

Special meetings of the stockholders may be called at any time for any purpose or purposes by the Chairman of the Board, the President or Vice-President and shall be called by the Secretary at the written request of a majority of the Board of Directors or upon the request of stockholders entitled to cast at least twenty percent (20%) of the vote entitled to be cast at such meeting. Such request shall state the purpose or purposes of the meeting and the matters proposed to be acted on at it. Business transacted at all special meetings of stockholders shall be confined to the purpose or purposes stated in the notice of the meeting.

#### Section 3. - Place of Meetings

All meetings of stockholders shall be held at the principal office of the Corporation, or at such other places as the Board of Directors may select, or as shall be designated in the respective notices or waivers of notice of such meetings, in or outside of the Commonwealth.

## Section 4. - Notice of Meetings

(a)     Except as otherwise provided by statute, written notice of each meeting of stockholders, whether annual or special, (and in case of a special meeting, or if required by law, also stating the purposes for which the meeting is called, stating the time when and place where it is to be held), shall be served either personally or by mail, not less than ten (10) nor more than sixty (60) days before the meeting, upon each stockholder of record entitled to vote at such meeting.  If mailed, such notice shall be directed to each such stockholder at his address as it appears on the stock books of the Corporation, unless he shall have previously filed with the Secretary of the Corporation written request that notices intended for him be mailed to some other address, in which case it shall be mailed to the address designated in such request.  Such notice shall be considered given to a stockholder if personally delivered to him, left at his residence or usual place of abode, or mailed to him at his address as it appears on the records of the Corporation.  Notice of a meeting to act on an amendment of the Articles of Incorporation, plan of merger or share exchange, sale of assets or dissolution shall be given not less than twenty-five (25) nor more than sixty (60) days before the meeting date.

(b)     Notice of any meeting need not be given to any person who may become a stockholder of record after the mailing of such notice and prior to the meeting, or to any stockholder who attends such meeting in person or by proxy, or to any stockholder who, in person or by attorney thereunto authorized, waives notice of any meeting in writing either before or after such meeting.  Notice of any adjourned meeting of stockholders need not be given, unless otherwise required by statute.

## Section 5. - Quorum

(a)     Except as otherwise provided herein, or by statute, or in the Articles of Incorporation (such Articles and any amendments thereof being hereinafter collectively referred to as the "Articles of Incorporation"), at all meetings of stockholders of the Corporation, the presence in person or by proxy of stockholders holding of record a majority of the total number of votes entitled to be cast at the meeting shall be necessary and sufficient to constitute a quorum for the transaction of any business.  The stockholders present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough stockholders to leave less than a quorum.

(b)     In the absence of a quorum at any annual or special meeting of stockholders, the stockholders present in person or by proxy and entitled to vote thereat by majority vote, may adjourn the meeting from time to time for a period not exceeding one hundred and twenty (120) days until a quorum shall be present.  At any such adjourned meeting at which a quorum is present, any business may be transacted which might have been transacted at the meeting as originally called if a quorum had been present.

2

Section 6. - Voting

(a)    Except as otherwise provided herein, or by statute, or by the Articles of Incorporation, the affirmative vote of stockholders representing a majority of all votes entitled to be cast at a meeting of stockholders at which a quorum shall be present with respect to a question or matter brought before such meeting shall be necessary and sufficient to decide such question or matter.

(b)    Except as otherwise provided by statute, or by the Articles of Incorporation, at each meeting of stockholders, each holder of record of stock of the Corporation entitled to vote thereat shall be entitled to one (1) vote for each share of stock held by him and registered in his name on the books of the Corporation.

(c)    Each stockholder entitled to vote may vote by proxy, provided, however, that the instrument authorizing such proxy to act shall have been executed in writing by the stockholder himself, or by his attorney-in- fact thereunto duly authorized in writing.  No proxy shall be valid after the expiration of eleven (11) months from the date of its execution, unless the person executing it shall have specified therein the length of time it is to continue in force.  Such instrument shall be exhibited to the Secretary at the meeting and shall be filed with the records of the Corporation.

(d)    Any share of stock, title to which is owned by a corporation or partnership, may be voted or other action taken with respect to such shares by the president or any vice-president of a corporation owning such stock, or by the managing partner of any partnership owning such stock, or by means of a proxy as provided for in subsection (c).  Prior to any meeting, whether annual or special, the proper representative of such entity owning shares of this Corporation as the case may be shall certify to the Secretary of the meeting that he is an officer or managing partner of such entity as the case may be and such appointment is in full force and effect.  This provision may be satisfied by a written certification which shall be issued by the corporate shareholder or partnership to the Secretary of this Corporation attesting to its current officers or managing partner and the status of their appointment.  Such certification shall be continuing in nature until the Secretary of this Corporation is otherwise notified to the contrary by a new certification, in writing.

3

## ARTICLE III - BOARD OF DIRECTORS

### Section 1. - Number, Election and Term of Office

(a)    The number of the directors of the Corporation shall be at least one (1) but no more than five (5) at all times. By vote of a majority of the entire Board of Directors, and a majority vote of the stockholders, the number of directors may be increased or decreased within this range. The minimum and maximum number of directors may be changed only by the stockholders. If any increase shall be deemed to create any vacancies in the Board, they shall be filled in the manner prescribed in Section 8 of this Article III. The tenure of office of a director shall not be affected by any decrease in the number of directors so made by the Board.

(b)    Until the first annual meeting of stockholders or until successors are duly elected and qualify, the Board of Directors shall consist of the persons named as such in the Articles of Incorporation. At the first annual meeting of stockholders and at each annual meeting thereafter, the stockholders shall elect directors to hold office until the next annual meeting or until their successors are elected and qualify.

### Section 2. - Duties, Powers and Committees

(a)    The Board of Directors shall be responsible for the control and management of the affairs, property and interests of the Corporation, and may exercise all powers of the Corporation except as expressly conferred upon or reserved to the stockholders by the Articles of Incorporation, by statute or these By-Laws.

(b)    The Board of Directors may create and appoint committees to assist the directors in the conduct of the Corporation's affairs.

### Section 3. - Annual and Regular Meetings - Notice

(a)    After each meeting of stockholders at which a Board of Directors shall have been elected, the Board of Directors so elected shall meet as soon as practicable for the purpose of organization and of other business; and in the event that no other time is designated by the stockholders, the Board of Directors shall meet one hour after the time for such stockholders' meeting or immediately following the close of such meeting, whichever is later, on the day of such meeting. Such first regular meeting shall be held at any place in or out of the Commonwealth of Virginia as may be designated by the stockholders, or in default of such designation at the place designated by the Board of Directors for such first regular meeting, or in default of such designation at the place of the holding of the immediately preceding meeting of stockholders.

(b)    The Board of Directors from time to time may provide by resolution for the holding of other regular meetings of the Board of Directors, and may fix the time and place thereof.

4

(c)      Notice of any regular meeting of the Board of Directors shall not be required to be given; provided, however, that in case the Board of Directors shall fix or change the time or place of any regular meeting, notice of such action shall be mailed promptly to each director who shall not have been present at the meeting at which such action was taken, addressed to him at his residence or usual place of business, unless such notice shall be waived in the manner set forth in paragraph (c) of Section 4 of this Article III.

Section 4. - Special Meetings - Notice

(a)      Special meetings of the Board of Directors shall be held whenever called by the President, or by one of the directors, at such time and place as may be specified in the respective notices or waivers of notice thereof.

(b)      Except as otherwise required by statute, notice of such special meetings shall be furnished by the Secretary to each director and shall be presumed delivered if mailed directly to each director, addressed to him at his residence or usual place of business, at least forty eight (48) hours before the time on which the meeting is to be held, or shall be sent to him at such place by telegram, radio or cable, or shall be delivered to him personally not later than the twenty four (24) hours before the time at which the meeting is to be held.

(c)      Notice of any special meeting shall not be required to be given to any director who shall attend such meeting in person or to any director who shall waive notice of such meeting in writing or by telegram, radio or cable, whether before or after the time of such meetings; and any such meeting shall be a legal meeting without any notice thereof having been given, if all the directors shall be present thereat. Notice of any adjourned meeting shall not be required to be given. Unless otherwise required by these By-Laws or by law, the notice of a special meeting need not state the purposes thereof.

Section 5. - Chairman

At all meetings of the Board of Directors, the Chairman of the Board shall preside or in the event no Chairman has previously been selected, then the President of the Corporation shall preside, or in his absence, a Chairman chosen by the directors for such meeting shall preside.

Section 6. - Quorum

(a)      At all meetings of the Board of Directors, the presence of a majority of the members of the Board shall be necessary and sufficient to constitute a quorum for the transaction of business, except as otherwise provided by law, by the Articles of Incorporation, or by these By-Laws.

5

(b)     A majority of the directors present at the time and place of any regular or special meeting, although less than a quorum, may adjourn the same by majority vote from time to time without further notice, until a quorum shall be present. At any such adjourned meeting at which a quorum shall be present, any business may be transacted which might have been transacted at the meeting as originally scheduled.

(c)     The recommendation or approval by the Board of Directors of any proposed corporate act shall not be required if the proposed corporate act is adopted by the unanimous consent of shareholders.

## Section 7. - Manner of Acting

(a)     At all meetings of the Board of Directors, each director present shall have one (1) vote, irrespective of the number of shares of stock, if any, which he may hold.

(b)     Except as otherwise provided by statute, by the Articles of Incorporation, or by these By-Laws, the action of a majority of the directors present at any meeting at which a quorum is present shall be the act of the Board of Directors.

(c)     Any action required or permitted to be taken at a meeting of the Board of Directors or of a committee of the Board may be taken without a meeting, if an unanimous written consent which sets forth the action is signed by each member of the Board or committee and filed with the minutes of the proceedings of the Board or committee.

(d)     Members of the Board of Directors may participate in a meeting by means of a conference telephone or similar communications equipment if all persons participating in the meeting can hear each other at the same time. Participation in a meeting by these means constitutes presence in person at a meeting.

## Section 8. - Vacancies

Any vacancy in the Board of Directors occurring by reason of the death, resignation, disqualification, removal or inability to act of any director, or otherwise excepting by reason of an increase in the number of directors, shall be filled for the unexpired portion of the term by a majority vote of the remaining directors, though less than a quorum, at any regular meeting or special meeting of the Board of Directors called for that purpose.

Similarly, and in the event that number of directors is increased pursuant to these By-laws, the additional directors so provided shall be elected by a majority of the entire Board of Directors already in office, and shall hold office until the next annual meeting of the stockholders and thereafter until his or their successors are duly elected and qualified.

Section 9. - Resignation

Any director may resign at any time by giving written notice to the Board of Directors, its Chairman, the President or the Secretary of the Corporation. Unless otherwise specified in such written notice, such resignation shall take effect upon receipt thereof by the Board of Directors or such officer, unless the notice specifies a later effective date, and the acceptance of such resignation shall not be necessary to make it effective.

Section 10. - Removal

Any director may be removed with or without cause at any time by the affirmative vote of a majority of the votes of stockholders entitled to be cast on the matter given at a special meeting of the stockholders called for the purpose, at which a quorum shall be present.

Section 11. - Compensation

By resolution of the Board of Directors a fixed sum and expenses, if any, for attendance at each regular or special meeting of the Board of Directors or of committees thereof, and other compensation for their services as such or on committees of the Board of Directors, may be paid to directors. A director who serves the Corporation in any other capacity also may receive compensation for such other services, pursuant to a resolution of the Directors.

Section 12. - Contracts

(a)    No contract or other transaction between this Corporation and any other corporation shall be impaired, affected or invalidated, nor shall any director be liable in any way by reason of the fact that any one or more of the directors of this Corporation is or are interested in, or is a director or officer, or are directors or officers of such other corporation, provided that such facts are disclosed or made known to the Board of Directors and approved in the manner set forth in Subsection (b) below.

(b)    Any director, personally and individually, may be a party to or may be interested in any contract or transaction of this Corporation, and no director shall be liable in any way by reason of such interest, provided that the fact of such interest be disclosed or made known to the Board of Directors, and provided that the Board of Directors shall authorize, approve or ratify such contract or transaction by the vote (not counting the vote of any such director) of a majority of uninterested directors, notwithstanding the presence of any such director at the meeting at which such action is taken. Such director or directors may be counted in determining the presence of a quorum at such meeting. This Section shall not be construed to impair or invalidate or in any way affect any contract or other transaction which would otherwise be valid under the law (common, statutory or otherwise applicable thereto.

7

### Section 13. - Executive Committee

The Board of Directors may appoint from among its members an Executive Committee and other committees composed of two or more directors and delegate to these committees in the intervals between meetings of the Board of Directors any of the powers of the Board of Directors, except the power to declare dividends or distributions on stock, approve any merger or share exchange which does not require stockholder approval, amend the By-Laws, issue stock or recommend to the stockholders any action which requires stockholder approval. Each committee may fix rules of procedure for its business. A majority of the members of a committee shall constitute a quorum for the transaction of business and the act of a majority of those present at a meeting at which a quorum is present shall be the act of the committee. The members of a committee present at any meeting, whether or not they constitute a quorum, may appoint a director to act in place of an absent member. The members of a committee may conduct any meeting thereof by conference telephone in accordance with the provisions of Section 7(d) above.

## ARTICLE IV - OFFICERS

### Section 1. - Number, Qualifications, Election and Term of Officers

(a)    The officers of the Corporation shall consist of a President, a Secretary, a Treasurer, and such number of Vice- Presidents, Assistant Secretaries and Assistant Treasurers as the Board of Directors may from time to time deem advisable. Any officer may, but is not required to, be a director of the Corporation. Any two or more offices, except the offices of President and Vice-President, may be held by the same person unless otherwise permitted by statute.

(b)    The officers of the Corporation shall be elected by the Board of Directors at the regular annual meeting of the Board following the annual meeting of stockholders.

(c)    Each officer shall hold office until the annual meeting of the Board of Directors next succeeding his election and until his successor shall have been elected and qualified, or until his death, resignation or removal.

### Section 2. - Resignation

Any officer may resign at any time by giving written notice of such resignation to the Board of Directors. Unless otherwise specified in such written notice, such resignation shall take effect upon receipt thereof by the Board of Directors or by such officer, and the acceptance of such resignation shall not be necessary to make it effective.

Section 3. - Removal

(a)    Any officer specifically designated in Section 1 of this Article IV may be removed, if the Board of Directors in its judgment finds that the best interests of the Corporation will be served, and a successor elected, by a majority vote of the Board of Directors, at a regular or special meeting.

(b)    The officers and agents appointed in accordance with the provisions of Section 11 of this Article IV may be removed, if the Board of Directors in its judgment finds that the best interests of the Corporation will be served by a majority vote of the Board of Directors, at a regular or special meeting, or by any superior officer or agent upon whom such power of removal shall have been conferred by the Board of Directors.

(c)    The removal of an officer or agent does not prejudice any of his contract rights.

Section 4. - Vacancies

(a)    A vacancy in any office specifically designated in Section 1 of this Article IV, by reason of death, resignation, inability to act, disqualification, removal, or any other cause, shall be filled for the unexpired portion of the term by a majority vote of the Board of Directors at any regular or special meeting.

(b)    In the case of a vacancy occurring in the office of an officer or agent appointed in accordance with the provisions of Section 11 of this Article IV, such vacancy may be filled by vote of the Board of Directors or by any officer or agent upon whom such power shall have been conferred by the Board of Directors.

Section 5. - President

The President shall be the chief executive officer of the Corporation and, subject to the direction of the Board of Directors, shall have general charge of the business affairs and property of the Corporation and general supervision over its officers and agents. He shall, if present, preside at all meetings of the Board of Directors and at all meetings of stockholders. In general, he shall perform all duties incident to the office of President, and shall see that all orders and resolutions of the Board of Directors are carried into effect.

Section 6. - Vice-President

During the absence or disability of the President, the Vice-President or, if there be more than one, the Vice-President designated by the Board of Directors as Executive Vice-President shall exercise all the functions of the President, and when so acting, shall have all the powers of and be subject to all the restrictions upon the President. Each Vice-President shall have such powers and discharge such duties as may be assigned to him from time to time by the Board of Directors.

9

Section 7. - Secretary

The Secretary shall:

    (a)    Record all of the proceedings of the meetings of the stockholders and Board of Directors in a book to be kept for that purpose;

    (b)    Cause all notices to be duly given in accordance with the provisions of these By-Laws and as required by statute;

    (c)    Be custodian of the records and of the seal of the Corporation, and cause such seal to be affixed to all certificates representing stock of the Corporation prior to their issuance, and to all instruments, the execution of which on behalf of the Corporation under its seal shall have been duly authorized in accordance with these By-Laws;

    (d)    If called upon to do so, prepare or cause to be prepared, and submit at each meeting of the stockholders, a certified list in alphabetical order of the names of the stockholders entitled to vote at such meeting, together with the number of shares of the respective class of stock held by each;

    (e)    See that the books, reports, statements, certificates and all other documents and records of the Corporation required by statute are properly kept and filed; and

    (f)    In general, perform all duties incident to the office of Secretary and such other duties as are given to him by these By-Laws, or as from time to time may be assigned to him by the Board of Directors or the President.

Section 8. - Assistant Secretaries

Whenever requested by or in the absence or disability of the Secretary, the Assistant Secretary designated by the Secretary (or in the absence of such designation, the Assistant Secretary designated by the Board of Directors) shall perform all the duties of the Secretary, and when so acting shall have all the powers of, and be subject to all the restrictions upon, the Secretary.

Section 9. - Treasurer

The Treasurer shall:

    (a)    Have charge of and supervision over and be responsible for the funds, securities, receipts and disbursements of the Corporation;

10

(b)     Cause the monies and other valuable effects of the Corporation to be deposited in the name and to the credit of the Corporation in such banks or trust companies as the Board of Directors may select; or as may be selected by any officer or officers or agent or agents authorized so to do by the Board of Directors;

(c)     Cause the funds of the Corporation to be disbursed by checks or drafts, with such signatures as may be authorized by the Board of Directors, upon the authorized depositories of the Corporation, and cause to be taken and preserved proper vouchers for all monies disbursed;

(d)     Render to the President or the Board of Directors, whenever requested, a statement of the financial condition of the Corporation and all of his transactions as Treasurer; and render a full financial report at the annual meeting of the stockholders if called upon to do so;

(e)     Keep the books of account of all the business and transactions of the Corporation;

(f)     Be empowered to require from all officers or agents of the Corporation reports or statements giving such information as he may desire with respect to any and all financial transactions of the Corporation; and

(g)     In general, perform all duties incident to the office of Treasurer and such other duties as are given to him by these By-Laws or as from time to time may be assigned to him by the Board of Directors or the President.

## Section 10. - Assistant Treasurers

Whenever requested by or in the absence or disability of the Treasurer, the Assistant Treasurer designated by the Treasurer (or in the absence of such designation, the Assistant Treasurer designated by the Board of Directors) shall perform all the duties of the Treasurer, and when so acting, shall have all the powers of, and be subject to all the restrictions upon, the Treasurer.

## Section 11. - Subordinate Officers and Agents

The Board of Directors may from time to time appoint other officers and agents as it may deem necessary or advisable to hold office for such period, have such authority and perform such duties as the Board of Directors may from time to time determine.  The Board of Directors may delegate to any officer or agent the power to appoint any such subordinate officers or agents, and to prescribe their respective terms of office, authorizations and duties.

## Section 12. - Salaries

The salaries or other compensation of the officers shall be fixed from time to time by the Board of Directors, and no officer shall be prevented from receiving such salary or any

11

compensation by reason of the fact that he is also a director of the Corporation. The Board of Directors may delegate to any officer or agent the power to fix from time to time the salaries or other compensation of officers or agents appointed in accordance with the provisions of Section 11 of this Article IV.

### Section 13. - Reimbursements

Any payments made to an officer or other employee of the Corporation, such as salary, commission, interest or rent, or entertainment expense incurred by him, which shall be disallowed in whole or in part as a deductible expense by the Internal Revenue Service, shall be reimbursed by such officer or other employee of the Corporation to the full extent of such disallowance. It shall be the duty of the stockholders to enforce payment of each such amount disallowed. In lieu of payment by the officer or other employee, subject to the determination of the stockholders, proportionate amounts may be withheld from his future compensation payments until the amount owed to the Corporation has been recovered.

### Section 14. - Sureties and Bonds

In case the Board of Directors shall so require, any officer or agent of the Corporation shall execute to the Corporation a bond in such sum and with such surety or sureties as the Board of Directors may direct, conditioned upon the faithful performance of his duties to the Corporation, including responsibility for negligence and for the accounting for all property, funds or securities of the Corporation which may come into his hands.

## ARTICLE V - SHARES OF STOCK

### Section 1. - Certificates of Stock

(a)    Each stockholder is entitled to certificates which represent and certify the shares of stock he holds in the Corporation. Each stock certificate shall include on its face the name of the Corporation and that it is organized under the laws of the Commonwealth of Virginia, the name of the stockholder and the class of stock and number of shares and the designation of the series, if any, represented by the certificate and be in such form, not inconsistent with law or the Certificate of Incorporation, as shall be approved by the Board of Directors or any officer or officers designated for such purpose by resolution of the Board of Directors. Each certificate of stock of the Corporation shall be numbered and shall be entered in the books of the Corporation as they are issued. They shall exhibit the holder's name and the number of shares, and shall be signed by (i) the President or a Vice-President, and (ii) the Secretary or Treasurer, or any Assistant Secretary or Assistant Treasurer, and bear the corporate seal. The signatures may be either manual or facsimile signatures and the seal may be either facsimile or any other form of seal. A certificate is valid and may be issued whether or not an officer who signed it is still an officer when it is issued.

12

(b)    There shall be maintained a stock ledger of the Corporation, on which shall be entered, at the time of the issuance of each share, the number of the certificate issued, the kind of certificate issued, the name of the person owning the shares represented thereby, the number of such shares, and the date of issuance thereof. Every certificate exchanged or returned to the Corporation shall be marked "cancelled" with the date of cancellation.

(c)    The Board of Directors shall have power and authority to make such rules and regulations as it may deem expedient concerning the issue, transfer and registration of certificates of stock; and may appoint transfer agents and registrars thereof. The duties of transfer agent and registrar may be combined.

Section 2. - Lost or Destroyed Certificates

The holder of any shares of stock of the Corporation shall immediately notify the Corporation of any loss or destruction of the certificate representing the same. The Corporation may issue a new certificate in the place of any certificate theretofore issued by it alleged to have been lost or destroyed, and the Board of Directors may require the owner of the lost or destroyed certificate, or his legal representatives, to give the Corporation a bond in such sum as the Board may direct, and with such surety or sureties as may be satisfactory to the Board, to indemnify the Corporation against any claim that may be made against it on account of the alleged loss or destruction of any such certificate. A new certificate may be issued without requiring any bond when, in the judgment of the Board of Directors, it is proper so to do.

Section 3. - Transfers of Shares

(a)    Transfers of shares of the capital stock of the Corporation shall be made on the transfer books of the Corporation by the holder of record thereof, in person or by his duly authorized attorney, upon surrender and cancellation of the certificate or certificates representing such shares.

(b)    The Corporation shall be entitled to treat the holder of record of any share or shares of stock as the absolute owner thereof for all purposes and, accordingly, shall not be bound to recognize any legal, equitable or other claim to, or interest in such share or shares on the part of any other person, whether or not they shall have express or other notice thereof, except as otherwise expressly provided by law.

Section 4. - Closing of Transfer Books

The Board of Directors may set a record date or direct that the stock transfer books be closed for a stated period for the purpose of making any proper determination with respect to stockholders, including which stockholders are entitled to notice of a meeting, vote at a meeting, receive a dividend, or be allotted other rights. The record date may not be more than seventy (70) days before the date on which the action requiring the determination will be taken; the transfer

13

books may not be closed for a period longer than twenty (20) days; and, in the case of a meeting of stockholders, the record date of the closing of the transfer books shall be at least ten (10) days before the date of the meeting.

Section 5. - Agreements

Whenever two or more stockholders shall enter into a written agreement respecting their shares of stock in the Corporation, and shall deposit such agreement with the Corporation, the Board of Directors shall have the power to provide by resolution that the shares of capital stock owned by the signatory stockholders shall be transferable only in accordance with the provisions of such agreement, and may direct that a reference to such agreement be endorsed upon every certificate of stock affected thereby.

## ARTICLE VI - DIVIDENDS

Subject to applicable law, dividends may be declared and paid out of any funds available therefor, as often, in such amounts, and at such time or times as the Board of Directors may determine.

## ARTICLE VII - EXECUTION OF INSTRUMENTS

All checks, drafts, bills of exchange, acceptances, bonds, endorsements, notes or other obligations, or evidences of indebtedness of the Corporation, and all deeds, mortgages, indentures, bills of sale, conveyances, endorsements, assignments, transfers, stock powers or other instruments of transfer, contracts, agreements, dividend or other orders, powers of attorney, proxies, waivers, consents, returns, reports, certificates, demands, notices or documents, and other instruments or rights of any nature, may be signed, executed, verified, acknowledged and delivered by such officers (whether or not officers, agents or employees of the Corporation) and in such manner as from time to time may be determined by the Board of Directors.

## ARTICLE VIII - FISCAL YEAR

The fiscal year of the Corporation shall be fixed by the Board of Directors from time to time as the needs of the corporate business require.

## ARTICLE IX - CORPORATE SEAL

The corporate seal shall be circular in form, and shall bear the name of the Corporation, the words "Corporate Seal", and words and figures denoting its organization under the laws of this State, and the year thereof, and otherwise shall be in such form as shall be approved from time to time by the Board of Directors.

