**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DANIEL F. HO, et al.,    )
          )
    Plaintiffs,  )
          )
    v.    )  **Civil Action No. 08-757 (JDB)**
          )
STUDENT EXCHANGE VISITOR )
PROGRAM, et al.    )
          )
    Defendants. )
_____)

## DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION

   Defendants United States Department of Homeland Security, Immigration and Customs

Enforcement, and Student Exchange and Visitor Program ("Defendants"), through undersigned

counsel, hereby move this Court to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P.

12(b)(6) for failure to state a claim, or alternatively, for summary judgment pursuant to Fed. R.

Civ. P. 56 in this Administrative Procedure Act, 5 U.S.C. § 701 et seq., ("APA") case.

Defendants also oppose Plaintiff's Application for a Preliminary Injunction ("PI Application").

In support of this motion and opposition, Defendants respectfully refer the Court to the attached

memorandum of points and authorities, statement of material facts, and record below, together

with supporting declarations.  A proposed order is also attached.

        Respectfully submitted,

        __/s/_____
        JEFFREY A. TAYLOR , D.C. Bar # 498610
        United States Attorney

___/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

___/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **DANIEL F. HO, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-757 (JDB)** |
| | ) | |
| **STUDENT EXCHANGE VISITOR** | ) | |
| **PROGRAM, et al.[1]** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' APPLICATION
FOR PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Defendants, the Student and Exchange Visitor Program ("SEVP"), United States

Immigration and Customs Enforcement ("ICE") and United States Department of Homeland

Security ("DHS"), by and through their undersigned counsel, respectfully submit their

Memorandum of Points and Authorities in Support of  Defendants' Motion to Dismiss or, in the

Alternative, for Summary Judgment, and in Opposition to Plaintiffs' Application for Preliminary

Injunction.   Plaintiffs allege that Federal Defendants (1) violated SEVP regulations and the

Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA") by changing the principal

designated school official ("PDSO") of the University of Northern Virginia ("UNVA") at the

request of the UNVA Chancellor Fay Avery, (2) violated the APA and Plaintiff Daniel Ho's Fifth

---

[1] Student Exchange Visitor Program ("SEVP") is not a legal entity, but an office within
the Immigration and Customs Enforcement ("ICE").   Accordingly, it is not an appropriate
defendant in this case.

Amendment rights by approving the PDSO change without providing Daniel Ho notice and opportunity to respond prior to the PDSO change, (3) violated the APA by issuing a Notice of Intent to Withdraw ("NOIW") UNVA's approval for the attendance of nonimmigrant students instead of granting Plaintiffs' request to appoint Daniel Ho as PDSO in place of Mr. Avery, and (4) violated SEVP regulations by allowing Mr. Avery to remain PDSO after Plaintiffs alleged that Mr. Avery had been terminated by UNVA.  Plaintiffs seek a declaration that SEVP violated 8 C.F.R. §214.3(l)(2), and acted arbitrarily and capriciously and contrary to law by changing the PDSO at Mr. Avery's request, a declaration that SEVP continues to violate said regulation and acts arbitrarily and capriciously by refusing to remove Mr. Avery as PDSO, and an Order permanently enjoining SEVP from making Mr. Avery the PDSO for UNVA without Daniel Ho's approval.  R. 1.

Plaintiffs' arguments are without merit.  As more fully set forth below, SEVP acted in accordance with its regulations in every instance, including approving the PDSO change and issuing the NOIW.  Further, Daniel Ho has no property right relevant to this case, and he was not entitled to notice and an opportunity to respond prior to the PDSO change under the relevant authority.

## II.  SUMMARY OF FACTS

### A.  Background of Applicable SEVP Regulations

Under 8 C.F.R. § 214.3(a)(1):

[a] school or school system [like UNVA] seeking approval for attendance by nonimmigrant students under sections 101(a)(15)(F)(I) or 101 (a)(15)(M)(I) of the Immigration and Nationality Act , 8 U.S.C. 1101 et seq. ("Act"), or both, shall file a petition on Form I-17 with the [SEVP] having jurisdiction over the place in which the school or school system is located.

2

The School Certification Branch ("SCB") of SEVP is responsible for administering the eligibility review of all schools [including UNVA] that wish to host nonimmigrant students under sections 101(a)(15)(F)(i) or 101 (a)(15)(M)(i) of the Act.  Declaration of Diane Currie, Acting Chief of the SCB, ("Currie Declaration"), attached hereto as Attachment A,  ¶ 5.   SCB also determines, pursuant to procedures set forth in 8 C.F.R. § 214.4 et seq., whether a school's approval for the attendance of nonimmigrant students should be withdrawn. Id.  SEVP uses a computer database, the Student and Exchange Visitor Information System ("SEVIS"), to track and monitor schools and programs, students, exchange visitors and their dependents throughout the duration of approved participation within the U.S. education system.  Id at ¶ 4.

One of a school's requirements for gaining approval for the attendance of nonimmigrant students is that each school campus must have one PDSO.  See 8 C.F.R. § 214.3(l)(ii).  "The PDSO . . . must be named by the president, owner, or head of a school or school system." 8 C.F.R. §214.3(l)(1).   A PDSO is defined by 8 C.F.R. § 214.3(l) as "a regularly employed member of the school administration whose office is located at the school and whose compensation does not come from commissions for recruitment of foreign students."  Each school may also have additional Designated School Officials ("DSO"), however, the PDSO is the primary point of contact for SEVP.  8 C.F.R. § 214.3(l)(1)(ii) & (iii).

The PDSO is responsible for entering information into SEVIS to reflect the addition or deletion of all designated officials on his or her campus.  8 C.F.R. § 214.3(1)(1)(ii).   "[SEVP] also uses the PDSO as the point of contact on any issues that relate to the school's compliance with the regulations as well as any system alerts generated by SEVIS. In all other respects the PDSO and DSO will share the same responsibilities 8 C.F.R. § 214.3(1)(1)(ii).

8 C.F.R. § 214.3(l)(2) states:

*Name, title, and Sample Signature.* Petitions for school approval must include the names, titles, and sample signatures of designated officials. An approved school must update SEVIS upon any changes to the persons who are principal or designated officials, and furnish the name and title of the new official within 21 days of the change. Any changes to the PDSO or DSO must be made by the PDSO. In its discretion, the Service may reject the submission of any individual as a DSO or withdraw a previous submission by a school of an individual.

Further SEVP regulations provide that "a petition by a school or school system for the attendance of nonimmigrant students will be withdrawn on notice the school or school system is no longer entitled to the approval for any valid and substantive reason including, but not limited to. . .(vi) The designation as a designated official of an individual who does not meet the requirements of [8 C.F.R.] § 214.3(l)(1)." 8 C.F.R. § 214.4(a)(1). The regulations also provide that SEVP shall serve a Notice of Intent to Withdraw ("NOIW") a school from the program if SEVP has reason to believe that an approved school is no longer entitled to approval. 8 C.F.R. § 214.4(b).

A school has 30 days from the date of service of the NOIW to provide a written response to the NOIW. 8 C.F.R. § 214.4(2)(b). Three days are added to the prescribed response period when the NOIW is served by mail. See 8 C.F.R. § 103.5a(b). If after an interview and evaluation of the evidence, SCB determines the school must be withdrawn for the reason(s) in the NOIW, SCB will issue a Withdrawal on Notice ("WON"). See 8 C.F.R. § 214.4 (g) . If issued a WON, the school may file an appeal within 15 days after service of the WON. 8 C.F.R. § 214.4(h), Three days are added to the prescribed appeal period when the WON is served by mail. See 8 C.F.R. § 103.5a(b).

4

**B.    Factual Background**

The Court is respectfully referred to the attached Statement of Material Facts Not in

Dispute.  Briefly stated, the facts are as follows:

UNVA is a "proprietary school that teaches primarily English as a Second language to

foreign students." PI Application at p. 1.   UNVA is operated by the University of Northern

Virginia, Inc., a Virginia for-profit corporation.  Complaint at  3.

UNVA was originally approved in 2000 for attendance by nonimmigrant students under

Section § 101(a)(15)(F) of the Act.  Currie Declaration at ¶ 9.   Fay Avery signed the initial

Form I-17 petition on behalf of UNVA as "President" and Daniel Ho was listed as "Provost."  Id.

and Exhibit ("Ex.") 1, thereto.   UNVA reapplied for approval in 2003 after SEVIS was created

and submitted a new Form I-17 petition.  Id. at ¶ 9 and Ex. 2, thereto.   Daniel Ho signed the

2003 Form I-17 petition as UNVA's "Provost" and listed Fay Avery as UNVA's "President."  Id.

The 2003 Form I-17 petition was the last signed and approved Form I-17 petition received by

SEVP headquarters. Id.  As noted above, the president, owner or head of school designates the

PDSO.  See 8 C.F.R. §214.3(l)(1).

On November 16, 2007,  Roy Ho was on record as the PDSO for UNVA. Fay Avery was

the head of the school (President/Chancellor) and Daniel Ho was a Provost and DSO. See Currie

Declaration at ¶ 10 & ¶ 13 & Ex. 2, thereto; see also Declaration of Denise Mackie-Smith, SEVP

IT Management Branch Chief, December 2007), attached hereto as Attachment B, ¶ 9.  On that

date, Mr. Avery contacted the SEVIS help desk and opened a help desk ticket stating "Current

PDSO Roy Ho is not authorized by the school to be the PDSO and needs [to be] removed from

the system." Currie Declaration at ¶ 10 and Ex. 3, thereto. The SEVIS help desk responded the same day informing Mr. Avery to provide the specific details of his request in writing, on school letterhead, and signed by the school's president or owner. Id.

On November 19, 2007, the SEVIS help desk received a letter on UNVA letterhead, signed by Fay Avery as "University Chancellor," dated November 16, 2007, in which Mr. Avery states that Roy Ho was not authorized to be PDSO and that Mr. Avery wishes to replace Roy Ho as PDSO. Currie Declaration at 11 & Ex. 4, thereto.

On November 20, 2007, Mr. Avery called the SEVIS help desk for follow up. Id at ¶ 12. The case was assigned to the SEVP Information Technology (IT) Management Branch Chief at SEVP headquarters because a request to change the PDSO was made by a party other than the signatory party on UNVA's existing form I-17 petition. Id. ¶ 12 & ¶ 13; see also Mackie-Smith Declaration at ¶¶ 4-5, 8 & 9. To change the PDSO, there must be (1) headquarters review and (2) a system change request (SCR) to rewrite the computer codes to the SEVIS computer database in order to allow the new PDSO access to SEVIS and erase the old PDSO's SEVIS access. Currie Declaration at ¶ 12.

On December 6, 2007, the SEVP IT Management Branch Chief verified that Mr. Avery was the Chancellor and head of UNVA by examining the records contained in the SEVP file for UNVA, including previous Form I-17 petitions which were submitted, under the penalty of perjury under 8 C.F.R. § 103.2(a)(2), and the UNVA website which listed staff members and their respective positions. Mackie-Smith Declaration at ¶ 9; Currie Declaration at ¶ 13 and Exs.1, 2 & 4, thereto. Plaintiffs admit that Avery was the Chancellor of UNVA on December 6, 2007. Pl. Application at Tab E, p. 2. Accordingly, under the regulations [8 C.F.R. 214.3(l)(1)]

6

as interpreted by SEVP/SCB, as head of the school, Mr. Avery had authority to determine the PDSO at the time of PDSO change.  <u>See</u> Currie Declaration at ¶¶ 8 & 14; Macke-Smith Declaration at ¶ 9.

Because the SEVP IT Management Branch Chief determined from the evidence that Mr. Avery was the head of UNVA, as well as had the authority to request the change in PDSO under the regulations outlined above, she approved Mr. Avery's request to remove Roy Ho as UNVA's PDSO and name Mr. Avery as the PDSO of each UNVA campus.  <u>See</u> Mackie-Smith Declaration at ¶ 9.  SEVP then implemented the SCR to effect the change of PDSO and DSO in the SEVIS computer database. Currie Declaration at ¶ 14.

On January 9, 2008, the SEVIS help desk was contacted by Daniel Ho requesting that Mr. Avery be removed as PDSO and replaced by himself, <u>i.e.</u>, Daniel Ho.  Currie Declaration at ¶ 15; Exs. 5 & 6.  Daniel Ho informed the help desk that Mr. Avery had been relieved of all duties with the University.  <u>Id</u>. at ¶ 15.   Mr. Ho was asked to put his request in writing on University letterhead, signed by the school's president or owner - the exact response that Mr. Avery received from the SEVIS helpdesk on November 16, 2007.   That same day, Daniel Ho sent via facsimile the requested letter. <u>Id</u>.; Ex. 6.

In an effort to verify whether Mr. Avery was terminated, as alleged by Mr. Ho, on January 10, 2008, SEVP called the UNVA number listed on the letterhead provided by Daniel Ho, <u>i.e.</u>, 703-392-0771. <u>Id</u>. & Currie Declaration at ¶ 16.   When SEVP called the telephone number, Mr. Avery answered the phone and stated that he was still employed by UNVA.  <u>Id</u>.

Because Daniel Ho's request raised an issue dealing with school authority, the help desk manager sent the request up the chain of command.  <u>Id</u>. & Mackie-Smith Declaration at ¶ 5.

7

On January 18, 2008 SEVP learned that the ownership of UNVA was in dispute, and such dispute was again communicated to SCB by Mr. Avery in February 11, 2008.  Currie Declaration at ¶ 17.

On February 15, 2008, Mr. Avery informed SEVP in writing that UNVA's Board of Trustees suspended Daniel Ho's employment with UNVA and barred Daniel Ho from all UNVA property on December 18, 2007.  Id at ¶ 18 & Ex. 7, thereto.  In support of these representations, Mr. Avery provided SEVP with copies of two December 17, 2007, resolutions from the UNVA Board of Trustees and a letter from the UNVA General Counsel.  Id.; Ex.7, thereto.

The foregoing shows that the representations of both Messrs. Avery and Ho raised questions for SCB as to UNVA's ownership, operations and management.  Based on the conflicting information, Ms. Currie determined, on or about February 15, 2007, that a Notice of Intent to Withdraw ("NOIW") UNVA from the SEVP program was the appropriate course of action to determine whether the requirements of 8 C.F.R. § 214.3(l)(1) were continuing to be met by UNVA.  Id. at 18.

SCB received communications from Plaintiffs' attorney, i.e., one on March 14, 2008, and others on March 27, 2008, and after. See e.g., Currie Declaration at Ex. 8.   In substance, counsel informed SCB that Mr. Avery was terminated from UNVA, that Daniel Ho is the owner of UNVA, and that Plaintiffs' counsel would contact SCB to discuss how Daniel Ho may change the PDSO to himself.   Id. at Tabs A & B; see also Tab C.   In addition, although Plaintiffs' counsel was obviously hopeful that Plaintiffs could bypass the NOIW proceedings and submitted materials before and after the NOIW proceedings had formally been commenced, see e.g., April 1, 8, 10, 16, 25, 2008, [Pl. Application at Tabs E-J], sufficient conflicting information had been

received by February 15, 2008, by SCB to require, pursuant to regulations, that submissions be received from both parties and an investigation be conducted before a final decision on the NOIW was issued.  Currie Declaration at ¶ 18; see also Pl. Application at Tab K.

On March 28, 2008, SCB issued a NOIW to both Mr. Avery and Daniel Ho.  Currie Declaration at ¶ 21 & Exs. 9 & 10, thereto; see also Pl. Applications at Tab D.   The NOIW stated, in relevant part, that "Without proper documentation provided for proof of ownership, SEVP cannot at this point make a determination as to the legitimacy of Mr. Ho's claim of ownership and his dispute of Mr. Avery's claim of authority as head of the school. SEVP cannot make a determination as to the proper designation of Designated School Officials per Federal regulations." Id at p. 2; see also Currie Declaration at Exs. 9 & 10.

