# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DANIEL F. HO., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-757 (JDB) |
| | ) | |
| STUDENT AND EXCHANGE | ) | |
| VISITOR PROGRAM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR FOR  SUMMARY JUDGMENT AND REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR <u>PRELIMINARY INJUNCTION OR SUMMARY JUDGMENT</u>

Ronald M. Jacobs
   (D.C. Bar No. 479842)
   (202) 344-8215
   rmjacobs@venable.com
D. Edward Wilson, Jr.
   (D.C. Bar No. 932178)
   (202) 344-4819
   dewilsonjr@venable.com
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004-1601

May 30, 2008                    *Counsel for Plaintiffs*

## TABLE OF CONTENTS

Table of Contents ......................................................................................................... i

Table of Authorities .................................................................................................... ii

I.   Procedural Background ............................................................................................ 1

II.  Introduction ............................................................................................................ 1

III. The Complaint States Valid Claims Under the APA and Plaintiffs are Entitled to
Summary Judgment. ............................................................................................. 5

    A.  The Standard of Review ................................................................................. 5

    B.  SEVP's initial change of PDSO was arbitrary and capricious and contrary to its
own regulations. .......................................................................................... 6

        1.  SEVP's change in PDSO accepted Avery's assertions as fact and provided no
opportunity for UNVA or Ho to respond. ............................................. 7

        2.  SEVP violated its regulations by changing the PDSO. ........................... 10

        3.  Plaintiffs are entitled to summary judgment on Claims One and Two. .......... 12

    C.  SEVP's refusal to change the PDSO pending the outcome of its NOIW proceeding
was arbitrary and capricious. ....................................................................... 12

        1.  SEVP's refusal to restore Ho as PDSO is properly before the Court. ............. 13

        2.  SEVP's denial of an immediate change in PDSO is contrary to its regulations. ... 14

        3.  The Court should take judicial notice of the relevant cases in Virginia. ............ 15

        4.  The record is clear that the decision to allow Avery to remain PDSO violates
SEVP's regulations. ............................................................................ 16

IV. UNVA is entitled to the relief it is seeking ............................................................ 17

    A.  Plaintiffs have shown irreparable injury as a result of SEVP's refusal to make Roy
Ho the PDSO. ............................................................................................ 17

    B.  Because the remedy at this stage would not be an affirmative injunction, but
vacatur of SEVP's decision to make Avery PDSO, no harm must be shown. .............. 17

    C.  There are no national security concerns here and if they are, the point to immediate
resolution in favor of Plaintiffs. ..................................................................... 18

Conclusion ................................................................................................................ 19

# TABLE OF AUTHORITIES

## Cases

*American Bioscience, Inc. v. Thompson*, 269 F.3d (D.C. Cir. 2002)...................................... 11, 17

*American Bird Conservancy, Inc. v. FCC*, 516 F.3d 1027 (D.C. Cir. 2008).......................... 10, 14

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) .................................................................. 6

*Blackwell College of Business v. Attorney General*, 454 F.2d 928 (D.C. Cir. 1971) ................... 10

*Celotex Corp. v. Catrett,* 477 U.S. 317  (1986) ........................................................................... 6

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971)................................................. 5

*Environmental Defense Fund, Inc. v. Hardin*, 428 F.2d 1093 (D.C. Cir. 1970) ......................... 14

*HRI, Inc v. EPA*, 198 F.3d. 1224 (10th Cir. 2000)....................................................................... 14

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29 (1983) ...................... 5

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.,* 494 F.3d 188
    (D.C. Cir. 2007) ....................................................................................................................... 6, 10

*SEC v. Chenery Corp.,* 332 U.S. 194 (1947) ................................................................................ 6

*Sierra Club v. Thomas*, 828 F.2d 783 (D.C. Cir. 1987)................................................................ 14

*Wedgewood Village Pharmacy v. DEA*, 509 F.3d 541 (D.C. Cir. 2007)........................................ 6

## Statutes

5 U.S.C. § 706(2)(A)........................................................................................................................ 5

## Rules

*8 C.F.R. § 214.3(l)(1)...................................................................................................................... 9
*8 C.F.R. § 214.3(l)(2)...................................................................................................................... 11

* Indicates authority primarily relied upon.

## I.    Procedural Background.

Daniel Ho, Roy Ho, the University of Northern Virginia, Inc. ("UNVA"), and UNVA's parent company, Education Dynamics, Inc. ("EDI") ("Plaintiffs") sought a preliminary injunction to restore Roy Ho as UNVA's Principal Designated School Official ("PDSO") while the Student and Exchange Visitor Program ("SEVP") deliberates on its Notice of Intent to Withdraw ("NOIW") proceeding. Plaintiffs alleged that both the initial change in the PDSO and SEVP's refusal to change the PDSO when requested to do so by UNVA was arbitrary and capricious. SEVP, Immigration and Customs Enforcement ("ICE") and the Department of Homeland Security ("DHS") have filed an opposition to UNVA's motion and filed their own motion to dismiss or, alternatively, for summary judgment.