14

## ARTICLE X - AMENDMENTS

All By-Laws of the Corporation shall be subject to alteration or repeal, and new By-Laws may be made, by the affirmative vote of stockholders holding in person or by proxy a majority of all votes entitled to be cast at the meeting at which a quorum shall be present, given at any annual or special meeting, the notice or waiver of notice of which shall have summarized or set forth in full the proposed amendment, unless a higher percentage of votes shall be required by the Articles of Incorporation.

## ARTICLE XI - INDEMNITY

Any person or his personal or other legal representative who is made a party to any action, suit or proceeding, by reason of the fact that he is or was a director, officer, partner, employee, agent, or trustee of the Corporation, or of any corporation, joint venture partnership or employee benefit plan in which he served as such at the request of the Corporation, shall be indemnified by the Corporation against the reasonable expenses, including attorneys' fees, actually and necessarily incurred by him in connection with the defense and/or settlement of such action, suit or proceeding, whether civil, criminal, administrative or investigative, or in connection with any appeal therein, except in relation to matters as to which it shall be adjudged in such action, suit or proceeding, or in connection with any appeal therein that such person did not act in good faith and did not reasonably believe in the case of conduct in a director's official capacity with the Corporation, that such conduct was in the best interests of the Corporation and in all other cases that the conduct was at least not opposed to the best interests of the Corporation and in the case of criminal proceedings, had no reasonable cause to believe that such conduct was unlawful. No indemnification shall be permitted where a person is charged with improperly benefiting himself at the expense of the Corporation and in which he adjudged so liable. Such indemnity shall also include judgments, penalties, fines, and settlements incurred by such a person in such proceeding, unless in the nature of a proceeding by or in the right of the Corporation. The foregoing right of indemnification shall not be deemed exclusive of any other rights to which an officer or director or employee may be entitled by law apart from the provisions of this Section.

Indemnification shall be mandatory with respect to a person who has been successful on the merits or otherwise in the defense of such a proceeding or if a court so determines. In all other cases, the entitlement to and amount of indemnity to which any officer or any director may be entitled shall be determined by a majority of the uninterested Board of Directors, except that in any case where there is no disinterested majority of the Board available, the amount shall be fixed by special legal counsel appointed for such purpose or, the stockholders. Any such indemnity shall be reported to the stockholders with the notice of the next meeting thereof. No indemnification shall be permitted in respect to any proceeding charging improper personal benefit to such director, officer or employee and who was adjudged liable on the basis that personal benefit was improperly received.

15

## ARTICLE XII - VOTING UPON SHARES IN OTHER CORPORATIONS

Stock of other corporations or associations, registered in the name of the Corporation, may be voted by the President, a Vice-President, or a proxy appointed by either of them. The Board of Directors, however, may by resolution appoint another person to vote such shares, in which case such person shall be entitled to vote such shares upon the production of a certified copy of such resolution.

L:\CLIENTS\H\Ho.Daniel\UNVA.001\621 UNVA By Laws.doc

# AMENDED AND RESTATED BYLAWS

## OF

## UNIVERSITY OF NORTHERN VIRGINIA, INC.

### ARTICLE I - PRINCIPAL OFFICE

The principal office of the Corporation shall be located in Arlington.

The Corporation may also maintain offices at such other places as the Board of Directors may from time to time determine or as the business of the Corporation may require.

### ARTICLE II - MEETINGS OF STOCKHOLDERS

#### Section 1. - Annual Meetings

The annual meeting of the stockholders of the Corporation shall be held on a day duly designated by the Board of Directors in the last month of the fiscal year of the Corporation, for the purpose of electing directors and transacting such other business as may properly come before the meeting.

#### Section 2. - Special Meetings

Special meetings of the stockholders may be called at any time for any purpose or purposes by the Chairman of the Board, the President or Vice-President and shall be called by the Secretary at the written request of a majority of the Board of Directors or upon the request of stockholders entitled to cast at least twenty percent (20%) of the vote entitled to be cast at such meeting. Such request shall state the purpose or purposes of the meeting and the matters proposed to be acted on at it. Business transacted at all special meetings of stockholders shall be confined to the purpose or purposes stated in the notice of the meeting.

#### Section 3. - Place of Meetings

All meetings of stockholders shall be held at the principal office of the Corporation, or at such other places as the Board of Directors may select, or as shall be designated in the respective notices or waivers of notice of such meetings, in or outside of the Commonwealth.

Section 4. - Notice of Meetings

(a)    Except as otherwise provided by statute, written notice of each meeting of stockholders, whether annual or special, (and in case of a special meeting, or if required by law, also stating the purposes for which the meeting is called, stating the time when and place where it is to be held), shall be served either personally or by mail, not less than ten (10) nor more than sixty (60) days before the meeting, upon each stockholder of record entitled to vote at such meeting.  If mailed, such notice shall be directed to each such stockholder at his address as it appears on the stock books of the Corporation, unless he shall have previously filed with the Secretary of the Corporation written request that notices intended for him be mailed to some other address, in which case it shall be mailed to the address designated in such request.  Such notice shall be considered given to a stockholder if personally delivered to him, left at his residence or usual place of abode, or mailed to him at his address as it appears on the records of the Corporation.  Notice of a meeting to act on an amendment of the Articles of Incorporation, plan of merger or share exchange, sale of assets or dissolution shall be given not less than twenty-five (25) nor more than sixty (60) days before the meeting date.

(b)    Notice of any meeting need not be given to any person who may become a stockholder of record after the mailing of such notice and prior to the meeting, or to any stockholder who attends such meeting in person or by proxy, or to any stockholder who, in person or by attorney thereunto authorized, waives notice of any meeting in writing either before or after such meeting.  Notice of any adjourned meeting of stockholders need not be given, unless otherwise required by statute.

Section 5. - Quorum

(a)    Except as otherwise provided herein, or by statute, or in the Articles of Incorporation (such Articles and any amendments thereof being hereinafter collectively referred to as the "Articles of Incorporation"), at all meetings of stockholders of the Corporation, the presence in person or by proxy of stockholders holding of record a majority of the total number of votes entitled to be cast at the meeting shall be necessary and sufficient to constitute a quorum for the transaction of any business.  The stockholders present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough stockholders to leave less than a quorum.

(b)    In the absence of a quorum at any annual or special meeting of stockholders, the stockholders present in person or by proxy and entitled to vote thereat by majority vote, may adjourn the meeting from time to time for a period not exceeding one hundred and twenty (120) days until a quorum shall be present.  At any such adjourned meeting at which a quorum is present, any business may be transacted which might have been transacted at the meeting as originally called if a quorum had been present.

2

## Section 6. - Voting

(a)    Except as otherwise provided herein, or by statute, or by the Articles of Incorporation, the affirmative vote of stockholders representing a majority of all votes entitled to be cast at a meeting of stockholders at which a quorum shall be present with respect to a question or matter brought before such meeting shall be necessary and sufficient to decide such question or matter.

(b)    Except as otherwise provided by statute, or by the Articles of Incorporation, at each meeting of stockholders, each holder of record of stock of the Corporation entitled to vote thereat shall be entitled to one (1) vote for each share of stock held by him and registered in his name on the books of the Corporation.

(c)    Each stockholder entitled to vote may vote by proxy, provided, however, that the instrument authorizing such proxy to act shall have been executed in writing by the stockholder himself, or by his attorney-in- fact thereunto duly authorized in writing.  No proxy shall be valid after the expiration of eleven (11) months from the date of its execution, unless the person executing it shall have specified therein the length of time it is to continue in force.  Such instrument shall be exhibited to the Secretary at the meeting and shall be filed with the records of the Corporation.

(d)    Any share of stock, title to which is owned by a corporation or partnership, may be voted or other action taken with respect to such shares by the president or any vice-president of a corporation owning such stock, or by the managing partner of any partnership owning such stock, or by means of a proxy as provided for in subsection (c).  Prior to any meeting, whether annual or special, the proper representative of such entity owning shares of this Corporation as the case may be shall certify to the Secretary of the meeting that he is an officer or managing partner of such entity as the case may be and such appointment is in full force and effect.  This provision may be satisfied by a written certification which shall be issued by the corporate shareholder or partnership to the Secretary of this Corporation attesting to its current officers or managing partner and the status of their appointment.  Such certification shall be continuing in nature until the Secretary of this Corporation is otherwise notified to the contrary by a new certification, in writing.

3

## ARTICLE III - BOARD OF DIRECTORS

### Section 1. - Number, Election and Term of Office

(a)    The number of the directors of the Corporation shall be at least one (1) but no more than five (5) at all times. By vote of a majority of the entire Board of Directors, and a majority vote of the stockholders, the number of directors may be increased or decreased within this range. The minimum and maximum number of directors may be changed only by the stockholders. If any increase shall be deemed to create any vacancies in the Board, they shall be filled in the manner prescribed in Section 8 of this Article III. The tenure of office of a director shall not be affected by any decrease in the number of directors so made by the Board.

(b)    Until the first annual meeting of stockholders or until successors are duly elected and qualify, the Board of Directors shall consist of the persons named as such in the Articles of Incorporation. At the first annual meeting of stockholders and at each annual meeting thereafter, the stockholders shall elect directors to hold office until the next annual meeting or until their successors are elected and qualify.

### Section 2. - Duties, Powers and Committees

(a)    The Board of Directors shall be responsible for the control and management of the affairs, property and interests of the Corporation, and may exercise all powers of the Corporation except as expressly conferred upon or reserved to the stockholders by the Articles of Incorporation, by statute or these By-Laws.

(b)    The Board of Directors may create and appoint committees to assist the directors in the conduct of the Corporation's affairs.

### Section 3. - Annual and Regular Meetings - Notice

(a)    After each meeting of stockholders at which a Board of Directors shall have been elected, the Board of Directors so elected shall meet as soon as practicable for the purpose of organization and of other business; and in the event that no other time is designated by the stockholders, the Board of Directors shall meet one hour after the time for such stockholders' meeting or immediately following the close of such meeting, whichever is later, on the day of such meeting. Such first regular meeting shall be held at any place in or out of the Commonwealth of Virginia as may be designated by the stockholders, or in default of such designation at the place designated by the Board of Directors for such first regular meeting, or in default of such designation at the place of the holding of the immediately preceding meeting of stockholders.

(b)    The Board of Directors from time to time may provide by resolution for the holding of other regular meetings of the Board of Directors, and may fix the time and place thereof.

(c)    Notice of any regular meeting of the Board of Directors shall not be required to be given; provided, however, that in case the Board of Directors shall fix or change the time or place of any regular meeting, notice of such action shall be mailed promptly to each director who shall not have been present at the meeting at which such action was taken, addressed to him at his residence or usual place of business, unless such notice shall be waived in the manner set forth in paragraph (c) of Section 4 of this Article III.

Section 4. - Special Meetings - Notice

(a)    Special meetings of the Board of Directors shall be held whenever called by the President, or by one of the directors, at such time and place as may be specified in the respective notices or waivers of notice thereof.

(b)    Except as otherwise required by statute, notice of such special meetings shall be furnished by the Secretary to each director and shall be presumed delivered if mailed directly to each director, addressed to him at his residence or usual place of business, at least forty eight (48) hours before the time on which the meeting is to be held, or shall be sent to him at such place by telegram, radio or cable, or shall be delivered to him personally not later than the twenty four (24) hours before the time at which the meeting is to be held.

(c)    Notice of any special meeting shall not be required to be given to any director who shall attend such meeting in person or to any director who shall waive notice of such meeting in writing or by telegram, radio or cable, whether before or after the time of such meetings; and any such meeting shall be a legal meeting without any notice thereof having been given, if all the directors shall be present thereat.  Notice of any adjourned meeting shall not be required to be given.  Unless otherwise required by these By-Laws or by law, the notice of a special meeting need not state the purposes thereof.

Section 5. - Chairman

At all meetings of the Board of Directors, the Chairman of the Board shall preside or in the event no Chairman has previously been selected, then the President of the Corporation shall preside, or in his absence, a Chairman chosen by the directors for such meeting shall preside.

Section 6. - Quorum

(a)    At all meetings of the Board of Directors, the presence of a majority of the members of the Board shall be necessary and sufficient to constitute a quorum for the transaction of business, except as otherwise provided by law, by the Articles of Incorporation, or by these By-Laws.

5

(b)    A majority of the directors present at the time and place of any regular or special meeting, although less than a quorum, may adjourn the same by majority vote from time to time without further notice, until a quorum shall be present. At any such adjourned meeting at which a quorum shall be present, any business may be transacted which might have been transacted at the meeting as originally scheduled.

(c)    The recommendation or approval by the Board of Directors of any proposed corporate act shall not be required if the proposed corporate act is adopted by the unanimous consent of shareholders.

Section 7. - Manner of Acting

(a)    At all meetings of the Board of Directors, each director present shall have one (1) vote, irrespective of the number of shares of stock, if any, which he may hold.

(b)    Except as otherwise provided by statute, by the Articles of Incorporation, or by these By-Laws, the action of a majority of the directors present at any meeting at which a quorum is present shall be the act of the Board of Directors.

(c)    Any action required or permitted to be taken at a meeting of the Board of Directors or of a committee of the Board may be taken without a meeting, if an unanimous written consent which sets forth the action is signed by each member of the Board or committee and filed with the minutes of the proceedings of the Board or committee.

(d)    Members of the Board of Directors may participate in a meeting by means of a conference telephone or similar communications equipment if all persons participating in the meeting can hear each other at the same time. Participation in a meeting by these means constitutes presence in person at a meeting.

Section 8. - Vacancies

Any vacancy in the Board of Directors occurring by reason of the death, resignation, disqualification, removal or inability to act of any director, or otherwise excepting by reason of an increase in the number of directors, shall be filled for the unexpired portion of the term by a majority vote of the remaining directors, though less than a quorum, at any regular meeting or special meeting of the Board of Directors called for that purpose.

Similarly, and in the event that number of directors is increased pursuant to these By-laws, the additional directors so provided shall be elected by a majority of the entire Board of Directors already in office, and shall hold office until the next annual meeting of the stockholders and thereafter until his or their successors are duly elected and qualified.

Section 9. - Resignation

Any director may resign at any time by giving written notice to the Board of Directors, its Chairman, the President or the Secretary of the Corporation. Unless otherwise specified in such written notice, such resignation shall take effect upon receipt thereof by the Board of Directors or such officer, unless the notice specifies a later effective date, and the acceptance of such resignation shall not be necessary to make it effective.

Section 10. - Removal

Any director may be removed with or without cause at any time by the affirmative vote of a majority of the votes of stockholders entitled to be cast on the matter given at a special meeting of the stockholders called for the purpose, at which a quorum shall be present.

Section 11. - Compensation

By resolution of the Board of Directors a fixed sum and expenses, if any, for attendance at each regular or special meeting of the Board of Directors or of committees thereof, and other compensation for their services as such or on committees of the Board of Directors, may be paid to directors. A director who serves the Corporation in any other capacity also may receive compensation for such other services, pursuant to a resolution of the Directors.

Section 12. - Contracts

(a)    No contract or other transaction between this Corporation and any other corporation shall be impaired, affected or invalidated, nor shall any director be liable in any way by reason of the fact that any one or more of the directors of this Corporation is or are interested in, or is a director or officer, or are directors or officers of such other corporation, provided that such facts are disclosed or made known to the Board of Directors and approved in the manner set forth in Subsection (b) below.

(b)    Any director, personally and individually, may be a party to or may be interested in any contract or transaction of this Corporation, and no director shall be liable in any way by reason of such interest, provided that the fact of such interest be disclosed or made known to the Board of Directors, and provided that the Board of Directors shall authorize, approve or ratify such contract or transaction by the vote (not counting the vote of any such director) of a majority of uninterested directors, notwithstanding the presence of any such director at the meeting at which such action is taken. Such director or directors may be counted in determining the presence of a quorum at such meeting. This Section shall not be construed to impair or invalidate or in any way affect any contract or other transaction which would otherwise be valid under the law (common, statutory or otherwise applicable thereto.

7

### Section 13. - Executive Committee

The Board of Directors may appoint from among its members an Executive Committee and other committees composed of two or more directors and delegate to these committees in the intervals between meetings of the Board of Directors any of the powers of the Board of Directors, except the power to declare dividends or distributions on stock, approve any merger or share exchange which does not require stockholder approval, amend the By-Laws, issue stock or recommend to the stockholders any action which requires stockholder approval. Each committee may fix rules of procedure for its business. A majority of the members of a committee shall constitute a quorum for the transaction of business and the act of a majority of those present at a meeting at which a quorum is present shall be the act of the committee. The members of a committee present at any meeting, whether or not they constitute a quorum, may appoint a director to act in place of an absent member. The members of a committee may conduct any meeting thereof by conference telephone in accordance with the provisions of Section 7(d) above.

### ARTICLE IV - OFFICERS

### Section 1. - Number, Qualifications, Election and Term of Officers

(a)    The officers of the Corporation shall consist of a President, a Secretary, a Treasurer, and such number of Vice- Presidents, Assistant Secretaries and Assistant Treasurers as the Board of Directors may from time to time deem advisable. Any officer may, but is not required to, be a director of the Corporation. Any two or more offices, except the offices of President and Vice-President, may be held by the same person unless otherwise permitted by statute.

(b)    The officers of the Corporation shall be elected by the Board of Directors at the regular annual meeting of the Board following the annual meeting of stockholders.

(c)    Each officer shall hold office until the annual meeting of the Board of Directors next succeeding his election and until his successor shall have been elected and qualified, or until his death, resignation or removal.

### Section 2. - Resignation

Any officer may resign at any time by giving written notice of such resignation to the Board of Directors. Unless otherwise specified in such written notice, such resignation shall take effect upon receipt thereof by the Board of Directors or by such officer, and the acceptance of such resignation shall not be necessary to make it effective.

8

## Section 3. - Removal

(a)    Any officer specifically designated in Section 1 of this Article IV may be removed, if the Board of Directors in its judgment finds that the best interests of the Corporation will be served, and a successor elected, by a majority vote of the Board of Directors, at a regular or special meeting.

(b)    The officers and agents appointed in accordance with the provisions of Section 11 of this Article IV may be removed, if the Board of Directors in its judgment finds that the best interests of the Corporation will be served by a majority vote of the Board of Directors, at a regular or special meeting, or by any superior officer or agent upon whom such power of removal shall have been conferred by the Board of Directors.

(c)    The removal of an officer or agent does not prejudice any of his contract rights.

## Section 4. - Vacancies

(a)    A vacancy in any office specifically designated in Section 1 of this Article IV, by reason of death, resignation, inability to act, disqualification, removal, or any other cause, shall be filled for the unexpired portion of the term by a majority vote of the Board of Directors at any regular or special meeting.

(b)    In the case of a vacancy occurring in the office of an officer or agent appointed in accordance with the provisions of Section 11 of this Article IV, such vacancy may be filled by vote of the Board of Directors or by any officer or agent upon whom such power shall have been conferred by the Board of Directors.

## Section 5. - President

The President shall be the chief executive officer of the Corporation and, subject to the direction of the Board of Directors, shall have general charge of the business affairs and property of the Corporation and general supervision over its officers and agents. He shall, if present, preside at all meetings of the Board of Directors and at all meetings of stockholders. In general, he shall perform all duties incident to the office of President, and shall see that all orders and resolutions of the Board of Directors are carried into effect.

## Section 6. - Vice-President

During the absence or disability of the President, the Vice-President or, if there be more than one, the Vice-President designated by the Board of Directors as Executive Vice-President shall exercise all the functions of the President, and when so acting, shall have all the powers of and be subject to all the restrictions upon the President. Each Vice-President shall have such powers and discharge such duties as may be assigned to him from time to time by the Board of Directors.

Section 7. - Secretary

The Secretary shall:

(a)    Record all of the proceedings of the meetings of the stockholders and Board of Directors in a book to be kept for that purpose;

(b)    Cause all notices to be duly given in accordance with the provisions of these By-Laws and as required by statute;

(c)    Be custodian of the records and of the seal of the Corporation, and cause such seal to be affixed to all certificates representing stock of the Corporation prior to their issuance, and to all instruments, the execution of which on behalf of the Corporation under its seal shall have been duly authorized in accordance with these By-Laws;

(d)    If called upon to do so, prepare or cause to be prepared, and submit at each meeting of the stockholders, a certified list in alphabetical order of the names of the stockholders entitled to vote at such meeting, together with the number of shares of the respective class of stock held by each;

(e)    See that the books, reports, statements, certificates and all other documents and records of the Corporation required by statute are properly kept and filed; and

(f)    In general, perform all duties incident to the office of Secretary and such other duties as are given to him by these By-Laws, or as from time to time may be assigned to him by the Board of Directors or the President.

Section 8. - Assistant Secretaries

Whenever requested by or in the absence or disability of the Secretary, the Assistant Secretary designated by the Secretary (or in the absence of such designation, the Assistant Secretary designated by the Board of Directors) shall perform all the duties of the Secretary, and when so acting shall have all the powers of, and be subject to all the restrictions upon, the Secretary.

Section 9. - Treasurer

The Treasurer shall:

(a)    Have charge of and supervision over and be responsible for the funds, securities, receipts and disbursements of the Corporation;

(b)    Cause the monies and other valuable effects of the Corporation to be deposited in the name and to the credit of the Corporation in such banks or trust companies as the Board of Directors may select; or as may be selected by any officer or officers or agent or agents authorized so to do by the Board of Directors;

(c)    Cause the funds of the Corporation to be disbursed by checks or drafts, with such signatures as may be authorized by the Board of Directors, upon the authorized depositories of the Corporation, and cause to be taken and preserved proper vouchers for all monies disbursed;

(d)    Render to the President or the Board of Directors, whenever requested, a statement of the financial condition of the Corporation and all of his transactions as Treasurer; and render a full financial report at the annual meeting of the stockholders if called upon to do so;

(e)    Keep the books of account of all the business and transactions of the Corporation;

(f)    Be empowered to require from all officers or agents of the Corporation reports or statements giving such information as he may desire with respect to any and all financial transactions of the Corporation; and

(g)    In general, perform all duties incident to the office of Treasurer and such other duties as are given to him by these By-Laws or as from time to time may be assigned to him by the Board of Directors or the President.

## Section 10. - Assistant Treasurers

Whenever requested by or in the absence or disability of the Treasurer, the Assistant Treasurer designated by the Treasurer (or in the absence of such designation, the Assistant Treasurer designated by the Board of Directors) shall perform all the duties of the Treasurer, and when so acting, shall have all the powers of, and be subject to all the restrictions upon, the Treasurer.

## Section 11. - Subordinate Officers and Agents

The Board of Directors may from time to time appoint other officers and agents as it may deem necessary or advisable to hold office for such period, have such authority and perform such duties as the Board of Directors may from time to time determine.  The Board of Directors may delegate to any officer or agent the power to appoint any such subordinate officers or agents, and to prescribe their respective terms of office, authorizations and duties.

## Section 12. - Salaries

The salaries or other compensation of the officers shall be fixed from time to time by the Board of Directors, and no officer shall be prevented from receiving such salary or any

11

compensation by reason of the fact that he is also a director of the Corporation. The Board of Directors may delegate to any officer or agent the power to fix from time to time the salaries or other compensation of officers or agents appointed in accordance with the provisions of Section 11 of this Article IV.

### Section 13. - Reimbursements

Any payments made to an officer or other employee of the Corporation, such as salary, commission, interest or rent, or entertainment expense incurred by him, which shall be disallowed in whole or in part as a deductible expense by the Internal Revenue Service, shall be reimbursed by such officer or other employee of the Corporation to the full extent of such disallowance. It shall be the duty of the stockholders to enforce payment of each such amount disallowed. In lieu of payment by the officer or other employee, subject to the determination of the stockholders, proportionate amounts may be withheld from his future compensation payments until the amount owed to the Corporation has been recovered.

### Section 14. - Sureties and Bonds

In case the Board of Directors shall so require, any officer or agent of the Corporation shall execute to the Corporation a bond in such sum and with such surety or sureties as the Board of Directors may direct, conditioned upon the faithful performance of his duties to the Corporation, including responsibility for negligence and for the accounting for all property, funds or securities of the Corporation which may come into his hands.

## ARTICLE V - SHARES OF STOCK

### Section 1. - Certificates of Stock

(a)    Each stockholder is entitled to certificates which represent and certify the shares of stock he holds in the Corporation. Each stock certificate shall include on its face the name of the Corporation and that it is organized under the laws of the Commonwealth of Virginia, the name of the stockholder and the class of stock and number of shares and the designation of the series, if any, represented by the certificate and be in such form, not inconsistent with law or the Certificate of Incorporation, as shall be approved by the Board of Directors or any officer or officers designated for such purpose by resolution of the Board of Directors. Each certificate of stock of the Corporation shall be numbered and shall be entered in the books of the Corporation as they are issued. They shall exhibit the holder's name and the number of shares, and shall be signed by (i) the President or a Vice-President, and (ii) the Secretary or Treasurer, or any Assistant Secretary or Assistant Treasurer, and bear the corporate seal. The signatures may be either manual or facsimile signatures and the seal may be either facsimile or any other form of seal. A certificate is valid and may be issued whether or not an officer who signed it is still an officer when it is issued.

12

(b)    There shall be maintained a stock ledger of the Corporation, on which shall be entered, at the time of the issuance of each share, the number of the certificate issued, the kind of certificate issued, the name of the person owning the shares represented thereby, the number of such shares, and the date of issuance thereof. Every certificate exchanged or returned to the Corporation shall be marked "cancelled" with the date of cancellation.

(c)    The Board of Directors shall have power and authority to make such rules and regulations as it may deem expedient concerning the issue, transfer and registration of certificates of stock; and may appoint transfer agents and registrars thereof. The duties of transfer agent and registrar may be combined.