 The matter is presently under NOIW review.  Currie Declaration at ¶ 25.   No final agency decision has been made. Id. at ¶¶ 22, 25.[2]

After Mr. Avery was appointed PSDO and during the pendency of the continuing NOIW investigation, the student enrollment grew in SEVIS.  According to Mr. Daniel Ho, "Prior to Mr. Avery being named PDSO, UNVA had approximately 600 English as a Second Language ("ESL") students."  Declaration of Daniel Ho. See Pl. Application, Tab L at ¶ 10.  As of April 8, 2008, UNVA had grown to 955 active students in SEVIS, and, on May 1, 2008, UNVA had 1047

---

[2] Plaintiffs have made it clear to Defendants that they do not challenge the rights and duties of SEVP/SCB to proceed through the [NOIW] administrative process to a final agency decision.  Defendants' response to Plaintiffs' inquiry dated April 25, 2008, as well as the many representations of Plaintiffs' commencing on March 14, 2008, and continuing through the NOIW process, are considered part of that [NOIW] administrative process and are not before this Court for resolution.  Should Plaintiffs suggest that they are part of this civil action, Defendants reserve the right to raise the defense of lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

active students in SEVIS. <u>See</u> Currie Declaration at ¶ 24. Thus, the actions of the SCB have not

had a negative impact on the ongoing operation of the school.  <u>Id</u>

   "While SCB is currently going through the [NOIW] administrative process in

accordance with the regulations, the school has not been sanctioned by SCB, lost access to

SEVIS or lost the ability to bring in foreign students." Currie Declaration at ¶ 25.  However the

NOIW process is absolutely essential to the mission of the SEVP program.  SEVP/SCB have "a

clear and significant interest in ensuring that student visas are appropriately issued."  Currie

Declaration at ¶ 3.

     **III.**    **<u>PLAINTIFF'S COMPLAINT AGAINST DEFENDANTS SHOULD BE
SUMMARILY DISMISSED BECAUSE SEVP/SCB ACTED IN
ACCORDANCE WITH ITS REGULATIONS AND NO DUE PROCESS
RIGHTS WERE VIOLATED</u>**

       **A.**    **<u>Standard of Review</u>**

           **1.**  **<u>Fed. R. Civ. P. 12(b)(6)</u>.**

Fed. R. Civ. P. 12(b)(6) provides, in pertinent part: "failure to state a claim upon which

relief can be granted" is a ground for dismissal of a claim.  On a motion to dismiss for failure to

state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a

claim if plaintiff's complaint fails to plead "enough facts to state a claim for relief that is

plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007) (clarifying

the standard from <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)); <u>see</u> <u>also</u> <u>In re Sealed Case</u>, 494

F.3d 139, 145 (D.C. Cir. 2007) (*citing* <u>Twombly</u>).  Hence, the focus is on the language in the

complaint, and whether that language sets forth sufficient factual allegations to support plaintiff's

claims for relief.

The court must construe the factual allegations in the complaint in the light most favorable to plaintiff and must grant plaintiff the benefit of all inferences that can be derived from the facts as they are alleged in the complaint.  Barr v. Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need not accept any inferences or conclusory allegations that are unsupported by the facts pleaded in the complaint.  Kowal, 16 F.3d at 1276.  Moreover, the Court need not "accept legal conclusions cast in the form of factual allegations."  Id.

### 2.  Fed. R. Civ. P. 56 (Summary Judgment Standard).

Defendant has introduced exhibits into the record in support of its motion, showing that no operative facts are in dispute and Defendants are entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).

Summary judgment is designed to "secure the just, speedy and inexpensive determination for every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Celotex further provides that a party moving for summary judgment need not establish the absence of an essential element of the nonmoving party's case.  Rather, the moving party may show that there is "an absence of evidence" to support the nonmoving party's case.  Celotex, 477 U.S. at 325.  The nonmoving party may not rest on mere allegations, but "must come forward with specific facts showing that there is a genuine issue for trial,"  Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 587 (1986), and the facts in dispute must be "outcome determinative under the governing law."  Secretary of Labor v. Lauritzen, 835 F.2d 1529, 1533 (7th Cir. 1987), cert. denied, 488 U.S. 898 (1988).

Furthermore, a court must enter an order for summary judgment-

[A]gainst a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322 (1986).  A party opposing summary judgment must present "affirmative evidence" that is "significantly probative" to defeat a motion seeking such an order.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 257 (1986). The non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., 475 U.S. at 586, or with "conclusory allegations," "unsubstantiated assertions," "or by only a 'scintilla' of evidence."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

### 3.  APA Standard

The standard of review in this matter is pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 et seq.  See Gonzalez v. United States Dep't of State, 135 F.Supp.2d 193, 195 (D.D.C. 2001).   Under the APA, the court shall set aside an agency action that is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); see also Apotex, Inc. V. U.S. Food and Drug Administration, 508 F.Supp.2d 78, 83 (D.D.C. 2007); Am. Pub. Communications Council v. FCC, 215 F.3d 51, 55 (D.C. Cir. 2000).

When reviewing an agency action to determine if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," the court must afford deference to the agency decision and may not substitute its judgment for that of the agency.  See Ethyl Corp. v. EPA, 541 F.2d 1, 34 (D.C. Cir. 1976); see also Apotex, Inc., 508 F.Supp.2d at 84 (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut.Auto.Ins.Co., 463 U.S. 29, 43 (1983));  Wright v. United

12

States, 164 F.3d 267, 268-69 (5th Cir. 1999) (affirming an agency rights determination); Arizona Public Service Co. v. United States, 742 F.2d 644, 649 (D.C. Cir. 1984).  The scope of the court's deferential review under the "arbitrary and capricious" standard is "'searching and careful,' but 'the ultimate standard of review is a narrow one.'"  Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 378 (1989) (*quoting*  Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)); see also Apotex, Inc., 508 F.Supp.2d at 84 (the agency action under review is entitled to presumption of regularity) (internal quotations and citations omitted). Moreover, the court affords its "greatest deference" to the agency when the agency exercises "special competence" in the subject matter delegated to its regulation.  Am. Ship Bldg. Co. v. NLRB, 380 U.S. 300, 316 (1965).   Because the ultimate standard of review is highly deferential, to uphold an agency action the Court need not find that the agency's decision is "the only reasonable one, or even that it is the result [the court] would have reached … ."  Am. Paper Inst., Inc. v. Am. Elec. Power Serv. Corp., 461 U.S. 402, 422 (1983).  Indeed, the arbitrary and capricious standard presumes the agency action to be valid and the burden is on the plaintiff to overcome that presumption.  Maryland Nat. Capital Park & Planning Comm'n v. Lynn, 514 F.2d 829, 834 (D.C. Cir. 1975).

In applying the arbitrary and capricious standard, judicial review is "confined to the full administrative record before the agency at the time the decision was made."  Envtl. Def. Fund, Inc. v. Costle, 657 F.2d 275, 284 (D.C. Cir. 1981); see also 5 U.S.C. § 706 ("[T]he court shall review the whole record … .").  Evidence outside the record should not be considered.  See Camp v. Pitts, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the

13

administrative record already in existence, not some new record made initially in the reviewing court.").

The court must review the record to determine "whether the agency has considered the relevant factors and articulated a rational connection between the facts found and the choice made." Jifry v. FAA, 370 F.3d 1174, 1180 (D.C. Cir. 2004). Courts have considered several factors relevant in making this determination. For example, an agency action is arbitrary and capricious if the agency relied on factors not intended to be considered, failed to consider an important aspect of the problem, explained its decision in a manner that contradicts the evidence, or reached a conclusion so implausible that it cannot be explained by a difference in view or the product of agency expertise. See Apotex, Inc., 508 F.Supp.2d at 83 (citing Motor Vehicle Mfrs. Ass'n., 463 U.S. at 43)). Similarly, courts also consider whether the agency "has acted consistently with its previous applications of the governing regulations and whether the application of its general regulative doctrines to the specifics of th[e] case has been reasonable." DSE, Inc. v. United States, 169 F.3d 21, 28 (D.C. Cir. 1999).

The record in this case consists of the exhibits attached to the Declaration of Diane Currie, which number 1-42, as supplemented by the Declarations of Denise Mackie-Smith, SEVP IT Management Branch Chief, SEVP, U.S. Immigration and Customs Enforcement on December 6, 2007, and Diane Currie, Chief of the School Certification Branch.

**B.** **The Decision to Permit the Replacement of Roy Ho with Fay Avery, then Chancellor of the School, upon his Request Was Not Arbitrary, Capricious Nor Contrary to Law.**

Plaintiffs argue that the SEVP acted in an arbitrary and capricious by permitting someone

other than the PSDO to change the  PDSO designation.  In support of this argument, Plaintiffs focus on the regulatory text of 8 C.F.R. § 214.3(l)(2) that states "[a]ny changes to the PDSO or DSO must be made by the PDSO."   This reasoning is erroneous.  The responsibility to identify the PDSO and DSO is set forth at 8 C.F.R. § 214.3(l)(1) which states "[t]he PDSO and any other DSO must be named by the president, owner, or head of a school or school system."  The "[a]ny changes" clause to which Plaintiffs cite only refers to a PDSO's duties to (1) manually update the SEVIS computer database with the name and title of the new PDSO or DSO and (2) to provide SEVP a sample signature of the newly designated official.  See Currie Declaration at ¶ 8; 8 C.F.R. § 214.3(l)(1) ("The PDSO and DSO may not delegate this designation to any other person."); 8 C.F.R. 214.2(l)(1)(ii) ("The PDSO is responsible for updating SEVIS to reflect the addition or deletion of all designated officials on his or her associated campus).  The "[a]ny changes" clause does not modify, or even refer to, the authority set forth in 8 C.F.R. § 214.3 (l)(1) of  "the president, owner, or head of a school or school system" to name a PDSO and DSO. See Currie Declaration at ¶ 8.  Moreover, Plaintiffs' memorandum in support of their application [p. 14] undercuts their argument by admitting that Mr. Avery had authority to determine the PDSO at the time of the PDSO change.

Plaintiffs' rationale that Sec. 214.3(l)(1) is limited, is flawed by their own actions.  They have sought to replace the allegedly terminated Avery with "Daniel Ho," who was not the PDSO at the time of the change.  See Plaintiffs' January  9, 2008, request for a change in PDSO; the underlying request that was denied and now challenged (Currie Declaration at ¶ 15 & Exs. 5 & 6).  Specifically, Dr. Ho purports to appoint himself as follows:  "I, Daniel F. Ho will be assuming the role of PDSO . . ." Id, at Ex. 6; see also Complaint at ¶¶ 4, 22, 25, 40, and Tab B at.

15

2; Tab F at p. 4; Tab G at p. 1; Tab H at p. 1; Tab J at p. 1. However, the statutory construction urged by Plaintiffs (which defendants dispute) also undercuts Plaintiffs' faulty assertion that only a PDSO can designate a PDSO because, under such an erroneous theory, only Roy Ho, the then PDSO, could have made that change, not Daniel Ho. See e.g., Id. & Pl. memorandum at pp. 8-9.

Plaintiffs also argue that SEVP was arbitrary and capricious when SEVP accepted Mr. Avery's representations that he was "head of the school" and authorized to replace the PDSO. However, as stated above, Plaintiffs admit that Mr. Avery was the Chancellor at the time of the PDSO change and had authority under the regulations to name the PDSO. Nonetheless, SEVP confirmed Mr. Avery's status as head of the school prior to making the PDSO change by examining the records contained in the SEVP file for UNVA, including all Form I-17 petitions which were submitted under the penalty of perjury and pursuant to 8 C.F.R. § 103.2(a)(2), and the UNVA website which listed staff members and their respective positions. See Mackie-Smith Declaration at ¶ 9 and Ex. 4. Accordingly, SEVP's actions in replacing Roy Ho as PDSO were consistent with the regulations.

### C.    Plaintiff Daniel Ho's Procedural Due Process Claims Fail As A Matter Of Law.

The Fifth Amendment provides individuals with procedural protections before certain liberty or property interests may be infringed. Plaintiff Daniel Ho contends that SEVP deprived him of procedural due process by failing to notify him of the change in PDSO in December 2007, and by failing to change the PDSO designation to him after he requested it. This claim fails for two reasons.

16

1.    **Plaintiff Has Not Been Deprived Of A Liberty Or
      Property Interest Protected By The Fifth Amendment**

Not all deprivations of liberty or property fall within the ambit of the Fifth Amendment's

Due Process Clause.  "By its terms, the Due Process Clause does not apply unless an individual

can show that the government action at issue deprives him of an actual interest in life, liberty, or

property."  <u>Fried v. Hinson</u>, 78 F.3d 688, 691-92 (D.C. Cir. 1996).  To meet this test, a person

must have more than a unilateral expectation to the property at issue; the person must show that

he is legally entitled to it.  <u>Id</u>; <u>Piroglu v. T.R. Coleman</u>, 25 F.3d 1098, 1104 (D.C. Cir. 1994).

In this case, a school's approval for entry of nonimmigrant alien students constitutes a valuable

asset in the nature of a "license," entitling the school to the protections of due process and of the

Administrative Procedure Act whenever such license may be revoked.  See <u>Blackwell College of</u>

<u>Business v. Attorney General</u>, 454 F.2d 928, 933-34 (D.C. Cir. 1971) .   It is UNVA, and not

Daniel Ho, that holds the equivalent of a license entitling the UNVA all due process

considerations.  Moreover, no regulations or other authority provide Mr. Ho with a property right

in the PDSO position.  Regardless, SEVP complied with any due process considerations by (1)

reviewing the request from Mr. Avery, the undisputed Chancellor of the School, in making the

PDSO change on December 6, 2007, and (2) issuing the NOIW to both Mr. Avery and Daniel

Ho, affording both an opportunity to respond.  Accordingly, Daniel Ho was not deprived of an

interest or right that he held at the time of any action at issue in this law suit.

2.    **Plaintiff Is Being Afforded All The Procedural
      Protections To Which They are Entitled.**

Even if Plaintiff Daniel Ho has successfully identified an interest that is protected by the

Fifth Amendment, his procedural due process claim fails.  Even if Plaintiff Daniel Ho has

17

successfully identified an interest that is protected by the Fifth Amendment, his procedural due

process claim fails.  Section 558(c) of the APA provides:

> Except in cases of willfulness or those in which public health, interest, or safety requires
> otherwise, the <u>withdrawal, suspension, revocation, or annulment of a license</u> is lawful
> only if, before the institution of agency proceedings therefor, the licensee has been given-
>
> (1) notice by the agency in writing of the facts or conduct which may warrant the action;
> and
> (2) opportunity to demonstrate or achieve compliance with all lawful requirements.

APA § 558(c) (emphasis added).  In this case, SEVP, on December 6, 2007, did not attempt to

withdraw, suspend, revoke, or annul UNVA's approved status, or license; rather, SEVP

approved a request to change the PDSO, or the principal point of contact for UNVA in the

SEVIS database.  Because UNVA's approved status was not at issue, the request to change the

PDSO did not warrant any notice and opportunity to be heard by any other party other than the

authorized party making the request, Chancellor Fay Avery.

Daniel Ho claims that because the change of PDSOs was made without notice or an

opportunity to him as owner of the school, he was deprived of due process because Mr. Avery

was "seeking to have the owner of the school himself removed from the PDSO position and

changed to the person seeking to effectuate the change." Pl. Mem., Tab E, p. 6.  In this argument,

Plaintiffs clearly misrepresented Daniel Ho's designation. <u>Id</u>  First, at the time of the PDSO

change, Mr. Avery sought the removal of Roy Ho as PDSO; Daniel Ho was not the PDSO.

Second, Plaintiffs admit that Mr. Avery was UNVA's Chancellor at the time of the PDSO change

and, therefore, had authority to determine the PDSO at the time of the PDSO change.  Pl.

Application at 7 & 14, Tab E, p. 2.  Mr. Avery replaced Roy Ho with himself.  Daniel Ho points

to no procedural rights, grounded in regulation or other authority, that were required under these circumstances.

**D.    SEVP was Not Arbitrary or Capricious when it Issued a Notice of Intent to Withdraw, in Lieu of Replacing Avery with Daniel Ho.**

The issuance of a NOIW is not a final agency decision and the NOIW proceedings are still pending.  See Currie Declaration at ¶¶ 22, 25.  Nevertheless, SEVP acted consistent with the regulations when issuing the NOIW.  The record shows that SEVP received conflicting information from Mr. Avery and Daniel Ho regarding, among other facts, the ownership of UNVA, the decision-making authority of UNVA officers, and UNVA's employment of Mr. Avery and Daniel Ho.   In contrast to Plaintiffs' allegations regarding the ownership of UNVA and composition of its officers, Mr. Avery provided SEVP resolutions from UNVA's Board of Trustees suspending Daniel Ho's employment with UNVA and barring Daniel Ho from all UNVA property, including both campuses, on December 18, 2007.  Currie Declaration at ¶ 18.  Upon having a reason to believe that the dispute between the parties was going to effect the PDSO and DSO status,  SEVP/SCB followed 8 C.F.R. § 214.4(a)(1)(vi) and (b) by issuing a NOIW.  These notices were sent to both Daniel Ho and Mr. Avery.  Id. at Exs. 9 & 10.  Had SEVP/SCB granted plaintiffs' request to immediately appoint Daniel Ho PDSO before (1) allowing both Daniel Ho and Mr. Avery the required time to submit formal responses to the NOIW prior to the deadline set forth in 8 CFR § 214.4(b), and (2) without reviewing the parties' submission in response to the NOIW concerning identity of UNVA officers, and (3) without determining, from that evidence, whether UNVA was in compliance with the qualifications for a PDSO under 8 C.F.R. § 214.3(l)(1),  SEVP would have acted in an arbitrary and capricious

19

manner.   Instead, SEVP followed its regulations by initiating the NOIW and will review those responses.