Today, UNVA has filed a motion requesting that the Court treat its Motion for a Temporary Restraining Order and/or a Preliminary Injunction as a Motion for Summary Judgment. Accordingly, this Memorandum serves as UNVA's Opposition to Defendants' Motion to Dismiss and Motion for Summary Judgment and as UNVA's Reply in Support of its Motion for Preliminary Injunction and for Summary Judgment. By separate motion filed today, UNVA also seeks to have the government include additional documents in the administrative record that were before the agency when it refused to grant UNVA's request for an immediate change in the PDSO. UNVA submitted all of the documents that it is seeking to have added to the record to the Court as Exhibits B, C, and E through J to its Motion for a Temporary Restraining Order and/or a Preliminary Injunction (which it requests now serve as its Motion for Summary Judgment).

## II.    Introduction

This case presents two simple issues: (1) was the decision to approve Fay Avery's request to be PDSO of UNVA arbitrary and capricious when he made the request and (2) was it arbitrary and capricious for SEVP to allow Avery to remain the PDSO when UNVA made a specific re-

quest to restore Roy Ho as the PDSO while SEVP sorts out various issues through its NOIW proceeding? The answer to those questions is "Yes." Accordingly, Plaintiffs are entitled to an order vacating SEVP's decision making Avery PDSO, which will, *ipso facto*, make Roy Ho the PDSO.

Defendants have tried mightily to prevent the Court from answering those questions, however, by throwing up procedural hurdles, tailoring the administrative record to justify their position, claiming national security precludes this Court from evaluating a simple administrative program, and arguing that the relief sought is not appropriate.

Ultimately, Defendants' position seems to be that the ownership of UNVA is disputed and therefore it will keep its NOIW pending until state courts in Virginia resolve the issue. Although there is superficial appeal to this position – SEVP is not in the business of determining ownership – it misses the point: at this time no court in Virginia has said that Avery owns UNVA or that Daniel Ho and the board of directors that he has elected do not control the school. Accordingly, SEVP has radically altered the normal status quo by ignoring the owner's request and allowing someone the Board of Directors has fired to remain at the helm while the cases in Virginia wind their way through the system. This inversion of the normal procedures afforded a defendant in commercial litigation is proof of SEVP's arbitrary and capricious decision-making in this case.

***Initial Change:*** Defendants have provided a number of documents to the Court as part of the initial change in PDSO that Plaintiffs were never shown. These documents make one thing absolutely clear: SEVP ignored Daniel Ho's pleas for help after Avery unscrupulously had himself made PDSO. SEVP had numerous conversations with Avery, some of which it fails to note in Ms. Currie's declaration, even though they are discussed in the NOIW, and received prodi-

- 2 -

gious correspondence from him. SEVP took one telephone call from Ho, received one letter from him, and made no effort at additional follow up, other than to call the main line at UNVA and speak, once again, with Mr. Avery. Defendants' only response is that it owed no right to fair process to Ho or UNVA. The result of this dismissal of Ho's legal rights as owner of the school thus flow through the inverted situation UNVA finds itself in today with the insurgent group in control of the PDSO during the pendency of the cases in Virginia.

In addition, Defendants argue the regulation requiring the PDSO be the one to change the PDSO does not mean what it says. They claim that this regulation refers only to the ministerial actions of logging onto the computer and sending in signatures. This reading is not an interpretation of the regulation but an attempt to erase that provision from the Code of Federal Regulations.

Accordingly, the record demonstrates that SEVP denied Dr. Ho and UNVA the right to notice and an opportunity to be heard, violated its own regulations, and therefore acted arbitrarily and capriciously and Plaintiffs are therefore entitled to Summary Judgment on Counts I and II of its complaint.

***Refusal to Change PDSO:*** Plaintiffs sought to have SEVP remedy its clear error by contacting the agency and presenting evidence that Roy Ho should be restored as the PDSO. For this they were subjected to a NOIW, by which SEVP could withdraw the school's authority to accept foreign students. The Defendants have, by slight of hand, attempted to avoid having the Court consider SEVP's refusal to make an immediate change in the PDSO when UNVA requested it do so. SEVP refused UNVA's request to change the PDSO and instead issued a NOIW. It claims that its decision to issue the NOIW was not arbitrary and capricious and was consistent with its procedures—UNVA does not question this. It does, however, challenge SEVP's refusal to make

Mr. Ho the PDSO while it spends time considering the responses to the NOIW. By seeking to treat the NOIW as the response to UNVA's request, SEVP has found a way to truncate the administrative record to bolster Avery's claims and continue to ignore UNVA's proof that Avery is no longer employed by UNVA.

It is clear why Defendants do not want the Court to have these documents in front of it when considering whether its decision not to make an immediate change was arbitrary and capricious: the documents present clear evidence showing that Avery was not employed by UNVA and was not eligible to be PDSO under the regulations. Therefore, SEVP's actions were arbitrary and capricious and contrary to law. Accordingly, Plaintiffs are entitled to Summary Judgment on Counts III and IV of their complaint.