Section 2. - Lost or Destroyed Certificates

The holder of any shares of stock of the Corporation shall immediately notify the Corporation of any loss or destruction of the certificate representing the same. The Corporation may issue a new certificate in the place of any certificate theretofore issued by it alleged to have been lost or destroyed, and the Board of Directors may require the owner of the lost or destroyed certificate, or his legal representatives, to give the Corporation a bond in such sum as the Board may direct, and with such surety or sureties as may be satisfactory to the Board, to indemnify the Corporation against any claim that may be made against it on account of the alleged loss or destruction of any such certificate. A new certificate may be issued without requiring any bond when, in the judgment of the Board of Directors, it is proper so to do.

Section 3. - Transfers of Shares

(a)    Transfers of shares of the capital stock of the Corporation shall be made on the transfer books of the Corporation by the holder of record thereof, in person or by his duly authorized attorney, upon surrender and cancellation of the certificate or certificates representing such shares.

(b)    The Corporation shall be entitled to treat the holder of record of any share or shares of stock as the absolute owner thereof for all purposes and, accordingly, shall not be bound to recognize any legal, equitable or other claim to, or interest in such share or shares on the part of any other person, whether or not they shall have express or other notice thereof, except as otherwise expressly provided by law.

Section 4. - Closing of Transfer Books

The Board of Directors may set a record date or direct that the stock transfer books be closed for a stated period for the purpose of making any proper determination with respect to stockholders, including which stockholders are entitled to notice of a meeting, vote at a meeting, receive a dividend, or be allotted other rights. The record date may not be more than seventy (70) days before the date on which the action requiring the determination will be taken; the transfer

13

books may not be closed for a period longer than twenty (20) days; and, in the case of a meeting of stockholders, the record date of the closing of the transfer books shall be at least ten (10) days before the date of the meeting.

Section 5. - Agreements

Whenever two or more stockholders shall enter into a written agreement respecting their shares of stock in the Corporation, and shall deposit such agreement with the Corporation, the Board of Directors shall have the power to provide by resolution that the shares of capital stock owned by the signatory stockholders shall be transferable only in accordance with the provisions of such agreement, and may direct that a reference to such agreement be endorsed upon every certificate of stock affected thereby.

## ARTICLE VI - DIVIDENDS

Subject to applicable law, dividends may be declared and paid out of any funds available therefor, as often, in such amounts, and at such time or times as the Board of Directors may determine.

## ARTICLE VII - EXECUTION OF INSTRUMENTS

All checks, drafts, bills of exchange, acceptances, bonds, endorsements, notes or other obligations, or evidences of indebtedness of the Corporation, and all deeds, mortgages, indentures, bills of sale, conveyances, endorsements, assignments, transfers, stock powers or other instruments of transfer, contracts, agreements, dividend or other orders, powers of attorney, proxies, waivers, consents, returns, reports, certificates, demands, notices or documents, and other instruments or rights of any nature, may be signed, executed, verified, acknowledged and delivered by such officers (whether or not officers, agents or employees of the Corporation) and in such manner as from time to time may be determined by the Board of Directors.

## ARTICLE VIII - FISCAL YEAR

The fiscal year of the Corporation shall be fixed by the Board of Directors from time to time as the needs of the corporate business require.

## ARTICLE IX - CORPORATE SEAL

The corporate seal shall be circular in form, and shall bear the name of the Corporation, the words "Corporate Seal", and words and figures denoting its organization under the laws of this State, and the year thereof, and otherwise shall be in such form as shall be approved from time to time by the Board of Directors.

14

## ARTICLE X - AMENDMENTS

All By-Laws of the Corporation shall be subject to alteration or repeal, and new By-Laws may be made, by the affirmative vote of stockholders holding in person or by proxy a majority of all votes entitled to be cast at the meeting at which a quorum shall be present, given at any annual or special meeting, the notice or waiver of notice of which shall have summarized or set forth in full the proposed amendment, unless a higher percentage of votes shall be required by the Articles of Incorporation.

## ARTICLE XI - INDEMNITY

Any person or his personal or other legal representative who is made a party to any action, suit or proceeding, by reason of the fact that he is or was a director, officer, partner, employee, agent, or trustee of the Corporation, or of any corporation, joint venture partnership or employee benefit plan in which he served as such at the request of the Corporation, shall be indemnified by the Corporation against the reasonable expenses, including attorneys' fees, actually and necessarily incurred by him in connection with the defense and/or settlement of such action, suit or proceeding, whether civil, criminal, administrative or investigative, or in connection with any appeal therein, except in relation to matters as to which it shall be adjudged in such action, suit or proceeding, or in connection with any appeal therein that such person did not act in good faith and did not reasonably believe in the case of conduct in a director's official capacity with the Corporation, that such conduct was in the best interests of the Corporation and in all other cases that the conduct was at least not opposed to the best interests of the Corporation and in the case of criminal proceedings, had no reasonable cause to believe that such conduct was unlawful. No indemnification shall be permitted where a person is charged with improperly benefiting himself at the expense of the Corporation and in which he adjudged so liable. Such indemnity shall also include judgments, penalties, fines, and settlements incurred by such a person in such proceeding, unless in the nature of a proceeding by or in the right of the Corporation. The foregoing right of indemnification shall not be deemed exclusive of any other rights to which an officer or director or employee may be entitled by law apart from the provisions of this Section.

Indemnification shall be mandatory with respect to a person who has been successful on the merits or otherwise in the defense of such a proceeding or if a court so determines. In all other cases, the entitlement to and amount of indemnity to which any officer or any director may be entitled shall be determined by a majority of the uninterested Board of Directors, except that in any case where there is no disinterested majority of the Board available, the amount shall be fixed by special legal counsel appointed for such purpose or, the stockholders. Any such indemnity shall be reported to the stockholders with the notice of the next meeting thereof. No indemnification shall be permitted in respect to any proceeding charging improper personal benefit to such director, officer or employee and who was adjudged liable on the basis that personal benefit was improperly received.

15

## ARTICLE XII - VOTING UPON SHARES IN OTHER CORPORATIONS

Stock of other corporations or associations, registered in the name of the Corporation, may be voted by the President, a Vice-President, or a proxy appointed by either of them. The Board of Directors, however, may by resolution appoint another person to vote such shares, in which case such person shall be entitled to vote such shares upon the production of a certified copy of such resolution.

L:\CLIENTS\H\Ho.Daniel\UNVA.001\621 UNVA By Laws.doc

16

## INFORMAL WRITTEN ACTION IN LIEU OF A SPECIAL MEETING
## OF THE BOARD OF DIRECTORS OF
### UNIVERSITY OF NORTHERN VIRGINIA, INC.

The undersigned, being all of the members of the Board of Directors of University of Northern Virginia, Inc. (the "Corporation"), in accordance with Sections 13.1-685 of the Corporations Title of the Code of Virginia, do hereby take the actions set forth below in lieu of holding a special meeting of Board of Directors, and to evidence their waiver of any right to dissent from such actions, do hereby consent, effective as of January 6, 2008, as follows:

WHEREAS, the Corporation registers thousands of students each year in the United States and overseas; and

WHEREAS, the main purpose of the Corporation is to foster academic growth and social integrity amongst its students; and

WHEREAS, as previously discussed during a meeting of the Board of Directors on December 27, 2007, it has come to the attention of the Board of Directors that certain individuals, specifically former members of the Board of Trustees and/or executives of the Corporation, appear to have breached their fiduciary and other duties and responsibilities to the Corporation by: (1) organizing the University of North America, LLC in order to unfairly compete with the Corporation; (2) attempting to take control of the Corporation's bank accounts, to remove Dr. Ho, as a signatory on the accounts, and to purportedly replace Dr. Ho with Claude Marty Martin, Joseph Drew, and Jacob deBruin; (3) writing unauthorized checks on the Corporation's bank accounts, including one for $95,742.51 to Mr. Martin's company and (4) causing the Board of Trustees to convene a special meeting in an attempt to suspend Dr. Ho from his position as Vice Chancellor and as an employee of the Corporation and to prevent Dr. Ho from access to the Corporation's premises and from preparing for the Winter Quadmester; and

WHEREAS, effective as of January 5, 2008, the majority Stockholder executed an Informal Written Action in Lieu of a Special Meeting of the Stockholders which removed all of the current members of the Board of Directors and duly elected new members to the Board of Directors and approved the Amended and Restated Bylaws; and

WHEREAS, the Board of Directors believes that it is in the best interests of the Corporation to abolish the Board of Trustees and relinquish any and all rights or authority previously granted to the Board of Trustees in order to resolve any disputes which have arisen amongst the Board of Directors and the Board of Trustees in an orderly and fair fashion so as to allow continuity of education for its students, effective as of the date set forth above; and

WHEREAS, for the same reasons, the Board of Directors believes that it is in the best interests of the Corporation to remove all of the current officers and executives

of the Corporation that may have had some involvement in the actions noted above, effective as of the date set forth above; and

**WHEREAS,** due to the Board of Directors recent engagement of the law firm of Wiley Rein and Attison L. Barnes, III, the Board of Directors has determined that the engagement of other law firms by either Bernard J.E. van Gils, Esquire and/or the Board of Trustees is duplicative of the matters being handled by Mr. Barnes and the law firm of Wiley Rein; and

## NOW THEREFORE BE IT HEREBY;

**RESOLVED,** that the Amended and Restated By Laws attached hereto and incorporated by reference herein are hereby adopted, ratified and approved.

**RESOLVED,** that the following persons are hereby removed from any and all offices, affiliations and/or positions held, contractual or otherwise, on behalf of the Corporation effective immediately on this January 6, 2008:

> Fay R. Avery
> Bernard J.E. van Gils, Esquire
> Jacob deBruin
> Claude Marty Martin
> Joseph Drew

**RESOLVED,** that the following persons shall be nominated, qualified and duly elected to act as the Officers for the Corporation until the next annual meeting of the Board of Directors or until their respective successors are duly elected and qualified:

> Daniel Ho      President/Treasurer
> Roy C. Ho      Secretary

**RESOLVED,** that Daniel Ho shall serve as the Acting Chancellor until such time as the Board of Directors has the opportunity to recruit, interview and appoint such possible candidates for the position, be and the same is hereby ratified and approved.

**RESOLVED,** that the abolishment of the Board of Trustees and the removal of each member of the Board of Trustees from such position with any and all rights and authority previously granted to them being extinguished, be and the same is hereby ratified and approved.

**RESOLVED,** that the former Board of Trustees resolution suspending Daniel Ho and removing him from the Corporation's business premises is hereby declared improper, void and is further rescinded in its entirety, nunc pro tunc, and Dr. Ho shall be permitted to return to his office and resume providing services to the

Corporation in his capacity as President, be and the same is hereby ratified and approved.

RESOLVED, that with the exception of the services provided by Scott Caulkins, Esquire and Lee Goodman, Esquire with respect to the ACICS litigation and matters relating thereto, the services of any and all other law firms and attorneys that were engaged by Bernard J.E. van Gils, Esquire and/or the Board of Trustees shall be hereby terminated until such time as the Board of Directors has a chance to review the work performed by such other law firms and/or attorneys to determine whether such services performed will be duplicative of the services being requested of Wiley Rein and Mr. Barnes, be and the same is hereby ratified and approved.

RESOLVED, that Fay R. Avery, Jacob deBruin, Joseph Drew and Claude Marty Martin shall hereby be removed as signatories on the Corporation's bank accounts at BB&T and the United Central Bank of Texas, and Roy C. Ho shall be added as a signatory on such corporate bank accounts, be and the same is hereby ratified and approved.

RESOLVED, that the Board of Directors hereby authorizes and empowers the following persons to conduct an investigation into the apparent breach of fiduciary duties by those certain individuals who were members of the Board of Trustees and/or executives of the Corporation relating to the organization of a competing entity called "University of North America, LLC;" and further authorizes such individuals to hire an independent investigator in order to assist them in such investigation, and further invites Fay R. Avery and Daniel Ho to participate should they desire to be a part of such investigation, be and the same is hereby ratified and approved:

Ashok Rattehalli
Chiliang Chen
Paul Eunho Choe

RESOLVED, that the Board of Directors hereby authorizes and empowers the same individuals identified in the prior paragraph to conduct a full and appropriate accounting relating to the operations of all domestic and international activities of the Corporation, and further authorizes such individuals to hire an independent accounting firm in order to assist them in such accounting, and hereby directs Daniel Ho to participate and cooperate as necessary with regard to such accounting and further invites Fay R. Avery and Daniel Ho to participate should they desire to be a part of such accounting, be and the same is hereby ratified and approved.

RESOLVED, that the Board of Directors, as a result of Ms. Joy Cheng expressing a desire not to sit on the Board of Directors at this time due to personal reasons, does not wish to fill the vacancy created by Ms. Cheng's resignation, be and the same is hereby ratified and approved.

**RESOLVED**, that Excaliber Security Services, a security firm with whom the Corporation currently contracts with to provide certain security services on the Manassas campus shall be notified that the Board of Directors has hereby appointed Daniel Ho to serve as President and Acting Chancellor of the Corporation and he is fully empowered to act on behalf of the Corporation with regard to all matters relating to Excaliber Security Services, including but not limited to suspension or termination of its services and replacement thereof with others; and that the Board of Trustees and/or the Chancellor with whom Excaliber Security Services previously may have communicated are no longer authorized to act in any capacity on behalf of the Corporation effective January 6, 2008, be and same is hereby ratified and approved.

**RESOLVED**, that any and all prior acts taken by the Board of Directors on November 17, 2007 are hereby declared valid and are hereby ratified and approved.

**WITNESS** our hands and seals effective as provided herein.


Daniel Ho, Director


Ashok Rattehalli, Director


Roy C. Ho, Director


Chiliang Chen, Director

L:\CLIENTS\H\Ho.Daniel\UNVA.001\621 UNVA Special Minutes BOD.2.doc

7

**University of Northern Virginia**
**Board of Directors Meeting**
**February 3, 2008**

3 p.m.  UNVA Annandale
Annandale, VA

In attendance:

Daniel Ho
Ellick Chen
Roy Ho
Ashok Rattehalli
Paul Choe

Call to Order                                      Daniel Ho, Chair

Voted to have Paul Choe as a Board of Directors, UNVA, member
- Daniel Ho motioned
- Roy seconded and motion carried.
- Paul Choe joined the meeting @3:10 p.m.

The following issues were discussed during the Board of Directors meeting on 2/3/2008.

Actions to against other companies:
- Dismiss Excalibur Security
- Write letter to the banks (BB&T, UCB, Faquier Bank)
  - Letter to the banks state that the account must be given full control back to Daniel Ho or to freeze the accounts until further notice.

Potential lawsuits material against the Board of Trustees:
- Marty Martin, Jill Martin, Gary Rushin, Joe Drew, Jim Kelly will all be charged with the following:
  - Breaching the contract of the trustee
    - Only responsible for academic decisions but have overstepped their boundaries into other matters (e.g. finances)
    - Required to serve at the will of the Board of directors
    - Negotiating contracts
    - Changing the University logo
  - Failure to meet fiduciary responsibilities
    - All were involved with or aware of the starting of University of North America, therefore, conflicts of interest
    - Failure to disclose the information about the new university
  - Operating under the false authority of a dissolved board of trustees; fraud
  - Misrepresentation of themselves as the board of trustees to other companies (e.g. banks and ACICS); fraud

- Marty Martin
  - In addition to the common charges listed above...
  - Contracting the services of his companies to the University, therefore conflict of interest.
  - Incorporation of the new university
  - Slander and libel towards UNVA in order to promote the new university

- Jill Martin
  - In addition to the common charges listed above...
  - Knows about her husband contracting University services to companies owned by him, therefore, additional breaches of interest.
  - She might be involved even more than just knowing the fact, probably helped plan activities too.

- Jim Kelly
  - Find out his official stand.  Did he knowingly approve of all the trustees decisions?
  - If so, all the common charges listed above
  - Might leave him out of the suit if he cooperates with Daniel Ho's defense.

- Joe Drew
  - In addition to the common charges listed above...
  - Used intimidation tactics against the Chinese employees
  - Discrimination against the Chinese employees

- Gary Rushin
  - Chairman of the Board, therefore greater responsibility and influence
  - Led the board into illegal actions
  - Conspiracy acts
  - Might be eligible to lose his CPA

Potential lawsuit material against "the five:"
- Fay Avery, Jack deBruin, Marty Martin, Bert van Gils, and Joe Drew will be collectively charged with:
  - Continuing to operate after explicit notice of termination, therefore, violating all terms stated on that letter.
  - Conspiracy to ruin UNVA's reputation in order to promote UNA
  - Conflicts of Interests
  - Slander and libel towards Daniel Ho in order to ruin his reputation causing the loss of money and new contract negotiations
  - Illegally obtaining control of UNVA accounts (as bank signers)
  - Embezzlement of University funds

- Fay Avery

- o Knowingly misrepresented himself and, under false authority, led to the status termination of over a hundred Asian F-1 visa students and their F-2 dependents.
- o Hired a company to physically ban Daniel Ho from his site of business
- o Stealing personal possessions from DH's office
- o Wrongful termination of contracts (e.g. Ashok's)
- o Negotiated the ACICS contract poorly and under false authority
  - • Attempt at the failure of UNVA to promote UNA
- o Personally removing DH from UNVA bank accounts
- o Negotiated a contract with the Jewish Community Center

- • Jack de Bruin
  - o Opening new bank account
  - o Might be eligible to lose his CPA

- • Marty Martin
  - o In addition to previously stated material…
  - o Personally incorporated UNA
  - o BB&T signature responsible for the money transfers
  - o Might go as far to say he owns Excalibur Securities because he has a habit of contracting his own companies
  - o Discovery in order to find all the companies he owns or is involved with in order to determine the full extent of his conflicts of interests

- • Bert van Gils
  - o Was hired as university counsel but gave bad advice in order to further the conspiracy.
  - o Breached ABA code of ethics
  - o Wrote the university by-laws
  - o Find out whether he knew his actions were illegal.
  - o If he did, he went with it anyway.
  - o If he did not, it shows incompetence.
  - o Brokered the ACICS settlement
  - o Might be eligible to be disbarred

- • Joe Drew
  - o Major interference with Prague activities

5PM 2/22/08

Paul knows of a security firm that is willing to assist in the transition of UNVA's security to a more reputable company.

Discussion:
- Involvement of the local police department
- Daniel Ho is the signer of the property lease.
- DTS Security company is to assist in the removal of Exaliber Security.

9

12PM

Discussed the pros and cons of attempting to remove the rogue security firm.
- Mark suggested that we might lose the sympathy of the judge and cause the reversal of a favorable decision.
- How long will it take for an emergency injunction?
- Local newspapers have already collected evidence and testimonies against the actions of Fay Avery.

Motion to have DTS and Wackenhut replace Excaliber.
- Paul seconded
- All are in favor and motion carried at 12:43PM

5PM

Discussion of a board resolution regarding the replacement of Excaliber.
- DTS will advise regarding the replacement procedure.
- Wackenhut will replace Excaliber.
- Resolution will be passed and copies will be sent to DTS, Anne from Wackenhut, and Board of Directors.

Discussion of contacting the local police.

*10*

University of Northern Virginia

Board of Directors Meeting

February 23, 2008

5:00 P.M.   UNVA Annandale
Annandale, VA 22003

In attendance:

Daniel Ho
Roy Ho
Ellick Chen
Paul Choe

Call to Order                          Daniel Ho, Chair

Approval of Minutes                    Ellick Chen

The minutes were approved as presented and without amendments.

New Business

-Discussion of hiring DTS Corporation and Wackenhut Security in order to remove the
following terminated UNVA employees and firms:
- Fay Avery
- Claude Marty Martin
- Bernard van Gils
- Jacob deBruin
- Joseph Drew
- Excaliber Security Services

-After about 30 minutes of discussion, the motion to contract the DTS Corporation and

Wackenhut Security was carried.

−Brief discussion regarding the expected time frame in which actions against trespassers will occur.



# UNIVERSITY OF NORTHERN VIRGINIA

10021 Balls Ford Road, Manassas, VA 20109                    www.unva.edu

(703) 392-0771    Fax (703) 392-6368

## FORMAL RESOLUTION PASSED BY THE BOARD OF DIRECTORS OF THE
## UNIVERSITY OF NORTHERN VIRGINIA, INC.

The following resolution was established and approved by the University of Northern Virginia, Inc's (henceforth, "UNVA") Board of Directors. The resolution was discussed and agreed upon on February 23, 2008 during a telephone conference call. The undersigned directors were present during the meeting and unanimously favored to carry the motion.

**WHEREAS,** the dissolved UNVA Board of Trustees is continuing to operate within the premises under false authority; and

**WHEREAS,** law abiding F-1 visa holding UNVA students have had their visa statuses wrongfully terminated and their livelihood jeopardized; and

**WHEREAS,** more law abiding F-1 visa holding UNVA students will continue to have their statuses wrongfully terminated; and

**WHEREAS,** the aforementioned actions were requested and executed by the former UNVA Board of Trustees; and

**WHEREAS,** furthermore the aforementioned actions were requested and executed without merit and despite documented evidence indicating it unlawful to do so; and

**WHEREAS,** the security firm, whose services were terminated effective January 6, 2008, known as Excaliber Security Services, continues to trespass, exhibit false authority, and intimidate UNVA employees and members of the Board of Directors; and

**WHEREAS,** any attempts at removal of the former UNVA Board of Trustees have been met with unwillingness to cooperate and hindrance by Excaliber Security Services; and

**THE WILL OF THE BOARD OF DIRECTORS BIDS THAT HENCEFORTH;**

**RESOLVED,** DTS Security and The Wackenhut Corporation have been commissioned to resume providing security services to UNVA's facilities, faculty, and students, beginning February 24, 2008.



Accredited by ACICS

7601 Little River Tnpk., G100, Annandale, VA 22003
13924 Braddock Rd., 3rd Floor, Centreville, VA 20120



# UNIVERSITY OF NORTHERN VIRGINIA

10021 Balls Ford Road, Manassas, VA 20109                    www.unva.edu
(703) 392-0771    Fax (703) 392-6368

**RESOLVED,** DTS Security and The Wackenhut Corporation will receive and execute instructions regarding UNVA solely from UNVA's Board of Directors.

**WITNESS** our hands and seals effective as provided herein.

_____
Daniel F. Ho, Director

_____
Eunho Paul Choe, Director

_____
Chiliang Ellick Chen, Director

_____
Roy C. Ho, Director

2/23/08



Accredited by ACICS

7601 Little River Tnpk., G100, Annandale, VA 22003
13924 Braddock Rd., 3rd Floor, Centreville, VA 20120



# UNIVERSITY OF NORTHERN VIRGINIA

10021 Balls Ford Road, Manassas, VA 20109                    www.unva.edu
(703) 392-0771    Fax (703) 392-6368

## FORMAL RESOLUTION PASSED BY THE BOARD OF DIRECTORS OF THE
## UNIVERSITY OF NORTHERN VIRGINIA, INC.

The following resolution was established and approved by the University of Northern Virginia, Inc's (henceforth, "UNVA") Board of Directors. The resolution was discussed and agreed upon on March 6, 2008. The undersigned directors were present during the meeting and unanimously favored to carry the motion.

**WHEREAS,** the dissolved UNVA Board of Trustees is attempting to discredit employees of UNVA and members of the UNVA Board of Directors ("board") with allegations of fraud to SEVP, ICE, DHS, as well as other agencies; and

**WHEREAS,** proper legal defense is needed in order to prevent further damage to UNVA's reputation and ability to foster an international student's academic program; and

**WHEREAS,** a legal presence (experienced in immigration law, international relations, and the ways of the involved government agencies) is needed to prepare a proper defense on behalf of the board against the allegations; and

**THE WILL OF THE BOARD OF DIRECTORS BIDS THAT HENCEFORTH;**

**RESOLVED,** Venable, LLP, a lawfirm residing at:

575 7th Street
Washington, DC 20004

has been chosen to represent the board in matters regarding international students, specifically SEVIS. However a broader coverage of related legal matters may be approved by the board at a later date.

**WITNESS** our hands and seals effective as provided herein.

_____                    _____
Daniel B. Ho, Director                        Eunho Paul Choe, Director

_____
Roy C. Ho, Director

Accredited by ACICS

7601 Little River Tnpk., G100, Annandale, VA 22003
13924 Braddock Rd., 3rd Floor, Centreville, VA 20120

12

3PM

Meeting with Lewis.

Board of Trustees vs. EDI et al. has been dismissed in court.

Lewis will be serving as general counsel for Daniel Ho and related individuals and entities, if approved by Daniel Ho.

13

**University of Northern Virginia**
**Board of Directors Meeting**
**March 24, 2008**

4 p.m. Annandale Campus
Annandale, VA

Attendance:

Daniel Ho
Roy Ho
Paul Choe

Call to Order                              Daniel Ho, Chair

Voted to have David Lee as a Board of Directors, UNVA, member
- Roy motioned
- Paul seconded and motion carried.
- @4:05PM David Lee joins the tele-conference

Discussion of the BoT cousel's decision to drop the BoT vs. Daniel Ho et al. suit.

Motion to engage Womble, Carlyle, Sandridge, and Rice to represent UNVA
Paul seconded and motion carried.

Motion to dismiss Weiley Rein a

s UNVA representatives
Paul seconded and motion carried.

Motion to empower Daniel Ho "waive conflict" if there comes a time when both his
pending lawsuits require cooperation.  He will decide the organization of lawsuits and the
law firms involved (W, C, S, & R and Stein Sperling).