Moreover, the Court should take judicial notice that Mr. Avery's and Mr. Ho's dispute concerning the ownership of UNVA is currently before the Virginia Circuit Court in two separate lawsuits Fay Avery v. Daniel Ho, et al., Case No. 2008-167 and The Board of Directors of the University of Northern Virginia, Inc. v. Daniel Ho., et al., Case No. 2008-4515.   It is not the role of SEVP or SCB to determine ownership.  Their role is to insure that student visas are appropriately issued.  Currie Declaration at ¶ 3.  To accomplish this, certain minimum requirements as described by pertinent regulations must be met.  As noted by Ms. Currie, "in the wake of 9/11, concerns of nonimmigrant entry into this country of terrorists, through the use of student visas, who could inflict substantial damage on millions of Americans is great.  SEVP/SCB has a grave responsibility to the public in this area."  Id.  Because of the conflicting information from Avery and Ho as to who has authority to issue visas, it is essential that the NOIW inquiry go forward.  The NOIW proceedings are not before this Court.  See n. 2.

**E.    Plaintiffs Have Not Alleged that Daniel Ho Qualifies as a PDSO.**

Although Plaintiffs request that the Court replace Mr. Avery as PDSO with Daniel Ho, they have not made any representations that Daniel Ho meets all qualifications of a PDSO as set forth by 8 C.F.R. § 214.3(l)(1).  See infra.  Even if the Court determined that Daniel Ho has current authority to name a PDSO according to 8 C.F.R. § 214.3(l)(1), he has not presented in these proceedings evidence that he, indeed, meets the requirements of the regulation.  In any event, it is for the SCB utilizing its expertise in this area to determine, after review of the NOIW

submissions whether or not the school should be permitted to participate in the program.  The Court should not insert itself in this process until a final agency decision has been made.

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint or, alternatively, grant summary judgment in favor of Defendants.

### IV.    PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF SHOULD BE DENIED.

Plaintiffs have not established that they are entitled to a preliminary injunction.

### A.  Standard for Injunctive Relief

The decision whether to grant preliminary injunctive relief under Federal Rule of Civil Procedure 65 is reserved to the sound discretion of the Court.  Fed. R. Civ. P. 65(a).  The Court's exercise of this discretion is subject to the admonition of the Supreme Court that an injunction should issue only when the intervention of a court of equity "is essential in order effectually to protect property rights against injuries otherwise irremediable."  Weinberger v. Romero-Barcelo, 455 U.S. 305 (1982).  It is well settled that injunctive relief is an extraordinary remedy, and that the party seeking it has a substantial burden of proof.  American Coastal Line Joint Venture v. United States Lines, Inc., 580 F. Supp. 932, 935 (D.D.C. 1983); see also Sea Containers Ltd. v. Stena AB, 890 F.2d 1205, 1208 (D.C. Cir. 1989); Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958).

To be entitled to the extraordinary remedy of injunctive relief, a plaintiff must show that: (1) he has a substantial likelihood of prevailing on the merits of its claims; (2) a preliminary injunction is necessary to prevent him from suffering irreparable injury; (3) the threatened injury to the plaintiff outweighs the possible harm to others; and (4) the public interest favors issuance

21

of the injunction.  Sea Containers, 890 F.2d at 1208; Washington Metropolitan Area Transit

Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977); Virginia Petroleum, 259

F.2d at 924-25.  These factors "interrelate on a sliding scale and must be balanced against each

other.  'If the arguments for one factor are particularly strong, an injunction may issue even if the

arguments in the other areas are rather weak.'"  Serono Laboratories, Inc. v. Shalala, 158 F.3d

1313, 1318 (D.C. Cir. 1999), (quoting CifiFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d

738, 746 (D.C. Cir. 1995)).  By the same token, if the plaintiff makes a weak showing on one

factor, the other factors may not be enough to compensate.  Hunter v. FERC, 527 F.Supp.2d 9,

14 (D.D.C. 2007) (citing Dodd v. Fleming, 223 F.Supp.2d 15, 19 (D.D.C. 2002)); Barton v.

District of Columbia, 2002 U.S. Dist. LEXIS 15494, at *18 (D.D.C. 2002) (citing Taylor v.

RTC, 56 F.3d 1497, 1506 (D.C. Cir.), amended on other grounds on reh'g, 66 F.3d 1226 (D.C.

Cir. 1995)).

    When a plaintiff seeks a preliminary injunction that would alter the status quo, rather

than preserve it, he "faces an additional hurdle because it seeks a mandatory injunction as

opposed to a prohibitive injunction."  Mylan Pharmaceuticals, Inc. v. Shalala, 81 F. Supp. 2d 30,

36 (D.D.C. 2000).  The purpose of a preliminary injunction is to "preserve the relative positions

of the parties until a trial on the merits can be held." Hunter, 527 F.Supp.2d at 14 (citing

University of Texas v. Camenisch, 451 U.S. 390, 395 (1981)).  Therefore, "where an injunction

is mandatory - that is, where its terms would alter, rather than preserve, the status quo by

commanding some positive act - the moving party must meet a higher standard than in the

ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very

serious damage' will result from the denial of the injunction."  Phillip v. Fairfield Univ., 118

22

F.3d 131, 133 (2d Cir. 1997); see also Columbia Children's Hosp. for Women Found., Inc. v.

Bank of Tokyo-Mitsubishi, Ltd., 15 F. Supp. 2d 1, 4 (D.D.C. 1997), aff'd, 159 F.3d 636 (D.C.

Cir. 1998).

 In this Circuit, courts have held that "the power to issue a preliminary injunction,

especially a mandatory one, should be sparingly exercised."  Dorfmann v. Boozer, 414 F.2d

1168, 1173 (D.C. Cir.1969).  Compare Stanley v. University of Southern Cal., 13 F.3d 1313,

1319 (9th Cir. 1994) ("[W]here a party seeks mandatory preliminary relief that goes well beyond

maintaining the status quo pendente lite, courts should be extremely cautious about issuing a

preliminary injunction."); SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098-99 (10th Cir.

1991) (those injunctions that alter the status quo, and those that afford the movant substantially

all the relief he may recover at the conclusion of a full trial on the merits "are disfavored and

they require that the movant satisfy an even heavier burden of showing that the four factors

listed above weigh heavily and compellingly in movant's favor before such an injunction may be

issued.")

 Applying this standard to this case plainly reveals that Plaintiffs are not entitled to

preliminary injunctive relief.  Defendant addresses each of Plaintiffs' arguments below.

Plaintiffs are unable to demonstrate a substantial likelihood of success on the merits because all

evidence shows that SEVP acted consistent with the regulations in granting Mr. Avery's request

to change the PDSO on December 6, 2007, and in not accepting Plaintiffs' request to appoint

Daniel Ho PDSO prior to evaluating all parties' responses to the NOIW.  Plaintiffs have also

failed to show the existence of any genuine irreparable harm or the absence of an adequate

remedy at law.  In addition, Plaintiffs overlook the significant harm to the public and national

security if the Court disrupts or delays SEVP's administrative process presently underway, or if the Court orders the appointment of Daniel Ho as PDSO without any evidence that he meets all the requirements of a PDSO according to 8 C.F.R. § 214.3(l)(1).

In evaluating Plaintiffs' request for extraordinary relief, the Court should be especially mindful of the critical connection between SEVP's ability to manage the foreign student program requirements of the participating schools and the ongoing global war on terrorism. Such relief would undercut SEVP's ability to manage the foreign student program requirements of the participating schools and the Government's prosecution of global terrorism. See District No. 1, Pac. Coast Dist. v. MARAD, 215 F.3d 37, 41-42 (D.C. Cir. 2000) (cautioning against "second-guessing"MARAD decisions under the APA where the interests of national defense and the adequacy of the merchant marine are involved).  Although this case does not involve national defense per se, the ramifications of the SEVP program clearly affect national security.

      **1.**       **Plaintiff Cannot Meet Its Burden of Demonstrating a Substantial Likelihood of Success on the Merits**

As set forth in detail above, Plaintiffs are not likely to succeed on the merits in this APA review case.  The Court is respectfully referred to pages 14-20, herein.

      **2.**       **Plaintiff Has Failed to Show That It Would Suffer Irreparable Harm Absent an Injunction**

"The basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir.1985). To constitute irreparable harm, "the injury must be both certain and great; it must be actual and not theoretical." Id  The burden is particularly difficult to meet in the procurement context, which is analogous to this case, where the courts consistently hold that agency discretion must

be given particular force.  E.g., Sea-Land Serv., Inc. v. Brown, 600 F.2d 429, 434 (3d Cir. 1979);

M. Steinthal & Co. v. Seamens, 455 F.2d 1289, 1301, 1304 (D.C. Cir. 1971).

     No harm, irreparable or otherwise, has occurred here.  Indeed, monetary loss is not

irreparable harm unless it threatens the very existence of plaintiff's business. Here, Plaintiffs

argue that "unless the PDSO is changed immediately, UNVA will not be able to properly register

all of its students for the next quarter, which starts on April 1, 2008; this will result in financial

ruin for the University and irreparable harm to the students who will loos [sic] their immigration

status."  Pl. Mem., Tab B, 2nd page.    However, since Mr. Avery's designation as PDSO, the

school's student body has increased in size.  On November 1, 2007, UNVA had 900 active

students in SEVIS.  As of April 8, 2008, UNVA had 955 active students in SEVIS, and on May

1, 2008, UNVA had 1047 active students in SEVIS.  See Currie Declaration at ¶ 24.  These

figures represent far more students than Mr. Ho identified in his declaration of April 30, 2008,

and, does not establish a drop in enrollment. See Pl. Application at Tab L.

     Moreover, Mr. Ho's allegation of reputational harm is legally insufficient to constitute

irreparable harm.  A showing of reputational harm must be concrete and corroborated, not

merely speculative. Trudeau v. Federal Trade Com'n., 384 F.Supp.2d 281, 297 (D.D.C. 2005)

(citing Bristol-Myers Squibb Co. v. Shalala, 923 F. Supp. 212, 215 (D.D.C. 1996).  Mr. Ho only

speculates that Mr. Avery's policies are the cause of UNVA's reputational injury. See Ho

Declaration at ¶¶ 7-11.  He provides no corroboration for this alleged causal connection but

rather states "I have learned that Korean students-who made up a significant number of UNVA's

ESL students-have heard of these reports [concerning UNVA's problems] and are unlikely to

come to UNVA because of its declining reputation."  See id. at ¶ 8.  Mr. Ho's representations are

not supported by corroborated facts.  As noted above, his representations that the student body would decrease is contradicted by the actual numbers which show a considerable increase in students since Mr. Avery was designated PDSO.  Currie Declaration at ¶ 24.

In sum, Plaintiffs cannot meet their burden of demonstrating irreparable harm.  On this ground alone, Plaintiffs' motion for preliminary injunctive relief should be denied.

### 3.    The Balance of Harms Weighs Against Plaintiffs' Request for Injunctive Relief

Defendants have shown above that their actions in approving Mr. Avery's PDSO change on December 6, 2007, and issuing the March 28, 2007, NOIW were consistent with the governing regulations. To the extent the SCB did not replace Mr. Avery with Mr. Ho in February or March 2008, as he requested, that is an issue to be resolved through the ongoing NOIW proceeding.  SCB has not yet reached a determination in these proceedings.  See Currie Declaration at ¶¶ 18, 22 & 25.

The public interest is served by permitting the process to be completed.   SEVP must follow existing regulations in monitoring a school's attendance of nonimmigrant students. "[SEVP] also uses the PDSO as the point of contact on any issues that relate to the school's compliance with the regulations as well as any system alerts generated by SEVIS."  8 C.F.R. § 214.3(l)(1)(ii).  The regulations require that the PDSO must be (I) a regularly employed member of the school administration (ii) who has an office located at the school and (iii) whose compensation does not come from commissions for recruitment of foreign students.   8 C.F.R. § 214.3(l)(1).

Here, Plaintiffs have not alleged in their Complaint that either Daniel Ho or Roy Ho meet all three requirements to legally qualify as a PDSO. Even if, however, Plaintiffs made such bare allegations, it would be premature for the Court to order SEVP to appoint either Daniel Ho or Roy Ho without any evidentiary proof that (1) Daniel Ho has the authority under 8 C.F.R. § 214.3 (l)(1) to name a PDSO and (2) Daniel Ho or Roy Ho meet all three requirements to be named PDSO. Therefore, should the Court order SEVP to immediately place Daniel Ho or Roy Ho as PDSO, the Court would do so without any proof that a legally qualifying PDSO would exist at the school. The National Security implications of this type of action are significant. Without a proper PDSO located at the school as a contact, SEVP would lack the appropriate contact to determine whether student visas are being properly issued and the school and student are in compliance with other regulations.

Balanced against Plaintiffs' weak assertion of harm, Defendants would suffer concrete harm if the Court ordered SEVP to reinstate Daniel Ho as PDSO, even though Daniel Ho was not the PDSO prior to the PDSO change, or Roy Ho as PDSO.

### 4.    The Public Interest Weighs Against a Grant of Injunctive Relief

The public interest in this case weighs heavily against granting preliminary (or any) injunctive relief in favor of the Plaintiffs. The public has a clear and significant interest in ensuring that student visas are appropriately issued. As noted by Ms. Currie, "[i]n the wake of

9/11, concerns of nonimmigrant entry into this country of terrorists, through the use of student visas, who could inflict substantial damage on millions of Americans is great. SEVP has a grave responsibility in this area." Currie Declaration at ¶ 3. Ms. Currie also noted that "[SEVP/SCB] strives to balance the goal of secure borders with the need for open doors for legitimate international students and exchange visitors seeking to participate in U.S. education and cultural exchange programs." Id. at ¶ 4. Americans must trust that the student visa program is administered properly and that schools are properly monitored by SEVP. The public interest is served by affording SEVP broad discretion to determine the most efficient and effective way of administering the SEVP program. SEVP must follow regulations when there is evidence that the school may not be following SEVP guidelines.

     5.     The Status Quo Should Not Be Altered By the Issuance of a Mandatory Injunction

A final basis for denying Plaintiffs' motion is that it is seeking, as part of its relief, a mandatory injunction forcing SEVP to appoint Daniel Ho PDSO, which would not maintain the status quo, but irretrievably alter it. Because Plaintiffs are attempting to force the government to take an affirmative action, Plaintiff's motion "faces an additional hurdle." See Mylan Pharmaceuticals, Inc., 81 F. Supp. 2d at 36. In this Circuit, "the power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised." Dorfmann v. Boozer, 414 F.2d 1168, 1173 (D.C. Cir.1969); Stanley v. University of Southern Cal., 13 F.3d 1313, 1319 (9th Cir. 1994) ("[W]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction."). The purpose of a preliminary injunction is to "preserve the relative

positions of the parties until a trial on the merits can be held." University of Texas v. Camenisch, 451 U.S. 390, 395 (1981); Columbia Children's Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi, Ltd., 15 F. Supp. 2d 1, 4 (D.D.C. 1997), aff'd, 159 F.3d 636 (D.C. Cir. 1998). Here, issuance of an injunction would not "preserve the relative positions of the parties"; instead, it would usurp SCB's considered judgment in managing its obligation under SEVP.

## V.  CONCLUSION

Based upon the foregoing, Defendants respectfully request that Plaintiffs' application for preliminary injunction be denied and that Plaintiffs' complaint be dismissed with prejudice.

Respectfully submitted,

__/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

__/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

__/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

29

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DANIEL F. HO, <u>et</u> <u>al.</u>,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 08-757 (JDB)** |
| ) | |
| **STUDENT EXCHANGE VISITOR** ) | |
| **PROGRAM, <u>et</u> <u>al.</u>** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

<u>STATEMENT OF MATERIAL FACTS NOT IN DISPUTE</u>

1. The University of Northern Virginia ("UNVA") is a "proprietary school that teaches primarily English as a Second language to foreign students." PI Application at p. 1.

2. UNVA was originally approved in 2000 for attendance by nonimmigrant students under Section § 101(a)(15)(F) of the Immigration and Nationality Act , 8 U.S.C. 1101 <u>et</u> <u>seq.</u> ("Act").  Currie Declaration at ¶ 9.