*Relief Requested:* Finally, SEVP suggested that because enrollment has increased at UVNA that there is no harm to justify an injunction. UNVA has provided specific and concrete examples of harm in the students that have transferred out and in the arbitrary treatment of students by Avery. Moreover, because this case has advanced from the preliminary injunction stage to the summary judgment stage, Plaintiffs are entitled to the declaratory relief they are seeking without presenting evidence of ongoing harm. Indeed, a judicial declaration that SEVP violated its own regulations when making Avery PDSO and corresponding vacature of that change would resolve the matter without the need for any injunctive relief.[1]

---

[1] To the extent the Court determines the relief requested by Plaintiffs' requires issuance of an injunction, Plaintiffs submit that they have presented evidence of concrete and irreparable harm necessary to invoke such relief. Nonetheless, at this stage of the litigation – namely summary judgment on the merits – Plaintiffs believe that a simple order vacating SEVP's change in PDSO from Ho to Avery would provide them with adequate relief in the form of restoration of Ho as the PDSO.

### III.  The Complaint States Valid Claims Under the APA and Plaintiffs are Entitled to Summary Judgment.

Defendants have moved to dismiss UNVA's complaint or for summary judgment. The Court should reject both motions because UVNA has stated a valid claim under the APA and the complete administrative record demonstrates that SEVP acted arbitrarily and capriciously at every stage of this matter. Accordingly, Plaintiffs are entitled to summary judgment and an order vacating SEVP's decision to make Avery the PDSO.

### A.  The Standard of Review

The APA requires that the Court "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A) (2005). "Review is to be based on the full administrative record that was before the Secretary at the time he made his decision."  *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971). The court may not set aside a decision that is rational, based on consideration of the relevant factors, and within the scope of the statutory authority delegated to the agency.

> Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made. In reviewing that explanation, the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. The reviewing court may not supply a reasoned basis for the agency's action that the agency itself has not given.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983).

Moreover, the agency cannot advance its rationale for the decision at trial because such an "argument comes too late. '[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper,

the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.'" *Wedgewood Village Pharmacy v. DEA*, 509 F.3d 541, 550 n.13 (D.C. Cir. 2007) (quoting *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)). In other words, the court "cannot affirm [the agency decision] on the basis of a post-hoc explanation by agency counsel." *Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.,* 494 F.3d 188, 204 n.4 (D.C. Cir. 2007).

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). While the moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact, the non-moving party must establish more than the "mere existence of a scintilla of evidence" in support of its position. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "If [such] evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986).

**B.    SEVP's initial change of PDSO was arbitrary and capricious and contrary to its own regulations.**

SEVP's initial decision to change the PDSO from Ho to Avery must fail for two distinct reasons. First, SEVP made the change at Avery's request with inadequate attempts to verify that he was authorized by UNVA to make the change, even when confronted with contradictory information from Dr. Ho. As such, SEVP's decision amounted to nothing more than announcing the winner of a race to make a change to the PDSO that Dr. Ho did not know had even started.

Moreover, the change was made in violation of SEVP's regulation. The interpretation of the regulation advanced during this litigation is little more than an attempt to delete a sentence from the regulations and cannot withstand judicial scrutiny.

**1. SEVP's change in PDSO accepted Avery's assertions as fact and provided no opportunity for UNVA or Ho to respond.**

For the first time, Plaintiffs have been given an opportunity to see the timeline, and *some* of the documents that formed the basis of SEVP's initial decision to change the PDSO from Ho to Avery. The timeline of one-sided contact between Avery and UNVA is stunning and demonstrates how SEVP's decision is not grounded in the record and violated UVNA and Ho's procedural right to notice and an opportunity to be heard:

1.)   November 16, 2007: Fay Avery contacted SEVIS help desk to seek to change the PDSO to himself. (Currie Decl. ¶ 10)

2.)   November 19, 2007: SEVIS received a letter stating that Ro Ho was not authorized to be PDSO. (*Id.* ¶ 11)

3.)   November 20, 2007: Avery contacted help desk to follow up. (*Id.* ¶ 12)

4.)   December 6, 2008: According to the NOIW documents, Avery and an attorney claiming to be the school's general counsel met with SEVP officials. This meeting is not reflected in Ms. Currie's declaration. (R. 36)

5.)   December 6, 2008: SEVP reviewed the I-17 and UNVA website and determined Avery had authority to make the change because he is the "Chancellor" of the school. SEVP made no mention of the fact that the website printout included in Exhibit 4 to Dianne Currie's declaration lists Daniel Ho and Roy Ho as staff members. (Currie Decl. ¶ 14)

6.)   January 9, 2008: After realizing Roy Ho could no longer log in as PDSO, Daniel Ho contacted the help desk and learned of the change. He then informed the help desk that Avery's employment with UNVA had been terminated. Dr. Ho immediately faxed a letter to the help-desk, placing his request in writing. At that time, Dr. Ho

was listed as the owner of UNVA on the I-17. His letter was sent on the same UVNA letterhead as Avery's letter. (Currie Decl. ¶ 15; R.24)

7.) January 10, 2008: SEVP called the number "on the letterhead" of Dr. Ho's request and spoke with Avery. SEVP did not call the number that Dr. Ho listed as his direct dial telephone number. (Currie Decl. ¶ 16) The "Ticket History.txt" explains that "Fay Avery is still with the university and asked that this request not be honored." (R.22)

8.) January 18, 2008: SEVP "learned that the ownership of UNVE was in dispute." Nothing in the administrative record documents this communication in any way. (Currie Decl. ¶ 17)

9.) February 11, 2008: Mr. Avery informed SEVP that he had filed a lawsuit in Fairfax County, Virginia, contesting ownership of UNVA. (*Id.*)

10.) February 15, 2008: Mr. Avery informed SEVP that Dr. Ho had been suspended by the "board of trustees" and barred from UNVA property as of *December 18, 2007*. Nothing in the record indicates why it took Avery two months to inform SEVP of this action. (*Id.* ¶ 18).