Paul seconded and motion carried

Talked about the China Graduation class
- Make sure that to have documentation stating that the degrees were approved to
  the best of the BoD's ability due to the fact that many records are being withheld
  by the UNVA former employees.
- Decisions were based on the available resources and documents.  The five refuse
  to relinquish some of the records.
- David motion for 3 people quorum to proceed for future BoD meetings.
  - Details of all meetings must be sent to all BoD members immediately after
    the meeting if a member is not present.

- o Roy second and motion carried.

Daniel Ho moved to adjourn meeting.
- All in favor
- Meeting adjourned.

```
 1   V I R G I N I A
              IN THE CIRCUIT COURT OF FAIRFAX COUNTY
 2   - - - - - - - - - - - - - x
                                        :
 3   BOARD OF TRUSTEES FOR THE           :
     UNIVERSITY OF NORTHERN VIRGINIA, INC., :
 4                                       :
                  Plaintiff,             :
 5                                       :
          -vs-                           : Civil Action No.
 6                                       :   2008-297
     EDUCATION DYNAMICS, INC., et al,    :
 7                                       :
                  Defendants.            :
 8                                       :
     - - - - - - - - - - - - - x
 9
                                    Circuit Courtroom 5A
10                                  Fairfax County Courthouse
                                    Fairfax, Virginia
11
12                                  Friday, March 7, 2008
13
14           The above-entitled matter came on to be heard
15   before the HONORABLE DENNIS J. SMITH, Judge, in and for
16   the Circuit Court of Fairfax County, in the Courthouse,
17   Fairfax, Virginia, beginning at 12:07 o'clock p.m.
18               APPEARANCES:
19                  On Behalf of the Plaintiff:
20                      DAVID HIRSCH, ESQUIRE
21                  On Behalf of the Defendant:
22                      ALEXIA BOURGERIE, ESQUIRE
23
```

```
 1                   P R O C E E D I N G S

 2              (The Court Reporter was sworn by the Court.)

 3              MR. HIRSCH:  Good morning, Your Honor, David

 4     Hirsch on behalf of the board of trustees.  A couple of

 5     preliminary matters.  We have reached an agreed order or a

 6     briefing schedule and oral argument date on the motion to

 7     consolidate.  If I may hand that up, please.

 8              THE COURT:  Okay.

 9              MR. HIRSCH:  Your Honor, it's the point about

10     the motion to assign a judge.  We have filed that motion,

11     so I assume that you're just going to decide that in

12     chambers?

13              THE COURT:  Hold on a second, Mr. Hirsch, I'm

14     reading this order.  I can't agree with this order on the

15     scheduling.  I'm not going to continue something to March

16     14th and allow you to file something at 3:00 o'clock on

17     March 13th.

18              I'd like to have a life other than just

19     sitting around waiting for people to file things at 3:00

20     or 4:00 o'clock in the afternoon for me to read that

21     night.  It seems to make sense that we do this a little

22     differently and get these briefs in earlier or change the

23     date from March 14 to another date.
```

1    MR. HIRSCH:  I'd be amenable to changing the

2    date from March 14th and I think counsel wants to address

3    that, so I'll let her address that.

4    MS. MOSLEY:  I'm sorry, Your Honor, but before

5    that happens -- I'm Alexa Mosley for the Defendant, Daniel

6    Ho, and I have a motion here for pro hoc vice admission of

7    Alexia Bourgerie and an agreed order as well.

8    THE COURT:  Is there a full application filled

9    out?

10    MS. MOSLEY:  Her application is pending and it

11    has been submitted and fee paid.

12    THE COURT:  Okay.  Well, you need to bring

13    those all together.

14    MS. MOSLEY:  I have a copy of all this.

15    THE COURT:  All right.  Any objection to the

16    motion?

17    MR. HIRSCH:  None at all, Your Honor.

18    THE COURT:  Subject to everything being in

19    appropriate form, go ahead and hear your argument.  What's

20    the problem with the date of -- what's the problem with

21    moving the date from the 13th to the 14th to the 21st?

22    MS. BOURGERIE:  Your Honor, I'm on travel then

23    for spring break with my children and then to bump it to

1    the following week would lead to almost a month delay.  My

2    suggestion we had spent about twenty minutes with the

3    conciliator this morning trying to work this out.

4         We simply need -- because the facts are

5    somewhat complicated on the consolidation issue, not the

6    law, but just the facts, and it's an important issue.  We

7    wanted to file an opposition and so I volunteered to file

8    it as early as Monday and so perhaps we could have

9    simultaneous exchange.

10        There's not going to be anything -- there will

11   not be any novel legal argument or anything of the sort.

12   It's just they have their position for why it should be.

13   We have ours for why it shouldn't.

14        They filed a motion and we'd like an

15   opportunity to file something and again --

16        THE COURT:  Mr. Hirsch, can you get your

17   oppositions filed by the 12th?

18        MR. HIRSCH:  I can try, Your Honor.  On the

19   12th, I'm actually going to be in Richmond sitting as an

20   arbitrator all day, so if that's what the Court orders,

21   but absent -- I'd be happy to have more time, sir, so that

22   I could see what I receive and go to March 28th.  I mean,

23   I'm available or able to --

5

1              THE COURT:  Is this case set for trial at all?

2              MR. HIRSCH:  No.  There's been no trial --

3              THE COURT:  Then what's the problem with the

4    delay going for a month?

5              MR. HIRSCH:  No answer to grounds of defense

6    have been filed either.  So, Your Honor, I would say, just

7    give us time to do a proper briefing phase and roll it

8    over to April 4th for the hearing on the motion to

9    consolidate because I have a three day trial earlier that

10   week.

11             MS. BOURGERIE:  There's a good reason, Your

12   Honor, if I may.  There is the pending case of Avery

13   versus Ho that was filed at about the same date as this

14   particular action was.  That case is, in our view, a much

15   simpler case if it ever went to trial, you know, made it

16   that far, it would be a couple days, versus if this ever

17   got that far, it would be weeks or a month --

18             THE COURT:  Okay, but what --

19             MS. BOURGERIE:  I'm going to get to your point

20   just real quick.  In that case a month ago, February 5th,

21   we initiated needing to take depositions.  We want that

22   case hopefully to be expedited in its resolution and then

23   yesterday, the Board of Trustees filed an emergency motion

1    to postpone the depositions because of these consolidation

2    issues and so forth.

3              And after we coordinated everything and been

4    going at this for a month and which I had to personally --

5              THE COURT:  Well, this is real simple.  It's

6    very simple.  Depositions go forward and we have the

7    hearing on April 4.  There's no reason to postpone

8    depositions because you're dealing with consolidation

9    issues.

10             MR. HIRSCH:  Your Honor, that ruling was

11   already made at 8:30 this morning.  Judge Wooldridge ruled

12   that they cannot take the depositions until the motion to

13   consolidate is resolved and we did that because the

14   Defendants were taking the position --

15             THE COURT:  You two were already in calendar

16   control over these issues and now you're coming back with

17   them again?

18             MR. HIRSCH:  The only issue that they heard at

19   8:30 was our emergency motion to quash the depositions.

20   That's the only thing that was on at 8:30 this morning.

21   And the reason we did that, we tried to accommodate.

22             The problem, Your Honor, is that they wanted

23   it both ways.  They said, "We don't want to hear the

1     motion to consolidate on the date you've noticed it."  It

2     was properly timely filed and noticed and if -- we want to

3     go ahead with the depositions next week, but Mr. Hirsch,

4     you have no right to participate in those depositions

5     because they're the Avery versus Ho case.

6                  Your Honor, if the motion to consolidate had

7     been heard today, that issue would have been moot.

8                  THE COURT:  Well, let me tell you.  It is not

9     properly noticed.  Something wasn't properly noticed.  I

10    don't know which one was filed first, but you filed two

11    motions for the same Friday and both motions, I think,

12    have some reference to some fairly complicated issues, but

13    that's beside the point.

14                 I'm going to put this off.  Let me hear the

15    motion with regard to the trustee standing.

16                 MR. MERVIS:  Your Honor, may I be heard?  My

17    name is Jeff Mervis.  I'm entering my appearance on behalf

18    of one of the Defendants in the case.  I'm also filing and

19    I have the originals, if Your Honor would take them in

20    court, a motion to intervene on behalf of three other

21    share holders.

22                 THE COURT:  You can file whatever motions you

23    want.  They're not on the docket today and I'm not hearing

1    them.  I mean, I'll let you participate and note your

2    appearance to the extent you can, but I'm not hearing any

3    additional motions.  Let's go forward with the motions

4    that are set.  Right now, I said the motion I want to

5    hear.  Let's hear some argument on it.

6              MR. MERVIS:  Your Honor, with the risk of

7    upsetting the Court, I have one motion to realign my

8    Defendant client as a Plaintiff --

9              THE COURT:  Sir, I don't know how much clearer

10   I can be.  We don't hear oral motions here.  You file a

11   written motion, you properly notice it, and we'll hear it.

12             MR. MERVIS:  Thank you, Your Honor.

13             THE COURT:  All right.

14             MS. BOURGERIE:  If I may, Your Honor?  Your

15   Honor, we, on behalf of Daniel Ho, filed a motion to

16   dismiss this action brought by the Board of Trustees for

17   the University of Northern Virginia.  The University of

18   Northern Virginia is a --

19             THE COURT:  And you assert that the trustees

20   have no authority to bring the action; right?

21             MS. BOURGERIE:  Correct.

22             THE COURT:  Okay.  Let me hear from Mr. Hirsch

23   or whoever is representing the trustees as to why they do.

1          MS. BOURGERIE:  Well -- all right.  I'll defer

2     for the moment.

3          THE COURT:  Mr. Hirsch, the corporation are

4     the people who have the rights, aren't they?

5          MR. HIRSCH:  Your Honor, the corporation

6     speaks through its shareholders and it speaks through the

7     board of directors.

8          THE COURT:  It doesn't speak through its

9     shareholders.  It speaks through its board of directors.

10          MR. HIRSCH:  Right.  And the shareholders have

11     a right to --

12          THE COURT:  File a derivative action.

13          MR. HIRSCH:  Precisely.  But the problem is,

14     is the board of trustees is simply the name that was used

15     by UNVA creating the board.  This board of trustees

16     actually preceded the original board of directors under

17     both the 2000 bylaws and the 2005 bylaws the board of

18     trustees was vested with many of the same duties as the

19     board of directors.

20          Specific examples are setting overall policies

21     for the university --

22          THE COURT:  Let me stop you, Mr. Hirsch.

23     There is a specific list to what they're authorized to do.

1          Is there any mention in there of the right to

2    sue on behalf of the corporation?

3          MR. HIRSCH:  Well, there isn't a specific

4    reference of that.

5          THE COURT:  Well, then I'll ask you with the

6    only -- virtually, the only Latin I know, inclusion unius

7    exclusio alterius; why doesn't that apply?

8          MR. HIRSCH:  Because it does make reference

9    that they have ultimate -- they have a fiduciary

10   obligation, ultimate authority over the management of the

11   university.  That's in the bylaws.  It's in the --

12         THE COURT:  It doesn't say anything about

13   suing.

14         MR. HIRSCH:  Your Honor, the trustees were put

15   in a bad position because -- because they have fiduciary

16   obligations under the bylaws, they were caught between two

17   opposing camps; the Ho camp and his allies and the Avery

18   camp and his allies.

19         They were being given contradictory directions

20   from both camps as to who owns the university, as to who

21   was in charge.  At that point, there was nobody else

22   available to take action to protect the interest of the

23   university.

1          It was literally being faced with being shut

2     down by state and/or federal authorities and/or their

3     accrediting agency if this dispute wasn't resolved.

4          THE COURT:  Let me take it out of the

5     education context.  Suppose you had a corporation and the

6     corporation had an executive board that they said can do

7     all these things about managing and the executive board

8     decided that they didn't like what the board of directors

9     were doing and they were in dispute and there was another

10    faction of shareholders who were saying, this isn't the

11    way we want it to run either, does that mean that that

12    executive counsel gets the right to bring suit on behalf

13    of the corporation?

14         MR. HIRSCH:  It would depend on the documents.

15    Interestingly, one of the cases cited by the Defendants

16    really illustrates the Plaintiff's point in this case and

17    that's the Exeter Hospital case, the one from New

18    Hampshire.

19         What happened there is that the bylaws vested

20    the ultimate institutional authority in a board of

21    trustees for the hospital.  The medical staff was sort of

22    their equivalent of a board of directors.  It was -- had

23    the ability to enact bylaws.

1          It had some discretion in managing certain

2   corporate affairs of the hospital, but in that instance,

3   the medical staff was appointed by the trustees and

4   overseen by the trustees.

5          It's somewhat similar to the situation we're

6   faced here.  Here our board of trustees which is really

7   akin to a second set of board of directors, but the board

8   of trustees is vested with the ultimate institutional

9   authority over the policy making educational management

10  and financial management of the university.

11         That's averred in the pleadings.  So to the

12  extent it's disputed, it's a factual dispute that requires

13  evidentiary hearing.  The board of directors is ultimately

14  answerable to the trustees for all educational issues and

15  for all ultimate financial policies.  That's set out in

16  the 2005 bylaws.

17         THE COURT:  But the 2005 bylaws specifically

18  state that there be -- reconstitute the board of trustees

19  with the express purpose to exercise ultimate

20  institutional authority over all matters of policy and

21  management of the University of Northern Virginia and said

22  board will be provided separate powers and bylaws

23  specifically for that purpose.

1               MR. HIRSCH:  Correct.

2               THE COURT:  And then you look at the specific

3     ones that they've been given and once again I say they

4     gave them specific authority.  They didn't tell them they

5     had the authority to sue on behalf of the corporation.

6               MR. HIRSCH:  Well, Your Honor, they aren't

7     ideally drafted.  But the problem was, there was nobody

8     else stepping forward to remedy the situation and the

9     problem is the fact that the trustees as fiduciaries with

10    that ultimate responsibility if they take action, they

11    were in a position --

12              THE COURT:  Well, then it seems to me if they

13    feel it breaches their fiduciary duty, they don't take

14    action, and then maybe it does grind to a halt and maybe

15    something needs to be done.  Maybe it goes into

16    receivership or some other actions taken.

17              MR. HIRSCH:  That's part of what we've asked

18    for, Your Honor, is that the Court appoint a special

19    master.  The problem is --

20              THE COURT:  But, but I understand this is what

21    you've asked for, but what authority does the board of

22    trustees have independently of the university to be here

23    asserting the rights of the university?

1          MR. HIRSCH:  Your Honor, I think there is -- I

2   don't have the code section, but I believe if you

3   characterize the board of trustees as a board of directors

4   in a --

5          THE COURT:  I don't see how I do that.  There

6   is a board of directors.

7          MR. HIRSCH:  Pardon?

8          THE COURT:  There is a board of directors.

9          MR. HIRSCH:  Well, that's the anomaly.  the

10  problem is, is they created essentially two types of

11  boards.  They called it two different names.

12         THE COURT:  But it said that the specific

13  authority of the board of directors -- the board of

14  trustees would be set out in their bylaws, and they are.

15         MR. HIRSCH:  That's correct, Your Honor.

16  Again, the problem is, they gave traditional board of

17  directors duties to the board of trustees.  The board of

18  trustees is --

19         THE COURT:  But not the authority to sue.

20         MR. HIRSCH:  It's not given to the board of

21  directors either.

22         THE COURT:  The board of directors has it

23  because they act on behalf of the corporation.  They reach

1    a resolution that the corporation's going to sue and the

2    corporation sues.  The board of directors runs the

3    corporation unless the authority is given to the president

4    or some other organization and my problem is, I'm looking

5    in these documents and I'm trying to see where they're

6    given the authority to bring suit and I'm just not seeing

7    it.

8                   MR. HIRSCH:  The other aspect, component that

9    distinguishes this from the conventional corporate

10   holding, is we have a different layer of regulations and

11   statutes which apply to this because the corporation owns

12   a university which is regulated by federal law, regulated

13   by state law, and regulated by an accrediting agency.

14                  So to the extent that your question is not

15   neatly answered within the corporate documents themselves,

16   you have to look at that overlaying regulatory scheme that

17   governs here, and that's -- regulations are referenced in

18   detail in the -- not in the 297 pleading -- they're

19   referenced there, but they're spelled out in detail in the

20   breach of fiduciary duty lawsuit that spell out that

21   there's an obligation to manage the university, to see

22   that degrees are being properly granted, that they're not

23   being bartered, to see that --

```
 1              THE COURT:  What you're saying is that any

 2   fiduciary, any person who's working for a corporation or a

 3   fiduciary -- and does some fiduciary duties for a

 4   corporation, that person if they don't like what the

 5   legally constituted hierarchy of the organization tells

 6   them to do and thinks it's going to breach their fiduciary

 7   duty, that they can sue and I just don't see how -- where

 8   in the law that that's the case.

 9              MR. HIRSCH:  I wouldn't sweep that broadly,

10   Judge.  What I do see is that because -- if the other

11   layer of regulations that are on -- imposed by the federal

12   statutes and by the state regulatory statutes under

13   SHIVA --

14              THE COURT:  They can decline to take actions

15   because they violate regulations.  They can quit their

16   jobs and say, "We're not doing this."  There's a lot of

17   things they can do but I'm not sure they can sue.  Sue to

18   enforce the rights of the corporation, that's what I'm

19   trying to find out.  What gives them the authority to sue

20   to enforce the rights of the corporation?

21              MR. HIRSCH:  They're actually trying to

22   protect not only the rights of the corporation, they're

23   trying to protect the rights of the students to whom they
```

1    are responsible.

2              THE COURT:  Well, they certainly can't assert

3    the rights of the students.

4              MR. HIRSCH:  And, Your Honor, the point that

5    we're trying to say is that if they stood by and did

6    nothing, they could have been held personally and

7    collectively liable for willful disregard of fiduciary

8    oblgations vested in them by the educational regulations

9    and statutes and by the corporate documents.

10             That was the dilemma faced by the trustees is

11   that they had open warfare.  They were stuck in the middle

12   and if they just turned tail and ran and the university

13   collapsed, the first people to have been sued would have

14   been the trustees, both in their individual capacities and

15   collective capacities.

16             They didn't ask for this, Judge.  They didn't

17   ask to be put in this situation.  They would have been

18   very pleased had proper formalities been done, but nobody

19   else was stepping to the plate.  There was warfare --

20             THE COURT:  I am in no way questioning the

21   bona fides of good faith actions of the trustees.  I'm

22   questioning the legality.  That's all I'm questioning is

23   the legality of their bringing an action on behalf of a

1   corporation and I just don't see how employees have the

2   right to bring an action on behalf of the corporation

3   unless it's delegated to them and I'm not seeing in the

4   documents that delegation.

5           MR. HIRSCH:  If you look at Exhibit C to the

6   memorandum, the Virginia Regulation, specifically 8VAC40-

7   31-170, it's Exhibit C, Page 1, Part F -- the change of

8   ownership -- it addresses change of ownership.

9           And it says in B, you can't -- "A school shall

10  not operate in the Commonwealth of Virginia without first

11  receiving the certification," and it goes on about that.

12  Those regulations don't speak to the corporation, they

13  speak to the school.

14          And the board of trustees is acting on behalf

15  of the school pursuant to these regulations.  Perhaps the

16  correct approach, Your Honor, would be to amend the

17  caption as we did in the breach of fiduciary duty lawsuit

18  and say that it's board of trustees and University of

19  Virginia ex rel the University of Northern Virginia and

20  that's perhaps just a stylistic problem that addresses it.

21          THE COURT:  I don't think that's stylistic.  I

22  think that's doing the same thing you're doing now.  It's

23  the trustees suing to assert the rights of the corporation

1    and the question is, what right do they have to do that?

2              What authority do they have to do that?

3              MR. HIRSCH:  I think it's provided in the

4    SHIVA regulations that are in Exhibit C that --

5              THE COURT:  The Exhibit C that I have is --

6    maybe I was looking at the wrong document.

7              MR. HIRSCH:  It's in our reply to the motion

8    to dismiss.  There's a reply to the motion to dismiss, a

9    memorandum and the exhibits to the memorandum.

10             THE COURT:  Okay.  It's in the reply.

11             MR. HIRSCH:  That's correct, Your Honor.  It's

12   Exhibit C to our reply.  I believe those regulations since

13   they speak more broadly to the university as a whole,

14   that's what gives the trustees the authority to be

15   involved.

16             THE COURT:  What is it about these regulations

17   that you say gives the trustees the authority to do

18   something?

19             MR. HIRSCH:  Because the regulations address

20   what the school can or cannot do and that's what they're

21   trying to enforce.

22             THE COURT:  But again, how does -- the

23   regulatory agency can take action, the -- how do the

1    trustees take action?

2              MR. HIRSCH:  Well, they're not suing by the

3    corporation.  This is a suit by fiduciaries.  It's a

4    fiduciary suit, Your Honor, and that's what gives them the

5    standing.  They're acting in their capacity as

6    fiduciaries.

7              THE COURT:  I think that's a very dangerous

8    slope though, Mr. Hirsch, because I'm not sure where you

9    draw the line on that and why you don't have every

10   employee of a company saying, not only do I decline to do

11   that, but I'm going to sue you over it and we're going to

12   have a judge decide whether this is the proper action to

13   take.

14             MR. HIRSCH:  There's a world of difference

15   between an employee and the board of trustees.  The board

16   of directors under these documents is answerable to the

17   trustees.  They are answerable to the trustees for the

18   financial accounting of that university.

19             THE COURT:  Not in bringing suit.

20             MR. HIRSCH:  Pardon?

21             THE COURT:  Not in bringing suit.

22             MR. HIRSCH:  Your Honor, they are fiduciaries.

23   We knew no other way of addressing this --

```
 1                THE COURT:  Why can't a shareholder derivative
 2    action be filed?
 3                MR. HIRSCH:  But the trustees aren't
 4    shareholders.  Some of the trustees are shareholders and I
 5    understand Mr. Mervis is about to do that, but in the
 6    interim, Your Honor, that wasn't happening and we felt in
 7    good faith we had to step into the breach.
 8                THE COURT:  Well, unless I hear something
 9    else, Mr. Hirsch, we're going around the same bush over
10    and over again.  Unless I hear something else, I just
11    don't see how the trustees have the authority, the legal
12    authority, to bring this action.
13                MR. HIRSCH:  We'd ask, Your Honor, then if
14    that's the ruling of the Court, that the Court makes it a
15    matter of record that the trustees did act in good faith
16    in so proceeding.
17                THE COURT:  I just said I'm not questioning.
18    I'm not making any findings one way or the other.  I'm
19    just saying -- in what I was saying, I wasn't questioning
20    the good faith in their action.  I think the suit was
21    brought in good faith.
22                I see nothing to indicate that it's frivolous.
23    I think that they have real gripes, but I just don't think
```

1    that they have the legal authority to raise it in this

2    context and therefore, I grant the motion.

3            MS. BOURGERIE:  Thank you, very much, Your

4    Honor.

5            MR. HIRSCH:  Thank you, Your Honor .

6            MR. MERVIS:  Your Honor, may I be heard,

7    briefly?  Your Honor, as I said, I do represent one of the

8    Defendants.  We're moving today and I'll file a written

9    motion to realign us as a Plaintiff and to essentially

10   create this as a -- leave this matter standing as a

11   shareholder derivative action.

12           I represent also three other shareholders that

13   are not named as shareholders but they are trustees.  I'm

14   moving to intervene on their behalf as Plaintiffs.

15           THE COURT:  I understand that and I told you,

16   you file the motion, you notice it, and we'll hear it.

17           MR. MERVIS:  But we'll do that, Your Honor.

18   We ask that you not dismiss today and allow us a week to

19   have that matter heard.

20           THE COURT:  Even if I were to enter an order

21   today, I have twenty-one days in which I can modify it.

22   You put it on the docket for next week and I'll hear it.

23           MR. MERVIS:  Thank you, Your Honor.

1                    THE COURT:  Thank you.

2                    (Whereupon, at approximately 12:29 o'clock,

3      p.m., the hearing in the above named matter was

4      concluded.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

1                          * * * * *

2                  CERTIFICATE OF REPORTER

3          I, PATRICIA L. BLOOM, a Verbatim Reporter, do

4    hereby certify that I took the stenographic notes of the

5    foregoing proceedings which I thereafter reduced to

6    typewriting; that the foregoing is a true record of said

7    proceedings; that I am neither counsel for, related to,

8    nor employed by any of the parties to the action in which

9    these proceedings were held; and, further, that I am not a

10   relative or employee of any attorney or counsel employed

11   by the parties hereto, nor financially or otherwise

12   interested in the outcome of the action.

13

14

15

16                          _____

17                          PATRICIA L. BLOOM, CCR

18                          Verbatim Reporter

19

20



575 7th Street, NW
Washington, DC 20004

Telephone 202-344-4000
Facsimile 202-344-8300

www.venable.com

Ronald M. Jacobs
*Associate*

(202) 344-8215

rmjacobs@venable.com

April 8, 2008

**Via Email & Hand Delivery**
Ms. Dianne C. Currie
Acting School Certification Branch Chief
Student & Exchange Visitor Program
U.S. Immigration & Customs Enforcement
U.S. Department of Homeland Security
425 I Street NW
Washington, DC 20536

   *Re: Notice of Intent to Withdraw*
     *WAS214F01186*

Dear Ms. Currie:

  This letter follows my earlier letters on behalf of the University of Northern Virginia ("UNVA"), in which we have requested the Student Exchange Visitor Program ("SEVP") restore the owner, Daniel Ho, as the Principal Designated School Official ("PDSO"). In addition, I have previously requested that during the pendency of SEVP's decision-making process, SEVP freeze access the Student Exchange Visitor Information System ("SEVIS") by Fay Avery, who appointed himself PDSO, so that he cannot illegally terminate students during the pendency of this proceeding.