3. The certification process for schools that teach foreign students under the Act is performed by the School Certification Branch ("SCB"), Student and Exchange Visitor Program ("SEVP"), Immigration and Customs Enforcement ("ICE"), Department of Homeland Security ("DHS"). Declaration of Diane Currie, Acting Director of SCB, Attachment A, hereto, at ¶ 1.

4. Fay Avery signed the initial Form I-17 petition for certification on behalf of UNVA as "President" and Daniel Ho was listed as "Provost."  <u>Id</u>. and Exhibit ("Ex.") 1, thereto.

5. UNVA reapplied for approval in 2003.  <u>Id</u>. at ¶ 9 and Ex. 2, thereto.   Daniel Ho signed the 2003 Form I-17 petition as UNVA's "Provost" and listed Fay Avery as UNVA's "President." <u>Id</u>.

6. A Principal Designated School Official ("PDSO") is designated by regulations by the

president, owner or head of school.  See 8 C.F.R. §214.3(l)(1).

7.  On November 16, 2007,  Roy Ho was on record as the PDSO for UNVA. Fay Avery was the head of the school (President/Chancellor) and Daniel Ho was a Provost and DSO. See Currie Declaration at ¶ 10 & ¶ 13 & Ex. 2, thereto; see also Declaration of Denise Mackie-Smith, SEVP IT Management Branch Chief as of December 2007,Attachment B, hereto, ¶ 9.

8.  On November 16, 2007, Mr. Avery contacted the Student and Exchange Visitor Information System ("SEVIS") help desk and opened a help desk ticket stating "Current PDSO Roy Ho is not authorized by the school to be the PDSO and needs [to be] removed from the system."  Currie Declaration at  ¶ 10 and Ex. 3, thereto.

9.  The SEVIS help desk responded the same day informing Mr. Avery to provide the specific details of his request in writing, on school letterhead, and signed by the school's president or owner.  Id.

10.  On November 19, 2007, the SEVIS help desk received a letter on UNVA letterhead, signed by Fay Avery as "University Chancellor," dated November 16, 2007, in which Mr. Avery states that Roy Ho was not authorized to be PDSO and that Mr. Avery wishes to replace Roy Ho as PDSO.  Currie Declaration at 11 &  Ex. 4, thereto.

11.  On November 20, 2007, Mr. Avery called the SEVIS help desk for follow up. Id at  ¶ 12.  The case was assigned to the SEVP Information Technology (IT) Management Branch Chief at SEVP headquarters because a request to change the PDSO was made by a party other than the signatory party on UNVA's existing form I-17 petition.  Id. ¶ 12 & ¶ 13; see also Mackie-Smith Declaration at ¶¶ 4-5, 8 & 9.

12.  To change the PDSO, there must be (1) headquarters review and (2) a system change request (SCR) to rewrite the computer codes to the SEVIS computer database in order to allow

the new PDSO access to SEVIS and erase the old PDSO's SEVIS access. Currie Declaration at ¶ 12.

13. On December 6, 2007, the SEVP IT Management Branch Chief verified that Mr. Avery was the Chancellor and head of UNVA by examining the records contained in the SEVP file for UNVA, including previous Form I-17 petitions which were submitted, under the penalty of perjury under 8 C.F.R. § 103.2(a)(2), and the UNVA website which listed staff members and their respective positions. Mackie-Smith Declaration at ¶ 9; Currie Declaration at ¶ 13 and Exs.1, 2 & 4, thereto.

14. Plaintiffs' admit that Avery was the Chancellor of UNVA on December 6, 2007. Pl. Application at Tab E, p. 2.

15. Mr. Avery had authority to determine the PDSO at the time of PDSO change. See 8 C.R.R. § 214.3(l)(1); Currie Declaration at ¶¶ 8 & 14; Macke-Smith Declaration at ¶ 9.

16. Because the SEVP IT Management Branch Chief determined from the evidence that Mr. Avery was the head of UNVA, as well as had the authority to request the change in PDSO under the regulations outlined above, she approved Mr. Avery's request to remove Roy Ho as UNVA's PDSO and name Mr. Avery as the PDSO of each UNVA campus. See Mackie-Smith Declaration at ¶ 9.

17. SEVP then implemented the SCR to effect the change of PDSO and DSO in the SEVIS computer database. Currie Declaration at ¶ 14.

18. On January 9, 2008, the SEVIS help desk was contacted by Daniel Ho requesting that Mr. Avery be removed as PDSO and replaced by himself, i.e., Daniel Ho. Currie Declaration at ¶ 15; Exs. 5 & 6.

19. Daniel Ho informed the help desk that Mr. Avery had been relieved of all duties with

the University.  <u>Id</u>. at ¶ 15.   Mr. Ho was asked to put his request in writing on University letterhead, signed by the school's president or owner - the exact response that Mr. Avery received from the SEVIS helpdesk on November 16, 2007.   That same day, Daniel Ho sent via facsimile the requested letter. <u>Id</u>.; Ex. 6.

20.  In an effort to verify whether Mr. Avery was terminated, as alleged by Mr. Ho, on January 10, 2008, SEVP called the UNVA number listed on the letterhead provided by Daniel Ho, <u>i.e.</u>, 703-392-0771. <u>Id</u>. & Currie Declaration at ¶ 16.

21.  When SEVP called the telephone number, Mr. Avery answered the phone and stated that he was still employed by UNVA.  <u>Id</u>.

22.  Because Daniel Ho's request raised an issue dealing with school authority, the help desk manager sent the request up the chain of command.  <u>Id</u>. & Mackie-Smith Declaration at ¶ 5.

23.  On January 18, 2008 SEVP learned that the ownership of UNVA was in dispute, and such dispute was again communicated to SCB by Mr. Avery in February 11, 2008.  Currie Declaration at ¶ 17.

24.  On February 15, 2008, Mr. Avery informed SEVP in writing that UNVA's Board of Trustees suspended Daniel Ho's employment with UNVA and barred Daniel Ho from all UNVA property on December 18, 2007.  <u>Id</u> at ¶ 18 & Ex. 7, thereto.  In support of these representations, Mr. Avery provided SEVP with copies of two December 17, 2007, resolutions from the UNVA Board of Trustees and a letter from the UNVA General Counsel.  <u>Id.</u>; Ex.7, thereto.

25.  Based on the conflicting information, Ms. Currie determined, on or about February 15, 2007, that a Notice of Intent to Withdraw ("NOIW") UNVA from the SEVP program was the appropriate course of action to determine whether the requirements of 8 C.F.R. § 214.3(l)(1) were continuing to be met by UNVA.  <u>Id</u>. at 18.

26.  SCB received to communications from Plaintiffs' attorney, i.e., one on March 14, 2008, and others on March 27, 2008, and after.  In substance, counsel informed SCB that Mr. Avery was terminated from UNVA, that Daniel Ho is the owner of UNVA, and that Plaintiffs' counsel would contact SCB to discuss how Daniel Ho may change the PDSO to himself.   Id. at Tabs A & B; see also Tab C.   These materials are part of the administrative record of the NOIW proceedings which has not been concluded.  Currie Declaration at ¶¶ 18, 22, 25.

27.  On March 28, 2008, SCB issued a NOIW to both Mr. Avery and Daniel Ho.  Currie Declaration at ¶ 21; see also Pl. Applications at Tab D.   The NOIW stated, in relevant part, that "Without proper documentation provided for proof of ownership, SEVP cannot at this point make a determination as to the legitimacy of Mr. Ho's claim of ownership and his dispute of Mr. Avery's claim of authority as head of the school. SEVP cannot make a determination as to the proper designation of Designated School Officials per Federal regulations." Id at p. 2; see also Currie Declaration at Exs. 9 & 10.

28.  As of April 8, 2008, UNVA had grown to 955 active students in SEVIS, and, on May 1, 2008, UNVA had 1047 active students in SEVIS. See Currie Declaration at ¶ 24.

29.  "While SCB is currently going through the [NOIW] administrative process in accordance with the regulations, the school has not been sanctioned by SCB, lost access to SEVIS or lost the ability to bring in foreign students."  Currie Declaration at ¶ 25.

30.  The NOIW process is absolutely essential to the mission of the SEVP program. SEVP/SCB have "a clear and significant interest in ensuring that student visas are appropriately issued."  Currie Declaration at ¶ 3.

Respectfully submitted,

__/s/_____
JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


__/s/_____
CLAIRE WHITAKER, D.C. Bar # 354530
Assistant United States Attorney
United States Attorneys Office
Civil Division
555 4th Street, N.W., Room E-4204
Washington, D.C. 20530
(202) 514-7137

Exhibit A

**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

DANIEL F. HO, et al.                                      )         No. _____
                                                          )
    Plaintiffs,                            )
                                                          )
                                                          )
STUDENT AND EXCHANGE VISITOR PROGRAM,   )
et al.,                                                   )
                                                          )
    Defendants-.                           )
                                                          )
_____ )

### DECLARATION OF DIANNE CURRIE

Pursuant to 28 U.S.C. § 1746, I Dianne Currie do hereby declare:

1.    I am the Acting Chief of the School Certification Branch (SCB) which certifies
schools for attendance by non-immigrant students as part of the Student and
Exchange Visitor Program (SEVP.)  SEVP is an office within the United States
Immigration and Customs Enforcement (ICE), United States Department of
Homeland Security (DHS.)

2.    As Acting Chief of SCB, I oversee the School Certification Branch.  The School
Certification Branch certifies I-17 petitions which allow a school to enroll non-
immigrant students.  SCB is part of the SEVP program which tracks and monitors
schools as well as ensures a school's compliance with the relevant regulations. SCB,
as part of SEVP, certifies schools with the goal of ensuring that only legitimate
foreign students or exchange visitors gain entry to the United States.

3.    SEVP/SCB has a clear and significant interest in ensuring that student visas are
appropriately issued.  In the wake of 9/11, concerns of nonimmigrant entry into this
country of terrorists, through the use of student visas, who could inflict substantial
damage on millions of Americans is great.  SEVP/SCB has a grave responsibility to
the public in this area.

4.    SEVP/SCB strives to balance the goal of secure borders with the need for open doors
for legitimate international students and exchange visitors seeking to participate in
U.S. education and cultural exchange programs.  SEVP/SCB uses a computer
database, the Student and Exchange Visitor Information System (SEVIS), to track
and monitor schools and programs, students, exchange visitors and their dependents
throughout the duration of approved participation within the U.S. education system.

5.    SCB/SEVP is responsible for administering the eligibility review of all schools that
wish to host foreign students and report changes in student status using the regulatory
reporting requirements.  SCB also determines, pursuant to procedures set forth in 8
C.F.R. § 214.4 (et seq.), whether a school's approval for attendance of nonimmigrant
students should be withdrawn.

6.    I am familiar with the facts surrounding SCB's approval of the University of Northern Virginia (UNVA) for attendance by nonimmigrant students, including facts contained in UNVA's Form I-17 petition, changes made to the designation of UNVA's Principal Designated School Official (PDSO) and Designated School Official (DSO), and facts related to my decision to issue the March 28, 2008 Notice of Intent to Withdraw (NOIW).

7.    With regard to the authority to designate a PDSO and DSO, and remove a PDSO and DSO, SEVP interprets the regulations, set forth in 8 C.F.R. 214.3(l) that "the president, owner, or head of a school or school system" has authority to name a PDSO and DSO; and (2) SEVP has discretion to withdraw the submission by a school of an individual for PDSO or DSO.  Once a PDSO is named by "the president, owner, or head of a school or school system," and SEVP approves the PDSO designation, the school's access codes in the SEVIS computer database are reprogrammed for the PDSO.

8.    The regulations further state "(2) Name, title, and sample signature.  Petitions for school approval must include the names, titles, and sample signatures of designated officials.  An approved school must update SEVIS upon any changes to the persons who are principal or designated officials, and furnish the name and title of the new official within 21 days of the change.  Any changes to the PDSO or DSO must be made by the PDSO.  In its discretion the Service may reject the submission of any individual as a DSO or withdraw a previous submission by a school of an individual." 8 C.F.R. § 214.3(2).

SEVP/SCB interpret the "Any changes. . ." clause in the context of both 8 C.F.R. § 214.3(l)(2) and 8 C.F.R § 214.3 as a whole as setting forth a PDSO's duties to (1) manually update the SEVIS computer database with the name and title of the new PDSO or DSO and (2) to provide SEVP a sample signature of the newly designated official.  SEVP does not interpret this clause as modifying, or even referring to, the authority set forth in 8 C.F.R. § 214.3 (l)(1) of "the president, owner, or head of a school or school system" to name a PDSO and DSO.

9.    UNVA was originally approved in 2000 for attendance by nonimmigrant students under Section § 101(a)(15)(F) of the Immigration and Nationality Act.  Fay Avery signed the initial Form I-17 petition on behalf of UNVA as "President" and Daniel Ho was listed as "Provost."  UNVA reapplied for approval in 2003 after SEVIS was created and submitted a new Form I-17 petition.  Daniel Ho signed the approved 2003 Form I-17 petition as UNVA's Provost and listed Fay Avery as UNVA's President.  The 2003 approved Form I-17 petition was the last signed and approved Form I-17 petition received by SEVP headquarters. (Exhibits 1 and 2[1].)

---

[1] The exhibits attached are true copies of documents found in SCB's files.  These documents are a copy of the administrative record and are redacted to protect technical internal codes within SEVIS as well as personnel that are not decision makers in this matter.

10.  On November 16, 2007, Roy Ho was the PDSO for both UNVA campuses and Daniel
     Ho was the DSO for both UNVA campuses. On that date, Fay Avery contacted the
     SEVIS help desk and opened a help desk ticket stating "Current PDSO Roy Ho is not
     authorized by the school to be the PDSO and needs [to be] removed from the
     system." The SEVIS help desk responded the same day informing Mr. Avery to
     provide the specific details of his request in writing, on school letterhead, and signed
     by the school's president or owner. (Exhibit 3.)

11.  On November 19, 2007, the SEVIS help desk received a letter on UNVA letterhead,
     signed by Fay Avery as "University Chancellor," dated November 16, 2007, in which
     Mr. Avery states that Roy Ho is not authorized to be PDSO and that Mr. Avery
     wishes to replace Roy Ho as PDSO. (Exhibit 4.)

12.  On November 20, 2007, Mr. Avery called the SEVIS help desk for follow up. The
     case was assigned to Denise Mackie-Smith, the Information Technology (IT) Branch
     Chief for SEVP, because a request to change the PDSO made by a party other than
     the signatory party on a school's existing form I-17 petition requires (1) headquarters
     review by the SEVP IT Management Branch Chief and (2) a system change request
     (SCR) to rewrite the computer codes to the SEVIS computer database in order to
     allow the new PDSO access to SEVIS and erase the old PDSO's SEVIS access.
     (Exhibit 3.)

13.  On December 6, 2007, the SEVP IT Branch Chief, Denise Mackie Smith, verified
     that Mr. Avery was the Chancellor and head of UNVA by examining the records
     contained in the SEVP/SCB file for UNVA, including previous Form I-17 petitions
     for 2000 and 2003 which were submitted under the penalty of perjury under 8 C.F.R.
     § 103.2(a)(2), and the UNVA website which listed staff members and their respective
     positions. (Exhibits 1, 2, 4.)

14.  Because the SEVP IT Branch Chief determined from the evidence that Mr. Avery
     was the head of UNVA, Mr. Avery's request to remove Roy Ho as UNVA's PDSO
     for each campus, name Mr. Avery as PDSO of each campus, and name Roy Ho as
     DSO of each campus were approved pursuant to 8 C.F.R. § 214.3(l)(1) & (2). The
     SCR was then implemented to effect the change of PDSO and DSO in the SEVIS
     computer database.

15.  On January 9, 2008, the SEVIS help desk was contacted by Daniel Ho requesting that
     Mr. Avery be removed as PDSO and replaced by himself. Daniel Ho informed the
     help desk that Mr. Avery had been relieved of all duties with the University. The
     request was escalated to SEVIS help desk management and management requested
     that Ho send his request in writing, on University letterhead, signed by the school's
     president or owner. That same day, Daniel Ho sent via facsimile the requested letter.
     (Exhibit 5 and 6.)

16.  On January 10, 2008, SEVIS help desk management called the telephone number for
     UNVA listed on the letterhead sent by Daniel Ho the previous day to confirm that Mr.

Avery had been terminated. Mr. Avery answered the telephone call and informed the help desk manager that he is still employed by UNVA. Because Daniel Ho's request raised an issue dealing with school authority, the help desk manager sent the request up the chain of command . (Exhibit 5.)