11.) February 15, 2008: Ms. Currie decided to issue a NOIW, but did not act on this decision for six more weeks. (*Id.*)

During this time period, the only interaction SEVP had with Dr. Ho was a single telephone call and the receipt of a single fax. (*Id.* ¶¶ 15-16). Not once after his initial call did SEVP speak with him, inform him of the factual assertions Avery made, or ask for any documentation. Rather, it took all of Avery's assertions at face value. Indeed, the entire contemporaneous administrative rationale for SEVP's decision to make Avery PDSO appears to be that found on the

Help Ticket document: "Fay Avery is still with the university and asked that this request not be honored." (R.22)

Given the lack of any procedural protections for Dr. Ho, it is clear why the agency argues that its decision was not arbitrary and capricious—it simply created the record it wanted on which to base its decision. In other words, the agency skewed the record at this stage of the proceedings by refusing to accept or seek information from Dr. Ho or UNVA.

Defendants argue that because the status of the school was not at issue, no procedural rights were required for Dr. Ho and that "the request to change the PDSO did not warrant any notice and opportunity to be heard by *any other party other than the authorized party making the request, Chancellor Fay Avery.*" (Def. Mem. 18). These assertions are stunning for two reasons.

First, under the regulations, "the president, owner, or head of school" has the authority to name the PDSO. 8 C.F.R. § 214.3(l)(1). Although Avery eventually suggested that the ownership was in dispute, there is nothing in the record that demonstrates that he was the owner, or any judicial decision suggesting that Dr. Ho was not the owner. The I-17 in place at the time listed Ho as the owner of UVNA. (R.7). Accordingly, under SEVP's regulations, both men were entitled to change the PDSO since Mr. Avery was the chancellor (although Defendants note that the 2003 I-17 listed Avery as "president" it is not clear that Avery still had that title and it is not clear why the "chancellor" would *ipso facto* be the president of the school) and Dr. Ho was the owner. Thus, it is inconceivable that Avery was the only person who should have been involved in the process once Dr. Ho contacted the help desk. That is, Dr. Ho and Avery were both eligible to make the change based on section 214.3(l)(1). Both men had contacted SEVP, yet no effort was made to verify Avery's claims of authority to make the change.

Second, as the owner, Dr. Ho has a property interest in all aspects of his school. SEVP's assertion that it is the school, and not Dr. Ho that has the property right in its approval raised form above substance. Dr. Ho owns over 94% of UNVA directly or through EDI. To suggest that the right to process that *Blackwell College of Business v. Attorney General*, 454 F.2d 928 (D.C. Cir. 1971),  held belongs to the school means nothing if the individuals associated with the school – specifically the owners – are not entitled to that process. Given the important duties of the PDSO, and the ability of the PDSO to control student enrollment, the owner should have been given some notice that SEVP was making such a drastic change. Avery may have been qualified to make the change, but as soon as SEVP learned of Ho's request, it should have initiated efforts to verify that Avery had the authority he purported to have.

The actual process SEVP used, as revealed for the first time by the agency's record, demonstrates why process should have been granted to Dr. Ho. By January 9, 2008, when Dr. Ho contacted SEVP, the Board of Directors had already terminated Avery's employment. By failing to contact Ho at the direct-dial number he provided, and calling the main number on the letterhead, SEVP played right into Avery's insurrection to take control of the school. It provided absolutely no process to Dr. Ho, while purporting to do so.

## 2.  SEVP violated its regulations by changing the PDSO.

Apparently SEVP made no written decision with respect to the initial change in the PDSO, so any rationale for its procedures or interpretations of its regulations are nothing more than post-hoc rationalizations created for this litigation. *Owner-Operator Indep. Drivers Ass'n. Inc.*, 494 F.3d at 204 n.4. Thus, the Court "cannot affirm [SEVP's decision] on the basis of a post-hoc explanation by agency counsel." *Id.*

- 10 -

In any event, the agency's purported interpretation of its regulations cannot withstand even the deferential review afforded by a court in an APA case because such deference is warranted only when the regulations are not clear. In this case, the regulations are abundantly clear.

The regulations first state which school officials may name the PDSO. They then specify procedures for changing the PDSO. The second set of regulations clearly states: "An approved school must update SEVIS upon any changes to the persons who are principal or designated officials, and furnish the name and title of the new official within 21 days of the change. Any changes to the PDSO or DSO must be made by the PDSO." 8 C.F.R. § 214.3(l)(2). Through the declaration of Diane Currie, SEVP asserts that this last sentence refers only to the ministerial act of providing signatures and names of the new PDSO. (Currie Decl. ¶ 8).

This interpretation flies in the face of the plain language of the regulation. If that were the case, then a school could operate without SEVP knowing who the PDSO was for 21 days—until the PDSO performed his ministerial act of updating the system.

The regulation goes on to provide that "In its discretion, the Service may reject the submission of any individual as a DSO or withdraw a previous submission by a school of an individual." *Id.* § 214.3(l)(2). Thus, read in context, this section of the regulations does not merely discuss the ministerial updating of the system, but describes SEVP's authority to reject a submission. This undermines SEVP's position that this provision refers only to the ministerial duties.