  Over this past weekend, we were made aware of specific actions taken by Mr. Avery, and his subordinate Designated School Officials ("DSOs") acting at his direction, to terminate students' I-20 status improperly. As discussed below, these actions harm the students, violate the SEVP regulations, harm the nation's immigration system, and will destroy UNVA.

  Therefore, UNVA reiterates its request for immediate interim relief, and respectfully requests that SEVP act to stop Mr. Avery and his subordinates from their ongoing violations of the SEVP regulations and procedures. Specifically, UNVA requests that: (1) SEVP issue a temporary order freezing Mr. Avery's access to SEVIS and (2) SEVP initiate a complete review of all students terminated since SEVP approved Mr. Avery's self-designation as PDSO so that those students can have their immigration status restored as appropriate.

  This letter begins with a discussion of the evidence UNVA has obtained that demonstrates Mr. Avery's violations of the SEVP regulations and procedures. It then discusses how the relief UNVA seeks is analogous to a preliminary injunction and that UNVA satisfies the criteria for such relief.

# VENABLE®LLP

---

Ms. Dianne C. Currie
April 8, 2008
Page 2

## Evidence of Violations

Attached as Exhibit 1 to this letter is an email from Alex Roset, the director of the Diplomatic Language Services school to the individuals associated with Fay Avery. It was then sent to Dr. Ho this past weekend. As you can see from the email, the individuals who have access to SEVIS have engaged in a host of improper and illegal activities that harm not only UNVA, but also the students. Specifically, this email documents the following actions by Mr. Avery and his subordinates:

- Failing to provide records to transfer institutions;
- Imposing false and illegal conditions on students who wish to transfer, such as insisting that students register with the transfer institution in person; and,
- Terminating students after they have made valid request to transfer to a different institution.

Exhibit 2 to this letter documents the plight of Young Sang Cho and his wife. Mr. Cho attempted to transfer to the Diplomatic Language Services ("DLS") school (and was accepted there) but his I-20 was terminated by Mr. Avery and his subordinates when he sought the transfer. Subsequently, his wife was denied her immigration status because Mr. Cho's I-20 was improperly terminated.

Exhibit 3 shows that Young Ju Park was accepted by DLS on November 20, 2007. She submitted the I-20 Student Transfer Form on December 17, 2007 to UNVA. The Terminated Status Students list provided by DLS shaw that Mr. Avery and his subordinates terminated her on February 6, 2008. Thus, UNVA terminated Ms. Park over 45 days after the student requested to transfer.

Exhibit 4 includes two notarized documents UNVA has obtained that show Mr. Avery and his subordinates are requiring students to guarantee that they will remain enrolled at UNVA for one full academic year before transferring out. Accordingly, Mr. Avery is imposing improper restrictions on the students, who are generally presumed to be allowed to transfer to a different institution at any time.

## Relief Requested

UNVA is asking for the equivalent of a preliminary injunction to stop the ongoing harm to the students, the nation's immigration system, and the school. A preliminary injunction is appropriate when the moving party shows (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an

# VENABLE®LLP

---

Ms. Dianne C. Currie
April 8, 2008
Page 3

injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995). Because UNVA satisfies all four prongs, it requests immediate relief – or a formal denial of this request.

***Likelihood of Success on Merits:*** UNVA has provided SEVP with detailed documentation showing that Dr. Ho is the owner and president of UNVA; therefore he is entitled to name the PDSO.

***Harm to Public Interest:*** More importantly, however, is the harm to the public interest that results every single day that Mr. Avery remains the PDSO. This harm impacts both specific students and is an abuse of the system that ultimately will reflect poorly on the United States Government.

Mr. Avery has demonstrated a complete lack of respect and willingness for the SEVP regulations. He has:

- Terminated students without any cause,
- Refused to provide records to transfer schools, and forced students to sign what amount to illegal loyalty oaths as a condition of enrollment, and
- Caused the government to deny immigration status to others whose status is dependent on UNVA lawfully issuing I-20s.

If Mr. Avery is allowed to continue these actions until after the appropriate response period, many students and their families will be concretely and irreparably harmed by their illegal change in immigration status.

Moreover, by allowing such an individual to remain in the officially-sanctioned position of DSO, SEVP risks harm to the very immigration system the Immigrations and Customs Enforcement Agency is designed to enforce. Placing the authority for issuing and rescinding I-20s in the hands of an individual who does not follow the laws will cause students and worldwide governments to presume that SEVP does not have control over its accredited institutions.

***Harm to Private Interest:*** If SEVP does not act to remedy the grave harm to the public interest by immediately removing Mr. Avery from his position as PDSO, it should do so to protect the interest of UNVA. We understand the need for process and an opportunity to be heard in this matter; by the time such process is undertaken, however, there may be no UNVA left to protect.

# VENABLE®LLP

Ms. Dianne C. Currie
April 8, 2008
Page 4

Students are unwilling to remain at UNVA given the arbitrary authority exercised by Mr. Avery. Moreover, it is almost impossible to recruit new students. The case law makes clear that "economic harm rises to the level of irreparable harm where it threatens the 'very existence of [plaintiffs'] business.'" *Patriot, Inc. v. HUD*, 963 F. Supp. 1, 5 (D.D.C. 1997). Moreover, the longer Mr. Avery is allowed to violate SEVP's regulations in the name of UNVA, the greater the "irreparable harm in damage to [UNVA's] business reputation." *Id.*

Immediately freezing Mr. Avery from access to SEVIS and reviewing the status of every student he terminated will work no harm on Mr. Avery because he has no right to violate the SEVP regulations. Even if he is able to prevail on the merits – and we are certain that he will not – UNVA may not, at this time, violate the law. Accordingly, SEVP's immediate action would not harm Mr. Avery, or his claim to be chancellor of UNVA.

## Conclusion

Given the concrete proof of improper practices and violations of SEVP procedures, UNVA requests that SEVP freeze the current PDSO and DSO access and that SEVP undertake the necessary review to restore the proper status of these students who have been terminated contrary to SEVP regulations. Alternatively, UNVA asks that SEVP return the system to the status quo and make Dr. Ho the PDSO during the pendency of these proceeding. Dr. Ho and his designates have a long track record of following the SEVP regulations and will be able to work to undo the damage wrought by Mr. Avery to the students, the governmental interest, and the school.

Respectfully submitted,

Ronald M. Jacobs
Counsel for UNVA

Enclosures

cc:  The Honorable Asa Hutchinson
     Dr. Daniel F. Ho
     E. Paul Choe

*Exhibit 1*

**Jacobs, Ronald M.**

| | |
|---|---|
| **From:** | Daniel Ho [danholui@yahoo.com] |
| **Sent:** | Sunday, April 06, 2008 5:48 PM |
| **To:** | Jacobs, Ronald M. |
| **Cc:** | Paul Choe |
| **Subject:** | Fw: VERY URGENT! |

Ron:

FYI.

Daniel

----- Forwarded Message ----
From: Alex Roset <aroset@dls-llc.com>
To: danholui@yahoo.com
Sent: Friday, April 4, 2008 3:41:54 PM
Subject: FW: VERY URGENT!

Dr. Daniel Ho
Chairman of the Board of Directors
UNVA

Dear Dr. Ho,

For your information I am forwarding you a copy of the email I sent Mr. Soon Yap yesterday.

Sincerely,

Alex Roset
Director
Diplomatic Langauge Services
English Language Institute
1901 N. Fort Myer Dr., suite 600
Arlington, VA 22209
Tel.: (703) 243-7884 ext 125
Fax: (703) 243-7003
aroset@dls-llc.com

-----Original Message-----
**From:** Alex Roset [mailto:aroset@dls-llc.com]
**Sent:** Thursday, April 03, 2008 8:17 PM
**To:** 'syap.admin@unva.edu'
**Cc:** 'dharrington@unva.edu'
**Subject:** VERY URGENT!

Dear Soon Yap,

I am writing this email to you as my very last attempt for you to solve an issue that otherwise will result in unwanted legal problems for you and your institution.

I have been in touch with Ms. Deon Harrington for well over a month asking her to release some SEVIS records from some students who want to transfer to my school, Diplomatic Language Services. I have talked to her over the phone, have sent her several faxes with the Admission Letters and the Transfer Request Forms, sent her some emails (never got a reply from her), and finally I even went the extra mile and sent her a FedEx envelope with copies of everything

mentioned above.

During all this time, Ms. Harrington has done nothing but lie to me and to the students seeking to transfer to my school. She told me she had only received the Letter of Admissions but not the Transfer Request Forms. Weird because I personally faxed them more than 3 times! I was even lead to believe my fax was not handling large paper volume and started sending the faxes one at a time. Still, she said she had not received anything. I sent her some emails asking her to please reconfirm her fax number and /or to send me her mailing address to mail everything to her. I never got a response. Finally, I got UNVA address and sent everything by FedEx to make sure there wouldn't be more absurd excuses. The FedEx was received on March 14 by A. Eluryn (I have obtained a copy of the employee's signature from FedEx in case I need to use it later to prove all of this).

Whatever Ms. Harrington is and has been doing is not legal. Students have been told they have not contacted my school in person and for that reason transferring here is not possible. As you are well aware it is not a SEVIS requirement to enroll "in person" at any school.. It can be done by email, mail, fax, through other individuals, sponsors, relatives, etc. UNVA has gone to the extreme to threaten many students with having their status terminated if they transfer to DLS. Furthermore, Ms. Harrington has terminated some of them who insisted in being transferred here. UNVA delayed their released and terminated them after a while. In those cases they were told it was because they have "failed to enroll" in due time. It is absolutely important to make it very clear to you that the Letter of Admissions were sent to her <u>BEFORE</u> the termination date. It is more than clear than UNVA has violated many of the SEVIS regulations. Those students have all their legal rights to transfer in-status, and to <u>ANY institution</u> they want. Today, I received 3 more students in my office who told me exactly the same: that Ms. Harrington had told them UNVA will release their records in-status only if they do not come to my school. Mr. Yap, just so you are fully aware <u>those students are willing and ready to testify before the authorities</u> about this. In an even more despicable behavior, some students who got their statuses terminated were given no reason as to why when they went to UNVA looking for answers and were asked to leave UNVA immediately or they would call the police!

On a very last-minute incident, as I am writing this email to you, UNVA has just transferred to me 22 student files. They were all TERMINATED for "failure to enroll" today.  This is a very unacceptable behavior from your part. All these students requested to be transferred to my school long time ago and I sent you the requests in due time.

Mr. Yap, you have until Monday, April 7, 2008 to release in-status all the transfers I have requested from UNVA. You are also to contact SEVIS on your own and request a data fix to ALL the students you have illegally terminated in the last couple of weeks using obscure maneuvers. It is not my desire to start a vendetta or a fight with you and/or your institution; but please believe me when I say that unless you take care of this irregular situation and correct it as requested I will have no choice but to contact Mr. Lewis Ferrell, Director of SEVP, as well as SEVIS to report you and UNVA. I will also reserve the right to start legal action in court against you and UNVA for the threats received from Ms. Harrington, as well as the dirty campaign your institution has started against my school.

I truly hope you will give this email the consideration it deserves.

Sincerely,

Alex Roset
Director
Diplomatic Langauge Services
English Language Institute
1901 N. Fort Myer Dr., suite 600
Arlington, VA 22209
Tel.: (703) 243-7884 ext 125
Fax: (703) 243-7003
aroset@dls-llc.com

---

You rock. That's why Blockbuster's offering you <u>one month of Blockbuster Total Access</u>, No Cost.

*Exhibit 2*



1901 North Fort Myer Drive, Suite 600
Arlington, VA 22209 USA

Tel: (703) 243-4855
Fax: (703) 243-7003

Tuesday, February 12, 2008

**Letter of Acceptance**

This is to confirm that Young Sang Cho is enrolled in an intensive course in English at Diplomatic Language Services (DLS) from March 3, 2008. Classes comprise twenty lessons a week and are held from <u>5:40 p.m. – 10:00 p.m.</u>, Monday through Thursday.

<u>Directions to Diplomatic Language Services from Rosslyn Metro (orange and blue line)</u>
Take the orange or blue line to Rosslyn Station. Exit Rosslyn Metro station through the main exit (east) onto N. Moore Street. You will see McDonalds across the street to your left. Go left on N. Moore Street and walk up to light at 19th Street (about 50 meters). Cross 19th Street. Diplomatic Language Services, LLC is on the 6th floor of 'South Building' just to your left. Enter glass doors and take elevator to 6th floor. Diplomatic Language Services, LLC is on the left side of the suite. **The code to open the door is "5430#".** We open at 8 a.m. Our address is 1901 N. Fort Myer Drive (although the front of the building is on N. 19th Street. We are in the same building as BB& T Bank and Marcopolau restaurant). The main entrance is on 19th Street. North Moore is to the right of the building and North Fort Myer is to the left of the building.

We are looking forward to your arrival. I am happy to answer any questions you may have; please do not hesitate to contact me at 1-703-243-4855.

Sincerely,

Alex Roset
Director



# DLS

1901 North Fort Myer Drive Suite 600
Arlington, VA 22209 USA

Tel: (703) 243-4855
Fax: (703) 243-7003

## I-20-STUDENT TRANSFER FORM

Date: _02/05/08_

To: Kathleen Ellis, Diplomatic Language Services, English Language Institute, Academic Director

RE Student: _YOUNG SANG. CHO_
(Student Name)

I, _____ certify that the
(Name and title of school official (please print))

international student named above is/was enrolled full-time in _____ESL_____
(Name of program)

at _University of Northern Virginia_
(Name of school)
_7601 Little River Turnpike, G100, Annandale, VA 22003_
(Address of school)

from _09/06/04_ to _12/21/07_.
(Dates of enrollment)

### SEVIS Information
I confirm the that record of the student named above has been entered into SEVIS. A SEVIS-to-SEVIS transfer in accordance with 8 CFR 214.2(f)(8)(ii)© is be processed by DLS.

SEVIS ID Number (student) _N000 2075109_

SEVIS Transfer release date (mm/dd/yy) _____

### F-1 Student Transfer Eligibility
☐        I confirm that to the best of my knowledge, the student named above has continually maintained F-1 status, has been enrolled in a full course of study, and is eligible for an F-1 transfer.
OR
☐        I confirm that to the best of my knowledge, the student named above us ineligible for an F-1 transfer for the following reason:_____
_____.

Signature  School Official (DSO) _____  Date _____

Email address _____  Telephone _____

**U.S. Department of Justice**

Immigration and Naturalization Service

Certificate of Eligibility for Nonimmigrant (F-1) Student Status - For Academic and Language Students   (OMB NO. 1115-0051)

**Page 1**

**SEVIS**

Please read Instructions on Page 2
This page must be completed and signed in the U.S. by a designated school official.

1. Family Name (surname):
CHO

First (given) Name:             Middle Name:
Young Sang

Country of birth:              Date of birth(mo/day/year):
SOUTH KOREA                    08/17/1972

Country of citizenship:        Admission number:
SOUTH KOREA

2. School (School district) name:
University of Northern Virginia
Annandale

School Official to be notified of student's arrival in U.S.(Name and Title):
Roy Ho
Director, International Student Affairs

School address (include zip code):
7601 Little River Turnpike
#G100
Annandale, VA 22003

School code (including 3-digit suffix, if any) and approval date:
WAS214F01186001              approved on 04/17/2003

**For Immigration Official User**

Student's Copy
N0002075109

Visa issuing post          Date Visa Issued

Reinstated, extension granted to:

3. This certificate is issued to the student named above for:
Continued attendance at this school.

4. Level of education the student is pursuing or will pursue in the United States:
LANGUAGE TRAINING

5. The student named above has been accepted for a full course of study at this school, majoring in Second Language Learning (NEW).
The student is expected to report to the school no later than 08/10/2004 and complete studies not later than 02/10/2008. The normal length of study is 12 months.

6. English proficiency:
This school requires English proficiency.
The student is not yet proficient. English instructions will be given at the school.

7. This school estimates the student's average costs for an academic term of 12 (up to 12) months to be:
   a. Tuition and fees              $    6,000.00
   b. Living expenses               $   10,000.00
   c. Expenses of dependents (1 )   $    3,500.00
   d. Other (specify):              $        0.00
      Total                         $   19,500.00

8. This school has information showing the following as the student's means of support, estimated for an academic term of 12 months (Use the same number of months given in item 7).
   a. Student's personal funds      $   19,500.00
   b. Funds from this school        $        0.00
      Specify type:
   c. Funds from another source     $        0.00
      Specify type:
   d. On-campus employment          $        0.00
      Total                         $   19,500.00

9. Remarks:

10. School Certification: I certify under penalty of perjury that all information provided above in items 1 through 9 was completed before I signed this form and is true and correct; I executed this form in the United States after review and evaluation in the United States by me or other officials of the school of the student's application, transcripts, or other records of courses taken and proof of financial responsibility, which were received at the school prior to the execution of this form; the school has determined that the above named student's qualifications meet all standards for admission to the school; the student will be required to pursue a full course of study as defined by 8 CFR 214.2(f)(6); I am a designated official of the above named school and am authorized to issue this form.

| Roy Ho | | Director, International-Student Affairs | 11/21/2007 | Annandale, VA |
|---|---|---|---|---|
| Name of School Official | Signature of Designated School Official | Title | Date Issued | Place Issued (city and state) |

11. Student Certification: I have read and agreed to comply with the terms and conditions of my admission and those of any extension of stay as specified on page 2. I certify that all information provided on this form refers specifically to me and is true and correct to the best of my knowledge. I certify that I seek to enter or remain in the United States temporarily, and solely for the purpose of pursuing a full course of study at the school named on page 1 of this form. I also authorize the named school to release any information from my records which is needed by the INS pursuant to 8 CFR 214.3(g) to determine my nonimmigrant status.

| CHO, Young Sang | | 11/21/07 |
|---|---|---|
| Name of Student | Signature of Student | Date |

| | | | | | |
|---|---|---|---|---|---|
| Name of parent or guardian | Signature of parent or guardian | Address (city) | (State or Province) (Country) | (Date) |

If student under 18

Form I-20 A-B (Rev. 04-27-88)N

For Official Use Only
Microfilm Index Number

IF YOU NEED MORE INFORMATION CONCERNING YOUR F-1 NONIMMIGRANT STUDENT STATUS AND THE RELATING IMMIGRATION PROCEDURES, PLEASE CONTACT EITHER YOUR FOREIGN STUDENT ADVISOR ON CAMPUS OR A NEARBY IMMIGRATION AND NATURALIZATION SERVICE OFFICE.

FAMILYNAME: CHO _____    FIRST NAME: __Young Sang_____

**SEVIS**

Student's Copy

N0002075109

Student Employment Authorization:

Employment Status:                              Type:

Duration of Employment - From (Date):          To (Date):
Employer Name:
Employer Location:

Comments:

Event History
Event Name:                                    Event Date:
**Registration**                               **10/01/2004**

Current Authorizations:                        Start Date:        End Date:

This page when properly endorsed, may be used for reentry of the student to attend the same school after a temporary absence from the United States. Each certification signature is valid for one year.

Name of School:

Roy Ho                                         Director, International-
                                               Student Affairs          11/21/2007    Annandale, VA

| Name of School Official | Signature of Designated School Official | Title | Date Issued | Place Issued (city and state) |
|---|---|---|---|---|
| Name of School Official | Signature of Designated School Official | Title | Date Issued | Place Issued (city and state) |
| Name of School Official | Signature of Designated School Official | Title | Date Issued | Place Issued (city and state) |
| Name of School Official | Signature of Designated School Official | Title | Date Issued | Place Issued (city and state) |

Form I-20 A-B (Rev. 04-27-88)N

**U.S. Department of Justice**

Immigration and Naturalization Service

Certificate of Eligibility for Nonimmigrant (F-1) Student
Status - For Academic and Language Students   (OMB NO. 1115-0051)

Page 1

Please read Instructions on Page 2
This page must be completed and signed in the U.S. by a designated school official.

**SEVIS**

| | | Dependent's Copy |
|---|---|---|
| 1. Family Name (surname):<br>**CHO** | Dependent's Family Name (surname):<br>**Choi** | N0004821534 |
| First (given) Name:<br>**Young Sang** — Middle Name: | Dependent's First (given) Name:<br>**Kisuk** — Dependent's Middle Name: | |
| Country of birth:<br>**SOUTH KOREA** | Date of birth(mo/day/year):<br>**08/17/1972** | Dependent's Country of birth:<br>**SOUTH KOREA** | DOB(mo/day/year):<br>**10/06/1976** | |
| Country of citizenship:<br>**SOUTH KOREA** | Admission number: | Dependent's Country of Citizenship:<br>**SOUTH KOREA** | Admission number: | |

2. School (School district) name:
   **University of Northern Virginia**
   **Annandale**

   School Official to be notified of student's arrival in U.S.(Name and Title):
   **Roy Ho**
   **Director, International Student Affairs**

   School address (include zip code):
   **7601 Little River Turnpike**
   **#G100**
   **Annandale, VA 22003**

   School code (including 3-digit suffix, if any) and approval date:
   **WAS214F01186001**                approved on **04/17/2003**

**For Immigration Official User**

Visa issuing post        Date Visa Issued

Reinstated, extension granted to:

3. This certificate is issued to the student named above for:
   **Use by dependents for entering United States.**

4. Level of education the student is pursuing or will pursue in the United States:
   **LANGUAGE TRAINING**

5. The student named above has been accepted for a full course of study at this
   school, majoring in **Second Language Learning (NEW)**.
   The student is expected to report to the school no later than **08/10/2004**
   and complete studies not later than **02/10/2008**. The normal length of
   study is **12** months.

6. English proficiency:
   **This school requires English proficiency.**
   **The student is not yet proficient. English instructions will**
   ~~**This school estimates the student's**~~ be given

7. This school estimates the student's average costs for an academic term of
   **12** (up to 12) months to be:
   a. Tuition and fees                $ **6,000.00**
   b. Living expenses                 $ **10,000.00**
   c. Expenses of dependents (1    )  $ **3,500.00**
   d. Other (specify):                $ **0.00**
      Total                           $ **19,500.00**

8. This school has information showing the following as the student's
   means of support, estimated for an academic term of **12**
   months (Use the same number of months given in item 7).
   a. Student's personal funds        $ **19,500.00**
   b. Funds from this school          $ **0.00**
      Specify type:_____
   c. Funds from another source       $ **0.00**
      Specify type:_____
   d. On-campus employment            $ **0.00**
      Total                           $ **19,500.00**

9. Remarks: _____
   _____
   _____
   _____

10. School Certification: I certify under penalty of perjury that all information provided above in items 1 through 9 was completed before I signed this form
    and is true and correct; I executed this form in the United States after review and evaluation in the United States by me or other officials of the school of
    the student's application, transcripts or other records of courses taken and proof of financial responsibility, which were received at the school prior to the
    execution of this form; the school has determined that the above named student's qualifications meet all standards for admission to the school; the student
    will be required to pursue a full course of study as defined by 8 CFR 214.2(f)(6); I am a designated official of the above named school and am authorized
    to issue this form.

| Roy Ho | _signature_ | Director, International-<br>Student Affairs | 11/21/2007 | Annandale, VA |
|---|---|---|---|---|
| Name of School Official | Signature of Designated School Official | Title | Date Issued | Place Issued (city and state) |

11. Student Certification: I have read and agreed to comply with the terms and conditions of my admission and those of any extension of stay as specified on
    page 2. I certify that all information provided on this form refers specifically to me and is true and correct to the best of my knowledge. I certify that I
    seek to enter or remain in the United States temporarily, and solely for the purpose of pursuing a full course of study at the school named on page 1 of this
    form. I also authorize the named school to release any information from my records which is needed by the INS pursuant to 8 CFR 214.3(g) to determine
    my nonimmigrant status.

| CHO, Young Sang | _signature_ | 11/21/07 |
|---|---|---|
| Name of Student | Signature of Student | Date |

| | | | | | |
|---|---|---|---|---|---|
| Name of parent or guardian | Signature of parent or guardian | Address (city) | (State or Province) (Country) | (Date) | |
| If student under 18 | | | | | |

Form I-20 A-B (Rev. 04-27-88)N

For Official Use Only
Microfilm Index Number

IF YOU NEED MORE INFORMATION CONCERNING YOUR F-2 NONIMMIGRANT DEPENDENT STATUS AND THE RELATING IMMIGRATION PROCEDURES, PLEASE CONTACT A NEARBY IMMIGRATION AND NATURALIZATION SERVICE OFFICE.

DEPENDENT FAMILY NAME: Choi

DEPENDENT FIRST NAME: Kisuk

STUDENT'S FAMILY NAME: CHO

STUDENT'S FIRST NAME: Young Sang

STUDENT'S SEVIS ID: N0002075109

**SEVIS**

Dependent's Copy

N0004821534



This page when properly endorsed, may be used for reentry of the dependent after a temporary absence from the United States. Each Certification signature is valid for one year.