17. On January 18, 2008 SEVP learned that the ownership of UNVA was in dispute, and such dispute was again communicated to SCB by Mr. Avery in February 11, 2008. SEVP also learned that Mr. Avery had filed suit in the Circuit Court for Fairfax County, Virginia, Case No. 2008-167, disputing the ownership of UNVA.

18. On February 15, 2008, Mr. Avery informed SCB in writing that UNVA's Board of Trustees had suspended Daniel Ho's employment with UNVA and barred Daniel Ho from all UNVA property, including both campuses, on December 18, 2007. In support of these allegations, Mr. Avery provided SCB with copies of two December 17, 2007 resolutions from the UNVA Board of Trustees and a letter from the UNVA General Counsel. It was at this point in time that I decided that an NOIW was necessary. (Exhibit 7.)

19. On March 14, 2008, Plaintiffs' counsel informed SCB that (1) Mr. Avery was terminated from UNVA, (2) Daniel Ho is the owner of UNVA, and (3) that counsel would contact SCB to discuss how Daniel Ho may change the PDSO to himself. (Exhibit 8.)

20. The proper course of action when SCB learns of ownership issues that may affect the status of the school in SEVIS and compliance with the applicable regulations is to issue an NOIW. Pursuant to the regulations, when a school is issued an NOIW, the school is given 33 calendar days to respond with evidence and answer any questions SCB has raised in the NOIW. Once an NOIW is issued and a school has submitted its response, SCB must review the response and make a determination whether the school is in compliance with the regulations.

21. SCB issued a NOIW to both Mr. Avery and Mr. Daniel Ho on March 28, 2008 because SEVP learned that the ownership of UNVA is in dispute before the Commonwealth of Virginia. Without proper documentation provided for proof of ownership, SCB could not at that point make a determination as to the legitimacy of Mr. Ho's claim of ownership and his dispute of Mr. Avery's claim of authority as head of the school. (Exhibit 9 and 10.)

22. After the NOIW was issued and during the 33 day response period required by the federal regulations, Daniel Ho, via letters from counsel, requested SEVP to grant interim relief by appointing Daniel Ho as PDSO. On April 29, 2008, SEVP responded by sending Ho's counsel a letter stating that SEVP will review the case and has not rendered a decision on the NOIW. The SEVP response adhering to the regulations for the NOIW was not an Agency decision denying Daniel Ho any relief. (Exhibit 11.)

23    Both Mr. Avery and Mr. Ho submitted responses to the NOIW within the required response period. Pursuant to the regulations, SCB is reviewing those responses to determine whether the school's approval should be withdrawn.

24    SEVP/SCB records reflect that the NOIW issued in this case has not had a significant impact on ongoing operation of the school. On March 1, 2007 UNVA had 1,096 active students in SEVIS. On November 1, 2007 UNVA had 900 active students in SEVIS. On April 8, 2008 UNVA had 955 active students in SEVIS. On May 1, 2008, UNVA had 1047 Active Students SEVIS.

25.    While SCB is currently going through the administrative process in accordance with the regulations, the school has not been sanctioned by SCB, lost access to SEVIS or lost the ability to bring in foreign students.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief, and based upon records maintained by ICE.

Executed on _May 20___, 2008

_Dianne Currie_
Dianne Currie
Acting Chief, School Certification Branch
Student and Exchange Visitor Program
U.S. Immigrations and Customs Enforcement
Department of Homeland Security

# EXHIBIT 1

**U.S. DEPARTMENT OF JUSTICE**
Immigration and Naturalization Service

Petition for Approval of School for
Attendance by Nonimmigrant Students

OMB 1115-0070
Exp. 4-86

---

**INS USE ONLY**

School Code _WAS_ 214F _1196_

Approval for attendance of students under:
1. ☒ Section 101(a)(15)(F) of the Act.
2. ☐ Section 101(a)(15)(M) of the Act.
3. ☐ Both of the above sections of the Act.

This request is to:
1. ☒ Create a file.
2. ☐ Update a file.

**Fee Stamp**

FEE PAID IK NO. _____
IMMIGRATION & NATURALIZATION SERVICE
WASHINGTON (D O)
DATE 1-20-00 VERIFIED BY _____

Date of Approval

DD

District

APPROVED
DISTRICT DIRECTOR

FEB X2 2000

Recommended by: _____
WAS 5880

---

This section is to be COMPLETED BY THE SCHOOL - DO NOT WRITE ABOVE THIS LINE. (Please read instructions before filling in form.) If you need more space to answer fully any items on this form, use a separate sheet, identify each answer with the letter and number of the corresponding item, and sign and date each sheet.
**PRESS FIRMLY - LEGIBLE COPY REQUIRED**

TO THE IMMIGRATION AND NATURALIZATION SERVICE:

1. Petition is made for approval, or continuation of approval, of this institution as a school for attendance by nonimmigrant alien students under (complete as appropriate):

   a. ☒ Section 101(a)(15)(F) of the Act (academic and language students),
   b. ☐ Section 101(a)(15)(M) of the Act (vocational students),
   c. ☐ Both of the above sections of the Act, and the following statement of fact is submitted:

2. Name of school
   _The University of Northern Virginia_

3. Mailing address of school
   _900 S. Washington Street, Suite 301, Falls Church, VA. 22046_

4. This school is a:
   a. ☐ Public Institution (Leave No. 10 blank. Please note that no fee is required. See instruction No. 2)
   b. ☒ Private Institution (Complete No. 10).

5. This school is engaged in: (Check appropriate blocks and explain further if necessary).
   a. ☐ Primary Education
   b. ☐ High School Education (Academic or Vocational)
   c. ☐ Vocational or Technical Education (Other than High School)
   d. ☐ Language Training
   e. ☒ Higher Education (issuing one or more of the following degrees: Associate, Bachelor's, (Master's), PhD)
   f. ☐ Other (identify) _____

6. This school's sessions are based on:
   a. ☐ Semesters
   b. ☒ Trimesters
   c. ☐ Quarters
   d. ☐ Other (explain) _____

7. Provide the date (month and day) registration begins for EACH session during a calendar year, including the summer session if your school has one. If there is no beginning registration date, please explain. If there are more than five sessions in your school, do NOT enter any information in this space, but list all beginning registration dates on a piece of paper attached to this form.
   a. _____
   b. _____
   c. _____      _( Please see attached paper for registration date)_
   d. _____            _Attachment_
   e. _____

Form I-17 (Rev. 4-4-83) N

Please continue on Page 2

| RECEIVED | TRANS IN | RET'D-TRANS OUT | COMPLETED |
|---|---|---|---|
|  |  |  |  |

**2**

Page 2

| | |
|---|---|
| 8. Date school was established | *March 20, 1998 ( Attach Ent 2)* |
| 9. Location of school (if different from mailing address) | *N/A* |
| 10. Name and address of owner · | *Daniel Ho* > *9730 Leesburg Pike* *Great Falls, Va. 22016.* *B2 Wing Lui* *Heng Wen Li* *805 Martins Court , Burke, VA.* |

11. a. ☒ Petition is for initial approval. (See instruction No. 2)
    b. ☐ Petition is for continuation of approval (See instructions No. 2 and 9). If for continuation, complete the following:
       (i) Date of original approval _____
       (ii) INS File Number _____

12. The school operates under the following Federal, ⟨state⟩, local, or other authorization (if none, write "none"):
*State Council for Higher Education in Virginia (SCHEV)*

13. The school has been approved by the following national, regional, or state accrediting association or agency (if none, write "none"):
*State Council for Higher Education in Virginia (SCHEV)* *(Attachment 3)*

14. Nature of subject matter taught (check as many as are appropriate):
    a. ☐ Liberal Arts    d. ☐ Religion
    b. ☐ Fine Arts       e. ☐ Professional Studies        g. ☒ Other (Explain) *Master's Degrees*
    c. ☐ Language        f. ☐ Vocational or Technical Training

15. List the degrees available from your school. *Master of Science Degrees:*
*1) Computer Science        (3) Multimedia Technology*
*2) Information Systems Technology    (4) Telecommunications*

16. Check as appropriate and explain further if necessary:
    If the school is engaged in elementary or secondary education, it ☐ does ☐ does not qualify its graduates for acceptance by accredited schools of higher educational level. _____

    If the school is engaged in higher education, it ☒ does ☐ does not confer recognized bachelor's, master's, doctor's, professional, or divinity degrees. Its credits ☐ are ☒ are not recognized by and transferable to institutions of study which confer degrees. _____ *(Attachment 4)*

    If the school is engaged in vocational or technical education, it ☐ does ☐ does not qualify its graduates for employment in the occupations for which preparation is offered. _____

17. Sessions are held as follows:
    a. ☐ Day Only    b. ☐ Night Only    c. ☒ Day and Night

18. Requirements for admission: (Graduate) *I) must have completed requirements for a bachelor's degree at a national or regional accredited institutions 2) official transcripts of all undergraduate & graduate work completed (3) completed application + two reference letter 4) interview with academic counselor (4) English proficiency (5) Toefl of 550 (6) payment qualifies (7) accident insurance*

19. Courses of study and time necessary to complete each ① *Computer Science, Information Systems Technology & Multimedia Technology and Telecommunications*
*② Master's degrees can be completed in 15-18 months of continuous study,*

20. Requirements for graduation:
*1) 42 credit hours completed          4) application for master's degree*
*2) Minimum G.P.A. 3.0                5) 80% attendance*
*3) Satisfy all department course requirements*

21. Causes for expulsion:
*1) Student falls below a GPA of 3.0 at the graduate level for a 2nd consecutive 8-week term. If progress is not shown in 2 terms the student will be expelled. (1st term - probation, 2nd term - expulsion)*

22. Average annual number of
    a. Classes *12*           c. Teachers or Instructors *19*
    b. Students *233*          d. Non-teaching employees *9*

23. Approximate annual total cost of room, board, tuition, etc., per student $ *20,000*

Please continue on Page 3

3

Page 3

If the school is approved, THE PETITIᴏER AGREES:

1. Upon acceptance of any nonimmigrant alien student, to furnish that student a Certificate of Eligibility (Immigration and Naturalization Service Form I-20A/B for an F-1 student or Form I-20M/N for an M-1 student).

2. To keep records containing the following specific information and documents relating to each nonimmigrant F-1 or M-1 student to whom the school issues a Form I-20A/B or I-20M/N, while the student is attending the school and until the school notifies the Service, in accordance with Immigration and Naturalization Service regulations, that the student is no longer pursuing a full course of study. The school must keep a record of having complied with the reporting requirements for at least one year. If a student who is out of status is restored to status, the school the student is attending is responsible for maintaining these records following receipt of notification from the Service that the student has been restored to status. The designated school official must make the following information and documents available to or furnish them to the Immigration and Naturalization Service upon request. The information and documents which the school must keep on each student are as follows:

   1. The admission number from the student's Form I-20 ID copy.
   2. Country of citizenship.
   3. Address and telephone number in the United States.
   4. Status, i.e., full-time or part-time.
   5. Course load.
   6. Date of commencement of studies.
   7. Degree program and field of study.
   8. Expected date of completion.
   9. Nonimmigrant classification.
   10. Termination date and reason, if known.
   11. The documents which show the scholastic ability and financial status on which the student's admission to the school was based.
   12. Information specified by the Service as necessary to identify the student, such as date and place of birth, and to determine the student's immigration status.

3. That in any advertisement, catalog, brochure, pamphlet, literature, or other material printed or reprinted by or for this school, any statement which may appear in that material concerning approval for attendance by nonimmigrant students must be limited solely to the following:

"This school is authorized under Federal law to enroll nonimmigrant alien students."

I CERTIFY that I am authorized to execute this petition. I understand that unless this institution fully complies with all terms as described on this form, approval may be withdrawn.

Dated at _The University of Northern Virginia_, this _1_ day of _November_, 19 _98_.

Signature _____

Title _____ President _____

(CORPORATE SEAL
OF INSTITUTION)

**U.S. DEPARTMENT OF JUSTICE**
Immigration and Naturalization Service

Designated School Offic

Approved OMB 1115-0070

**INSTRUCTIONS -**
A "designated official" or "designated school official", as defined in 8CFR214.3( 1)( 1), means a regularly employed member of the school administration whose office is located at the school and whose compensation does not come from commissions for recruitment of foreign students. An individual whose principal obligation to the school is to recruit foreign students for compensation DOES NOT QUALIFY as a designated official. The designated official MAY NOT delegate this authority to any other person. No school or institution may have more than five designated officials at any one time. ( In a multi-campus institution, each campus may have as many as five designated officials. In an elementary or secondary school system, however, the entire school system is limited to five designated officials.)

Form( s) I-17A ( this form) listing up to five designated officials for each school or campus within a school system ( except an elementary or secondary school system) must be attached to each Form I-17, Petition for Approval of School for Attendance by Nonimmigrant Students, but it is not necessary for each school or campus to have its own designated officials. If there is a change in designated officials, a new Form I-17A must be submitted to the Immigration and Naturalization Service office having jurisdiction over the school within thirty days. Only the new designated official( s) need to be listed when there is a change in designated officials.
A designated official may sign certain forms relating to and has other responsibilities with respect to F-1 and/or M-1 students

I, THE UNDERSIGNED, have read the Immigration and Naturalization Service's regulations relating to nonimmigrant students, namely 8 CFR 214.1( b), 8 CFR 214.2( f), and 8 CFR 214.2( m); the Service's regulations relating to change of nonimmigrant classification for students, namely 8 CFR 248.1( c), 8 CFR 248.1( d), 8 CFR 248.3( b), and 8 CFR 248.3( d); the Service's regulations relating to school approval, namely 8 CFR 214.3; and the Service's regulations relating to withdrawal of school approval, namely 8 CFR 214.4. I intend to comply with these regulations. (Press Firmly - Legible Copy Required)

| Designated Official Number 1<br>LAST NAME, FIRST NAME ( Print or Type) | Title ( Print or Type) | Signature | ☒ Initial designation<br>☐ Replacement for previous designated official number 1 |
| Avery, Fay | President | | |
| Telephone number | | | |

| Designated Official Number 2<br>LAST NAME, FIRST NAME ( Print or Type) | Title ( Print or Type) | Signature | ☒ Initial designation<br>☐ Replacement for previous designated official number 2 |
| Ho, Daniel | Provost | | |
| Telephone number | | | |

| Designated Official Number 3<br>LAST NAME, FIRST NAME ( Print or Type) | Title ( Print or Type) | Signature | ☒ Initial designation<br>☒ Replacement for previous designated official number 3 |
| Reese, George | Director, Student Services | | |
| Telephone number | | | |

| Designated Official Number 4<br>LAST NAME, FIRST NAME ( Print or Type) | Title ( Print or Type) | Signature | ☐ Initial designation<br>☐ Replacement for previous designated official number 4 |
| | | | |
| Telephone number | | | |

| Designated Official Number 5<br>LAST NAME, FIRST NAME ( Print or Type) | Title ( Print or Type) | Signature | ☐ Initial designation<br>☐ Replacement for previous designated official number 5 |
| | | | |
| Telephone number | | | |

I, THE UNDERSIGNED PRESIDENT, OWNER, OR HEAD of the school or school system named below certify that the above individuals are designated officials of the school or school system.

| Fay R. Avery | President | |
| Name ( Print or Type) | Title ( Print or Type) | Signature |

ime of School System, School or Campus - List all schools or campuses and if three digit suffixes for which the above officials are designated if for more than one ool or campus but not for the entire school system)

INS FILE No. if known MD14F 1186    Date 2/2/00
( Omit three digit suffix if school system, other than an elementary or secondary school system, designating not more than five school officials for the entire system or for more than one school or campus within the system)

UNIVERSITY OF NORTHERN VIRGINIA

900 South Washington Street, Suite 301, Falls Church, VA 22046

ldress of School System, School, or Campus

rm I-17A (5-1-83)

**5**

# EXHIBIT 2

OMB No. 1115-0070

U.S. Department of Justice

Immigration and Naturalization Service

**Petition for Approval of School for Attendance by Nonimmigrant Student**

**START HERE-**    Please read instructions before beginning. Please type or print in black ink.

**THIS SECTION IS TO BE COMPLETED BY THE SCHOOL.**    If more space is needed to answer fully any items on this form, use a separate sheet; identify each answer with the letter and number of the corresponding item and sign and date each sheet. Indicate that an item is not applicable with "N/A". If the answer is "none," please write "none". This application must be filed with the required evidence as noted below, properly signed, and submitted with the correct fee.