SEVP's reading would also make the regulation internally inconsistent. The regulation states that "An approved school must update SEVIS upon any changes to the persons…and furnish the name and title of the new official." It then provides that "Any change to the PDSO…must be made by the PDSO." If this refers only to the ministerial actions, then the first

sentence, which refers to the approved school updating the system, is contradicted by the second sentence which, under SEVP's interpretation, requires the PDSO to make the change.

### 3.  Plaintiffs are entitled to summary judgment on Claims One and Two.

Thus, it is clear that SEVP's initial change in the PDSO was arbitrary and capricious because it was contrary to SEVP's regulations and because it was made without adequate process. The administrative record produced by SEVP shows the one-sided nature of SEVP's inquiry, even when presented with a countervailing claim by Dr. Ho. Had SEVP provided appropriate procedural protections, it would have learned of the dispute between Avery and Ho and may not have been so quick to change the PDSO without knowing all of the facts.

### C.  SEVP's refusal to change the PDSO pending the outcome of its NOIW proceeding was arbitrary and capricious.

Plaintiffs challenge not only the initial decision to change the PDSO to Avery, but also SEVP's refusal to restore Roy Ho as the PDSO in the face of overwhelming evidence that Dr. Ho owns UNVA and that Avery is no longer employed by UNVA. Defendants have attempted to keep this denial away from the Court's review by claiming that its only decision with respect to Ho's request was to institute the NOIW proceedings. This assertion fails because the NOIW proceeding is distinct from Plaintiffs' request for an immediate change and because SEVP admits that the decision to issue the NOIW occurred well before Dr. Ho made his specific requests for an immediate change. Once the record presented to the agency is reviewed, it is clear why Defendants do not want the Court to consider the decision not to grant Plaintiffs' request for an immediate change in PDSO—the evidence is overwhelmingly contrary to SEVP's position of retaining Avery as the PDSO and flies in the face of SEVP's regulations that require the PDSO to be an employee of the school.

**1.  SEVP's refusal to restore Ho as PDSO is properly before the Court.**

Defendants have attempted to impose a procedural roadblock to the Court's review of SEVP's refusal to remove Avery as the PDSO by claiming that the only response to its request was the NOIW and that there is therefore no agency action to review. (Def. Mem. at 9 n.2). This slight of hand goes further, by attempting to exclude all of the substantive documents UNVA submitted to SEVP between March 14 and April 21, 2008. Plaintiffs' request was clearly before SEVP and SEVP clearly decided not to act on – or more accurately, to deny – that request in a timely fashion. Accordingly, its failure to act was arbitrary and capricious.

UNVA specifically and directly asked SEVP to change the PDSO immediately starting on March 14, 2008. SEVP claims that it decided to institute the NOIW on February 15, 2008, before Ho submitted any of the detailed factual materials to SEVP. It did not issue the NOIW for another six weeks. Indeed, Plaintiffs begged the agency for some action and the NOIW followed from those requests.

Thus, Defendants' position is contradictory. On the one hand, it has stated that it decided on February 15, 2008 to use a NOIW to resolve the matter, which was well before UNVA made its specific requests for relief. Accordingly, the NOIW could not be a response to UNVA's request for an immediate change because the request had not been even been made. Therefore, SEVP must have made a subsequent decision to refuse to make an immediate change while the NOIW was pending.

On the other hand, if the NOIW was the response to UNVA's pleas for assistance, then it was also a silent denial of UNVA's request for an immediate change. "'[W]hen administrative inaction has precisely the same impact on the rights of the parties as denial of relief, an agency cannot preclude judicial review by casting its decision in the form of inaction rather than in the

form of an order denying relief.'" *Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C. Cir. 1987) (quoting *Environmental Defense Fund, Inc. v. Hardin*, 428 F.2d 1093, 1099 (D.C. Cir. 1970)). However, "agencies cannot avoid judicial review of their final actions merely because they have another docket open to address some related matters." *American Bird Conservancy, Inc. v. FCC*, 516 F.3d 1027, 1031 n.1 (D.C. Cir. 2008); s*ee also See also HRI, Inc v. EPA*, 198 F.3d. 1224, 1236 (10th Cir. 2000) (holding that an agency decision that affected legal rights was final even though it was only part of a broader, ongoing agency process, because the decision "represents the consummation of one decision-making process" despite the existence of other processes).

### 2. SEVP's denial of an immediate change in PDSO is contrary to its regulations.

Because the denial of the request for an immediate change is before the Court, the information UNVA submitted to SEVP must, therefore, also be before the Court. Plaintiffs have asked the Court to order Defendants to supplement the administrative record in a separate motion today. A review of those records makes clear that Plaintiffs have provided detailed evidence of the corporate decisions of EDI and UNVA that ultimately resulted in termination of Avery's employment:

- December 21, 2007: Daniel Ho, as the sole shareholder of EDI, voted to make himself the sole member of EDI's board of directors. (Tab E., Ex.2) This action was consistent with Virginia law and the articles of incorporation of EDI. (Tab E. Ex. 4)

- December 21, 2007: Daniel Ho, as the sole board member of EDI, made himself president of EDI and Roy Ho Secretary of EDI. (Tab E. Ex. 3)

- January 5, 2008: EDI, as the majority stockholder of UNVA, votes to remove all of the UNVA board of directors and names a new board of directors and amends the bylaws to eliminate the board of trustees. (Tab E. Ex. 5.