Name of School:

Roy Ho

Director, International-Student Affairs    11/21/2007 Annandale, VA

| Name of School Official | Signature of Designated School Official | Title | Date Issued | Place Issued (city and state) |
|---|---|---|---|---|
| Name of School Official | Signature of Designated School Official | Title | Date Issued | Place Issued (city and state) |
| Name of School Official | Signature of Designated School Official | Title | Date Issued | Place Issued (city and state) |
| Name of School Official | Signature of Designated School Official | Title | Date Issued | Place Issued (city and state) |

Form I-20 A-B (Rev. 04-27-88)N



U.S. Department of Homeland Security
75 Lower Welden Street
St. Albans, VT 05479

**U.S. Citizenship
and Immigration
Services**

March 13, 2008

KISUK CHOI
4606 JOHN HAMCOK COURT 204
ANNANDALE VA  22003

File Receipt Number: EAC0805651483
Beneficiary: CHOI, KISUK

Dear Sir/Madam:

Upon consideration, it is ordered that your Application to Extend/Change Nonimmigrant Status (Form I-539) be denied for the following reasons(s):

Young Sang Cho's F-1 status was terminated on January 8 2008.  As your authorized stay in the United States is dependent upon Young Sang Cho's status, the requested change of status may not be granted.

This decision may not be appealed.  However, should you disagree with this decision, or have additional evidence you believe shows the decision to be in error, you may submit a Motion to Reopen or a Motion to Reconsider on Form I-290B, Notice of Appeal or Motion, to this office within 33 days from the date of this notice.  A copy of Form I-290B is enclosed for your use.  A Motion to Reopen must be submitted in writing, state the new facts to be considered, and be supported by affidavits or other new documentary evidence.

Page 2
EAC0805651483


A Motion to Reconsider must show that the decision was legally incorrect according to statute, regulation, and/or precedent decision. Failure to follow these instructions could result in an unfavorable decision. The motion must be sent to the Vermont Service Center with a filing fee of $585.00 to the following address:

<div align="center">
Vermont Service Center<br>
75 Lower Welden Street<br>
St. Albans, VT  05479
</div>

For more information about the filing requirements for motions, please see 8 CFR §103.5, visit the USCIS website at www.uscis.gov, or contact the automated Form Request Line by calling 1-800-870-3676.


Sincerely,

*Paul E. Novak Jr.*

Paul E. Novak, Jr.
Center Director


Enclosure(s)

*Exhibit 3*

U.S. Immigration
and Customs
Enforcement

**ICE**

**Student & Exchange Visitor
Information System**

**SEVIS**

Main | Help | Tutorial | Logout
Message Board | Change Password

PDSO
Get Adobe Reader

### Diplomatic Language Services - Diplomatic Language Services

## Terminated Status Students (past 18 months)

Return to Lists

| SEVIS ID | Visa Type | Family Name | First Name | Termination Date | Termination Reason | Reinstatement Request Date |
|---|---|---|---|---|---|---|
| N0003750203 | F-1 | DASHDORJ | Tungalag | 04/03/2008 | FAILURE TO ENROLL | |
| N0003412531 | F-1 | ERDENE | Namuun | 04/03/2008 | FAILURE TO ENROLL | |
| N0004522501 | F-1 | EUM | Namyoung | 04/03/2008 | FAILURE TO ENROLL | |
| N0003097510 | F-1 | GANBAT | Battsetseg | 04/03/2008 | FAILURE TO ENROLL | |
| N0001497413 | F-1 | GANBAYAR | Byambadorj | 04/03/2008 | FAILURE TO ENROLL | |
| N0002958111 | F-1 | GANBOLD | Chinjiguur | 04/03/2008 | FAILURE TO ENROLL | |
| N0002820375 | F-1 | Hwang | Jae Sung | 02/04/2008 | SUSPENSION | |
| N0003839730 | F-1 | Hwang | Je | 02/04/2008 | SUSPENSION | |
| N0000962302 | F-1 | JUNG | Ha Ri | 02/11/2008 | OTHERWISE FAILING TO MAINTAIN STATUS | |
| N0003877509 | F-1 | Lubin | Sandrine | 07/02/2007 | FAILURE TO ENROLL | |
| N0001890514 | F-1 | PARK | Young Ju | 02/06/2008 | OTHERWISE FAILING TO MAINTAIN STATUS | |
| N0003250322 | F-1 | TUMENDELGER | Erdenezaya | 03/14/2008 | FAILURE TO ENROLL | |
| N0004745245 | F-1 | UNEN | Och | 12/05/2007 | CHANGE OF STATUS WITHDRAWN | |
| N0003941789 | F-1 | YUN | Deokwon | 03/19/2008 | FAILURE TO ENROLL | |

34 Records [<<Prev] 1 **2**

04/04/2008 (Friday)

# DLS



1901 North Fort Myer Drive Suite 600
Arlington, VA 22209 USA

Tel: (703) 243-4855
Fax: (703) 243-7003

## I-20-STUDENT TRANSFER FORM

Date: _12 - 17 - 2007_

To: Kathleen Ellis, Diplomatic Language Services, English Language Institute, Academic Director

RE Student: _Young Ju Park_
　　　　　　　　(Student Name)

I, _____certify that the
　　　(Name and title of school official (please print)

international student named above is/was enrolled full-time in _____ _ESL_ _____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(Name of program)

at _University of Northern Virginia_ _____
　　　　　　　　(Name of school)
_7601 Little River Tnpk G-100 Annandale. VA 22003_
　　　　　　　　(Address of school)

from _09/06/04_ to _12/20/07_ .
　　　　(Dates of enrollment)

## SEVIS Information
　　　I confirm the that record of the student named above has been entered into SEVIS. A SEVIS-to-SEVIS transfer in accordance with 8 CFR 214.2(f)(8)(ii)© is be processed by DLS.

SEVIS ID Number (student)_N000 18890514_ _____

SEVIS Transfer release date (mm/dd/yy)　_____

## F-1 Student Transfer Eligibility
❑　　　　　I confirm that to the best of my knowledge, the student named above has continually maintained F-1 status, has been enrolled in a full course of study, and is eligible for an F-1 transfer.
　　　　　　　　　　　　　　　　　　　OR
❑　　　　　I confirm that to the best of my knowledge, the student named above us ineligible for an F-1 transfer for the following reason:_____
_____.

_____　　　_____
Signature  School Official (DSO)　　　　　Date
　　　　　　　　　　　　　　　　　　　　　_703. 658 3554_
_____　　　_____
Email address　　　　　　　　　　　　　Telephone



1901 North Fort Myer Drive, Suite 600
Arlington, VA 22209 USA

Tel: (703) 243-4855
Fax: (703) 243-7003

Tuesday, November 20, 2007

**Letter of Acceptance**

This is to confirm that Young Ju Park is enrolled in an intensive course in English at Diplomatic Language Services (DLS) from February 4, 2008. Classes comprise twenty lessons a week and are held from 5:40 p.m. – 10:00 p.m., Monday through Thursday.

Directions to Diplomatic Language Services from Rosslyn Metro (orange and blue line)
Take the orange or blue line to Rosslyn Station. Exit Rosslyn Metro station through the main exit (east) onto N. Moore Street. You will see McDonalds across the street to your left. Go left on N. Moore Street and walk up to light at 19th Street (about 50 meters). Cross 19th Street. Diplomatic Language Services, LLC is on the 6th floor of 'South Building' just to your left. Enter glass doors and take elevator to 6th floor. Diplomatic Language Services, LLC is on the left side of the suite. **The code to open the door is "5430#".** We open at 8 a.m. Our address is 1901 N. Fort Myer Drive (although the front of the building is on N. 19th Street. We are in the same building as BB& T Bank and Marcopolau restaurant). The main entrance is on 19th Street. North Moore is to the right of the building and North Fort Myer is to the left of the building.

We are looking forward to your arrival. I am happy to answer any questions you may have; please do not hesitate to contact me at 1-703-243-4855.

Sincerely,

Alex Roset
Director

**Diplomatic Language Services**
www.dls-llc.com

*Exhibit 4*

## UNIVERSITY OF NORTHERN VIRGINIA

I understand that by applying to a program at the University of Northern Virginia , that if accepted, I may not transfer to another institution for one academic year. In order to maintain satisfactory academic progress as required by the program in which I will be enrolled, I must remain at the University of Northern Virginia for at least one academic year and maintain the required grade point average. .

Ji hye shin

**Applicant**

3-19-08

**Date**

Subscribed, sworn, and acknowledged before me by Ji Hye Shin , the applicant this 19 day of March, 2008.

Irena Djordjević

Notary Public

(SEAL)

Irena Djordjevic
NOTARY PUBLIC
Commonwealth of Virginia
Reg. # 7063960
My Commission Expires
July 31, 2011

My commission expires:

## UNIVERSITY OF NORTHERN VIRGINIA

I understand that by applying to a program at the University of Northern Virginia , that if accepted, I may not transfer to another institution for one academic year. In order to maintain satisfactory academic progress as required by the program in which I will be enrolled, I must remain at the University of Northern Virginia for at least one academic year and maintain the required grade point average. .

Jieun  KIM                    3/19/08
_____    _____
Applicant                            Date

Subscribed, sworn, and acknowledged before me by Ji Eun Kim , the applicant this 19 day of March. 2008.

Irena Djordjevic
_____
Notary Public

(SEAL)

Irena Djordjevic
NOTARY PUBLIC
Commonwealth of Virginia
Reg. # 7083990
My Commission Expires
July 31, 2011

My commission expires:

07. 31. 2011



VENABLE®LLP

575 7th Street, NW
Washington, DC 20004

Telephone 202-344-4000
Facsimile 202-344-8300

www.venable.com

**Ronald M. Jacobs**
*Associate*

(202) 344-8215

rmjacobs@venable.com

April 10, 2008

**<u>Via Email & Hand Delivery</u>**
Ms. Dianne C. Currie
Acting School Certification Branch Chief
Student & Exchange Visitor Program
U.S. Immigration & Customs Enforcement
U.S. Department of Homeland Security
425 I Street NW
Washington, DC 20536

> *Re: **Notice of Intent to Withdraw**
> **WAS214F01186***

Dear Ms. Currie:

Thank you very much for taking the time to meet with Edward Wilson and me on Tuesday to discuss the process and procedure the Student Exchange Visitor Program ("SEVP") will employ in the University of Northern Virginia ("UNVA") matter. As we discussed, we are particularly concerned with the ongoing harm to the students, the immigration system, and the school. This letter explains our position that SEVP has the authority to act on an interim bases either to freeze the Student Exchange Visitor Information System ("SEVIS") and review the records for improperly terminated students or to restore Dr. Ho to his position as Principal Designated School Official ("PDSO") while SEVP makes its final determination.

As set forth in the attached memorandum, there are two different legal bases for acting on our request. First, section 214.3(l)(2) of the regulations provides direct authority for SEVP to reject DSOs or withdraw DSOs previously submitted by a school. Second, even if SEVP proceeds under Section 214.4, it has the inherent authority to deal with this matter on a temporary, expedited, basis given the broad delegation of power in the statute and the lack of procedural process concerns under these circumstances.

The attached memorandum addresses each of these sources of authority as a legal matter. We believe that UNVA has provided the factual basis for SEVP to act on an expedited basis in this case though its prior submissions. Of course, we do not know what factual arguments Mr. Avery has made to SEVP. We would be happy to meet with you or anyone on your legal staff to answer any questions or to provide additional analsysis.

Given the ongoing harm to students, the immigration system, and the school that we have documented, together with SEVP's clear authority to act, we respectfully request that

# VENABLE®LLP

Ms. Dianne C. Currie
April 10, 2008
Page 2

Dr. Ho be named PDSO during the pendency of the withdraw proceedings under section 214.4. Such a remedy will restore the status quo to the position before Mr. Avery unlawfully changed the PDSO, protect the students who are being improperly terminated, limit the negative impact of Mr. Avery's unlawful actions on the nation's immigration system, and stop the damage being done to UNVA.

Should you determine not to issue interim relief, I request that you notify me in writing as soon as that conclusion is reached.

Respectfully submitted,

Ronald M. Jacobs
Counsel for UNVA

Enclosure

cc:    The Honorable Asa Hutchinson
       D. Edward Wilson, Jr.
       Dr. Daniel F. Ho
       E. Paul Choe

DC3:214646



575 7th Street, NW
Washington, DC 20004-1601

Telephone 202-344-4000
Facsimile 202-344-8300

www.venable.com

## *Memorandum*

RE:
**Authority of SEVP to Grant Interim Relief**

DATE:
**April 10, 2008**

### QUESTION PRESENTED

The owner of the University of Northern Virginia ("UNVA"), Daniel Ho, was listed as the Principal Designated School Official ("PDSO") on UNVA's I-17. In December, an individual by the name of Fay Avery contacted the Student Exchange Visitor Program ("SEVP"). As the chancellor of UNVA, he requested SEVP make him the PDSO and remove Dr. Ho from the Student Exchange Visitor Information System ("SEVIS"). Mr. Avery was subsequently terminated from his position at UNVA, although he continues to occupy certain UNVA facilities and has filed a complaint in state court alleging that he has some ownership interest in UVNA.

Dr. Ho has requested that SEVP remove Mr. Avery as the PDSO and return Dr. Ho to that position. SEVP has issued a Notice of Intent to Withdraw pursuant to 8 C.F.R. § 214.4 to both Mr. Avery and Dr. Ho, and the mandatory 30-day response period is underway.

The question presented is whether the Student Exchange Visitor Program ("SEVP") has authority to grant interim relief to Dr. Ho during the pendency of the response period under section 214.4.

### BRIEF ANSWER

There are two different legal bases under which SEVP may grant interim relief in a situation where the PDSO is at issue:

***DSO Regulations:*** Section 214.3(l)(2) of the regulations provides SEVP with discretionary authority to reject DSOs or withdraw DSOs previously submitted. This section does not require SEVP to act through a Notice of Intent to Withdraw under section 214.4(a)(1), and therefore does not include a 30-day response period. Accordingly, this section of the regulations provides broad authority for SEVP to act immediately.

***Withdraw Procedures:*** Under section 214.4 of the regulations, SEVP has the inherent authority to deal with this matter on a temporary, expedited basis given the broad delegation of power in the statute and the lack of procedural process concerns when one of the individuals involved is not the owner of the school and when the relief sought is not the withdraw of approval to accept nonimmigrant students. Such relief would not conflict with the regulatory procedures required to withdraw a school's approval.

# VENABLE®LLP

In both situations, SEVP would be interpreting a broad statutory mandate and its own regulations. Such a situation presents the height of an agency's discretion to act and should be given deferential review by a court should the interim relief be challenged.

## DISCUSSION

### I.    The DSO Regulations Provide Authority for SEVP to Act Promptly.

The regulations governing the appointment and change of the PDSO include a direct power for SEVP to act that is not tied to the procedures for withdrawing a school's approval to accept nonimmigrant students. Specifically, section 214.3(l)(2) provides that:

> Any changes to the PDSO or DSO must be made by the PDSO. In its discretion, the Service may reject the submission of any individual as a DSO or withdraw a previous submission by a school of an individual.[1]

The regulations do not specify any procedural process that must be followed. Indeed, the regulations provide for action in SEVP's "discretion."

This regulation is not tied to any specific statutory provisions that otherwise limit the agency's discretion or method of proceeding. As the First Circuit Court of Appeals has explained, "[i]t is beyond cavil…that short of constitutional constraints, a court may not impose procedural requirements in administrative cases above and beyond those mandated by statute." *Citizens Awareness Network, Inc. v. United States*, 391 F.3d 3338, 349 (1st Cir. 2004). Accordingly, "agencies have broad authority to formulate their own procedures," and "[a] necessary corollary of this authority is the freedom to experiment with different procedural formats." *Id.* at 352.

Moreover, "[t]he relative urgency of a decision is a thoroughly appropriate factor for an agency to consider when crafting its procedures." *Pan American World Airways, Inc. v. Civil Aeronautics Bd.*, 684 F.2d 31, 38 (D.C. Cir. 1982) (quoting *United States v. FCC*, 652 F.2d 72, 96 (D..C. Cir. 1980)) (approving truncated procedures to assign airline routes in wake of another carrier's bankruptcy).

Accordingly, UNVA submits that section 214.3 provides SEVP with broad and sufficient authority to freeze Mr. Avery's access to SEVIS and to reinstate Dr. Ho as the PDSO during the pendency of its investigation.

---

[1] We note that the first sentence of this provision appears to modify section 214.3(l)(1), which provides that the "PDSO and any other DSO must be named by the president, owner, or head of a school or school system." In other words, although the PDSO may initially be named by the owner, president, or head of the school, subsequent changes to the PDSO may only be made by the PDSO. Such a reading would eliminate the potential for an individual to usurp the role of PDSO without the current PDSO's approval. Because that this regulation was not applied when Mr. Avery unilaterally had Dr. Ho removed as PDSO, we believe that this procedural violation is another reason that SEVP should act to restore Dr. Ho to his position as PDSO immediately.

-2-

# VENABLE®LLP

## II.    The Withdraw Regulations Also Support Interim Relief.

Alternatively, UNVA submits that SEVP can proceed under section 214.4 and still issue an immediate order restoring Dr. Ho to the position of PDSO. First, the agency has authority under the statute to take actions less severe than withdrawal. Second, the procedures in section 214.4 are not mandated by statute, but by the due process considerations when a property right—i.e. revocation of a school's ability to operate under the SEVP—is at stake. When those rights are not at stake, SEVP is not constrained to follow the procedures specified in section 214.4. Accordingly, it is clear that SEVP may take action short of withdrawal and may do so on an interim basis without providing notice and opportunity to respond because a property right is not at stake.

***Statutory Framework:*** Section 214.4 governs SEVP's ability to withdraw its approval of a school to enroll nonimmigrant students. These regulations appear to implement two broad statutory provisions. 8 U.S.C. § 1372(d)(2) provides that:

> If an approved institution of higher education, other approved educational institution, or a designated exchange visitor program fails to provide the specified information, such approvals and such issuance of visas shall be revoked or denied.

In addition, 8 U.S.C. § 1101(a)(15) provides that, "if any such institution of learning or place of study fails to make reports promptly the approval shall be withdrawn…"

***Authority for Other Actions:*** In the one case we have been able to locate dealing with what is now SEVP and the statutory provisions at issue here, the Court of Appeals for the District of Columbia Circuit found discretion for SEVP to take "action less drastic than total withdrawal of approval" of a school inherent in the statute. *Blackwell v. Attorney General*, 454 F.2d 928, 932 (D.C. Cir. 1972). Accordingly, it is clear that under the withdrawal statutes, SEVP has the authority to take other action. The question then, is whether SEVP can take that action without following the procedures specified in section 214.4.

***Procedural Protections:*** *Blackwell*, which dealt with the government's attempt to withdraw approval for a school, held that notice and opportunity to respond is necessary in a case where the school's approval may be terminated because an "approved status [is] a valuable asset in the nature of a license which the governmental proceedings threatened to terminate." *Blackwell*, 454 F.2d at 932 (imposing procedural requirements on the termination of a school's authority to enroll nonimmigrant students). Therefore, the Court of Appeals held that "it seems clear [the school] was entitled to procedures conformable with due process of law." *Id.*

Those procedural protections are, however, not necessary when there is no property right at issue and when SEVP is not ordering a withdrawal of approval to operate. As the *Citizens Awareness Network* case made clear, "short of constitutional constraints, a court may not impose procedural requirements in administrative cases above and beyond those mandated by statute." *Citizens Awareness Network*, 391 F.3d at 349. UNVA is not asking

# VENABLE®LLP

for its status to be terminated; indeed it is expressly asking that it not be terminated. Rather, it is asking SEVP to modify the PDSO. Accordingly, the procedural protections that are inherent in section 214.4 are not mandated by the Constitution because Mr. Avery has no property right to be PDSO (even if he were chancellor, he has no individual right to be PDSO).[2] Moreover, these statutory provisions do not impose any other procedural require-ments on SEVP, and UNVA has been unable to locate any other applicable statutes which might impose such additional procedures. *See Blackwell*, 454 F.2d at 935 ("Neither the stat-ute relating to the schools, nor the applicable regulations, sets forth any clear-cut adminis-trative procedure for withdrawal of a school's approved status.").

**Interim Relief:** Thus, even under section 214.4, SEVP is not constrained to wait for Mr. Avery's response, because the outcome UNVA seeks is not withdrawal of the school's ap-proval under 8 U.S.C. § 1101(a)(15), but rather, the lesser-included remedy of changing the PDSO on an interim basis while SEVP waits for responses to its notice issued under Section 214.4.

Courts have held that when agencies have broad discretion in their statutes to take cer-tain actions, they have the authority to do so on an interim basis. For example, in the *American World Airways* case, the court upheld CAB's power to grant "interim authority" for airlines to operate on certain routes by drawing parallels to the court's authority to en-ter interim relief. *American World Airways*, 684 F.2d at 44.[3] On the other hand, when there are specific statutes that constrain an agency's actions, they may not have the authority to grant interim relief that does not comport with the statute's mandates. *See International Union, United Mine Workers of America v. Mine Safety and Health Administration*, 823 F.2d 608 (D.C. Cir. 1987) (finding that specific statutory provisions required Mine Safety and Health Administration to follow full procedures before issuing decision).

Here, courts have held that the statutes at issue do not impose procedural limitations on SEVP. There are due process concerns with any agency action; in this situation, however, there is no property right at stake because the issue is not withdrawal of the school's ap-proval. Accordingly, the complete provisions of section 214.4 are not required. Moreover, the broadly worded statue provides SEVP with discretion as to the remedies it may impose. Taken together, we believe SEVP has the authority to issue interim relief under section 214.4.

---

[2] This is a much different case, therefore, than that presented in *Brendsel v. Office of Federal Hous-ing Enterprise Oversigh*, 339 F. Supp. 2d 52 (D.D.C. 2004), where the court rejected OFHEO's effort to have Freddie Mac freeze payments to its outgoing CEO. There, the court held that OFHEO did not have the authority to freeze the assets prior to a hearing, given the property right that Mr. Brendsel had and the statutory scheme that required a hearing when freezing assets. Here, there is no prop-erty right at issue and the statute is much broader with respect to SEVP's authority. Indeed, there is no statutory framework imposing restrictions on SEVP's actions.

[3] Judicial interim relief includes such orders as the entry of a preliminary injunction. As explained in *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995), preliminary in-junction is appropriate when the moving party shows (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunc-tion would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.

# VENABLE LLP

## III.    SEVP's Decision to Issue Interim Relief Would be Reviewed Deferentially.

Finally, it is important to note that should a decision to exercise interim relief be challenged, a reviewing court would review the decision that SEVP has the authority to issue the interim relief deferentially under settled administrative law principles.

First, the statute at issue is silent with respect to the procedures the agency must follow when changing the PDSO or when issuing a notice of intent to withdraw. In such situations, *Chevron U.S.A. inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), requires a court to affirm the agency's interpretation of the statute so long as it is a "permissible construction of the statute." *Id.* at 843. Given the absolute dearth of statutory language explaining how SEVP is to administer its certification program, particularly in light of the much more explicit provisions in the immigrations statues governing other procedural issues, SEVP should be given wide latitude to interpret its statute.

Second, agencies are given wide latitude to interpret their own regulations. Courts uphold an agency's interpretations of its own regulations unless the interpretation is "plainly erroneous or inconsistent with the regulation." *Federal Exp. Corp. v. Holowecki*, 128 S.Ct. 1147, 1156 (2008) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). Section 214.3(l)(2) gives SEVP broad authority to reject DSO designations; a court should therefore defer to SEVP's choice of when to reject a DSO. Similarly, although section 214.4 is clear with respect to withdrawing a school's approval, it is silent with respect to changing the DSO. Again, a reviewing court should give deference to SEVP's interpretation that it has the authority to grant interim relief.

<u>CONCLUSION</u>

Thus, there are two different sources of authority for SEVP to issue an immediate order designating an individual as the PDSO in cases where multiple parties have asserted the right to select the PDSO: (1) the PDSO regulation and (2) the notice of intent to withdraw regulations. This authority is particularly strong in situations where there is not a property right at stake for the individual who would be removed from the PDSO position on an interim basis. It is further bolstered when the interim relief involves a change of PDSO and not the withdrawal of the school's approval to admit nonimmigrant students.



| | | | |
|---|---|---|---|
| 575 7th Street, NW | Telephone 202-344-4000 | www.venable.com |
| Washington, DC 20004 | Facsimile 202-344-8300 | |

| | | |
|---|---|---|
| **Ronald M. Jacobs** | (202) 344-8215 | rmjacobs@venable.com |
| *Associate* | | |

April 16, 2008

**Via Email & Hand Delivery**
Ms. Dianne C. Currie
Acting School Certification Branch Chief
Student & Exchange Visitor Program
U.S. Immigration & Customs Enforcement
U.S. Department of Homeland Security
425 I Street NW
Washington, DC 20536

  **Re: *Notice of Intent to Withdraw***
     ***WAS214F01186***

Dear Ms. Currie:

   Thank you very much for taking the time to meet with us last Tuesday, April 8, 2008. During our meeting, we discussed our request for interim and permanent relief for the University of Northern Virginia ("UNVA"), in the form of making Daniel Ho the Principal Designated School Official ("PDSO"). On Thursday of last week, we provided you with additional legal analysis demonstrating the Student Exchange Visitor Program's ("SEVP") authority to modify the PDSO immediately.

   Since our meeting last week, UNVA continues to see declining enrollment while its students continue to suffer arbitrary terminations of their I-20 status. Thus, the need for interim relief remains.

   We very much prefer to reach a prompt administrative remedy to this situation. As we discussed at our meeting, however, given the ongoing harm to the school, students, and immigration system, we are prepared to seek judicial relief. We do not wish to do so if a decision on our request for immediate (or interim) relief—one way or the other—is imminent. Accordingly, I would greatly appreciate it if you could let me know the timeframe for your decision. If SEVP is not going to make a decision by noon on Friday, I anticipate that we will have to file a law suit to protect UNVA's interests, but would like to be able to make an informed decision.

   As always, thank you very much for your time and attention to this matter. We remain hopeful that SEVP will remedy the serious procedural defects in its initial decision in a time-frame that will allow UNVA to remain an ongoing operation and that will prevent additional students from facing the prospect of deportation as a result of the rogue actors' terminating their I-20 status.