To the Immigration and Naturalization Service:

1.    Petition is made for approval, or continuation of approval, of the institution as a school for attendance by nonimmigrant alien students under (Complete as appropriate):
      a. ☑ Section 101(a)(15)(F) of the Act (academic and language students),
      b. ☐ Section 101(a)(15)(M) of the Act (vocational students),
      c. ☐ Both of the above sections of the Act.

2.    Name of school:
      University of Northern Virginia

3.    Mailing address of school:
      10021 Balls Ford Road
      Manassas, VA 20109

4.    This school is a:
      a. ☐ Publicly owned institution
      b. ☑ Private Institution

5.    This school is engaged in:
      a. ☐    Private elementary school
      b. ☐    Private middle school
      c. ☐    Private high school (grades 9- 12)
      d. ☐    Public high school (grades 9-12)
      e. ☐    Vocational or technical education (other than high school)
      f. ☐    Flight training
      g. ☐    Language training
      h. ☑    Higher education (issuing one or more of the following degrees: Associate, Bachelor's, Master's, PhD)
      i. ☐    Other _____

6.    This school's sessions are based on:
      a. ☐ Semesters
      b. ☑ Trimesters
      c. ☐ Quarters
      d. ☐ Other _____

7.    Provide the date (month and day) registration begins for EACH session during a calendar year, including the summer session if your school has one. (Format mm/dd)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| a. | 01/02 | f. | 11/01 | k. | | p. | |
| b. | 03/01 | g. | | l. | | q. | |
| c. | 05/01 | h. | | m. | | r. | |
| d. | 07/01 | i. | | n. | | s. | |
| e. | 09/01 | j. | | o. | | t. | |

8.    Date school was established:
      03/24/1998

9.    Location of school: (if different from mailing address)
      10021 Balls Ford Road
      Manassas, VA 20109

10.   Name and address of owner:
      Ho
      10021 Balls Ford Road
      Manassas, VA 20109

11.   Petition is for:
      a. ☐ Initial approval
      b. ☑ Continuation of approval. Please complete the following:
            (i.)    Date of original approval  2/2/2000
            (ii.)   INS school code  WAS 214F 1186.000

---

**FOR INS USE ONLY**

School Code WAS 214F 1186

Approval for attendance of students under:
   1. ☐ Section 101(a)(15)(F) of the Act
   2. ☐ Section 101(a)(15)(M) of the Act
   3. ☐ Both of the above sections of the Act.

This Request is to:
   1. ☐ Create a file.
   2. ☐ Update a file.

Fee Stamp:

Action Stamp:  4/11/03

Approved
NS

| Received | Trans In |
|---|---|
| **Ret'd Trans Out** | **Complete** |

Remarks

---

Continued on next page

Form I-17 (Rev. 10/13/98)N  Page 1

7

12. The School operates under the following federal, state, local or other license or approval (if none, write "none"):
**Virginia**

13. The school has been approved by the following nationally recognized accrediting association or agency (if none, write "none"):
**None**

14. Nature of subject matter taught (check as many as are appropriate):

- a. ☐ Liberal Arts
- b. ☐ Fine Arts
- c. ☑ Language
- d. ☐ Religious
- e. ☑ Professional Studies
- f. ☐ Vocational or Technical Training
- g. ☐ Flight Training
- h. ☑ Science
- i. ☑ Education
- j. ☑ Business
- k. ☑ Engineering
- l. ☐ Other

15. List the degrees available from the school:
**BA,BS,MS,MBA**

16. Check as appropriate and explain further if necessary:

If the school is engaged in elementary or secondary education, it ☐ does ☐ does not qualify its graduates for acceptance by accredited schools of higher educational level.

If the school is engaged in higher education, it ☑ does ☐ does not confer recognized bachelor's, master's, doctor's, professional, or divinity degrees. Its credits ☑ are ☐ are not transferable to institutions of study which confer such degrees.

If the school is engaged in vocational or technical education, it ☐ does ☐ does not qualify its graduates for employment.

☑ The school is engaged in English language training.

17. Sessions are held as follows: a. ☐ Day only    b. ☐ Night only    c. ☑ Day and night

18. Requirements for admission:
**Toefl 500 and high school diploma(undergraduhigh) and Toefl 550 and bacholer degree (graduate)**

19. Courses of study and time necessary to complete each:
**40 courses and three and half years (undergraduate) and
14 courses and two years (graduate).  Developmental English and Math not included.**

| 20. Requirements for graduation:<br>**C or better with min. 110 credits (undergradute)<br>and B or better with min. 30 credits (graduate)** | 21. Causes for expulsion:<br>**Probation for two trimesters and violation of laws** |
|---|---|

22. Average annual number of:    a. Classes: **210**    b. Students: **350**

c. Teachers or instructors:**55**    d. Non-teaching employees: **21**

23. Approximate annual total cost of room, board, tuition, etc., per student : **$8,000.00**

8

**If the school is approved, THE PETITIONER AGREES:**

1. Upon acceptance of any nonimmigrant alien student, to furnish that student a Certificate of Eligibility (Form I-20 A/B for an F-1 student or Form I-20 M/N for an M-1 student).

2. To keep records containing the following specific information and documents relating to each nonimmigrant F-1 or M-1 student to whom the school issues a Form I-20 A/B or I-20 M/N, while the student is attending the school and until the school notifies the Service, in accordance with regulations at 8 CRF 214.3, that the student is no longer pursuing a full course of study. The school must keep a record of having complied with the reporting requirements for at least one year. If a student who is out of status is restored to status, the school the student is attending is responsible for maintaining these records following receipt of notification from the Service that the student has been restored to status. The school must keep and make available to the Service upon request the following information and documents for each nonimmigrant F-1 and/or M-1 student:

   1. The admission number from the student's Form I-20 ID copy.
   2. Country of citizenship.
   3. Address and telephone number in the United States.
   4. Status, i.e. full-time or part-time.
   5. Course load.
   6. Date of commencement of studies.
   7. Degree program and field of study.
   8. Expected date of completion.
   9. Nonimmigrant classification.
   10. Termination date and reason, if known.
   11. The documents which show the scholastic ability and financial status on which the student's admission to the school was based.
   12. Information specified by the Service as necessary to identify the student and to determine the student's immigration status.

3. That in any advertisement, catalog, brochure, literature, or other material produced by or for this school, any statement which may appear concerning approval for admittance by nonimmigrant students must be limited to the following: "This school is authorized under Federal law to enroll nonimmigrant students."

I certify that I am authorized to execute this petition. I understand that unless this institution fully complies with all terms as described on this form, approval may be withdrawn pursuant to 8 CFR 214.4.

Dated at: **Manassas, VA** , this **6th** day of **March** , **2003**

Signature: **Daniel Ho**

Name and Title: **DANIEL HO, Provost**

*(CORPORATE SEAL*

*OF INSTITUTION)*

U.S. Department of Justice

Immigration and Naturalization Service

OMB No. 1115-0070

**Record of Designated School Officials**

**Instructions:**
(1) Form I-17, Supplement A, listing up to ten designated school officials for each school or campus within a school system (except an elementary or secondary system as noted below), must be attached to each Form I-17, Petition for Approval of School for Admittance by Nonimmigrant Students. If there is a change in designated school officials, a new Supplement A must be completed and submitted to the Immigration and Naturalization Service Office having jurisdiction over the school within thirty days.

(2) "Designated school officials" (DSO) means a regularly employed member of the school administration whose office is located at the school and whose compensation does not come from commissions for recruitment of foreign students. A DSO may not delegate this designation to any other person. An individual whose principal obligation to the school is to recruit foreign students for compensation may not be a DSO. The president, owner, or head of a school system must designate a principal DSO. The principal DSO is required to have a thorough knowledge of the regulations, policies and procedures governing nonimmigrant students, and is responsible for ensuring that each additional DSO has a thorough knowledge of the same.

Each school or institution must have one principal DSO, and may have up to ten DSO's at any one time, except at the discretion of the district director of the INS office having jurisdiction over the school. In a multi-campus institution, each campus must have a principal DSO. In an elementary or secondary school system, however, the entire school system is limited to a total of ten designated officials at any one time.

I, THE UNDERSIGNED, have read the Immigration and Naturalization Service's regulations relating to nonimmigrant students, namely 8 CFR 214.1, 8 CFR 214.2(f), and/or 8 CFR 214.2(m); the Service's regulations relating to change of nonimmigrant classification for students, namely 8 CFR 248; the Service's regulations relating to school approval and withdrawal of school approval, namely 8 CFR 214.3 and 214.4, and intend to comply with these regulations at all times.

| Designated Official: *(Print or Type)* | | | | |
|---|---|---|---|---|
| Last and First Name: | Title: | Signature: | Telephone Number: | Role: |
| Ho, Daniel | Provost | | 703-392-0771 ext. 2008 | PDSO |
| ☐ Initial Designation | ☐ Replacement for prior designated official | | | ☐ Correction to previous designation |

| Designated Official: *(Print or Type)* | | | | |
|---|---|---|---|---|
| Last and First Name: | Title: | Signature: | Telephone Number: | Role: |
| Avery, Fay | President | | 703-392-0771 ext. 2007 | DSO |
| ☐ Initial Designation | ☐ Replacement for prior designated official | | | ☐ Correction to previous designation |

| Designated Official: *(Print or Type)* | | | | |
|---|---|---|---|---|
| Last and First Name: | Title: | Signature: | Telephone Number: | Role: |
| Magruder, Clayton | International Student Advi | | 703-392-0771 | DSO |
| ☐ Initial Designation | ☐ Replacement for prior designated official | | | ☐ Correction to previous designation |

| Designated Official: *(Print or Type)* | | | | |
|---|---|---|---|---|
| Last and First Name: | Title: | Signature: | Telephone Number: | Role: |
| | | | | |
| ☐ Initial Designation | ☐ Replacement for prior designated official | | | ☐ Correction to previous designation |

| Designated Official: *(Print or Type)* | | | | |
|---|---|---|---|---|
| Last and First Name: | Title: | Signature: | Telephone Number: | Role: |
| | | | | |
| ☐ Initial Designation | ☐ Replacement for prior designated official | | | ☐ Correction to previous designation |

| Designated Official: *(Print or Type)* | | | | |
|---|---|---|---|---|
| Last and First Name: | Title: | Signature: | Telephone Number: | Role: |
| | | | | |
| ☐ Initial Designation | ☐ Replacement for prior designated official | | | ☐ Correction to previous designation |

| Designated Official: *(Print or Type)* | | | | |
|---|---|---|---|---|
| Last and First Name: | Title: | Signature: | Telephone Number: | Role: |
| | | | | |
| ☐ Initial Designation | ☐ Replacement for prior designated official | | | ☐ Correction to previous designation |

Form I-17A (Rev. 10/13/98)Supplement A   Page 1

| Designated Official: *(Print or Type)* | | | | |
|---|---|---|---|---|
| Last and First Name: | Title: | Signature: | Telephone Number: | Role: |
| ☐ Initial Designation | ☐ Replacement for prior designated official | | ☐ Correction to previous designation | |

| Designated Official: *(Print or Type)* | | | | |
|---|---|---|---|---|
| Last and First Name: | Title: | Signature: | Telephone Number: | Role: |
| ☐ Initial Designation | ☐ Replacement for prior designated official | | ☐ Correction to previous designation | |

| Designated Official: *(Print or Type)* | | | | |
|---|---|---|---|---|
| Last and First Name: | Title: | Signature: | Telephone Number: | Role: |
| ☐ Initial Designation | ☐ Replacement for prior designated official | | ☐ Correction to previous designation | |

I, the undersigned president, owner, or head of the school or school system named below certify that the above individuals are designated school officials of the school or school system. Further, I certify that I will be responsible for providing the resources and training necessary for these officials to implement properly the above referenced regulations.

DANIEL HO

Name *(Print or Type)*

Provost

Title *(Print or Type)*

Daniel Ho

Signature

Name of School System, School, or Campus (list all schools or campuses and their three-digit suffixes for which the above officials are designated if for more than one school or campus but not for the entire school system).

INS FILE No. if known:
Date: 03/03/2003
(If a multi-campus institution or school system use the 3 digit suffix for the main or initial campus.)

University of Northern Virginia
Manassas
000

Address of School System, School, or Campus:
10021 Balls Ford Road
Manassas, VA 20109

II

U.S. Department of Justice

Immigration and Naturalization Service

OMB No. 1115-0070

**Record of School/Campuses**

Instructions - Form I-17 Supplement B must be completed and submitted with Form I-17 if a school system or multi-campus institution is seeking approval for a number of schools for admittance by nonimmigrant students. Furnish all known information for each school or campus within the system. If more space is needed to list all schools, attach additional forms as necessary, and number each at the bottom. If an approved school system wishes to update or correct the information on its original Supplement B, a new Form I-17, must be submitted, without fee, accompanied by Supplement B, and, if applicable, Supplement A. Please PRINT or TYPE all information on this form.

Request Action:

a.  ☐   Initial approval for the following school(s) or campus(es).
b.  ☐   Addition of the following school(s) or campus(es) to the list of approved institutions within the above school system.
c.  ☐   Removal of the following school(s) or campus(es) from the list of approved institutions within the above school system.
d.  ☐   Change or correction in the following information relating to school(s) or campus(es) which have been approved.

Fill in only the information which is to be added to or adjusted in the INS records, and the school's three-digit suffix:

| 1. School or Campus Name: Manassas | 2. School or Campus 3-digit suffix: 000 |
|---|---|
| 3. Mailing Address: *(include Zip Code)*<br>10021 Balls Ford Road<br>Manassas, VA 20109 | 4. Location: *(if different from mailing address)*<br>10021 Balls Ford Road<br>Manassas, VA 20109 |

| 1. School or Campus Name: | 2. School or Campus 3-digit suffix: |
|---|---|
| 3. Mailing Address: *(include Zip Code)* | 4. Location: *(if different from mailing address)* |

| 1. School or Campus Name: | 2. School or Campus 3-digit suffix: |
|---|---|
| 3. Mailing Address: *(include Zip Code)* | 4. Location: *(if different from mailing address)* |

| 1. School or Campus Name: | 2. School or Campus 3-digit suffix: |
|---|---|
| 3. Mailing Address: *(include Zip Code)* | 4. Location: *(if different from mailing address)* |

12

# EXHIBIT 3

## Helpdesk Ticket # HD0000003121039

| | | | |
|---|---|---|---|
| STATUS: | | ARRIVAL TIME: 16-Nov-2007 10:37 | SUBMITTED BY: |
| PRIORITY: | | CLOSED TIME: | |
| | CLOSED BY: | | ASSIGNED GROUP: |
| | | | ASSIGNED-TO: |
| Ticket POC: | | POC Phone: | ASSIGNED TIME: |

REQUESTER: **AVERY, FAY**          Phone: 703-392-0771
OFFICIAL SITE CODE:

SITE CODE:          Office/RM#: UNIVERSITY OF NORTHERN VIRGINIA
Address:                                    NOTES:

_____

_____

_____

CATEGORY:          TYPE: SEVIS          ITEM:

SUMMARY: CHANGE P/DSO

---

HARDWARE INFORMATION          Assoc. PCN:          Clin #
                                                     Assoc. Manuf :          PCA#
PCN:                                                                          Warranty Status:
MANUFACTURER:                         Assoc. Model:
MODEL:                                Assoc. Serial #:
SERIAL #:
REQ. DATE:                            SHIPPING NOTE:
AIRBILL INFO:

PARTS DESCRIPT:

Ship To Address          EXTERNAL SUPPORT

                         External Support
                         Vendor Ticket#
                         Ext Sup Close Date

**Problem Description:** ADD THIS DSO AS THE PDSO
CURRENT PDSO ROY HO IS NOT AUTHORIZED BY THE SCHOOL TO BE THE PDSO AND NEEDS REMOVED
FROM THE SYSTEM

14

## Helpdesk Ticket # HD0000003121039

**Work Log:**

11/16/2007 10:35:31 AM
Mail documentation to :
A letter explaining their circumstances should:
be on school letterhead
be signed by institution's president or owner
reference their ticket number
include the current PDSO's name
include the new PDSO's:
name
US citizen or LPR
title
work address
phone number
email address

To [facilitate the process], the user may fax in the letter as documentation for the SCR. However, INS will not approve the SCR until the hardcopy is received. The letter should be sent to:

SEVIS Help Desk
Skyline 4 Suite 300
5113 Leesburg Pike
Falls Church, VA. 22041-3257

11/16/2007 5:14:43 PM
Sent customer notification docs are required via postal services, but may fax.