- January 6, 2008: The new board of directors votes to abolish the board of trustees, to remove all officers of UNVA, to terminate Fay Avery's employment, and to name Daniel Ho as the President and Treasurer and Ro Ho as the Secretary. (Tab E. Ex. 7).

Accordingly, as of January 6, 2008, Avery was no longer an employee of UNVA. Even if the ownership of UNVA is being challenged in Virginia courts, there is no reason for SEVP not to accept these actions on their face absent a judicial decision to the contrary. To refuse to honor the actions of EDI and UNVA when accepting the representations of Avery allows an individual to remain as PDSO who is not qualified to be PDSO. As such, SEVP's refusal to change the PDSO violates its own regulations and is arbitrary and capricious. Therefore, the Court should vacate SEVP's decision making Avery the PDSO and remand with instructions for SEVP to reinstate Ho as the PDSO.

### 3.   The Court should take judicial notice of the relevant cases in Virginia.

Defendants have asked the Court to take judicial notice of the cases in Virginia and Plaintiffs agree this would be helpful. The original lawsuit was *Avery v. Ho*, Case No. 2008-167, in which Avery claimed a 50% ownership interest in EDI. As explained to SEVP in UNVA's submissions, Avery testified under oath that there had been no discussion between Avery and Ho about ownership of EDI stock. That case appears to be awaiting the filing of an amended complaint to try to revive Avery's claims in light of his statement. The Board of Trustees filed two lawsuits: *Board of Trustees v. Education Dynamics, Inc.*, Case No. 2008-297 and *Board of Trustees v. Ho, et al.*, Case No. 2008-2383. In the case against EDI, the judge held that the Trustees had not standing under Virginia corporate law to bring a suit and dismissed the case. Seeing the writing on the wall, the Trustees dismissed their second suit.

The same group of actors, purporting to be the board of directors filed new suits, *University of Northern Virginia, Inc. v. Ho, et al.*, Case No. 2008-4744 and *The Board of Directors of*

*Northern Virginia, Inc. v .Education Dynamics, Inc., et al.*, Case No. 2008-4515. Motions to dismiss are pending in those cases.

Finally, Daniel Ho has filed a suit, *University of Northern Virginia, Inc. v. Avery, et al.*, Case No. 2008-5145, seeking to have Avery ejected from the campus he occupies with armed guards and removing Avery from the University's bank accounts, which he gained access to by deception. In that case, issues of ownership and the proper constitution of the Board of Directors are before the court. Oral argument is scheduled for June 6, but it is not clear when a decision will be issued. Moreover, the issues are narrow and may not resolve the entire case. In that case, UNVA has successfully frozen the bank accounts Avery managed to gain control of and a consent order in place prevents Avery from attempting to pay himself or his attorneys.

Thus, the litigation in Virginia is progressing, but there are a number of cases and it is not clear when they will end. To wait for a resolution of those cases will give Avery, who is no longer employed by UNVA, the opportunity to continue to serve as PDSO.

### 4. The record is clear that the decision to allow Avery to remain PDSO violates SEVP's regulations.

In sum, SEVP's refusal to change the PDSO at UNVA's request is properly before the Court. There may be multiple proceedings underway, but that does not preclude review of the final refusal to make Roy Ho the PDSO while the NOIW is underway. *See American Bird Conservance*, 516 F.3d at 1031 n.1. Once the Court considers the evidence that UNVA has submitted, it is clear that continuing to allow Fay Avery to serve as PDSO is contrary to the SEVP regulations because he is no longer employed by UNVA. As such, he is ineligible to serve as PDSO. Accordingly, Plaintiffs are entitled to summary judgment on Counts Three and Four of their complaint.

IV.    **UNVA is entitled to the relief it is seeking.**

Defendants continue their efforts to keep the Court from reaching the merits of the case by suggesting that the harm shown is not sufficient to merit an injunction (Def. Mem. 24-30) and by raising the specter of national security. (*Id.* at 24). Neither of these arguments precludes the Court from issuing a final decision on the merits of the case.

A.    **Plaintiffs have shown irreparable injury as a result of SEVP's refusal to make Roy Ho the PDSO.**

Defendants argue that Plaintiffs have not proven either the irreparable harm necessary for a preliminary injunction or the harm necessary to justify an affirmative injunction. First, Defendants have alleged specific, demonstrable harm to SEVP and to the Court showing that students are being threatened, transfers are not being effectuated, and that large number of students have applied to transfer. Moreover, because Plaintiffs do not have access to SEVIS they do not have the ability to know exactly how many students are registering with UNVA or to provide any quality check on that data. It is entirely possible that students who wish to transfer out have not been transferred out or that the cabal has accepted new students that are not of the caliber of those UNVA would ordinarily accept. Indeed, it is possible that some of the students do not meet the criteria for receiving a student visa. The allegations of harm, when weighed against the strong showing of success, are sufficient for injunctive relief.