# VENABLE°LLP

Ms. Dianne C. Currie
April 16, 2008
Page 2


We look forward to hearing from you in the very near future about the status of this matter.


Respectfully submitted,

*Ed Wilson*

Ronald M. Jacobs
D. E. Wilson, Jr.
Counsel for UNVA

RMJ:lmg
Enclosure

cc:   The Honorable Asa Hutchinson
      Dr. Daniel F. Ho
      E. Paul Choe



VENABLE°LLP    575 7th Street, NW          Telephone 202-344-4000       www.venable.com
                Washington, DC 20004        Facsimile 202-344-8300

**Ronald M. Jacobs**          (202) 344-8215              rmjacobs@venable.com
*Associate*

April 25, 2008

**VIA EMAIL & HAND DELIVERY**
Louis Farrell
Director
Student & Exchange Visitor Program
U.S. Immigration & Customs Enforcement
U.S. Department of Homeland Security
425 I Street NW
Washington, DC 20536

   *Re:  Notice of Intent to Withdraw*
     *WAS214F01186*

Dear Mr. Farrell:

 We represent the University of Northern Virginia ("UNVA") and requested on March 17, 2008, that the Student Exchange Visitor Program ("SEVP") reinstate Dr. Daniel F. Ho as UNVA's Principal Designated School Official ("PDSO") in the Student Exchange Visitor Information System ("SEVIS"). Thereafter, SEVP issued a Notice of Intent to Withdraw, and has indicated that it will make a decision about the proper PDSO at some time after the 33-day response period. In view of the ongoing and potentially irreparable harm to UNVA, we formally requested that SEVP issue an interim decision immediately reinstating Dr. Ho (Please see our letters to Dianne Currie dated March 17, 27, and April 1, 8, 10, and 16, 2008, requesting immediate relief; the letters on April 8, 2008 and after have specifically requested relief prior to the conclusion of the Notice of Intent to Withdraw proceedings).

 It is our understanding that SEVP has informally denied our request for an immediate change in UNVA's PDSO. Moreover, we understand that SEVP will not provide any written confirmation of its decision to deny our request for interim relief.

 As set forth in our requests for relief and interim relief, UNVA suffers ongoing harm every day that Fay Avery—who was terminated from his position at UNVA by the Board of Directors—remains as the PDSO. Given the ongoing harm to students, UNVA, and the immigration system, we request that you reconsider SEVP's denial of interim relief.[1]

---

[1] Agencies have the inherent authority to reconsider their decisions, even if there are not specific statues or regulations that provide for such a procedure. *See, e.g., Dun & Bradstreet v. U.S. Postal Service*, 946 F. 2d 189, 193 (2d Cir. 1991) ("It is widely accepted that an agency may, on its own initiative, reconsider its interim or even its final decisions, regardless of whether the applicable statute and agency regulations expressly provide for such review."); *Albertson v. FCC*, 182 F.2d 397, 399 (D.C. Cir. 1950) ("[I]n the absence of statutory prohibition . . . [t]he power to reconsider is inherent in the power to decide.").

# VENABLE®LLP

Ms. Louis Farrell
April 25, 2008
Page 2

Because of the ongoing harm, the lack of procedural guidance in this area, and the clear violation of SEVP's own regulation in its initial change of the PDSO to Mr. Avery, we are left with no choice but to seek relief from the courts. Accordingly, UNVA will file a lawsuit against SEVP on Tuesday, April 29, 2008, if we have not received an affirmative decision on this request by noon on that day. In that suit, UNVA will seek immediate declaratory relief, including a temporary restraining order and a preliminary injunction. We believe that we have provided SEVP with a complete factual and legal record to grant the interim relief, and that its failure to deal with this matter in a timely fashion is clearly arbitrary, capricious, and an abuse of discretion under the Administrative Procedure Act.[2]

It has been our hope that SEVP would, on its own and in a timely manner, rectify its procedural errors and the depravation of due process Dr. Ho suffered when the PDSO was changed without notice or an opportunity to be heard. Given the ongoing harm to students and UNVA we cannot wait for SEVP to conclude its Notice of Intent to Withdraw process at some undefined point in the future.

We welcome the opportunity to meet with you and your counsel before noon on Tuesday to discuss this matter.

Respectfully submitted,

Ronald M. Jacobs
D.E. Wilson, Jr.
Counsel for UNVA

cc:    Ms. Dianne Currie (*via email*)
       The Honorable Asa Hutchinson
       Dr. Daniel F. Ho
       E. Paul Choe

---

[2] We note that under the APA, our request for reconsideration does not preclude immediate judicial review. 5 U.S.C. § 704 ("Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.").

*Student and Exchange Visitor Program*

U.S. Department of Homeland Security
425 I Street, NW
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

April 29, 2008

Ronald E. Jacobs, Esquire
Venable LLP
575 – 7th Street, N.W.
Washington, D.C.  22004

Dear Mr. Jacobs:

I am in receipt of your letter dated April 25, 2008.  The Student and Exchange Visitor Program (SEVP) have not made a decision in this matter.  SEVP will review all relevant materials submitted within the time period identified in the Notice of Intent to Withdraw, dated March 25, 2008.  I understand the issue of school ownership is currently in litigation.  Please inform me immediately if the parties resolve this issue or if the court issues a decision.

Sincerely,

Louis M. Farrell
Director
Student and Exchange Visitor Program

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DANIEL F. HO,** ) | |
| ) | |
| **ROY HO,** ) | |
| ) | |
| **UNIVERSITY OF NORTHERN VIRGINIA, INC.,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **EDUCATION DYNAMICS, INC.** ) | **Civil Action No. _____** |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| ) | |
| **STUDENT AND EXCHANGE VISITOR PROGRAM,** ) | |
| ) | |
| **IMMIGRATION AND CUSTOMS ENFORCEMENT,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **DEPARTMENT OF HOMELAND SECURITY,** ) | |
| ) | |
| **Defendants.** ) | |

## DECLARATION OF DANIEL F. HO

I, Daniel F. Ho, a competent adult of sound mind, hereby declare under penalty of perjury under the law of the United States of America:

1. I am the founder and current president of the University of Northern Virginia, Inc. ("UNVA"), and have personal knowledge of all matters contained in this declaration.

2. I incorporated UNVA in 1998 under the laws of the Commonwealth of Virginia.

3. I also incorporated Education Dynamics, Inc. ("EDI") under the laws of the Commonwealth of Virginia in 1998.

4.  I own all of the outstanding shares of EDI and EDI owns 89 percent of the outstanding shares of UNVA.

5.  I was the Principal Designated School Official ("PDSO") for UNVA at the inception of its approval. I subsequently made Roy Ho PDSO and remained as a Designated School Official.

6.  I was never informed by the Student and Exchange Visitor Program ("SEVP") that I had been terminated as a DSO. Rather, I learned this fact only when I tried to log into the Student Exchange Visitor Information System ("SEVIS") and was unable to do so. I contacted the SEVIS help desk and was told that I was no longer authorized to access SEVIS. Roy Ho also never learned that he had been terminated as PDSO until he was unable to log into the system.

7.  UNVA has suffered tremendous reputational harm since Fay Avery has become PDSO. Mr. Avery has engaged in many improper practices, such as terminating student's enrollment and immigration status, making transfer difficult, and imposing improper requirements on the students.

8.  The Korean press has reported on UNVA's problems and I have learned that Korean students—who made up a significant number of UNVA's ESL students—have heard of these reports and are unlikely to come to UNVA because of its declining reputation.

9.  This reputational harm is apparent from the declining numbers of student at UNVA and of the radical drop-off in the number of new students enrolling.

10. Prior to Mr. Avery being named PDSO, UNVA had approximately 600 English as a Second Language ("ESL") students. Since then, over 200 students have transferred out and there are another 60 to 80 waiting to transfer out. I am unable to provide exact numbers because I do not have access to SEVIS.

11. In the past, UNVA had nearly 100 new students ESL join every quarter. Since Mr. Avery has been named PDSO, we have had virtually no new students enroll.

12. In addition to the reputational harm, it is becoming more difficult to operate UNVA. In that past, UNVA had approximately 30 instructors for the ESL program. UNVA is now down to approximately ten, given the decline in enrollment. It will be difficult to recruit new teachers to fill these positions because the education community knows of the turmoil at UNVA that has resulted from my loss of control as the PDSO.

13. The turmoil in the ESL program has spilled over to the non-ESL side of the school as well, and we are experiencing declining enrollment there as well.

14. Although the decline in enrollment causes UNVA economic harm, I view these numbers as evidence of the serious reputational harm to the school.

15. If I am unable to regain control as PDSO in the near future, I believe that it is likely I would be unable to afford to keep UNVA operating.

16. I have plans to open additional schools in the United States. I believe that the reputation of UNVA—which I no longer control because SEVP has removed me as PDSO—will tarnish my reputation in the educational community and make it more difficult to open and operate other schools.

Dated: April 30, 2008

Daniel F. Ho

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DANIEL F. HO,** | ) |
| | ) |
| **ROY HO,** | ) |
| | ) |
| **UNIVERSITY OF NORTHERN VIRGINIA, INC.,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **EDUCATION DYNAMICS, INC.** | )    **Civil Action No. _____** |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| | ) |
| **STUDENT AND EXCHANGE VISITOR PROGRAM,** | ) |
| | ) |
| **IMMIGRATION AND CUSTOMS ENFORCEMENT,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **DEPARTMENT OF HOMELAND SECURITY,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
## FOR A TEMPORARY RESTRAINING ORDER
## AND/OR A PRELIMINARY INJUNCTION

Ronald M. Jacobs
  (D.C. Bar No. 479842)
  (202) 344-8215
  rmjacobs@venable.com
D. Edward Wilson, Jr.
  (D.C. Bar No. 932178)
  (202) 344-4819
  dewilsonjr@venable.com
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004-1601
*Counsel for Plaintiffs*

May 1, 2008

# TABLE OF CONTENTS

Table of Contents .................................................................................................. i

Table of Authorities ............................................................................................. ii

Introduction ......................................................................................................... 1

Legal & Factual Background ............................................................................... 4

    I.    Legal Framework of the Student and Exchange Visitor Program ................ 4

    II.   Proceedings Before SEVP .......................................................................... 6

        A.   Avery's initial efforts to replace Roy Ho as PDSO. .......................... 6

        B.   Dr. Ho and UNVA's attempts to have SEVP remedy its errors and
            restore the status quo ...................................................................... 7

Argument ............................................................................................................ 9

    I.    UNVA Has a Strong Probability of Success on the Merits of its Claims
        that SEVP's Decisions Violated SEVP Regulations in Contravention of
        the APA. ................................................................................................... 11

        A.   SEVP violated its own regulations in making the initial change and
            continues to violated them by refusing to Name Dr. Ho as PDSO. .......... 12

            1.   SEVP failed to follow its own regulations when it removed Roy
                Ho as PDSO and allowed Mr. Avery to self-appoint to that posi-
                tion. ........................................................................................ 12

            2.   SEVP violates its own procedures every single day that it allows
                a non-employee to remain as PDSO of UNVA. ............................. 13

        B.   SEVP violated Dr. Ho's right to due process when it removed the
            PDSO without giving the owner of the school any notice or any op-
            portunity to be heard. ...................................................................... 13

        C.   SEVP violated UNVA's right to timely relief under the APA when it
            refused to act on an interim basis in light of overwhelming evidence
            that Mr. Avery was no longer employed by UNVA. ............................. 14

    II.   UNVA and Dr. Ho Will Suffer Irreparable Injury if Preliminary Relief is
        Denied Be-cause the Illegal Change in PDSO Is Undermining the
        School's Very Existence. .......................................................................... 16

III.  There is No Irreparable Harm to SEVP if an Injunction is Granted Because SEVP Can Always Change the PDSO Pursuant to Lawful Processes if Later Facts Warrant a Change. ..........................................................19

IV.  The Public Interest Strongly Favors Granting Preliminary Relief Because of the Ongoing Harm to Students and the Nation's Immigration System........................20

V.  SEVP's Errors are Properly Before this Court.................................................20

Conclusion ...........................................................................................................................21

Certificate of Service ..........................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

*Statutes*
5 U.S.C. § 555 .................................................................................................................11, 14
5 U.S.C. § 706 .................................................................................................................11, 14
8 U.S.C. § 1101(a)(15).............................................................................................................5
8 U.S.C. § 1372(d)(2) .............................................................................................................5

*Regulations*
*8 C.F.R. § 214.3 ...........................................................................................4, 5, 10, 12, 13
8 C.F.R. § 214.4 ......................................................................................................6, 15

*Cases*
*Blackwell College of Business v. Attorney General*, 454 F.2d 928 (D.C. Cir. 1972)...................13
*Brendsel v. OFHEO*, 339 F. Supp. 2d 52 (D.D.C. 2004) ............................................................20
*CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738 (D.C. Cir. 1995)...................9-10
*City of Moundridge v. Exxon Mobil Corp.*, 429 F. Supp. 2d 117 (D.D.C. 2006).........................10
*Darden v. Peters*, 488 F.3d 277 (4th Cir. 2007) .......................................................................12
*Duchek v. NTSB*, 364 F.3d 311 (D.C. Cir. 2004).......................................................................12
*Express One Int'l, Inc. v. United States Postal Service*, 814 F. Supp. 87 (D.D.C. 1992) .............16
*Garvey v. NTSB*, 190 F.3d 571 (D.C. Cir. 1999).......................................................................11
*Goldberg v. Kelly*, 397 U.S. 254 (1970) ..................................................................................13
*IMS, P.C. v. Alvarez*, 129 F.3d 618 (D.C. Cir. 1997) .......................................................... 12-13
*Mathews v. Eldridge*, 424 U.S. 319 (1976)...............................................................................13
*Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060 (D.C. Cir. 1998) ...................................20
*Mine Reclamation Corp. v. Fed. Energy Reg. Comm'n*, 30 F. 3d 1519 (D.C. Cir. 1994 .............23
*Nat'l Propane Gas Ass'n v. DHS*, 534 F. Supp. 2d 16 (D.D.C. 2008).........................................16
*Patriot, Inc. v. HUD*, 963 F. Supp. 1 (D.D.C. 1997) ................................................................16
*Role Models America, Inc. v. White*, 317 F.3d 327 (D.C. Cir. 2003) ..........................................20
*The Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094 (D.C. Cir. 2003) . 14-15
*Western Energy Co. v. United States Dep't of Interior*, 932 F.2d 807 (9th Cir. 1991) .................12
*Wisconsin Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985)......................................................16

*Indicates principal authority on which Plaintiffs rely.

## **INTRODUCTION**

For the past ten years, Daniel F. Ho has owned and operated the University of Northern Virginia, Inc. ("UNVA" or "the University"), a proprietary school that teaches primarily English as a Second language to foreign students. Dr. Ho served as the Principal Designated School Official ("PDSO") from UNVA's initial approval by the Student and Exchange Visitor Program ("SEVP") until he appointed Roy Ho to serve in that position. Roy Ho named Dr. Ho to be a Designated School Official ("DSO") at that time.

The PDSO is the primary point of contact for SEVP with a school and is responsible for approving student visa applications and entering information into the computerized Student Exchange Visitor Information System ("SEVIS"). Only the PDSO, and his subordinate DSO(s) are permitted to login to SEVIS and make changes to student status.

Roy Ho served as PDSO and Dr. Ho as a DSO until December 2007. In December 2007, Roy Ho was, unbeknownst to him, stripped of his authority as PDSO by SEVP. In addition, SEVP removed Dr. Ho as a DSO. SEVP made these changes at the request of one of the University's now-former executives, Fay Avery. Mr. Avery was not following instructions from Dr. Ho when he made the change; rather, he was leading a cabal of approximately six disgruntled employees in an effort to unseat Dr. Ho from his positions of authority at UNVA. Mr. Avery convinced SEVP not only to remove Roy Ho as PDSO but also to make Mr. Avery himself the PDSO. SEVP made these changes even though the regulations governing the PDSO allow only the existing PDSO to change the PDSO.

Moreover, SEVP never provided Dr. Ho or Roy Ho with any notice or opportunity to respond to the change; indeed, he learned of it only when he was unable to log into the system. After UNVA learned of Mr. Avery's efforts, the UNVA board of directors fired him. Nonetheless,

Mr. Avery and the others in his rogue faction have continued to occupy one of the University's campuses and have attempted to run the school using Mr. Avery's status as PDSO.

Mr. Avery and his minions have not been faithful stewards of UNVA and its students. They have improperly terminated the immigration status of a number of students and have refused to transfer students to other schools when they have lawfully requested to do so. Mr. Avery's actions have resulted in a dramatic drop in the number of students who attend the University and have tarnished the reputation of UNVA, and its owner, Dr Ho.

Dr. Ho and Roy Ho have attempted to reclaim Roy Ho's rightful position as PDSO by contacting SEVP and providing it with documentation showing that Mr. Avery is no longer employed at UNVA, and that Dr. Ho is the lawful owner of UNVA. SEVP has responded through a cumbersome "Notice of Intent to Withdraw" procedure that gave Mr. Avery and Dr. Ho 33 days to provide support for their claims and provides no end-date for a decision. In response to this procedure, Dr. Ho supplied all of the information requested of him within days and also requested SEVP restore the status quo during the pendency of its procedure in order to minimize the harm to UNVA, its students, and to the school's owner.

The clear violations of its regulations and the harm to the school and its owner notwithstanding, SEVP has rejected Dr. Ho's repeated requests and allowed Mr. Avery to remain PDSO. Simply put, SEVP refuses—despite the full administrative record before it—to rectify the situation until some unspecified time in the future.

In an apparent effort to support its position, SEVP has latched on to a lawsuit Mr. Avery has filed against Dr. Ho in Fairfax County court, in which he claims he is a part owner of the school. UNVA has submitted sworn testimony to SEVP of Mr. Avery from that case where he admits he has no ownership in UNVA or its parent company, Education Dynamics, Inc. ("EDI") (of which

Dr. Ho is the sole owner). SEVP nonetheless remains focused on the status of Mr. Avery's litigation, suggesting in its last communication to UNVA that UNVA should provide updates to SEVP if the state-court litigation is resolved.

By refusing to change the PDSO and waiting on the outcome of Mr. Avery's lawsuit in Virginia state court, SEVP has turned normal principals of administrative law on their head, denying Plaintiffs their right to due process and fair administrative procedure while UNVA and Dr.Ho suffer at the hand of a former employee.

SEVP's initial change in the PDSO was arbitrary and capricious under the Administrative Procedure Act because the decision violated SEVP's own regulations. Moreover, that initial change deprived Dr. Ho of a valuable property right in his University without any notice or opportunity to be heard in violation of the due process clause. SEVP's refusal to provide interim relief to restore the status quo during its investigation has been an arbitrary and capricious denial of Dr. Ho's right to timely relief required by the Administrative Procedure Act. Indeed, every day that SEVP refuses to remove Mr. Avery as PDSO, it commits an ongoing violation of its regulations by allowing a non-employee to serve as PDSO.

Accordingly, UNVA, EDI, and Dr. Ho request that this Court issue a Temporary Restraining Order and/or a Preliminary Injunction ordering SEVP to restore Ro Ho as the PDSO for UNVA pending SEVP's resolution of its Notice of Intent to Withdraw proceeding. Dr. Ho, Roy Ho, UNVA, and EDI can demonstrate:

- A substantial likelihood of success on the merits of their APA and due process claims;

- That they have suffered and will continue to suffer irreparable injury without immediate relief;

- That the injunction will not harm SEVP's ongoing process; and

- That the public interest will be served by restoring Dr. Ho to his rightful position as PDSO because he can stop the damage to the immigration system and harm to students who have had their immigration status improperly terminated.

Moreover, it is clear that Plaintiffs have exhausted their administrative remedies, that both SEVP's initial change in PDSO and its refusal to grant interim relief are both final agency actions, and that the administrative record provides all of the facts needed for this Court to proceed.

## LEGAL & FACTUAL BACKGROUND

### I. Legal Framework of the Student and Exchange Visitor Program

SEVP is housed in Immigration and Customs Enforcement ("ICE") which is a component of the Department of Homeland Security ("DHS"). There are two sections of the SEVP regulations at issue in this case. The first is the section governing the designation and change of a PDSO. Because SEVP has decided to proceed by issuing a Notice of Intent to Withdraw UNVA's approved status, the second section of the regulations, governing the withdrawal procedures, will be important.

*Principal Designated School Official Regulations:* Pursuant to section 214.3 of DHS's regulations, schools that wish to serve nonimmigrant students must file a petition with SEVP. If a school is approved by SEVP, the institution must have a PDSO. The regulations define the PDSO as:

> [A] *regularly employed member of the school administration* whose office is located at the school and whose compensation does not come from commissions for recruitment of foreign students. An individual whose principal obligation to the school is to recruit foreign students for compensation does not qualify as a designated official.

8 C.F.R. § 214.3(l)(1) (emphasis added).

SEVP has two regulations that govern the procedures for appointing the PDSO. First, "[t]he PDSO and any other DSO must be named by the president, owner, or head of a school or school system. The PDSO and DSO may not delegate this designation to any other person." *Id.* In addition, the regulations specify that "[a]ny changes to the PDSO or DSO *must be made by the PDSO*." *Id.* § 214.3(l)(2) (emphasis added). SEVP has reserved for itself the ability to control a school's choice of a PDSO: "[i]n its discretion, the Service may reject the submission of any individual as a DSO or withdraw a previous submission by a school of an individual," *id.*, although that discretion is obviously constrained by the other regulations.

Once a PDSO has been appointed, the school must submit:

[A] statement by each designated official certifying that the official is familiar with the Service regulations relating to the requirements for admission and maintenance of status of nonimmigrant students, change of nonimmigrant status under part 248 of this chapter, and school approval under Sec. Sec. 214.3 and 214.4, and affirming the official's intent to comply with these regulations.

*Id.* § 214.3(l)(3). Whenever a school makes changes to the PDSO or DSO, "the designated official must make the same certification." *Id.*

*Withdrawal Regulations:* SEVP requires schools to submit and keep up to date a great deal of information about themselves and the students they enroll. The PDSO, with the assistance of his DSOs, is responsible for submitting information electronically to SEVIS. The Immigration and Nationality Act provides that:

If an approved institution of higher education, other approved educational institution, or a designated exchange visitor program fails to provide the specified information, such approvals and such issuance of visas shall be revoked or denied.

8 U.S.C. § 1372(d)(2). In addition, the statute provides that, "if any such institution of learning or place of study fails to make reports promptly the approval shall be withdrawn…" *Id.* § 1101(a)(15).

Under this authority, SEVP has created regulations that provide procedures to withdraw a school's approval. Section 214.4 includes a number of reasons why SEVP may withdraw a school's approval and the procedures by which it must act. One of the specific reasons for withdrawal includes the "designation as a designated official of an individual who does not meet the requirements of Sec. 214.3(l)(1)." 8 C.F.R. § 214.4(a)(1)(vi).

The regulations governing procedures for withdrawal provide that:

> Whenever a district director has reason to believe that an approved school or school system in his/her district is no longer entitled to approval, a proceeding shall be commenced by service upon its designated official a notice of intention to withdraw the approval. The notice shall inform the designated official of the school or school system of the grounds upon which it is intended to withdraw its approval. The notice shall also inform the school or school system that it may, within 30 days of the date of service of the notice, submit written representations under oath supported by documentary evidence setting forth reasons why the approval should not be withdrawn and that the school or school system may, at the time of filing the answer, request in writing an interview before the district director in support of the written answer.

8 C.F.R. § 214.4(b).

The regulations specify that after the school files a response, "[t]he decision of the district director shall be in writing and shall include a discussion of the evidence and findings as to withdrawal." *Id.* § 214.4(g). The regulations provide that the "decision shall contain an order either withdrawing approval or granting continued approval." *Id.*

## II.  Proceedings Before SEVP

### A.  Avery's initial efforts to replace Roy Ho as PDSO.

Sometime in the last half of 2007, Mr. Avery and several other high-ranking officials decided to initiate an effort to remove Dr. Ho from his positions of authority with UNVA, despite the fact that Dr. Ho owns UNVA and its parent corporation, EDI.[1] Moreover, pursuant to Vir-

---

[1] Letter to Dianne Currie (March 27, 2008) at 2-3 and Ex. A-D ("March 27 Ltr.") (Attached hereto as Exhibit B).

ginia law and the bylaws of the corporations, Dr Ho has ultimate and complete control over UNVA.[2]

To advance his struggle for power, Mr. Avery contacted SEVIS on November 16, 2007, and sought to have Roy Ho removed as PDSO for UNVA.[3] On December 6, 2007, Mr. Avery and the general counsel of UNVA met with SEVP and requested again that Roy Ho be removed as PDSO and that Mr. Avery be named PDSO.[4] They apparently also requested the Dr. Ho be removed as a DSO.

At that time, Mr. Avery served as Chancellor of UNVA, and suggested to SEVP that he was the "head of the school" and entitled to name the PDSO.[5] SEVP apparently granted Mr. Avery's request, because he was made PDSO, and at some point in time, Dr. Ho's access to the system was revoked.[6] It is not clear exactly when this change occurred, because SEVP did not provide any notice to Dr. Ho, even though he was—and is—listed as the owner of UNVA on the I-17, which is the official document detailing to operations of the school.