11/19/2007 8:43:46 AM
Letter to change PDSO received in office.
11/19/2007 8:47:04 AM
SCR needed to change PDSO. Assigned to T3.
11/20/2007 11:11:03 AM
Fay calling for status...and he'd like the confirmation of change of PDSO sent to the following email address:

11/26/2007 3:53:19 PM


## SORRY I MISSED YOU!

☐ I corrected/fixed the issue you were having.

☐ The issue was not corrected/fixed and I will get back to you as soon as possible.

☐ Other

NOTES _____

**Referencing Helpdesk Call# HD0000003121039**
Re: ADD THIS DSO AS THE PDSO
CURRENT PDSO ROY HO IS NOT AUTHORIZED BY
THE SCHOOL TO BE THE PDSO AND NEEDS
REMOVED FROM THE SYSTEM

**Thank you!**

15

Page 2 of 2

# EXHIBIT 4

7032363833    EDS SKYLINE    10.23 04 a.m.    05-06-2008    1 /4



# UNIVERSITY OF NORTHERN VIRGINIA

10021 Balls Ford Road, Manassas, VA 20109    www.unva.edu
(703) 392-0771   Fax(703) 392-0756

November 16, 2007

Re: 3121039

SEVIS Help Desk
Skyline 4 Suite 300
5113 Leesburg Pike
Falls Church, VA 22041-3257

To Whom It May Concern:

The University of Northern Virginia currently has Roy Ho listed as our Primary Designated School Official (PDSO). He is not authorized at this time to be the PDSO. I would like to replace him as the PDSO. I hold the position as Chancellor of the University of Northern Virginia. I am a United States citizen. My email address is favery.admin@unva.edu.

Please feel free to contact me if you have any questions.

Sincerely,

Fay R. Avery
University Chancellor
(703) 392-0771 ext. 2007

17

University of Northern Virginia                                             Page 1 of 3



Profile       News        Academics       Admissions       Student Services       Learning Resources

Campus Staff

# University-wide Staff Members

**Related links:**

Accreditation
Mission Statement
Vision Statement
Goals and Objectives
University Governance
Academic Advisory
Staff
Board of Trustees
Affiliations
Locations
FAQ
Jobs

**Fay R. Avery**
Chancellor

**Daniel F. Ho**
Vice Chairman
Chief Executive Officer

**E. Raymond Hackett**
Vice President for Academic Affairs

**Jacob H. de Bruin**
Vice President for Finance
Chief Financial Officer

**Bernard J. van Gils**
Vice President for Administrative Affairs
Chief Operating Officer

**Marty Martin**
Vice President for Site Operation

**Joseph S. Drew**
President
Virginia Campus

**Benjamin Davis**
Associate Vice President for Academic Affairs

**Yingjia Gan**
Assistant Vice President for International Affairs

**Jack Ke**
Assistant Vice President for Technology

**Linda Nains**
Dean, School of Business

**Patrick Nendis**
Dean, School of Engineering

**Paul E. Choe**
Dean, School of Developmental Studies

**Ali Dastmalchi**
Dean, School of Management

**Ranga Naras**
Dean, Graduate School

**Ahmad Noor**

University of Northern Virginia                                    Page 2 of 3

Dean, School of Technology

**Peter Williams**
Dean, Distance Learning

**Parshwa Jain**
Chair, Accounting

**Markel Gall**
Registrar

**Wanjun Bai**
Assistant Director for International Affairs

## Main Campus Staff Members

**Muhammed Abbasi**
Admissions Counselor

**Irena Djordjevic - Behery**
Director, Admissions

**Hossam Behery**
Director, Cooperative Education

**Roy Ho**
Director, International Student Affairs

**Zilong Lin**
Business Manager

**Fei Meng**
Registration Assistant

**Henry Ou**
Manager, Information Technology

**Charlotte Taylor**
Director, Marketing

**Grace Zheng**
Media Specialist

## UNVA-London Staff Members

**Theo Ktorides**
President

**Costas Charles**
Chair, Board of Directors

**Telemachos Themistocleous**
Director

**Stephen Mousley**
Director of Library Services

**Paula Hughes**
Registra

**Faith Kachuka**
Assistant Registrar

**Tina Bird**
Administrator

**Eva Szaloki**

'University of Northern Virginia

Administration

**Can Luo**
Admissions Assistant

## UNVA-Prague Staff Members

**Mitchell Young**
President

**Martin McGoldrick**
Senior Vice President and Chief Academic Officer

**Tamara Curcic**
Student Services, Registrar and International Admissions

## UNVA-Cyprus Staff Members

**Ron French**
President

**Shal Hulac**
Vice President

**Asim Vohhi**
International Operations

**Erhan Vechi**
Director of Admissions and Registrar

**Cemile Esenyel**
Chief Financial Officer

**Elif Zorlu**
International Academics

**Ilana Abend David**
Library Services

## UNVA-Hong Kong Staff Members

**Edward I. Wong**
President

**Eleanor Cheung**
Dean of Graduate Studies

**Stephen Li**
Dean of Undergraduate Studies

**Cherry Chau**
Registrar, Student Services and Admissions Officer

**Yvonne Chan**
Vice President for Finance

**Gary Yuen**
Marketing and Public Affairs Officer

Copyright 1998-2005 University of Northern Virginia

# EXHIBIT 5

Ticket History.txt

1/10/2008 11:54:22 AM
The letter submitted by Daniel Ho to change the PDSO for the University of Northern
Virgina from Fay Avery to himself was denied.  Fay Avery is still with the
university and asked that this request not be honored.


1/9/2008 9:25:30 AM
Fax documentation to 202-414-8299
User has 4 business to fax the documents
"         Be written on the school's letterhead
"         Be signed by the institution's president or owner
"         Include the school code
"         Include the current (former) PDSO's name
"         Include the new PDSO's:
"         Name
"         Title
"         Work address
"         Phone number
"         E-mail address
"         Confirm that the new PDSO is either a U.S. citizen or LPR
The letter should be sent by postal mail to:
SEVIS Help Desk
5113 Leesburg Pike, Suite 300
Falls Church, VA 22041-3257

22

# EXHIBIT 6

7032363833     EDS SKYLINE                                          03:24:57 p.m.     01-09-2008          1/2



# UNIVERSITY OF NORTHERN VIRGINIA

10021 Balls Ford Road, Manassas, VA 20109                    www.unva.edu
(703) 392-0771   Fax (703) 392-6368

January 9, 2008

SEVIS Help Desk
5113 Leesburg Pike #300
Falls Church, VA 22041

Re:    Data-fix Request
       PDSO Change
       Ticket #3167544

Dear Sir/Madam:

As per your request, I am confirming that as of 1/7/2008 Fay R. Avery is no longer employed by the University of Northern Virginia and has been relieved of all duties. He was the previous PDSO for both of our campuses, Manassas and Annandale. Because he is no longer employed by UNVA, I, Daniel F. Ho will be assuming the role of PDSO for both Manassas and Annandale campuses. Please note that any future changes of roles and additions require my written approval.

My current title is "Owner/Chairman of the Board." I am accessible at my direct line by calling (703) 568-5260 or by email: danholui@yahoo.com. The address is:

University of Northern Virginia
10021 Balls Ford Rd.
Manassas, VA 20109

Attached to this letter is a copy of my passport. Please contact me if you require additional documents. As always, thank you for your assistance and dedication.

Respectfully,

Daniel F. Ho
Chairman of the Board
Chief Executive Officer

Attachment

Accredited by ACICS

7601 Little River Tnpk., G100, Annandale, VA 22003
13924 Braddock Rd., 3rd Floor, Centreville, VA 20120

**24**

7032363833          EDS SKYLINE                                03 25 30 p m    01 09 2008        2 /2



**25**

# EXHIBIT 7





# UNIVERSITY OF NORTHERN VIRGINIA

10021 Balls Ford Road, Manassas, VA 20109          www.unva.edu
(703) 392-0771  Fax (703) 392-0756
December 18, 2007

Via Hand Delivery at the University of Northern Virginia
10021 Balls Ford Road, Manassas, Virginia 20109

To: Mr. Daniel Ho

Dear Mr. Ho:

Pursuant to the Resolutions of the Board of Trustees, copies of which are attached, this letter is to give you notice that effective immediately, you are barred from the premises of the University of Northern Virginia, 10021 Balls Ford Road, Manassas, Virginia 20109and from any and all other University campuses and property until further notice. Your failure to leave the premises immediately and/or any return by you to the premises or to any other University campus and property shall be a Trespass in violation of Virginia Code Section 18.2-119 and shall subject you to immediate arrest and criminal prosecution.

As per the attached resolutions, your employment with the University has been suspended; therefore you should immediately cease any and all communications in which you hold yourself out as acting in the name of the University of Northern Virginia, acting for the benefit of the University or acting in any way which may indicate any affiliation with the University of Northern Virginia. Further, you are to turn over all property belonging to the University of Northern Virginia which is in your personal possession or control within forty-eight hours. This property may not be altered, damaged or destroyed.

This Notice is being served upon you in my capacity as General Counsel for the University of Northern Virginia and at the direction of the Board of Trustees of the University of Northern Virginia which body is charged by the governing University documents with ultimate institutional authority over the University of Northern Virginia.

Sincerely,
University of Northern Virginia

By _____
Bernard J.E. van Gils, Esq.
General Counsel

Attachments

27





# UNIVERSITY OF NORTHERN VIRGINIA

10021 Balls Ford Road, Manassas, VA 20109          www.unva.edu
(703) 392-0771  Fax (703) 392-0756

### RESOLUTION OF THE BOARD OF TRUSTEES
### OF THE UNIVERSITY OF NORTHERN VIRGINIA
### DECEMBER 17, 2007

*WHEREAS,* it has come to the attention of the Board of Trustees that Daniel Ho has apparently created unauthorized international business relationships using the name of the University of Northern Virginia and its federally registered service mark *"UNVA"*; and

*WHEREAS,* it has come to the attention of the Board of Trustees that Daniel Ho, through such relationships has caused degrees to be awarded in the name of the University; and

*WHEREAS,* monies from the above activities have been placed into accounts which are not regular University accounts; and



*WHEREAS,* an accounting of such activities and monies has been requested from Daniel Ho and he has refused to honor such a request; and

*WHEREAS,* the Board of Trustees is charged with the ultimate responsibility for safeguarding the academic and financial interests of the University of Northern Virginia.

*BE IT HEREBY RESOLVED* that it is the policy of the University that any fiduciary who is actively under investigation by the Board of Trustees for actions or inactions which may constitute a breach of such fiduciary's duties to the University shall be suspended or terminated from his or her duties to the University; and further

*BE IT HEREBY RESOLVED* that effective immediately, Daniel Ho, being a fiduciary activity under investigation by the Board of Trustees for actions or inactions which may constitute a breach of his duties to the University, shall be and hereby is SUSPENDED, with pay of his Board of Trustees approved salary, from all duties and activities as a Vice Chancellor and as an employee of the University of Northern Virginia.

*WE THE UNDERSIGNED ON THIS THE 18TH DAY OF DECEMBER, 2007, HEREBY ATTEST THAT THE ABOVE RESOLUTION WAS PASSED BY THE BOARD OF TRUSTEES OF THE UNIVERSITY OF NORTHERN VIRGINIA ON THE 17th DAY OF DECEMBER, 2007:*

Joseph Drew

Joseph Drew

Claude "Marty" Martin

RECEIVED BY SCH
FEB 1 4 2008
SCHOOL CERTIFICATION BRANCH
Accredited by ACICS

**28**




# UNIVERSITY OF NORTHERN VIRGINIA

10021 Balls Ford Road, Manassas, VA 20109          www.unva.edu
(703) 392-0771   Fax (703) 392-0756

### RESOLUTION OF THE BOARD OF TRUSTEES
### OF THE UNIVERSITY OF NORTHERN VIRGINIA
### DECEMBER 17, 2007

**WHEREAS**, the Board of Trustees has by separate resolution today determined that Daniel Ho is immediately suspended from all duties and activities as Vice Chancellor and as an employee of the University of Northern Virginia; and

*WHEREAS,* Daniel Ho has previously, and without authorization, changed the locks to the door of an office used by him on University property and has refused to provide access to any other person with keys to said office; and

*WHEREAS,* the Board of Trustees will need to conduct an investigation of Daniel Ho's activities without impediment by Daniel Ho; and

*WHEREAS,* the Board of Trustees has determined that Daniel Ho's continued access to University Property would not be in the University's best interests; and

*WHEREAS,* the Board of Trustees is charged with the ultimate responsibility for safeguarding the academic and financial interests of the University of Northern Virginia.

*BE IT HEREBY RESOLVED* that it is the policy of the University that any fiduciary who is under suspension or has been terminated from his or her duties to the University should not have access to the University's physical plant or data pending conclusion of the Board of Trustees investigation of the activities giving rise to the suspension or termination; and further

*BE IT HEREBY RESOLVED* that effective immediately, Daniel Ho, shall be and is hereby BARRED from being on or about the premises of any University property and from the business or residential premises of University faculty, staff, Directors or Trustees, pending the conclusion of the Board of Trustees' investigation of his activities; and further

*BE IT HEREBY RESOLVED* that procedures shall be immediately implemented to terminate Daniel Ho's ability to access any of the University's network systems, computer systems, email systems and data bases pending conclusion of the Board of Trustees's investigation of his activities.

Page 1 of 2

Accredited by ACICS

**29**



***WE THE UNDERSIGNED ON THIS THE 18TH DAY OF DECEMBER, 2007, HEREBY ATTEST THAT THE ABOVE RESOLUTION WAS  PASSED BY THE BOARD OF TRUSTEES OF THE UNIVERSITY OF NORTHERN VIRGINIA ON THE 17th DAY OF DECEMBER, 2007:***

Joseph Drew

Claude "Marty" Martin



Page 2 of 2

30

# EXHIBIT 8

31

VENABLE®ᴸᴸᴾ      575 7th Street, NW          Telephone 202-344-4000      www.venable.com
                 Washington, DC 20004-1601   Facsimile 202-344-8300

Ronald M. Jacobs                     (202) 344-8215          rmjacobs@venable.com
Associate

March 14, 2008

**Via Facsimile (202) 353-3723**

Ms. Dianne Currie
Acting School Certification Branch Chief
Student & Exchange Visitor Program
U.S. Immigration & Customs Enforcement
U.S. Department of Homeland Security
425 I Street NW
Washington, DC 20536

        Re:   University of Northern Virginia PDSO

Dear Ms. Currie:

    The Board of Directors of the University of Northern Virginia ("UNVA"), has retained me to represent UNVA with respect to a recent change in UNVA's Principal Designated School Official ("PDSO") in the Student Exchange Visitor Information System ("SEVIS"). A signed Form G-28, Notice of Entry of Appearance is attached to this letter.

    In short, the PDSO used to be the Chief Executive Officer ("CEO") and owner of UNVA, Dr. Daniel F. Ho. Recently, however, the PDSO was changed to be a man by the name of Faye Avery. It is not clear to me exactly how—or by whom—this change was effectuated. Indeed, the Board of Directors of UNVA had terminated Mr. Avery prior to the time this change was made. In addition, Dr. Ho was given no notice of this change; he learned of it only after he was unable to log into the SEVIS system.

    Since the time of the change, the new PDSO has removed at least one of the DSOs from the system. The new PDSO has also terminated a number of students who were lawfully attending UNVA without any basis for this termination and without any advance warning, thus jeopardizing their status in the United States. There is ongoing litigation in the Virginia state court system involving Mr. Avery, UNVA, and Dr. Ho, but this litigation has not changed the facts that (1) Mr. Avery has been terminated by the Board of Directors from his position at UNVA and (2) Dr. Ho remains the CEO and owner (through a holding company) of UNVA.

    Accordingly, Dr. Ho is the owner and CEO of UNVA. Pursuant to 8 C.F.R. § 214.3(l)(1), he is the individual entitled to name the PDSO for UNVA. I will call you later today to discuss how UNVA should proceed in this matter to change the PDSO back to Dr. Ho. (if there is someone

# VENABLE<sub>LLP</sub>

March 14, 2008
Page 2

else in your office whom you believe is the appropriate person to handle this matter, please let me know and I will work with that individual).

Thank you very much for your time and attention to this matter.