B.    **Because the remedy at this stage would not be an affirmative injunction, but vacatur of SEVP's decision to make Avery PDSO, no harm must be shown.**

The Court, however, no longer has to balance the equities in this case. Because the case has moved to the summary judgment stage, "whether or not [Plaintiff] has suffered irreparable injury, if it makes out its case under the APA it is entitled to a remedy." *American Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2002). Like the parties in *American Biosci-*

ence, Plaintiffs here requested an injunction and other appropriate relief. Ultimately, however, like *American Bioscience*, the case has proceeded to the merits and the relief requested is "vacatur of the agency's order." *American Bioscience*, 269 F.3d at 1084. That is, the Court should grant Plaintiffs' motion for summary judgment and vacate SEVP's decision making Fay Avery PDSO. This would restore Roy Ho as the PDSO, which, as Dianne Currie has explained, is the position he held on November 16, 2007, the date that Fay Avery sought a change in PDSO. (Currie Decl. ¶ 10).

Thus, the order UNVA seeks would effect a change in the PDSO, but it would not require an affirmative – or negative – injunction. Rather, it would simply require the court to vacate SEVP's arbitrary and capricious decision making Avery PDSO. This is the standard relief available under the APA, which does not require a balancing of the equities.

### C.   There are no national security concerns here and if they are, the point to immediate resolution in favor of Plaintiffs.

Defendants' assert that the Court should provide a lighter touch to SEVP because of the global war on terrorism. (Def. Mem. at 24). SEVP clearly needs to be able to control the flow of student visitors to the United States to protect the security of the country. This does not mean, however, that its lack of procedural fairness or legitimate decision-making should in any way exempt it from the Administrative Procedure Act's normal standard of review.

Indeed this assertion is ironic given that UNVA has alleged specific harm to students in the program who have had their immigration status arbitrarily revoked by Avery. (Pl. Ex. F). This has included spouses of students loosing their status, the refusal of Avery to transfer student records to other schools, and a requirement that students sign a notarized pledge to remain at UNVA. Such actions are much more likely to bring distrust and ill will on the immigration sys-

tem and ultimately jeopardize national security than proper judicial review of SEVP's decisions in this case.

## <u>CONCLUSION</u>

For the forgoing reasons, the Court should grant Plaintiffs' Motion for Summary Judgment, enter an appropriate order vacating SEVP's decision to approve Fay Avery as the PDSO, and deny Defendants' Motion to Dismiss and Motion for Summary Judgment.

Respectfully submitted,

/s/ Ronald M. Jacobs
Ronald M. Jacobs
   (D.C. Bar No. 479842)
   (202) 344-8215
   rmjacobs@venable.com
D. Edward Wilson, Jr.
   (D.C. Bar No. 932178)
   (202) 344-4819
   dewilsonjr@venable.com
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004-1601

May 30, 2008                           *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th Day of May 2008, Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss or for Summary Judgment and Reply Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction or Summary Judgment was served by the Court's ECF filing system on the following:

       Claire Whitaker
       Assistant United States Attorney
       United States Attorneys Office
       Civil Division
       555 4th Street, N.W., Room E-4204
       Washington, D.C. 20530
       (202) 514-7137
       claire.whitaker@usdoj.gov

       Reginald Rowan
       reginald.rowan@usdoj.gov

                            /s/ Ronald M. Jacobs
                            Ronald M. Jacobs

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DANIEL F. HO., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-757 (JDB) |
| | ) | |
| STUDENT AND EXCHANGE | ) | |
| VISITOR PROGRAM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1.   On December 6, 2007, Fay Avery and Bert vanGils met with SEVP officials and requested that Daniel Ho be removed as a Designated School Official ("DSO") of the University of Northern Virginia ("UNVA"). (R. 36)[1]

2.   On March 27, 2008, counsel for UNVA sent a letter to Dianne Currie seeking to have Avery removed as PDSO immediately. (Ex. B). That letter explained the ownership of UNVA and its parent company, Education Dynamics, Inc. ("EDI"), the control of UNVA by the Board of Directors, that Dr. Ho was the president and owner of UNVA, and that there would be immediate harm to UNVA and the students if Avery were not removed as PDSO immediately.

---

[1] Citations to the Administrative Record correspond to page numbers provided by Defendants in the exhibits to the Declaration of Dianne Currie. Documents that UNVA submitted to SEVP, which SEVP has not included in the administrative record, are cited to the exhibits attached to Plaintiffs' Motion for a Temporary Restraining Order and/or a Preliminary Injunction (which by separate motion Plaintiffs have asked the Court to treat as a Motion for Summary Judgment). Because these documents were in the agency's possession when it determined not to make an immediate change to the PDSO, they should have been made part of the Administrative Record. Plaintiffs have filed a separate motion seeking inclusion of these documents in the Administrative Record.

3. The March 27, 2008 letter included the following attachments to support these assertions:

a.) Exhibit A: Articles of Incorporation for EDI;

b.) Exhibit B: Articles of Incorporation for UNVA;

c.) Exhibit C: Minutes from a 1999 EDI board meeting showing EDI owned all shares of EDI stock;

d.) Exhibit D: A letter from UNVA's outside counsel dated August 15, 2007, showing that EDI currently owned 89.09% of UNVA's stock;

e.) Exhibit E: A transcript from the *Avery v. Ho* litigation where Avery testified that he does not own any EDI stock; and

f.) Exhibit F: A copy of the UNVA Board of Director's action dated January 6, 2008 terminating Fay Avery's employment with UNVA.