**B.    Dr. Ho and UNVA's attempts to have SEVP remedy its errors and restore the status quo.**

Once it became apparent to Dr. Ho that Roy Ho was no longer the PDSO, that Dr. Ho was not longer a DSO, and that Mr. Avery had usurped his authority, Dr. Ho undertook a series of steps to try to reclaim his authority at the school. As the sole shareholder of EDI, he made changes to the EDI board of directors, pursuant to Virginia corporate law.[7] The EDI board, as the

---

[2] Letter to Dianne Currie (April 1, 2008) at 2-3 and Ex. 2-5 ("April 1 Ltr.") (Attached hereto as Exhibit E).
[3] Notice of Intent to Withdraw (March 28, 2008) at 1 ("Notice") (Attached hereto as Exhibit D).
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] Ex. E, April 1 Ltr. at 2-3.

majority shareholder of UNVA, then made changes to the UNVA board. That reconstituted board voted to remove a number of officials at UNVA, include Mr. Avery.[8]

Dr. Ho then contacted SEVP to have himself named as the PDSO.[9] Two weeks later, UNVA provided documentation to SEVP outlining the reasons why Dr. Ho was the proper PDSO.[10] UNVA followed this submission with another letter requesting immediate action by SEVP.[11] SEVP responded with a Notice of Intent to Withdraw UNVA's authority to accept nonimmigrant students on March 28, 2008.[12] This letter was the first confirmation from SEVP of the fact that Mr. Avery had contacted SEVP and of the allegations he had made to SEVP concerning UNVA. It requested both sides to provide additional information to SEVP about each one's authority to appoint the PDSO within 33 days from the date of the letter.[13] UNVA responded on April 1, 2008, providing complete responses to SEVP's questions.[14]

On April 8, 2008, counsel for UNVA met with Dianne Currie, the Acting Chief of the School Certification Branch of SEVP to discuss the matter.[15] UNVA submitted a letter that same day providing specific evidence of the harm to students that Mr. Avery was causing using his PDSO status.[16] That letter, with complete backup documentation, demonstrated three examples of students who had their immigrant status terminated by Mr. Avery in contravention of SEVP standards.[17] Several of the students had requested to transfer from UNVA to other institutions—given the instability at the school—only to have Mr. Avery terminate their enrollment status be-

---

[8] *Id.*
[9] Letter to Dianne Currie (March 14, 2008) (Attached hereto as Exhibit A).
[10] Ex. B, March 27 Ltr.
[11] Second Letter to Dianne Currie (March 27, 2008) (Attached hereto as Exhibit C).
[12] Ex. D, Notice.
[13] *Id.* at 2.
[14] Ex. E, April 1 Ltr.
[15] Letter to Dianne Currie (April 10, 2008) ("April 10 Ltr.") (Attached hereto as Exhibit G).
[16] Letter to Dianne Currie (April 8, 2008) ("April 8 Ltr.") (Attached hereto as Exhibit F).
[17] *Id.* at 2.

fore they were transferred.[18] As such, they lost their immigrant status. One student's spouse then lost her immigrant status because her husband was no longer lawfully admitted to the United States.[19]

At the April 8 meeting, and in the letter, UNVA requested specific interim relief naming Dr. Ho as the PDSO during the pendency of the withdrawal proceeding.[20] Two days later, UNVA again wrote to SEVP requesting immediate relief[21] and providing a memorandum detailing the legal authority for an immediate change in PDSO status by SEVP.[22]

UNVA did not receive a response. It wrote to SEVP again, but received no response.[23] Finally, in a telephone call, SEVP indicated that it would not grant UNVA's request for interim relief and would instead wait until both sides had responded to the Notice. UNVA subsequently requested reconsideration of SEVP's *sub silentio* decision denying its request for interim relief.[24]

SEVP responded, indicating that SEVP has "not made a decision in this matter."[25] SEVP stated that it was going to review information submitted in response to the Notice.[26] In addition, the letter stated that "I understand the issue of school ownership is currently in litigation. Please inform me immediately if the parties resolve this issue or if the court issues a decision."[27]

## **ARGUMENT**

In order to obtain preliminary relief, the moving party must demonstrate: (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is

---

[18] *Id.*
[19] *Id.*
[20] *Id.* at 4.
[21] Ex. G, April 10 Ltr. at 2.
[22] Memorandum regarding Authority of SEVP to Grant Interim Relief (April 10, 2008) (Attached hereto as Exhibit H).
[23] Letter to Dianne Currie (April 16, 2008) (Attached hereto as Exhibit I).
[24] Letter to Louis Farrell (April 25, 2008) (Attached hereto as Exhibit J).
[25] Letter from Louis Farrell (April 29, 2008) ("Denial Ltr.") (Attached hereto as Exhibit K).
[26] *Id.*
[27] *Id.*

not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995). The factors should be viewed "as a continuum, with more of one factor compensating for less of another . . . Thus, if the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *City of Moundridge v. Exxon Mobil Corp.*, 429 F. Supp. 2d 117, 127 (D.D.C. 2006) (citations omitted). However, "[s]ome showing of irreparable harm . . . is a threshold requirement for a preliminary injunction" in every case. *Id.*

UNVA satisfies all four of these prongs. First, SEVP has violated its own regulations and the APA in four different ways:

- The initial change in PDSO at Mr. Aveyr's request did not follow the requirement in 8 C.F.R. § 214.3(l)(2) that only the PDSO can change the PDSO;

- The initial change violated Dr. Ho's right to notice and an opportunity to be heard;

- SEVP's refusal to grant an interim change to the PDSO in order to preserve the status quo denied UNVA of the right to timely administrative action under the APA; and

- SEVP violates its own regulations every day that it allows a non-employee to serve as the PDSO in violations of 8 C.F.R. § 214.3(l)(1).

Second, Mr. Avery is destroying UNVA every single day that he remains the PDSO. He is driving so many students away that the school is likely to fail if he remains at the helm much longer. In addition, by allowing Mr. Avery to act in an arbitrary manor, SEVP has allowed Mr. Avery to destroy the school's reputation—and that of its owner—with potential students, who are afraid that they will be summarily terminated from UNVA, and with SEVP, the agency re-

sponsible for administering the student visa laws. Only a prompt restoration of Dr. Ho as PDSO will remedy this problem.

Third, SEVP will suffer no harm if it is ordered to restore Dr. Ho as the PDSO while it concludes its Notice of Intent to Withdraw proceedings. It appears that SEVP plans to wait for the outcome of the litigation in Virginia to sort out Mr. Avery's status. While Plaintiffs submit this is not necessary in view of Mr. Avery's sworn admission that he has no ownership interest in UNVA, SEVP can do so, so long as Dr. Ho is restored to the status quo and allowed to operate his school.

Fourth, the public interest will be greatly served by immediate injunctive relief. In addition to the often-recognized benefit of having a government agency faithfully administer the nation's laws, an injunction will protect immigrant students who face deportation because of Mr. Avery's cavalier changes to their immigration status. In addition, an immediate change will help to restore confidence that SEVP properly administers the immigration laws through its approved schools.

## I.    UNVA Has a Strong Probability of Success on the Merits of its Claims that SEVP's Decisions Violated SEVP Regulations in Contravention of the APA.

Under the APA, the Court will "set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agencies must act "within a reasonable time" under 5 U.S.C. § 555(b), and the Court may "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). Although the Court must give deference to an agency's interpretation of its regulations, "[d]eference, of course, does not mean blind obedience." *Garvey v. NTSB*, 190 F.3d 571, 580 (D.C. Cir. 1999).

Moreover, the Court must set aside agency action that is "contrary to a constitutional right, power, privilege, or immunity." *Id.* § 706(2)(B). "[J]udicial review of a claim that the agency's actions violated a claimant's constitutional rights is conducted *de novo*," rather than under the more deferential standard for other agency action. *Darden v. Peters*, 488 F.3d 277, 284 (4th Cir. 2007) (citing *Western Energy Co. v. United States Dep't of Interior*, 932 F.2d 807, 809 (9th Cir. 1991).

### A.    SEVP violated its own regulations in making the initial change and continues to violated them by refusing to Name Dr. Ho as PDSO.

"[I]t is a 'well-settled rule that an agency's failure to follow its own regulations is fatal to the deviant action.'" *IMS, P.C. v. Alvarez*, 129 F.3d 618, 621 (D.C. Cir. 1997) (quoting *Mine Reclamation Corp. v. Federal Energy Regulatory Comm'n*, 30 F. 3d 1519, 1524 (D.C. Cir. 1994); *see also Duchek v. NTSB*, 364 F.3d 311 (D.C. Cir. 2004) (holding that agency's interpretation of its regulations was arbitrary and capricious under the APA because it's interpretation was inconsistent with the regulation).

### 1.    SEVP failed to follow its own regulations when it removed Roy Ho as PDSO and allowed Mr. Avery to self-appoint to that position.

SEVP violated its regulation providing "[a]ny changes to the PDSO or DSO must be made by the PDSO," 8 C.F.R. § 214.3(l)(2), when it changed the PDSO at the request of Mr. Avery. Simply put, Roy Ho, and not Mr. Avery, was the PDSO at the time Mr. Avery made the request. Accordingly, SEVP failed to follow its stated procedures and its action is arbitrary and capricious and contrary to law.

In the Notice, SEVP indicated that because Mr. Avery held him self out as the "Chancellor" of UNVA, SEVP determined that he was the "head of the school."[28] The regulations do allow the "head of the school" to name the PDSO. However, they also clearly specify that "[a]ny changes

---

[28] Ex. D, Notice at 1.

to the PDSO or DSO *must* be made by the PDSO." SEVP has advanced no suggestion that it, in any way, attempted to comply with the portion of the regulations requiring the PDSO to initiate the change when it made the change to the PDSO at Mr. Avery's behest.

### 2. SEVP violates its own procedures every single day that it allows a non-employee to remain as PDSO of UNVA.

SEVP's regulations provide that the PDSO must be "a regularly employed member of the school administration whose office is located at the school." 8 C.F.R. § 214.3(l)(1). UNVA has provided to SEVP a copy of a board of directors' resolution terminating Mr. Avery's employment with UNVA.[29] Thus, SEVP's refusal to remove Mr. Avery as the PDSO violates its regulation requiring the PDSO to be an employee of the school and is thus "fatal to the deviant action." *IMS, P.C. v. Alvarez*, 129 F.3d 618, 621 (D.C. Cir. 1997). Accordingly, SEVP's continuing retention of Mr. Avery is arbitrary, capricious, and an abuse of discretion under the APA.

### B. SEVP violated Dr. Ho's right to due process when it removed the PDSO without giving the owner of the school any notice or any opportunity to be heard.

Not only did SEVP fail to follow its own regulations, but it also failed to provide the owner of UNVA—and the existing PDSO—with any notice of its change or any opportunity to object to the change. This lack of notice and any opportunity to challenge Mr. Avery's allegations deprived Dr. Ho of a right to property in violation of the Fifth Amendment to the Constitution. *Goldberg v. Kelly*, 397 U.S. 254 (1970); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"); *Cf. Blackwell College of Business v. Attorney General*, 454 F.2d 928 (D.C. Cir. 1972) (holding that the school was entitled to notice and an opportunity to correct before revocation proceedings were begun pursuant to the Administrative Procedure Act).

---

[29] Ex. B, March 27 Ltr. at 3 (and Ex. E-F thereto); Ex E, April 1 Ltr. at 3 (and Ex. 8 thereto).

The regulations do provide that any one of three people may determine who will be the PDSO, and Mr. Avery was, at the time of the change, one of those individuals. However, Mr. Avery was shortly thereafter terminated by UNVA. This sequence of events demonstrates the folly of SEVP's failure to provide Dr. Ho with notice of the change: had SEVP provided the appropriate notice, Dr. Ho could have terminated Mr. Avery from his position prior to SEVP's unauthorized action.

It is important to note that the contrary argument does not apply. That is, although SEVP has tied itself in knots in order to protect Mr. Avery's procedural rights, there is no reason for SEVP to do so. Mr. Avery is not the owner of UNVA. Accordingly, he does not possess any property interest in the PDSO position. Moreover, UNVA terminated Mr. Avery from his employment. As such he has no right, whatsoever, to remain as PDSO. Accordingly, SEVP's efforts to protect Mr. Avery are not required and simply undermine Dr. Ho's right to name the PDSO.

**C. SEVP violated UNVA's right to timely relief under the APA when it refused to act on an interim basis in light of overwhelming evidence that Mr. Avery was no longer employed by UNVA.**

The APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed,' *id.* § 706(1)." *The Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003). Claims of unreasonable delay focus on three factors:

- "[A]ny statutory timetable or other indication of the speed with which [the Congress] expects the agency to proceed";

- "[T]he nature and extent of the interests prejudiced by delay, with particular concern for matters of human health and welfare"; and

- "[T]he effect of expediting delayed action on agency activities of a competing or higher priority."

*Id.* at 1100 (internal quotations omitted). There is not statutory timetable present here and there is no suggestion that SEVP does not have the resources to deal with this issue or that "a judicial order putting [the petitioner] ahead of the queue [would] simply move[] all other back one space." *Id.*

Rather, as presented to the agency, and as discussed below, SEVP's refusal to grant immediate interim relief causes UNVA and Dr. Ho extreme prejudice and allows Mr. Avery to harm students by arbitrarily terminating their immigration status.[30] SEVP's choice of using a Notice of Intent to Withdraw gave Mr. Avery at least an extra month to operate as the PDSO—even though he was no longer employed by UNVA—while SEVP waited for *him* to respond to the Notice. There is no deadline for SEVP to act on the Notice and SEVP's last communication suggested that it would wait for the Virginia courts to handle Mr. Avery's allegations that he has some, as yet unspecified, ownership interest in UNVA.[31] As set forth below, he has used every single day of his unlawful tenure as PDSO to harm UNVA and its students.

In addition, the withdrawal regulations are not designed to remedy this situation, because the result of that process is a "decision [that] shall contain an order either withdrawing approval or granting continued approval." The procedures do not provide that the agency's final decision may include a change in PDSO. Although SEVP may issue a notice of intent to withdraw if a school has designated an improper person as PDSO, in this case the school has taken every effort to prevent a person not qualified to be PDSO from remaining as the PDSO, but it is SEVP that has refused to remedy the situation.

---

[30] Ex. F, April 8 Ltr. at 2 (and Ex. 1 thereto).
[31] Ex. K, Denial Ltr. at 1.

In short, nothing in the "withdrawal" regulations suggests that they are an all-purpose system designed to remedy every issue that comes up with the SEVIS system. Thus, SEVP has chosen a method of resolving this matter that bears no resemblance to the reality at the school or to the harm that is being worked every single day. Regardless of the ultimate outcome of SEVP's notice proceeding, it has refused to provide the immediate relief—by remedying its clear errors of law—to which UNVA is entitled.

## II.    UNVA and Dr. Ho Will Suffer Irreparable Injury if Preliminary Relief is Denied Because the Illegal Change in PDSO Is Undermining the School's Very Existence.

In order to prevail on a motion for preliminary relief, a party must demonstrate that it will suffer some irreparable injury. The D.C. Circuit and other Courts in this District have recognized similar harms to those suffered by Plaintiffs as grounds for granting emergency relief. For example, harm to business reputation or goodwill can constitute irreparable injury. *Patriot, Inc. v. HUD*, 963 F. Supp. 1, 5 (D.D.C. 1997). Similarly, harm to an entity's relationship with those it does business can result in irreparable injury. *Express One Int'l, Inc. v. United States Postal Service*, 814 F. Supp. 87, 91 (D.D.C. 1992) (harm to plaintiff's relationship with its primary subcontractor would not be susceptible to recovery). Moreover, "[r]ecoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985); *see also Nat'l Propane Gas Ass'n v. DHS*, 534 F. Supp. 2d 16, 19 n.4 (D.D.C. 2008).[32]

UNVA has provided ample evidence to SEVP that the longer SEVP delays in remedying its errors, the more harm will befall UNVA. At this point in time, enrollment in the English as a

---

[32] Of course, it is not clear that any monetary harm caused by SEVP would ever be recoverable because the United States enjoys sovereign immunity for most of its administrative actions. Regardless, as shown below, total ruin is a distinct possibility for UNVA.

Second Language ("ESL") program at UNVA has fallen.[33] As explained below, students are having their immigration status terminated in an arbitrary fashion.[34] The Korean press has already reported on the problems at UNVA that have been the result of SEVP's actions.[35]

This reputational harm has lead to additional students seeking to leave the school and fewer students being willing to enter. Prior to the turmoil caused by SEVP's change in PDSO, there were approximately 600 students in the ESL program at UNVA.[36] Because Dr. Ho no longer has access to SEVIS, it is difficult to provide exact numbers, but it appears that approximately 200 students have transferred out of the ESL program.[37] It appears that approximately 60 to 80 additional students are waiting to transfer to other institutions.[38] Moreover, the impact of the reputational harm has impacted recruiting of new students. In the past, UNVA's ESL program had approximately 100 new students enroll every quarter.[39] Since the PDSO change, there have been virtually no new students enrolling in UNVA's ESL program.[40]

As UNVA's enrollment falls, the ability to maintain the institution declines. In the past, there were approximately 30 ESL instructors at UNVA.[41] With the declining enrollment, that number is down to approximately 10.[42] Because of the reputational harm, it will be difficult to recruit new instructors once the situation is resolved, and even harder to recruit enough if the situation is allowed to continue. Given the declining enrollment, the loss of faculty, and potential

---

[33] Ex. B, March 27 Ltr. at 4; Ex. E, Aril 1 Ltr. at 5.
[34] Ex. F, April 8 Ltr. at 2.
[35] Decl. of Daniel F. Ho ¶ 8 (April 30, 2008) ("Ho Decl.") (Attached hereto as Exhibit L). Although this case involves review of SEVP's administrative actions, and therefore should occur solely on the administrative record before the agency, Dr. Ho's Declaration demonstrates evidence of the harm to UNVA for the purposes of obtaining preliminary relief. Plaintiffs submit, however, that the Court has ample evidence of the harm to UNVA in the administrative record before it, and need not rely on Exhibit L.
[36] Ho Decl. ¶ 10.
[37] Ho Decl. ¶ 10
[38] *Id.*
[39] *Id.* ¶ 11.
[40] *Id.*
[41] *Id.* ¶ 12.
[42] *Id.*

for even more reputational harm, Dr. Ho believes that it may be impossible to continue to operate UNVA.[43]

In addition to UNVA, Dr. Ho has plans to open additional schools.[44] However, Dr. Ho has perceived that the reputational damage that Mr. Avery has brought on UNVA as a result of SEVP's decisions to allow Mr. Avery to serve as PDSO has tainted Dr. Ho's reputation in the education community and that it will be more difficult for him to open and operate other schools.[45]

The proper functioning of the immigration system that allows foreign students to learn in the Untied States requires institutions that are willing to serve them. In addition, it requires the students to trust that the United States has a functioning system to admit them to the country for the duration of their education. More importantly, it requires those students to trust that the institutions they are attending will be able to provide their education and properly administer their immigration status. UNVA's reputation to provide those services is being destroyed every single day that Mr. Avery is allowed to remain as PDSO.[46] Foreign students who seek to come to the United States will associate UNVA with arbitrarily terminating student status and with imposing improper conditions on their stay. As such, they will chose other institutions. This is not mere economic loss, but loss of business reputation that is essential for UNVA to remain in business.

In sum, there is concrete harm to UNVA's reputation and ability to remain in business without immediate injunctive relief.

---

[43] *Id.* ¶ 15.
[44] *Id.* ¶ 16.
[45] *Id.*
[46] Decl. of Daniel F. Ho ¶ 7.

**III.  There is No Irreparable Harm to SEVP if an Injunction is Granted Because SEVP Can Always Change the PDSO Pursuant to Lawful Processes if Later Facts Warrant a Change.**

SEVP has clearly violated its own regulations and denied Roy Ho and Dr. Ho due process. It has little or no interest in having its illegal action remain in place pending the outcome of its withdraw proceeding.

An order from the Court directing that Roy Ho be reinstated as the PDSO and Dr. Ho as DSO will do nothing to interfere with SEVP's ongoing process. Plaintiffs have submitted overwhelming evidence to SEVP that Dr. Ho is the rightful owner of UNVA and that Mr. Avery's employment was terminated. It is true that there is litigation in Virginia over Mr. Avery's claims of ownership and his unlawful occupation of UNVA's facilities. However, that litigation is ongoing. Should the court there reach a decision contrary to Dr. Ho, then SEVP will have a court order determining ownership. More likely, however, Dr. Ho and UNVA will prevail—in time—over Mr. Avery. Waiting for that decision allows Mr. Avery additional time to ruin UNVA using his government-sanctioned status. It also turns the administrative process upside down by allowing Mr. Avery's allegations to govern SEVP's decisions, while denying Dr. Ho access to SEVIS to run the school.

Moreover, Dr. Ho has a long track record of running UNVA successfully and without any indication from SEVP of problems. Mr. Avery's reign has been characterized by procedural errors that have harmed the students. Accordingly, not only is there no harm to SEVP if it is required to reinstate Roy Ho and Dr. Ho immediately, but in fact the integrity of the student immigration system would be enhanced by reinstatement.

**IV. The Public Interest Strongly Favors Granting Preliminary Relief Because of the Ongoing Harm to Students and the Nation's Immigration System.**

"[T]he public has a profound interest in assuring that [the agency] acts within the limits on its authority established by Congress." *Brendsel v. OFHEO*, 339 F. Supp. 2d 52, 67 (D.D.C. 2004); *see also Patriot, Inc.*, 963 F. Supp. at 6 ("the public interest is best served by having federal agencies comply with the requirements of federal law, particularly the notice and comment requirements of the APA, and the agency's own stated polices"); *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (affirming district court's decision to grant preliminary injunction, where district court decided this factor based on "the public's interest in the faithful application of the laws").

**V. SEVP's Errors are Properly Before this Court.**

Finally, it is clear that SEVP's violations of the APA are properly before the Court. Plaintiffs first challenge SEVP's initial change of the PDSO. An agency's action is final when "the agency has imposed an obligation, denied a right, or fixed some legal relationship." *Role Models America, Inc. v. White*, 317 F.3d 327, 331-32 (D.C. Cir. 2003) (internal alterations and quotations omitted). Clearly, changing the PDSO from Roy Ho to Mr. Avery fixed a legal relationship. SEVP's refusal to restore Roy Ho's status is a denial of a right that is ongoing.

Even though SEVP has launched a process to sort through Mr. Avery's apparent allegations about ownership and control of UNVA, it has done nothing to remedy its clear violations of its own regulations. SEVP may ultimately make a decision based on the outcome of the state court litigation, but that does nothing to remedy the procedural defects now before this Court.

**<u>CONCLUSION</u>**

For the forgoing reasons, this Court should issues a temporary restraining order and/or preliminary injunction.

Respectfully submitted,

<u>/s/ Ronald M. Jacobs</u>
Ronald M. Jacobs
   (D.C. Bar No. 479842)
   (202) 344-8215
   rmjacobs@venable.com
D. Edward Wilson, Jr.
   (D.C. Bar No. 932178)
   (202) 344-4819
   dewilsonjr@venable.com
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004-1601

May 1, 2008                                   *Counsel for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 1st Day of May, 2008, a true and correct copy of Plaintiffs' Motion for a Temporary Restraining Order and/or a Preliminary Injunction; Plaintiffs' Memorandum in Support of Motion for Temporary Restraining Order and/or a Preliminary Injunction; Plaintiffs' Proposed Order; and Plaintiffs' Certificate Pursuant to Local Rule 7.1 were served upon the following by hand delivery and email:

<u>**Immigration and Customs Enforcement**</u>
Michael H. Neifach
Principal Legal advisor to Immigration and Customs Enforcement
Immigration and Customs Enforcement
U.S. Department of Homeland Security
425 I Street, NW, Room 6100
Washington, DC 20536

<u>**Student and Exchange Visitor Program**</u>
Louis Farrell
Director
Student and Exchange Visitor Program
Immigration and Customs Enforcement
U.S. Department of Homeland Security
425 I Street, NW,
Washington, DC 20536

<u>**United States Attorney's Office**</u>
555 4th Street, N.W.
Washington, D.C. 20530

In addition, the following was served by certified mail and email:

<u>**Department of Homeland Security**</u>
Nicholas Perry
United States Department of Homeland Security
Washington, DC 20536

/s/ Ronald M. Jacobs
Ronald M. Jacobs
   (D.C. Bar No. 479842)
   (202) 344-8215
   rmjacobs@venable.com
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004-1601
*Counsel for Plaintiffs*

- 22 -

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DANIEL F. HO,** | ) | |
| | ) | |
| **ROY HO,** | ) | |
| | ) | |
| **UNIVERSITY OF NORTHERN VIRGINIA, INC.,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **EDUCATION DYNAMICS, INC.** | ) | **Civil Action No. _____** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **[PROPOSED] ORDER** |
| | ) | |
| | ) | |
| **STUDENT AND EXCHANGE VISITOR PROGRAM,** | ) | |
| | ) | |
| **IMMIGRATION AND CUSTOMS ENFORCEMENT,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **DEPARTMENT OF HOMELAND SECURITY,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>ORDER</u>

Upon consideration of the Motion of Plaintiffs Daniel F. Ho, Roy Ho, Education

Dynamics, Inc., and the University of Northern Virginia (collectively, "Plaintiffs") for a

Temporary Restraining Order enjoining the Student Exchange Visitor Program ("SEVP")

designation of Fay R. Avery as the Principal Designated School Official ("PDSO") of UNVA,

upon consideration of SEVP's administrative record, the Government's opposition, and for good

cause shown, it is:

ORDERED that Plaintiffs' Motion for a Temporary Restraining Order is granted; and it is further:

ORDERED that SEVP's decision making Mr. Avery PDSO for UNVA is enjoined pending entry of a final Judgment in this action.

_____

United States District Judge