Sincerely,

Ronald M. Jacobs
Counsel for UNVA

cc:   Dr. Daniel F. Ho
      E. Paul Choe

:"ODMA\PCDOCS\DC3DOCS1\213116\1

U.S. Department of Justice
Immigration and Naturalization Service

# Notice of Entry of Appearance
## as Attorney or Representative

**Appearances** - An appearance shall be filed on this form by the attorney or representative appearing in each case. Thereafter, substitution may be permitted upon the written withdrawal of the attorney or representative of record or upon notification of the new attorney or representative. When an appearance is made by a person acting in a representative capacity, his personal appearance or signature shall constitute a representation that under the provisions of this chapter he is authorized and qualified to represent. Further proof of authority to act in a representative capacity may be required. **Availability of Records** - During the time a case is pending, and except as otherwise provided in 8 CFR 103.2(b), a party to a proceeding or his attorney or representative shall be permitted to examine the record of proceeding in a Service office. He may, in conformity with 8 CFR 103.10, obtain copies of Service records or information therefrom and copies of documents or transcripts of evidence furnished by him. Upon request, he/she may, in addition, be loaned a copy of the testimony and exhibits contained in the record of proceeding upon giving his/her receipt for such copies and pledging that it will be surrendered upon final disposition of the case or upon demand. If extra copies of exhibits do not exist, they shall not be furnished free on loan; however, they shall be made available for copying or purchase of copies as provided in 8 CFR 103.10.

| In re: University of Northern Virginia | Date: March 14, 2008 |
|---|---|
| | File No. WAS214F01186000 |

I hereby enter my appearance as attorney for (or representative of), and at the request of the following named person(s):

| Name: University of Northern Virginia | ☐ Petitioner ☐ Beneficiary | ☐ Applicant |
|---|---|---|

| Address: (Apt. No.)   (Number & Street) 10021      Balls Ford Road | (City) Manassas | (State) VA | (Zip Code) 20109 |
|---|---|---|---|

| Name: Dr. Daniel F. Ho, CEO | ☐ Petitioner ☐ Beneficiary | ☐ Applicant |
|---|---|---|

| Address: (Apt. No.)   (Number & Street) Same as above | (City) | (State) | (Zip Code) |
|---|---|---|---|

*Check Applicable Item(s) below:*

☑ 1. I am an attorney and a member in good standing of the bar of the Supreme Court of the United States or of the highest court of the following State, territory, insular possession, or District of Columbia
District of Columbia          Court of Appeals          and am not under a court or administrative agency
*Name of Court*
order suspending, enjoining, restraining, disbarring, or otherwise restricting me in practicing law.

☐ 2. I am an accredited representative of the following named religious, charitable, social service, or similar organization established in the United States and which is so recognized by the Board:

☐ 3. I am associated with _____
the attorney of record previously filed a notice of appearance in this case and my appearance is at his request. *(If you check this item, also check Item 1 or 2 whichever is appropriate.)*

☐ 4. Others (Explain Fully.)

| SIGNATURE | COMPLETE ADDRESS Venable LLP 575 7th Street, NW, Washington, DC 20004 |
|---|---|
| NAME (Type or Print) Ronald M. Jacobs | TELEPHONE NUMBER (202) 344-8215 |

*PURSUANT TO THE PRIVACY ACT OF 1974, I HEREBY CONSENT TO THE DISCLOSURE TO THE FOLLOWING NAMED ATTORNEY OR REPRESENTATIVE OF ANY RECORD PERTAINING TO ME WHICH APPEARS IN ANY IMMIGRATION AND NATURALIZATION SERVICE SYSTEM OF RECORDS:*

_____
*(Name of Attorney or Representative)*

*THE ABOVE CONSENT TO DISCLOSURE IS IN CONNECTION WITH THE FOLLOWING MATTER:*

| Name of Person Consenting | Signature of Person Consenting | Date |
|---|---|---|
| | | |

(NOTE:  Execution of this box is required under the Privacy Act of 1974 where the person being represented is a citizen of the United States or an alien lawfully admitted for permanent residence.)

This form may not be used to request records under the Freedom of Information Act or the Privacy Act. The manner of requesting such records is contained in 8CFR 103.10 and 103.20 Et.SEQ.

Form G-28 (09/26/00)Y

# EXHIBIT 9



*Office of Investigations*

**U.S. Department of Homeland Security**
425 I Street, NW
Washington, DC 20536

**U.S. Immigration
and Customs
Enforcement**

School Code: WAS214F01186

MAR 28 ·008

Fay Avery
University of Northern Virginia
10021 Balls Ford Rd.
Manassas, VA 20109

### Student and Exchange Visitor Program
### Notice of Intent to Withdraw

**Notice**
This notice concerns the approval of your school for attendance by non-immigrant students. Title 8 Code of Federal Regulations (8 CFR) section 214.4(a)(1) states:

> *Withdrawal on Notice*: The approval by the Service.... of a petition by a school or school system for the attendance of nonimmigrant students will be withdrawn on notice if the school or school system is no longer entitled to the approval for any valid and substantive reason including, but not limited to the following:
> > (vi) The designation as a designated official of an individual who does not meet the requirements of §214.3(l)(1).

**Discussion**
On November 16, 2007 a letter issued by Fay Avery representing himself as Chancellor of the University of Northern Virginia (UNVA) was delivered to the telephonic technical support office for the Student and Exchange Visitor Information System (SEVIS). The letter requested the Student and Exchange Visitor Program (SEVP) withdraw Daniel Ho as Designated School Official (DSO) for the school and remove his access to SEVIS.

On December 6, 2007, Fay Avery as Chancellor of UNVA along with Bert vanGils as General Counsel for UNVA met with representatives of SEVP and further requested the removal of Daniel Ho. SEVP made the determination that Fay Avery as Chancellor of UNVA constituted the head of the school and per 8 CFR §214.3(l)(1) removed Daniel Ho as DSO and made Fay Avery the Principal Designated Official (PDSO) on the school's Form I-17 Petition for Approval of School for Attendance by Nonimmigrant Students.

**Issues**
**Designation of a designated school official who does not meet the requirements of §214.3(l)(1):** 8 CFR §214.3(l)(1) states, "The PDSO and any other DSO must be named by the president, owner, or head of a school or school system." Per correspondence with Daniel Ho and Fay Avery, SEVP has learned that the ownership of UNVA is in dispute before the Commonwealth of Virginia. SEVP has received conflicting reports from Misters Ho and Avery as to the composition and ruling of the Board

**36**

Page 2 of 2
RE: WAS214F01186

of Directors, school and corporate by-laws of UNVA providing for the ownership and decision-making authority of officers. Without proper documentation provided for proof of ownership, SEVP cannot at this point make a determination as to the legitimacy of Mr. Avery's claim of authority as head of the school. Further, without such documentation, SEVP cannot make a determination as to the proper designation of Designated School Officials per Federal regulations. Therefore it is imperative that Mr. Avery and the school provide SEVP with documentary evidence including the following:

1. Legal proof of ownership of UNVA;
2. Corporate by-laws of UNVA;
3. Current list of directors and officers of UNVA including all voting members; and
4. Meeting minutes of the Board of Directors of UNVA form June, 2007 to the present.

**Action to be Taken**
Your school has 33 calendar days, from the service of this letter, to submit written representations under oath supported by documentary evidence setting forth reasons why SEVP should not withdraw your school's approval. Also, provide the documentation requested above along with any further evidence that may support Mr. Avery's claim for designation authority.

If your school wishes, at the time of filing the answer, it may request an interview with SEVP, in writing. Your school also may be assisted by legal counsel of its choice, at no expense to the Government. **If your school fails to answer this Notice of Intent to Withdraw within the time allotted, we will proceed with a Withdrawal on Notice and your school will not be eligible to file a Form I-17 petition for one year and will waive its right to file an appeal.**

If further information or discussion on this issue is needed, please do not hesitate to contact the School Certification Branch at (202) 305-2346, prompt 1 or inquire by email at schoolcert.sevis@dhs.gov.

Sincerely,

for Dianne Currie
Acting Chief School Certification Branch
Student & Exchange Visitor Program

clm

# EXHIBIT 10



*Office of Investigations*

**U.S. Department of Homeland Security**
425 I Street, NW
Washington, DC 20536

**U.S. Immigration
and Customs
Enforcement**

School Code: WAS214F01186

Daniel F. Ho
c/o Ronald M. Jacobs
Venable LLP
575 7th Street, NW
Washington, DC 20004

MAR 28 2008

### Student and Exchange Visitor Program
### Notice of Intent to Withdraw

**Notice**
This notice concerns the approval of your school for attendance by non-immigrant students. Title 8 Code of Federal Regulations (8 CFR) section 214.4(a)(1) states:

> *Withdrawal on Notice*: The approval by the Service.... of a petition by a school or school system for the attendance of nonimmigrant students will be withdrawn on notice if the school or school system is no longer entitled to the approval for any valid and substantive reason including, but not limited to the following:
> > (vi) The designation as a designated official of an individual who does not meet the requirements of §214.3(l)(1).

**Discussion**
On November 16, 2007 a letter issued by Fay Avery representing himself as Chancellor of the University of Northern Virginia (UNVA) was delivered to the telephonic technical support office for the Student and Exchange Visitor Information System (SEVIS). The letter requested the Student and Exchange Visitor Program (SEVP) withdraw Daniel Ho as Designated School Official (DSO) for the school and remove his access to SEVIS.

On December 6, 2007, Fay Avery as Chancellor of UNVA along with Bert vanGils as General Counsel for UNVA met with representatives of SEVP and further requested the removal of Daniel Ho. SEVP made the determination that Fay Avery as Chancellor of UNVA constituted the head of the school and per 8 CFR §214.3(l)(1) removed Daniel Ho as DSO and made Fay Avery the Principal Designated Official (PDSO) on the school's Form I-17 Petition for Approval of School for Attendance by Nonimmigrant Students.

**Issues**
**Designation of a designated school official who does not meet the requirements of §214.3(l)(1):** 8 CFR §214.3(l)(1) states, "The PDSO and any other DSO must be named by the president, owner, or head of a school or school system." Per correspondence with Daniel Ho and Fay Avery, SEVP has learned that the ownership of UNVA is in dispute before the Commonwealth of Virginia. SEVP has

**39**

Page 2 of 2
RE: WAS214F01186

received conflicting reports from Misters Ho and Avery as to the composition and ruling of the Board of Directors, school and corporate by-laws of UNVA providing for the ownership and decision-making authority of officers. Without proper documentation provided for proof of ownership, SEVP cannot at this point make a determination as to the legitimacy of Mr. Ho's claim of ownership and his dispute of Mr. Avery's claim of authority as head of the school. Further, without such documentation, SEVP cannot make a determination as to the proper designation of Designated School Officials per Federal regulations. Therefore it is imperative that Mr. Ho provide SEVP with documentary evidence including the following:

1. Legal proof of ownership of the holding company, Educational Dynamics, Inc. (EDI);
2. Legal proof of EDI's ownership of UNVA,
3. Corporate by-laws of EDI and UNVA;
4. Current list of directors and officers including all voting members; and
5. Meeting minutes of the Board of Directors of UNVA form June, 2007 to the present.

**Action to be Taken**
You have 33 calendar days, from service of this letter, to submit written representations under oath supported by documentary evidence setting forth reasons why SEVP should not withdraw your school's approval. Further, by 33 days from service of this letter you must provide the documentation listed in this letter and any other evidence supporting your claims of ownership and designation authority.

If you wish, at the time of filing the answer, you may request, in writing, an interview with SEVP. You also may be assisted by legal counsel of its choice, at no expense to the Government. **If you fail to answer this Notice of Intent to Withdraw within the time allotted, we may proceed with a Withdrawal on Notice and the school will not be eligible to file a Form I-17 petition for one year and will waive its right to file an appeal.**

If further information or discussion on this issue is needed, please do not hesitate to contact the School Certification Branch at (202) 305-2346, prompt 1 or inquire by email at schoolcert.sevis@dhs.gov.

Sincerely,

*for*

Dianne Currie
Acting Chief School Certification Branch
Student & Exchange Visitor Program

clm

cc:    Daniel Ho
       9730 Leesburg Pike
       Great Falls, VA 22066

# EXHIBIT 11

41



*Student and Exchange Visitor Program*

**U.S. Department of Homeland Security**
425 I Street, NW
Washington, DC 20536

**U.S. Immigration
and Customs
Enforcement**

April 29, 2008

Ronald E. Jacobs, Esquire
Venable LLP
575 – 7th Street, N.W.
Washington, D.C.  22004

Dear Mr. Jacobs:

I am in receipt of your letter dated April 25, 2008.  The Student and Exchange Visitor Program (SEVP) have not made a decision in this matter.  SEVP will review all relevant materials submitted within the time period identified in the Notice of Intent to Withdraw, dated March 25, 2008.  I understand the issue of school ownership is currently in litigation.  Please inform me immediately if the parties resolve this issue or if the court issues a decision.

Sincerely,

Louis M. Farrell
Director
Student and Exchange Visitor Program

42

Exhibit B

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

DANIEL F. HO, et al.                                    )          No. _____

    Plaintiffs,                                )
                                               )
                                               )
STUDENT AND EXCHANGE VISITOR PROGRAM,                   )
et al.,                                                 )
                                               )
    Defendants-.                               )
                                               )

### DECLARATION OF DENISE MACKIE-SMITH

Pursuant to 28 U.S.C. § 1746, I Denise Mackie-Smith do hereby declare:

1.    I am currently an Information Technology (IT) Specialist – DROM Program Manager at the United States Immigration and Customs Enforcement (ICE), United States Department of Homeland Security (DHS).

2.    On December 6, 2007, I was the SEVP IT Management Branch Chief within the Student and Exchange Visitor Program (SEVP) at ICE headquarters.

3.    SEVP uses a computer database, the Student and Exchange Visitor Information System (SEVIS), to track and monitor schools and programs, students, exchange visitors and their dependents throughout the duration of approved participation within the U.S. education system.

4.    As SEVP Information Tech Management Branch Chief, my duties included evaluating requests made to change the designation of a school's Principal Designated School Official (PDSO) and Designated School Official (DSO) in SEVIS, in accordance with regulations set forth by 8 C.F.R. § 214.3(l), when such requests require headquarters review.

5.    SEVIS Help desk personnel routinely send issues to the SEVP IT Management Branch Chief that are out of the ordinary or require further review.

6.    A request to change the PDSO of a school made by a party other than the signatory party on a school's existing Form I-17 petition requires the review of the SEVP IT Management Branch Chief.

7.    Under the regulations, set forth in 8 C.F.R. 214.3(l)(1),(2) and (3), "the president, owner, or head of a school or school system" has authority to name a PDSO and DSO; (2) SEVP has discretion to withdraw the submission by a school of an individual for PDSO or DSO, and (3) the PDSO is responsible for manually updating the SEVIS computer database with the name and title of the new PDSO or DSO and providing SEVP with a sample signature of the newly designated official.

8.    On December 6, 2007, the SEVIS help desk contacted me regarding the request of Fay Avery to change the PDSO of the University of Northern Virginia (UNVA) from Roy Ho to Mr. Avery.

9.    Upon receiving Mr. Avery's request on December 6, 2007 to change the PDSO for UNVA, I verified that Mr. Avery had the authority to change a PDSO. Specifically, I examined the records contained in the SEVP file for UNVA, including Form I-17 petitions for 2000 and 2003 which were submitted under the penalty of perjury under 8 C.F.R. § 103.2(a)(2), and the UNVA website which listed staff members and their respective positions. From this examination, I determined that Mr. Avery was the Chancellor and head of UNVA and, therefore, in accordance with the above regulations, he had the authority to change the PDSO of UNVA.

9.    Because Mr. Avery had the authority to change the PDSO of UNVA, I approved his request.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief, and based upon records maintained by ICE.

Executed on May 20, 2008

Denise Mackie-Smith

Information Technology (IT) Specialist – DROM
Program Manager

U.S. Immigrations and Customs Enforcement
Department of Homeland Security

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DANIEL F. HO, <u>et</u> <u>al.</u>,               )
                                             )
              **Plaintiffs,**                )
                                             )
          **v.**                             )      **C.A. No. 08-757 (JDB)**
                                             )
STUDENT EXCHANGE VISITOR                     )
PROGRAM, <u>et</u> <u>al</u>.                )
                                             )
              **Defendants.**                )
_____)

## <u>ORDER</u>

Upon consideration of Plaintiffs' Application for Preliminary Injunction, Defendant's

Opposition and Motion to Dismiss or for Summary Judgment, and it appearing that the record in

this case supports Defendants' decision to change PDSOs and to issue a Notice of Intent to

Withdraw the University of Northern Virginia's certification to participate in the Student

Visitors' Education Program, it is this _____ day of _____, 2008

ORDERED, that Plaintiffs' Motion be, and hereby is, denied, and it is

FURTHER ORDERED, that Defendants' Motion for Summary Judgment is granted.

This case is dismissed with prejudice.


                                        _____
                                        UNITED STATES DISTRICT JUDGE