4. Counsel sent a second letter to SEVP on March 27, 2008, responding to an email from Dianne Currie and demanding immediate action by SEVP. (Ex. C)

5. On April 1, 2008, UVNA responded to the Notice of Intent to Withdraw ("NOIW") that SEVP issued on March 28, 2008 (R.36) by a letter to SEVP. (Ex. E)

6. That letter reiterated UNVA's request for an immediate change in the PDSO and provided further discussion of the ownership and control of UNVA. (Ex. E)

7. The April 1, 2008 letter included the following exhibits:

a.) Exhibit 1: Minutes of a UNVA board meeting held on November 17, 2007. At that meeting, Dr. Ho voted to eliminate the Board of Trustees;

b.)   Exhibit 2: December 21, 2007 Action by EDI's sole shareholder, Dr. Ho, removing EDI's current board of directors and electing himself as the sole board member;

c.)   Exhibit 3: December 21, 2007 Action by EDI's board of directors (i.e., Dr. Ho), terminating all of EDI's officers and naming himself President and Treasurer and Roy Ho Secretary;

d.)   Exhibit 4: Copies of the Bylaws of EDI;

e.)   Exhibit 5:UNVA Articles of Incorporation;

f.)   Exhibit 6: December 21, 2007 Action by EDI, the majority shareholder of UNVA, removing the UNVA board of directors, appointing a new board of directors and adopting new bylaws;

g.)   Exhibit 7: The UNVA bylaws adopted by Dr. Ho on December 21, 2007;

h.)   Exhibit 8: January 5, 2008 action by the UNVA board of directors terminating Fay Avery's employment with UNVA;

i.)   Exhibits 9 -13: Minutes and resolutions from various meetings of the board of directors showing various actions taken from February 2, 2008 through March 24, 2008; and

j.)   Exhibit 14: Decision dismissing *Board of Trustees v. EDI*, Civil Action Number 2008-297 for lack of standing by the board of trustees to bring suit.

8.   On April 8, 2008, UNVA submitted a letter to SEVP explaining various improper activities of which UNVA had become aware Fay Avery was engaging using his power as PDSO. (Ex. F)

9.    The April 8, 2008 letter included the following exhibits:

a.)    Exhibit 1: Email from Daniel Ho to Ronald Jacobs that included a forwarded message from the Director of the Diplomatic Language Services of the English Language Institute explaining in detail the fact that Avery and his colleagues were not providing student records to effectuate transfers and were terminating students' immigration status that had requested to transfer;

b.)    Exhibit 2: Documentation showing improper termination of student's immigration status along with that of his wife, whose status was dependent on his;

c.)    Exhibit 3: Documentation showing improper termination of another student; and

d.)    Exhibit 4: Affidavit that Avery was requiring students to sign promising not to transfer from UNVA.

10.  On April 8, 2008, Counsel for UNVA met with Dianne Currie to request an immediate change in the PDSO given the ongoing harm to the school and students. (Ex. G)

11.  On April 10, 2008, UNVA sent another letter to SEVP confirming the meeting and reiterating its position that SEVP had the authority to act immediately. (Ex. G)

12.  On April 10, 2008, as an attachment to Counsel's letter, it provided a legal memorandum explaining why SEVP had the authority to act immediately. (Ex. H)

13.  On April 16, 2008, UNVA again contacted SEVP by letter seeking immediate relief. (Ex. I)

14.  On April 25, 2008, UNVA's Counsel sent a letter to Louis Farrell, the Director of SEVP, seeking reconsideration of SEVP's apparent decision not to change the PDSO immediately as required by UNVA.

Respectfully submitted,


/s/ Ronald M. Jacobs
Ronald M. Jacobs
  (D.C. Bar No. 479842)
  (202) 344-8215
  rmjacobs@venable.com
D. Edward Wilson, Jr.
  (D.C. Bar No. 932178)
  (202) 344-4819
  dewilsonjr@venable.com
VENABLE LLP
575 7th Street, N.W.
Washington, D.C. 20004-1601

May 30, 2008                                    *Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DANIEL F. HO., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-757 (JDB) |
| | ) | |
| STUDENT AND EXCHANGE | ) | **ORDER [Proposed]** |
| VISITOR PROGRAM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>ORDER</u>

Upon consideration of Plaintiff's Cross-Motion for Summary Judgment (which was filed as Plaintiffs' Motion for a Temporary Restraining order and/or a Preliminary Injunction, together with Defendants' Motion to Dismiss or Alternatively for Summary Judgment, and the responses thereto,  it is hereby:

**ORDERED** that Defendants' Motion to Dismiss or Alternatively for Summary Judgment is Denied;

**ORDERED** that Plaintiffs' Cross-Motion for Summary Judgment is granted; and further:

**ORDERED** that the decision and/or order by the Student and Exchange Visitor Program naming Fay Avery the Principal Designated School Official for the University of Northern Virginia is hereby vacated with instructions to re-instate Roy Ho as the Principal Designated School Official for the University of

Northern Virginia pending resolution of the Student Exchange Visitor

Information Program's Notice of Intent to Withdraw issued on March 28, 2008.

_____
John D. Bates
United States District Judge